## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS - SHERMAN DIVISION

| | |
|---|---|
| **JOHN S. VANDERBOL III, AND ERICA QUINN**<br>        Plaintiffs,<br><br>vs.<br><br>**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM FIRE AND CASUALTY COMPANY, ET AL.**<br>        Defendants | Lead Case No.: 4:19-cv-119-SDJ-KPJ<br><br>(Consolidated 4:19-CV-120)<br><br><br>JURY TRIAL DEMANDED. |

### PLAINTIFFS' 3ᴿᴰ AMENDED COMPLAINT

Now here comes, Plaintiffs Quinn and Vanderbol, acting Pro Se, and does file their *Plaintiffs' 3ʳᵈ Amended Complaint.*    Despite this Honorable Court's granting of Defendants' Motion to Stay Discovery in this matter, and despite the Defendants' previous egregious attempts to suppress, and obscure evidence which shows the Defendants' continuing pattern of frauds, and bad faith practices, Plaintiffs have discovered sufficient evidence of such activities to bring the following claims. Filed jointly with this Third Amended Complaint, is the Plaintiffs' Brief in Support of Plaintiffs' Third Amended Complaint.  Plaintiffs show this Honorable Court;

## I.    *INTRODUCTION.*

1. The Plaintiffs allege to be victims of the Defendants' highly complex fraud schemes, racketeering activities, conducted through Defendants' RICO violating enterprises, which Defendants have established, operated, conducted, as well as participated within said enterprises since at least January 1ˢᵗ, 2012, and in a continuing pattern of behaviors and activities fraudulently induced, and then intentionally defrauded Plaintiffs through the Defendants' various and jointly connect enterprises, managed and established by the  Defendants and Defendants' enterprises, which conducted and participated, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property, through the Defendants' enterprises complex schemes, frauds, and racketeering activities.

**2.**    Plaintiffs allege to be defrauded by the Defendants who operate an extremely complex and unlawful enterprise conglomerate.   The interstate commerce affecting conglomerate consists of jointly participating RICO violating subsidiary enterprises, which directly and indirectly engaged, conducted, established, and jointly operated RICO violating enterprises, including jointly participating association in fact enterprises, which conducted racketeering activities designed to deceive, confuse, and defraud the Plaintiffs, in order to illegally obtain monies and properties from the Plaintiffs.

**3.**    The sole purpose of the Defendants' RICO violating enterprises acts were to defraud the Plaintiffs by misrepresentation of material facts, and to deceive, confuse, and mislead the Plaintiffs in order for the Defendants to illegally obtain monies and property from the Plaintiffs through the Defendants' patterns of racketeering activities.

**4.**    Plaintiffs' cause of action rises due to the Defendants' enterprises managed and established by the Defendants and the Defendants' enterprises with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes, acts of fraud and acts of criminal behavior, and connected patterns of racketeering behaviors defrauding the Plaintiffs, and the continuing frauds and criminalities of the Defendants' jointly connected enterprises, which injured and damaged the Plaintiffs' property and businesses through the Defendants' frauds, criminalities, patterns of racketeering activities, and purposeful acts of negligence. The Defendants defrauded the Plaintiffs using fraudulent marketing practices and gross frauds, fraudulent sales activities, and post-sale frauds, including fraudulent and criminal business practices used by the Defendants' complicated conglomerate racketeering enterprise operating model.   The Defendants' sales frauds schemes included 'bait and switch frauds' where the Defendants failed to deliver products sold to the Plaintiffs by the Defendants' previous jointly operating RICO violating enterprises. Plaintiffs' cause of action also includes the Defendants' 'post-sale' fraudulent, negligent and criminal racketeering enterprises' activities which included multiple criminal acts of extortion, robbery, coercion, intimidation, and frauds conducted by the Defendants jointly participating RICO violating conglomerate enterprises to conceal the Defendants' jointly operating racketeering enterprise model's earlier patterns of racketeering activity, sales and marketing frauds.

**5.**   The Plaintiffs became aware of the Defendants' RICO violating enterprises only after the Plaintiffs suffered a catastrophic loss due to a residential fire event which occurred on February 17th, 2017, and the due to the expanding frauds and criminalities of the Defendants in their efforts to conceal the earlier frauds and patterns of racketeering activity. Plaintiffs became aware of the interstate commerce affecting, interstate RICO violating conglomerate enterprises on or about August 18th, 2017.

**6.**   The majority of the Plaintiffs' monetary injuries and damages are resultant from Plaintiffs' reliance on the Defendants to meet the obligations made to the Plaintiffs by the employees of the Defendants' multiple and jointly operating RICO violating enterprises.

**7.**   The majority of the Plaintiffs' injuries and monetary damages were caused and resulted from the negligent, fraudulent and criminal acts and interstate racketeering activities of the Defendants' multiple and jointly operating interstate RICO violating enterprises.

**8.**   Defendants' interstate commerce affecting conglomerate racketeering enterprises' activities managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, directed at the Plaintiffs include: mail fraud, wire fraud, bank fraud, extortion, robbery, and the Defendants' engagement in monetary transactions in property derived from specified unlawful activity.

## II.   *Jurisdiction and Venue.*

**9.**   There are two sources of subject matter jurisdiction in this Court:

   a.   This Court has Subject Matter Jurisdiction over this action pursuant to *18 U.S.C. § 1964.*

   b.   A substantial part of this action arises under the laws of the United States. 28 U.S.C. §§ 1331 and 1337.

   c.   Plaintiffs' extortion claims are pled and argued pursuant to Federal Law, 18 U.S.C. § 1951, as defined in 18 U.S.C. § 1951(b)(2), as "*The term 'extortion' means obtaining of property from another, with his consent, induced by wrongful use of actual or*

*threatened force, violence or fear, or under color of official right".* Also known as 'the Hobbs Act", and Plaintiffs have made substantial claims the violations of law affect interstate commerce.

d. Plaintiffs' civil fraud claims arise pursuant to Federal Law namely, Sections 15 U.S.C. 1125(a)(1 and 2), and this Honorable Court has authority pursuant to 15 U.S.C. § 1125(a)(1).

e. Plaintiffs' civil RICO claim arises pursuant to 18 U.S.C. § 1964(c).

f. The court's jurisdiction is not preempted by *15 U.S.C.A. § 1011-1014 (The McCarran-Ferguson Act)*. The McCarran-Ferguson Act does not preempt RICO claims where RICO claims supplements or complements state law. The Plaintiffs' RICO claims do not directly conflict with Texas Statutes, or Texas' administrative regulatory authority. Federal Statutes relating to Plaintiffs' claims and allegations pertaining to the Defendants' sales frauds schemes, and Defendants' acts to coercion, extortion, and robbery compliment Texas' statutory and common law remedies.

    i.   Plaintiffs' basis for frauds is soundly based within Federal Statute and constitutes a federal question jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiffs' claims for fraud arise under federal laws, namely 15 U.S.C. § 1125, and 18 U.S.C. § 1001. Plaintiffs' claims and allegations as to Defendants' activities, and as to acts challenged do not 'constitute the business of insurance' but the direct acts of fraud related to Defendants' abuse of trademarks, trade names, words, symbols, devices, and combinations thereof in the establishment of association in fact Racketeering Enterprises.

    ii.   The Defendants' RICO violating enterprises, managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, used interstate sales and marketing frauds in order to fraudulently induce and to defraud the Plaintiffs using deceptive trade practices, fraudulent sales practices, and engaged in patterns of racketeering activities that are not regulated insurance business practices within the State of Texas. The State of Texas Department of Insurance does not regulate the challenged acts, nor do they have the authority to, and the federal statutes do not supersede the state statutes.

    iii.   The Plaintiffs' allegations and claims do not challenge state statutes, nor do they represent 'complex matters' of state law, and the interstate commerce affecting RICO violating activities of the Defendants cannot be constituted,

or represented, as the lawfully regulated 'business of insurance' in the State of Texas.

**10.** This Honorable Court has personal jurisdiction in this matter Pursuant to 18 U.S.C. § 1965(b) as required by the '*ends of justice*'. Additionally, Pursuant to 18 U.S.C. § 1965(d), this Honorable Court has personal jurisdiction over Defendants Wey, Smith, and Harbert as Defendants Wey, Smith, and Harbert conduct affairs in this district acting as directors of State Farm Lloyds, Inc., a Defendant in this matter, and a company which is domiciled in the State of Texas. Further, Defendants Wey and Smith are employees of State Farm Lloyds, and State Farm Lloyds, Inc. Both companies are Defendants in this matter, and are wholly domiciled in the State of Texas, and as employees, both Defendants Smith and Wey conduct their affairs within the judicial district of this Honorable Court. Further, Defendants Smith, Harbert and Wey, have agents in this judicial district and maintain residences within the State of Texas. This Honorable Court has personal jurisdiction over Defendants Farney and Tipsord due to the more than 'minimum' contacts of Defendants Smith, Harbert, and Wey with this Honorable Court's jurisdictional authority and forum, as well as Plaintiffs' injuries occurred in Texas, due to the activities of the Defendants purposefully directed at the Plaintiffs who are residents of the State of Texas.

**11.** This Honorable Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. 28 U.S.C. § 1367(a) states "*in a civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form the same controversy*". Plaintiffs allege to be victimized, injured and damaged by the Defendants' interstate commerce affecting, interstate operating RICO violating conglomerate enterprise. Plaintiffs allege and have shown within this complaint, Defendants operating interstate sales, and marketing fraud enterprises, which engage in patterns of racketeering activity. Plaintiffs have also shown and allege Defendants manage, operate, conduct and participate in interstate frauds, and criminal activities, which participate, manage, and conduct interstate frauds, and criminalities which affect interstate commerce. Plaintiffs have shown in evidence Defendant Fire, operating from Illinois, and Georgia directly and indirectly controlled, managed, and conducted Lloyds' employees in joint interstate commerce affecting enterprises' racketeering activities which included robbery and extortion, in violation of the Hobbs Act. The nexus of interstate racketeering activities show

Defendants' multiple enterprises engaged in interstate sales and marketing frauds and racketeering activities which are directly tied to the intestate post-sales frauds and criminalities of the other racketeering activities of the Defendants' conglomerate enterprises operating across state lines sufficient to maintain the required Federal Jurisdiction over <u>all of the Plaintiffs' civil claims</u>.

A.   Pursuant to ***<u>Section 17.46(b) of the Texas Business and Commerce Code</u>***, Plaintiffs have claims and are entitled for relief due to the Plaintiffs' injuries and actual damages incurred due to Defendants' Deceptive Trade and Sales Practices. A Citizen of the State of Texas may bring an action against an insurance company, and Individual Defendants, for violations of the Insurance Code under the Deceptive Trade Practices Act. **Texas Insurance Code, Section 541.151**, specifically says that a person who sustains actual damages may bring an action against another for damages caused by the other person engaging in an act or practice, "*specifically enumerated in **Section 17.46(b), Texas Business & Commerce Code**, as an unlawful deceptive trade practice...*" The Business & Commerce Code is where the Texas Deceptive Trade Practices Act is located. The whole purpose of the DTPA is to prevent companies from doing wrongs to consumers.  Plaintiffs have claims pursuant to Texas Title 5, Subtitle C, Chapter 451 for Defendants' multiple violations of law including:

   1) Sec. 541.051 Defendants' Misrepresentations Regarding Policy or Insurer including:
      a) Defendants' misrepresentation of policy. Violation of TX. Sec. *541.051(1)(A)*.
      b) Defendants' misrepresentation of policy, insurer, and class of policy. Violation of TX. Sec. *541.051(3)(A)*.

   2) Sec. 541.052. Defendants' ongoing and continuing acts as argued here within this complaint, which include false advertising, and deceptive acts and business practices in advertising, statements, and announcements, containing untrue, deceptive, and / or misleading assertions, representations, or statements regarding business of insurance, AND a person's in the conduct of insurance business, in radio and television broadcasts, through the internet, and / or in any other manner.  Multiple Violations of Sec. 541.052(a) and Sec. 541.052 (b)(1), Sec. 541.052 (b)(3), Sec. 541.052 (b)(4), and Sec. 541.052 (b)(5).

3) Sec.541.054. Defendants' multiple acts of intimidation, coercion and deceptive acts as argued here within this complaint.

4) Sec. 541.055. Defendants' ongoing and continuing acts of making false financial statements as argued here within this complaint, in the form of the fraudulent 'annual report to shareholders' issued by the Defendants, and the Defendants' enterprises in violation of Sec.541.055 (2).

5) Sec. 541.059. Defendants' ongoing and continuing acts of deceptive use of names, words, symbols, devices, and slogans. In violation of Sec. 541.059(a)(1), Sec. 541.059(a)(2), Sec. 541.059(b) as argued here within this complaint.

6) Sec. 541.061. Defendants' ongoing and continuing acts of misrepresentation of insurance policies as argued here within this complaint, in violation of:

    a) Sec. 541.061(1). Defendants, and Defendants' enterprises making of untrue statements of material fact.
    b) Sec. 541.061(2). Defendants, and Defendants' enterprises failing to state a material fact necessary to make other statements not misleading.
    c) Sec. 541.061(3). Defendants, and Defendants' enterprises making of statements in a manner that would mislead a reasonably prudent person to a false conclusion of material fact.
    d) Sec. 541.061(4). Defendants, and Defendants' enterprises making of material misstatements of law.

B. Pursuant to Texas Business and Commerce Code 17.50, Plaintiffs, as citizens of the State of Texas, and consumers may maintain an action for any act in (a) which produces a cause for economic damage and damages for mental anguish. As stated: *(a) A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:(A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and (B) relied on by a consumer to the consumer's detriment; (2) breach of an express or implied warranty;(3) any unconscionable action or course of action by any person; or(4) the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code.*

C. Plaintiffs have claims for damages and injuries suffered due to the Defendants' negligence and failures to deliver proper products sold pursuant to Texas Prac. and

Civ. Rem. Code Sec. 33.001, as applicable in Sec. 33.002(1) and Sec. 33.002(2) of the Texas Prac. and Civ. Rem Code.

D.  Plaintiffs have claims for damages and injuries suffered due to the Defendants' multiple acts of securing execution of document by deception pursuant to Texas Prac. and Civ. Rem. Code Sec. 33.001, as applicable in Sec. 33.002(1) and Sec. 33.002(2) of the Texas Prac. and Civ. Rem Code, as defined in Sec. 33.013(2)(L) due to Defendants' intention to do harm to the Plaintiffs, and acts in concert with other persons (conspiracy) for violations of Section 32.46 of the Texas Penal Code, including the fraudulent inducement of Plaintiffs, purchase of an automobile insurance policy from Defendant Auto, the purchase of homeowners insurance products from the enterprises, the extortion and fraudulent inducement of the Plaintiffs' signature on a subrogation agreement, and the extortion and fraudulent inducement of Plaintiffs on a 'canceled' automobile insurance contract, as argued within this complaint.

**12.**    There are six sources of venue in this court.

a.  A substantial part of the events or omissions giving rise to the action occurred in this district.  28 U.S.C. § 1391(b)(2).

b.  Plaintiff Vanderbol is a resident of the State of Texas, and is subject to the personal jurisdiction of this Honorable Court. 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(c)(2).

c.  Plaintiff Quinn is a resident of the State of Texas, and is subject to the personal jurisdiction of this Honorable Court. 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(c)(2).

d.  The Defendants have the capacity to be sued under their common name and are subject to the personal jurisdiction of this Honorable Court with respect to the civil action in question.  28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(c)(2).

e.  The Defendant Corporations have sufficient contacts within this District sufficient enough to be subject to the personal jurisdiction of this Honorable Court. 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(d).

f.  Defendants Tipsord, Farney, Smith, Harbert and Wey have sufficient contacts within this District sufficient enough to be subject to the personal jurisdiction of this Honorable Court. 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(d).

## III.   *Standing.*

13.  ***Plaintiffs have Standing to bring the Claims against the Defendants.***

   *a.*  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs have standing as 'persons' who have sustained injury (and injuries) to businesses and property, by reasons of the Defendants' violation of 18 U.S.C. § 1962.

   a)  Plaintiffs relied upon the Defendants' gratuitous promises to 'pay for losses' incurred to Plaintiffs' property in the amount of $5 million, in the event of a loss after the Defendants fraudulently induced Plaintiffs into the Defendants' fraudulent 'bait and switch' scheme.  And;

   b)  Plaintiffs relied on Defendants' continuous promises prior to the February 17th, 2017, fire event in which Defendants clearly stated 'state farm has you covered for $ 5 Million in losses to your property'.  And;

   c)  Defendants' fraudulent statements and fraudulent inducement of the Plaintiffs constitutes conducts of frauds by wires and mails, and directly caused the injury to the Plaintiffs after the February 17th, 2017 fire event, as Plaintiffs relied on the assurances of the Defendants.  And;

   d)  The activities of the Defendants which occurred after February 17th, 2017, including the Defendants' acts of extortion and robbery, further injured the Plaintiffs in prohibiting the Plaintiffs' ability to recover monetary losses to their property resultant from the fire and the Defendants' fraudulent denial of liability / responsibility to make payments pursuant to the Defendants' prior and congruent assurances that 'state farm has you covered and you won't suffer any further loss".

   *b.*  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs have standing as 'persons' who have directly sustained injury (and injuries) to businesses and property, by reasons of the Defendants' violation of 18 U.S.C. § 1962.

a) Plaintiffs were defrauded and injured by the Defendants' RICO violating enterprises when the association in fact enterprise known as the 'deny' enterprise, unlawfully acquired Plaintiffs' Automobile Insurance Policy to unlawfully transfer liability for Defendants' RICO violating enterprises' failures to prevent damage to Plaintiffs' vehicles from the RICO violating enterprise to the Plaintiffs.

b) Plaintiffs were defrauded and injured by the Defendants' RICO violating enterprises by Defendants' RICO violating enterprises' fraudulent inducement to purchase an Automobile Insurance Policy, as part of the Defendants' 'bundling scheme", that was not held independent of the fraudulently misrepresented, and fraudulently offered homeowners policy.

c) Plaintiffs were directly personally defrauded, as insurance policy holders of State Farm Mutual Automobile Insurance Company, by 'the state farm group' RICO violating enterprise, the Directors of State Farm Mutual Automobile Insurance Company, and Defendant Tipsord directly due to:

1. Defendant Tipsord's knowingly fraudulent misrepresentations made in annual reports to the 'Auto policy Holders of State Farm Mutual Automobile Policy', issued annually, and delivered to the Plaintiffs via the mails and the wires which:

   a) Misrepresented the rights of the Plaintiffs, as policy holders of State Farm Mutual Automobile Insurance Company, regarding:

      a) the Plaintiffs' ability to redress the board of directors for frauds, and racketeering activities of the Defendants. And;
      b) the Plaintiffs' 'ownership' of State Farm Mutual Automobile Insurance Company as 'policyholders'. And;
      c) the Plaintiffs' rights as 'members'/ shareholders of State Farm Mutual Automobile Insurance Company in general.

   b) misrepresented the true and factual status of State Farm Mutual Automobile Insurance Company pertaining to:

      a) true and accurate reporting of financial statements pursuant to Generally Accepted Accounting Procedures relating to:

         i. The asset value of State Farm Mutual Automobile Insurance Company reflecting the total assets held by all 25 subsidiaries owned by State Farm Mutual Automobile Insurance Company.
         ii. The total proceeds of State Farm Mutual Automobile Insurance Company representing all incomes from the 25 subsidiary companies owned by State Farm Mutual Automobile Insurance Company.

iii.  The total liabilities of all subsidiary companies of the 25 subsidiary companies owned by State Farm Mutual Automobile Insurance Company, and the associated risk to the 'members' of State Farm Mutual Automobile Insurance Company.

iv.  The reported liabilities to the members due to the fraudulent operations of Directors and RICO violating employees of Defendant Auto, and its RICO engaged subsidiary enterprises due to the financial risks associated with the conduct, participation, and establishment of the RICO violating enterprise known as "the state farm group."

b)  The operating policies enacted by the Directors of State Farm Mutual Automobile Insurance Company which:

i.  were used to conduct the "State Farm Group" fraud schemes and racketeering activities.

ii.  were used in order for Defendant Auto to participate with the association in fact enterprise known as "the state farm group"

iii.  were used to establish the RICO violating enterprise known as "the state farm group."

iv.  were used to invest within the RICO violating enterprises known as 'the state farm' group.

v.  were used to operate the association in fact enterprises within the RICO violating enterprises known as 'the state farm' group.

c)  Misrepresented, misrepresented a material fact, or misrepresented the nature of, the characteristics of, or commercial activities of State Farm Mutual Automobile Insurance Company, as to the:

i.  daily operations of the company. And;

ii.  daily operations of the subsidiaries owned by State Farm Mutual Automobile Insurance Company. And;

iii.  the conduct of State Farm Mutual Automobile Insurance Company in participation, conduct, and management of the RICO violating enterprises known collectively as "the state farm group". And;

iv.  'financial strength' of State Farm Mutual Automobile Insurance Company. And;

v.  basis of 'profitability' of State Farm Mutual Automobile Insurance Company. And;

vi.  source of 'profitability' of State Farm Mutual Automobile Insurance Company.

c. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs have standing as 'persons' who have directly sustained injury (and injuries) to businesses and property, by reasons of the Defendants violation of 18 U.S.C. § 1962.

a) Plaintiffs' injuries were actually and proximately caused by Defendant Tipsord, Defendant Farney, Defendant Smith, Defendant Harbert, Defendant Wey, Defendant State Farm Fire and Casualty Company, Defendant State Farm Mutual Automobile Insurance Company, and association in fact racketing enterprises operated within State Farm Lloyds as managed by State Farm Lloyds, Inc. and the managed acts of conspiracy to conduct and participate in racketeering activities which affect interstate commerce, as part of the 'state farm group' fraud schemes and enterprises including:

i. Direct and indirect management of employees of the RICO violating enterprises, including association in fact enterprises, who.

1. Committed acts of fraudulent inducement
2. Committed acts of fraudulent misrepresentation
3. Committed the predicate act of extortion by threat and to fraudulently induce Plaintiffs into executing a 'subrogation' agreement to the benefit of the Defendants, and Defendants' enterprises.
4. Committed the predicate act of extortion by threat to illegally obtain Plaintiffs' property in order to inhibit the Plaintiffs' ability to bring litigation against the Defendants' enterprises.
5. Committed the predicate act of robbery of Plaintiffs' property in order to illegally obtain and then destroy Plaintiffs' property in order to inhibit the Plaintiffs' ability to bring litigation against the Defendants' enterprises.
6. Committed the predicate act of robbery of Plaintiffs' property in order to inhibit the Plaintiffs' ability to bring litigation in order to obtain financial restitution for losses attributed to the act of negligence of another party.
7. Committed the predicate act of robbery of Plaintiffs' property in order to unlawfully shift blame and liability from the Defendants' RICO violating enterprises to the Plaintiffs for losses and injuries suffered by the Plaintiffs caused by the negligence, criminalities, and fraudulent acts of the Defendants, and Defendants' enterprises.

ii. Direct and indirect participation and control of RICO violating enterprises, including association in fact enterprises, which:

1. committed acts of fraudulent inducement
2. committed acts of fraudulent misrepresentation

3. committed the predicate act of extortion by threat and to fraudulently induce Plaintiffs into executing a 'subrogation' agreement to the benefit of the Defendants, and Defendants' enterprises.

4. committed the predicate act of extortion by threat to illegally obtain Plaintiffs' property in order to inhibit the Plaintiffs' ability to bring litigation against the Defendants' enterprises.

5. committed the predicate act of robbery of Plaintiffs' property in order to illegally obtain and then destroy Plaintiffs' property in order to inhibit the Plaintiffs' ability to bring litigation against the Defendants' enterprises.

6. committed the predicate act of robbery of Plaintiffs' property in order to inhibit the Plaintiffs' ability to bring litigation in order to obtain financial restitution for losses attributed to the act of negligence of another party.

7. committed the predicate act of robbery of Plaintiffs' property in order to unlawfully shift blame and liability from the Defendants' RICO violating enterprises to the Plaintiffs for losses and injuries suffered by the Plaintiffs caused by the negligence, criminalities, and fraudulent acts of the Defendants, and Defendants' enterprises.

iii. By the Defendants' association and/or employment with enterprises engaged in activities that affect interstate commerce which:

1. committed acts of fraudulent inducement

2. committed acts of fraudulent misrepresentation

3. committed the predicate act of extortion by threat and to fraudulently induce Plaintiffs into executing a 'subrogation' agreement to the benefit of the Defendants, and Defendants' enterprises.

4. committed the predicate act of extortion by threat to illegally obtain Plaintiffs' property in order to inhibit the Plaintiffs' ability to bring litigation against the Defendants' enterprises.

5. committed the predicate act of robbery of Plaintiffs' property in order to illegally obtain and then destroy Plaintiffs' property in order to inhibit the Plaintiffs' ability to bring litigation against the Defendants' enterprises.

6. committed the predicate act of robbery of Plaintiffs' property in order to inhibit the Plaintiffs' ability to bring litigation in order to obtain financial restitution for losses attributed to the act of negligence of another party.

7. committed the predicate act of robbery of Plaintiffs' property in order to unlawfully shift blame and liability from the Defendants' RICO violating enterprises to the Plaintiffs for losses and injuries suffered by the Plaintiffs caused by the

negligence, criminalities, and fraudulent acts of the Defendants, and Defendants' enterprises.

iv. By the Defendants' association and/or employment with enterprises in direct and indirect conduct and participation with the affairs of the RICO violating enterprises' activities that affect interstate commerce which:

1. committed acts of fraudulent inducement
2. committed acts of fraudulent misrepresentation
3. committed the predicate act of extortion by threat and to fraudulently induce Plaintiffs into executing a 'subrogation' agreement to the benefit of the Defendants, and Defendants enterprises.
4. committed the predicate act of extortion to by threat to illegally obtain Plaintiffs' property in order to inhibit the Plaintiffs' ability to bring litigation against the Defendants' enterprises.
5. committed the predicate act of robbery of Plaintiffs' property in order to illegally obtain and then destroy Plaintiffs' property in order to inhibit the Plaintiffs' ability to bring litigation against the Defendants' enterprises.
6. committed the predicate act of robbery of Plaintiffs' property in order to inhibit the Plaintiffs' ability to bring litigation in order to obtain financial restitution for losses attributed to the act of negligence of another party.
7. committed the predicate act of robbery of Plaintiffs' property in order to unlawfully shift blame and liability from the Defendants' RICO violating enterprises to the Plaintiffs for losses and injuries suffered by the Plaintiffs caused by the negligence, criminalities, and fraudulent acts of the Defendants, and Defendants' enterprises.

## IV.   *PARTIES.*

### A.   *Plaintiffs*

#### 14.   Plaintiff Vanderbol and Plaintiff Quinn

Plaintiff John S. Vanderbol III, and Plaintiff Erica Quinn, are residents of Collin County, State of Texas with a principle mailing address of 3245 Main Street, Suite 235, Box 329, Frisco, Texas, 75034. The Plaintiffs own property located at 605 Kiowa Drive West, Lake Kiowa. , Cooke County, Texas, 76240 which was damaged by the acts, activities, and schemes conducted by the Defendants.

Further, Plaintiffs operated, managed, and conducted business activities from the aforementioned address, which have also been injured and damaged by the acts, activities, and schemes conducted by the Defendants. Plaintiff Vanderbol is a semi-retired senior international corporate executive, serial entrepreneur, and investor.    Plaintiff Vanderbol holds equity positions, and directly participates in several private companies, which rely upon the Plaintiff Vanderbol's capabilities and financial stability to operate. Plaintiff Quinn is a former marketing and media executive having previously held senior departmental positions in several fortune 100 companies.

Plaintiff Quinn is the President of *9-Ten Holdings*, a company jointly owned by Plaintiff Quinn and Plaintiff Vanderbol.    Plaintiff Vanderbol is the primary beneficiary of the '*Irrevocable Trust for the Benefit of John S. Vanderbol III*', and a director within *OPM Research and Development Company*. Plaintiffs maintained a 'home office' from which they conducted their joint and individual business dealings, which suffered significant damage and injury due to the acts of the Defendants, and the RICO violating enterprises.

Plaintiffs' business interests affect interstate and foreign commerce. Plaintiffs, as well as, private companies, in which Plaintiffs are invested in, or derive income from, rely heavily on Plaintiffs' asset base, correct risk profile standing, and Plaintiffs' personal/professional reputation to conduct business activities, obtain underwriting, engage in projects, place investments, and to obtain, as well as, derive income.    Defendants' nefarious and purposeful acts of fraud, and RICO violating enterprises significantly interrupted, interfered and damaged the businesses of the Plaintiffs, as well as property of Plaintiffs.

## B. *Defendants*

### 15.    Defendant Tipsord

Defendant Michael Tipsord (Tipsord) is the Chairman and Chief Executive Officer of Defendant State Farm Mutual Automobile Insurance Company (Auto), and Defendant State Farm Fire and Casualty Company (Fire).   Defendant Tipsord is a licensed tax attorney and was employed by Defendant Auto in 1988.  Since that time, Defendant Tipsord has been employed by, and managed, conducted and participated within the multiple RICO violating enterprises in various capacities since becoming associated with Defendant State Farm Mutual Automobile Insurance Company in 1988.

Defendant Tipsord is a United States Citizen and is culpable 'person', as defined in 18 U.S.C. § 1961(3), who violated and conspired to violate 18 U.S.C. § 1962(a), 18 U.S.C. § 1962(b), and 18 U.S.C. § 1962(c).

Defendant Tipsord had actual knowledge the conduct of the RICO violating enterprises was illegal. Defendant Tipsord, acting in a conspiracy with the other Defendants, intended to obtain, and intended to cause the loss of money by making materially false statements, and false pretenses, and false representations in bad faith.  Defendant Tipsord acted as '*the don*' of the RICO violating Criminal enterprises directing said RICO violating enterprises through the abuse of his offices, and directorships.  Defendant Tipsord acquired, maintained direct and indirect control of the RICO violating enterprises, including the association in fact enterprises, which engaged in activities, which affect interstate and foreign commerce.

Defendant Tipsord, as a principal of the RICO violating association in fact enterprises, directly and indirectly received income derived directly and indirectly from a pattern of racketeering activity conducted by the RICO violating enterprises he directed, managed, conducted, and participated in. His last known address from which he accepted legal service is 1 State Farm Plz. Bloomington, Illinois, 61710.

## 16.    **Defendant Farney**

Defendant Jon Charles Farney (Farney) is the Chief Financial Officer of Defendant State Farm Mutual Automobile Insurance Company (Auto), and Defendant State Farm Fire and Casualty Company (Fire). Defendant Farney is also 'treasurer' of the aforementioned Defendants, and the RICO violating Enterprises' foot soldier in the State of Texas, State Farm Lloyds, which is also a wholly owned subsidiary of Defendant Auto.

Defendant Farney was employed by "state farm" in 1993.  Defendant Farney has been employed by, and managed, conducted and participated within the multiple RICO violating enterprises in various capacities since becoming associated with "state farm" in 1993.  Defendant Farney is a United States Citizen and is a culpable 'person', as defined in 18 U.S.C. § 1961(3), who violated and conspired to violate 18 U.S.C. § 1962(a), 18 U.S.C. § 1962(b), and 18 U.S.C. § 1962(c).

Defendant Farney had actual knowledge the conduct of the RICO violating enterprises was illegal. Defendant Farney, acting in a conspiracy with the other Defendants, intended to obtain, and intended to cause the loss of, money by making materially false statements, and false pretenses, and false representations in bad faith. Defendant Farney acted as '*the treasurer and chief book-keeper*' of the RICO violating Criminal enterprises directing said RICO violating enterprises through the abuse of his offices, and directorships. Defendant Farney acquired, maintained direct and indirect control of the RICO violating enterprises, including the association in fact enterprises, which engaged in activities, which affect interstate and foreign commerce. Defendant Farney, as a principal of the RICO violating association in fact enterprises, directly and indirectly received income derived directly and indirectly from a pattern of racketeering activity conducted by the RICO violating enterprises he directed, managed, conducted, and participated in.

Defendant Farney has significant ties to the State of Texas due to his position of 'treasurer' of State Farm Lloyds, which is based in Richardson Texas, but also has offices in Austin, Texas. Defendant Farney employs residents of the State of Texas and travels extensively in the conduct and participation of RICO violating enterprises' activities traveling between Texas and Illinois. His last known address from which he accepted legal service is 1 State Farm Plz. Bloomington, Illinois, 61710.

## 17.  **Defendant Harbert**

Defendant Randall Houston Harbert (Harbert) is the Executive Vice President of Agency, Sales and Marketing Officer of Defendant State Farm Mutual Automobile Insurance Company (Auto). Defendant Harbert is also a member of the Board of Directors of Defendant State Farm Mutual Automobile Insurance Company (Auto), Defendant State Farm Fire and Casualty Company (Fire), and the RICO violating Enterprises' foot soldier in the State of Texas, State Farm Lloyds INC, which is also a wholly owned subsidiary of Lloyds, and manages the operations of Lloyds, in order to conduct and participate within the 'state farm group's' associated fraud schemes and racketeering activities.

Defendant Harbert has been engaged with the "state farm" enterprises since 1992, and was employed by Defendant Auto in 1999. Defendant Harbert has been employed by, and managed,

conducted and participated within the multiple RICO violating enterprises in various capacities since becoming associated with Defendant State Farm Mutual Automobile Insurance Company in 1999. Defendant Harbert is a United States Citizen and is a culpable 'person', as defined in 18 U.S.C. § 1961(3), who violated and conspired to violate 18 U.S.C. § 1962(a), 18 U.S.C. § 1962(b), and 18 U.S.C. § 1962(c).

Defendant Harbert had actual knowledge the conduct of the RICO violating enterprises was illegal. Defendant Harbert, acting in a conspiracy with the other Defendants, intended to obtain, and intended to cause the loss of money by making materially false statements, and false pretenses, and false representations in bad faith. Defendant Harbert acted as "*the trainer, and primary manager*" of Defendant Auto's third party agents network used by the Defendants to conduct the RICO violating activities of the RICO violating Criminal enterprises. Defendant Harbert directed said RICO violating association in fact enterprises through the abuse of his offices, and directorships. Defendant Harbert acquired, maintained direct and indirect control of the RICO violating enterprises, including the association in fact enterprises, which engaged in activities, which affect interstate and foreign commerce. Defendant Harbert, as a principal of the RICO violating association in fact enterprises, directly and indirectly received income derived directly and indirectly from a pattern of racketeering activity conducted by the RICO violating enterprises he directed, managed, conducted, and participated in.

Defendant Harbert has significant ties to the State of Texas due to his position of board member of State Farm Lloyds INC, which is based in Richardson, Texas, but also has offices in Austin, Texas. Defendant Harbert employs residents of the State of Texas and travels extensively in the conduct and participation of RICO violating enterprises' activities traveling between Texas and Illinois. His last known address from which he accepted legal service is 1 State Farm Plz. Bloomington, Illinois, 61710.

## 18.    **Defendant Smith**

Defendant Paul Joseph Smith (Smith) is the Senior Vice President of State Farm Investment Management Corp. Defendant Smith is a member of the Board of Directors of State Farm Investment Management Trust, State Farm Mutual Fund Trust, and State Farm S&P 500 Index

Fund. Defendant Smith participates and conducts the RICO violating enterprises' money laundering activities of illegally obtained monies obtained by Defendants' RICO violating enterprises.

Defendant Smith was employed by "state farm" in 1988. Defendant Smith has been employed by, and managed, conducted and participated within the multiple RICO violating enterprises in various capacities since becoming associated with Defendant State Farm Mutual Automobile Insurance Company in 1988. Defendant Smith is a United States Citizen and is a culpable 'person', as defined in 18 U.S.C. § 1961(3), who violated and conspired to violate 18 U.S.C. § 1962(a), 18 U.S.C. § 1962(b), and 18 U.S.C. § 1962(c).

Defendant Smith had actual knowledge the conduct of the RICO violating enterprises was illegal. Defendant Smith, acting in a conspiracy with the other Defendants, intended to obtain, and intended to cause the loss of money by making materially false statements, and false pretenses, and false representations in bad faith. Defendant Smith acted as "*money launderer, investor and disbursing agent*" of illegal monies obtained through the conduct the RICO violating activities of the RICO violating Criminal enterprises. Defendant Smith established, managed, conducted, and operated the RICO violating enterprises' investment in open market securities. Defendant Smith established, managed, conducted, and operated the RICO violating enterprises' investment in and acquisition of enterprises engaged in interstate and foreign commerce. Defendant Smith established, managed, conducted, and operated the RICO violating enterprises' investment in and acquisition of enterprises, which affect interstate and foreign commerce. Defendant Smith directed said RICO violating association in fact enterprises through the abuse of his offices, and directorships.

Defendant Smith acquired, maintained direct and indirect control of the RICO violating enterprises, including the association in fact enterprises, which engaged in activities, which affect interstate and foreign commerce. Defendant Smith, as a principal of the RICO violating association in fact enterprises, directly and indirectly received income derived directly and indirectly from a pattern of racketeering activity conducted by the RICO violating enterprises he directed, managed,

conducted, and participated in.  His last known address from which he accepted legal service is 1
State Farm Plz. Bloomington, Illinois, 61710.

## 19.   **Defendant Wey**

Defendant Michael Steven Wey (Wey), is the President of State Farm Lloyds (Lloyds), the
RICO violating Enterprises' foot soldier in the State of Texas, which is a wholly owned subsidiary
of Defendant State Farm Mutual Automobile Insurance Company (Auto). Defendant Wey has
been employed by 'state farm' since October of 2005.  Defendant Wey has been employed by, and
managed, conducted and participated within the multiple RICO violating enterprises in various
capacities acting as policy-maker, policy influencer, and implementer of the Defendants' RICO
violating criminal enterprises since becoming employed by Defendant Auto. Defendant Wey is a
United States Citizen and is a culpable 'person', as defined in 18 U.S.C. § 1961(3), who violated
and conspired to violate 18 U.S.C. § 1962(a), 18 U.S.C. § 1962(b), and 18 U.S.C. § 1962(c).

Defendant Wey had actual knowledge the conduct of the RICO violating enterprises was
illegal.  Defendant Wey, acting in a conspiracy with the other Defendants, intended to obtain, and
intended to cause the loss of, money by making materially false statements, and false pretenses,
and false representations in bad faith.  Defendant Wey acted as *'facilitator"* of Defendant Auto's
RICO violating enterprises and worked directly with Defendant Harbert in the management of
Defendant Auto's third-party agents network used by the Defendants to conduct the RICO
violating activities of the RICO violating Criminal enterprises.  Defendant Wey directed said
RICO violating association in fact enterprises through the abuse of his offices, and directorships.
Defendant Wey acquired, maintained direct and indirect control of the RICO violating enterprises,
including the association in fact enterprises, which engaged in activities, which affect interstate
and foreign commerce. Defendant Wey, as a principal of the RICO violating association in fact
enterprises, directly and indirectly received income derived directly and indirectly from a pattern
of racketeering activity conducted by the RICO violating enterprises he directed, managed,
conducted, and participated in.

Defendant Wey has significant ties to the State of Texas due to his position of "*President*" of
State Farm Lloyds, which is based in Richardson Texas, but also has offices in Austin, Texas.

Defendant Wey maintains residential property located at 8707 Acurela Ct, Austin, Texas, 78735, which is listed as his 'primary residence'. Defendant Wey formed, and manages "Wey Management Trust", which currently owns the aforementioned Austin property, and said property is described as 'owner occupied'. Wey Management Trust has also recently purchased property located at 19352 Briar Dr. Bloomington Il. 61705. Defendant Wey employs residents of the State of Texas and travels extensively in the conduct and participation of RICO violating enterprises' activities traveling between Texas and Illinois.

20. **Defendant State Farm Mutual Automobile Insurance Company**

Defendant State Farm Mutual Automobile Insurance Company (Herein after Defendant Auto), is organized under the laws of the State of Illinois, and is a privately-owned "C" Corporation, operating under the laws of the State of Illinois. Defendant Auto's National Corporate Headquarters is located at 1 State Farm Pl. Bloomington, Illinois, 61710-0001.

   a. Defendant Auto was founded in 1922, by retired farmer <u>George J. Mecherle</u>, as a <u>mutual</u> automobile insurance company owned by its policyholders.

   b. Defendant Auto is a "consumer owned co-operative" company, operating solely for the benefit of its 'members', which are owners of Automobile Insurance Policies issued by State Farm Mutual Automobile Insurance Company.

   c. Defendant Auto solely sells automotive insurance products, which are unique and separate products from and the products sold and offered by the other Defendants in this matter.

   d. Defendant Auto manages a third-party agent network consisting of approximately 616 "state farm" sales locations across the nation as reported by Dun and Bradstreet.

   e. Defendant Auto owns 26 companies, each conducting a distinctly different enterprise, as such, each of the 26 companies owned by Defendant Auto are distinctly different and operationally separate corporate entities.

   f. Defendant Auto reports a total asset valuation of State Farm Mutual Automobile Insurance Company to be more than $251 Billion. It is an enterprise, which is engaged in affairs, and activities, which affect interstate and foreign commerce.

   g. Defendant Auto is operationally separate from the other enterprises, and is a distinctly separate company from the distinctly separate and independent companies it owns. As such, Defendant Auto is a culpable person/enterprise as defined in 18 U.S.C. § 1961(3),

who violated and conspired to violate 18 U.S.C. § 1962(a), 18 U.S.C. § 1962(b), and 18 U.S.C. § 1962(c).

**21.**    **Defendant State Farm Fire and Casualty Company**

Defendant State Farm Fire and Casualty Company (Herein after Defendant Fire), is organized under the laws of the State of Illinois, and is a privately owned "C" Corporation, operating under the laws of the State of Illinois. Defendant Auto's National Corporate Headquarters is located at 3 State Farm Pl. Bloomington, Illinois, 61710-0001.

   *a.*  Defendant Fire was founded in 1935, and was originally known as "State Farm Insurance Company".  In 1950, State Farm Insurance Company changed its name to "State Farm Fire and Casualty Company."

   *b.*  Defendant Fire primarily sells homeowners insurance products, which are unique and separate products from State Farm Mutual Automobile Insurance Company and the products sold and offered by the other Defendants in this matter.

   *c.*  From 1950 until January 1st of 2012, Defendant Fire's independence from State Farm Mutual Automobile Insurance Company was publicly addressed and advertised in the word 'fire' in the tri-oval logo used in national advertising campaigns.

   *d.*  Defendant Fire is owned by State Farm Mutual Automobile Insurance Company but is operationally independent and distinctly separate company from State Farm Mutual Automobile Insurance Company.

   *e.*  Defendant Fire sells its products using the third-party agent network managed by State Farm Mutual Automobile Insurance Company.

   *f.*  Defendant Fire is an operationally separate and independent company from State Farm Mutual Automobile Insurance Company, and is a distinctly separate company from any other distinct and independent companies owned by State Farm Mutual Automobile Insurance Company.  As such, Defendant Fire is a culpable person/enterprise as defined in 18 U.S.C. § 1961(3), who violated and conspired to violate 18 U.S.C. § 1962(a), 18 U.S.C. § 1962(b), and 18 U.S.C. § 1962(c).

## V.    *FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS.*

**22.**    **Definition of Fraud by Statute.**

At all times within this complaint, Plaintiffs' usage of the term "Fraud" relating to statements, activities, patterns of activities, conduct, and direct acts of the Defendants, as well as, the Defendants'

enterprises is defined pursuant to 18 U.S.C. § 1001(a)(1), 18 U.S.C. § 1001(a)(2), and 18 U.S.C. § 1001(a)(3).  The manner of usage in conduct of frauds used to defraud the Plaintiffs, through the conduct, participation, management, and operation of enterprises in which all of the Defendants are either associated and/or employed, describing the acts, actions, activities, and patterns of behavior, as well as, patterns of conduct of the Defendants, and the Defendants' enterprises are defined pursuant to 15 U.S.C. § 1125(a)(1)(A) and 15 U.S.C. § 1125(a)(1)(B).

**23.**    **Communication characteristics common with All Defendants, Defendants' Enterprises, Defendants' Employees, Defendants' network of third-party agents, and agents hired by Defendants, including corporate and third-party attorneys.**

At all times within this complaint relating to statements made by the Defendants, the Defendants' Enterprises, Defendants' Employees, Defendants' network of third-party agents, and agents of the Defendants, including corporate and third-party attorneys who are managed, or hired by enterprises managed and established by the  Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud,   use the common communications characteristic of all of the aforementioned associated with the Defendants, and Defendants' Enterprises' 'persons', is that all 'persons' engaged and used language, terms, words, symbols, devices, and slogans in a manner that was purposefully deceptive manner with the intent to cause confusion and/ or mistake.  The most common term, words, slogan, and symbol used by the aforementioned 'persons' to cause confusion, deception, and / or mistake is "state farm".  Defendants' enterprises conspiring 'persons' used the term, words, slogan, and symbol "state farm" to obscure, misrepresent, deceive, and defraud, not only the Plaintiffs, but also law enforcement, and the judiciary, as the facts, material fact of the conduct, operations, establishment, and participation of the enterprises, and the enterprises' conduct, management, organization, and operation of racketeering enterprises, and the activities of the Defendants' highly complex conglomerate racketeering enterprise business model.  Third Party persons, whether attorneys or agents hired by the various and many association in fact, or corporate enterprises managed and established by the Defendants and Defendants' enterprises, use the "single entity trade name fraud scheme" with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud.  For notice, the term "state

farm" is not the only word used by the persons, who use the term in a construct formula, to also deceive, confuse, and conduct fraud schemes, and participate in RICO violating enterprises.

At all times during this complaint, and in a continuing manner, the Defendants, the Defendants' Enterprises, Defendants' Employees, Defendants' network of third-party agents, and agents of the Defendants, including corporate and third-party attorneys, managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, utilize and misrepresent the material facts, and through the use of non-exact and opaque language, use terms, words, slogans, symbols, and names in a manner to cause confusion, and deception in a manner which has been determined to be unlawful pursuant to 15 U.S.C. § 1125, 18 U.S.C. § 1001, and Sections 541.052, and 541.059 of Title 5, Sub-title C, of the Texas Insurance Code, and Section 17.46 of Title 2 of the Texas Business and Commerce Code, and defined in said statutes as an act of 'fraud'.   Attorney usage of the term false statement, or misleading usage of the term "state farm" constitutes a violation of Texas Penal Code Sec. 32.32 due to attorneys' conspiracy and conduct in participation, of Defendants' enterprises, and attorney's statement of materially false and / or misleading statements made to obtain property, including acts to deny or inhibit Plaintiffs' recovery of properties and monetary value through the litigation process, based upon Plaintiffs' lawful claims, injuries, and damages.

24.    **Plaintiffs' Reliance.**

At all times Plaintiffs relied upon the statements of the Defendants and Plaintiffs' injuries occurred by reason of the acts of fraud conducted by the Defendants.

A. Prior to the February 17th, 2017 fire event, during the RICO enterprises' fraudulent inducement phase, employees of the Defendants' RICO violating enterprises repeatedly made statements via the wires, such as:

i.     "state farm will issue you a homeowners policy from State Farm Fire and Casualty in the amount of $5 Million,". and;

ii.    "state farm has you insured for $5 Million loss coverage for your residence". and;

iii.   "state farm will mail to you a copy of the $5 million homeowners policy.' and;

iv.    "state farm mailed your policy to your home address".

These statements were fraudulent misrepresentations made by the RICO violating enterprises' employees as:

1) "state farm" never issued the correct $5 Million policy to the Plaintiffs. And;
2) "state farm" never had the ability in Texas to issue a homeowners policy issued by State Farm Fire and Casualty company. And;
3) "state farm" never intended to issue a $5 Million policy to the Plaintiffs. And;
4) the Defendants' scheme was to illegally profit from the bait and switch sale of a lesser quality product than one advertised, and offered to the Plaintiffs.

Plaintiffs detrimentally relied on the fraudulent statements made by the RICO violating enterprises' employees and Plaintiffs' injuries were a direct result of Defendants' Frauds, and such injuries and damages are foreseeable and natural consequences of the Defendants' illegal schemes and Plaintiffs were the only parties injured due to the 'pre-fire' misrepresentations of the Defendants.

B. Prior to the February 17th, 2017 fire event, during the RICO enterprises' 'delay by fraud' phase. On or about 12 April 2016, Plaintiffs received a contract sent by Defendant Auto, fraudulently delivered via the United States Postal Service mail, which contained the 'switch' Lloyds homeowners product valued at only $814,000, instead of the $5 Million State Farm Fire and Casualty Homeowners policy shown to, and sold to the Plaintiffs.   Plaintiffs immediately contacted employees of the Defendants' RICO violating enterprises and demanded the correct insurance product be issued to them.   This event started a series of conversations lasting in duration of almost a year in which contacted employees of the Defendants' RICO violating enterprises repeatedly made statements via the wires, such as:

i.      "State Farm knows the policy mailed to you was issued in error". And;
ii.     "don't worry State Farm has you covered." And;
iii.    "State Farm has issued you a homeowners policy from State Farm Fire and Casualty in the amount of $5 Million". And;
iv.    "We have it on our screen you have a $5 Million loss coverage on your home." And;
v.     "Our <computer> system has you listed as owning a $5 Million homeowners policy and car policy." And.
vi.    "State Farm has you insured for $5 Million loss coverage for your residence". And;
vii.   "Don't worry if anything happens, State Farm has you covered." And;
viii.  "State Farm always pays its claims".

These statements were fraudulent misrepresentations made by the RICO violating enterprises' employees as:

1) "State Farm" never issued the correct $5 Million policy to the Plaintiffs. And;
2) "State Farm" never intended to issue said policy to the Plaintiffs. And;
3) "State Farm" lacked the ability to issue State Farm Fire and Casualty Insurance Products in Texas. And;
4) Defendants intended to prohibit Plaintiffs from obtaining lawful services from other insurance companies available to the Plaintiffs. And.
5) Defendants had no intention to offering restitution of monies, or delivery of correct valued product on already collected monies illegally obtained from the Plaintiffs through the Defendants' acts of fraud. And;
6) Defendants' failure to declare the Lloyds contract as 'valid' pre-fire was intentional to prohibit the loss of monies due to Plaintiffs' cancelation should they believe Defendants refused to offer the indemnification purchased. And;
7) The Defendants' scheme was to illegally profit from the bait and switch sale of a lesser quality product than one advertised, and offered to the Plaintiffs. And.
8) Employees of the RICO violating enterprises have specific knowledge "state farm" has a corporate culture, directed by the Defendants which dictates not to pay claims in a timely manner, and to never pay 'one more penny' than absolutely necessary.

Plaintiffs detrimentally relied on the fraudulent statements made by the RICO violating enterprises' employees and Plaintiffs' injuries were a direct result of Defendants' Frauds, and such injuries and damages are foreseeable and natural consequences of the Defendants' illegal schemes and Plaintiffs were the only parties injured due to the 'pre-fire' misrepresentations of the Defendants.

C. Post the February 17th, 2017 fire event, during the third phase of Defendants' RICO enterprises' fraud schemes, employees of the Defendants' RICO violating enterprises repeatedly made statements directly and via the wires, such as:

i. "State Farm will hire you an attorney". And;
ii. "State Farm knows your loss is greater than the Lloyds policy". And;
iii. "State Farm stated the Lloyds policy was issued in error, the claims department will sort that out". And;
iv. "Don't worry, you won't suffer any further loss." And;
v. "State Farm will hire an attorney to make sure you recover any losses that State Farm does not pay." And;
vi. "No one will enter your property without your consent, and attendance". And;
vii. "Here is the attorney assigned to your case".

These statements were fraudulent misrepresentations made by the RICO violating enterprises' employees as:

1) "State Farm" never issued the correct $5 Million policy to the Plaintiffs. And;
2) "State Farm" never intended to issue said policy to the Plaintiffs. And;
3) "State Farm: lacked the ability to issue State Farm Fire and Casualty Insurance Products in Texas. And;
4) "State Farm" never intended to hire an attorney to protect the interests of the Plaintiffs. And.
5) Defendants had no intention abide by their previous gratuitous statements, or assurances to pay for Plaintiffs' property losses up to $5 Million. And;
6) Defendants had no intention of preventing Plaintiffs from suffering any further loss to their property, or business interests. And;
7) The Defendants knew of their intention to illegally enter Plaintiffs' property in order to destroy evidence of the cause of the fire event. And;
8) Defendants intended to prohibit Plaintiffs from bringing a claim in litigation against either the Defendants or other parties insured by the Defendants. And;
9) Defendants intended to obscure the acts of negligence surrounding Plaintiffs' fire event. And;
10) Defendants did not intend to pay for losses suffered by the Plaintiffs in any manner that was previously assured to the Plaintiffs. And;
11) Employees of the RICO violating enterprises had specific knowledge the 'claims' department operates in a manner to deny claims on any and every basis, as directed by the Defendants' directives issued in conduct, management and participation of the RICO violating enterprises.

Plaintiffs detrimentally relied on the fraudulent statements of the RICO violating enterprises' employees and Plaintiffs injuries were a direct result of Defendants' Frauds, and such injuries and damages are foreseeable and natural consequences of the Defendant's illegal schemes. Plaintiffs had every reason to believe the Defendants' employees' prior statements representing the 'erroneous' issuance of the 'Lloyds' contract as being an "administrative error" and factually believe the Defendants would act in 'good faith' to correct the error, as well as, take every precaution to assure Plaintiffs were not further injured during the 'period of recovery'. Plaintiffs were the only parties injured due to the 'pre-fire' misrepresentations of the Defendants, and the only parties injured during the 'post fire' misrepresentations of the Defendants.

D. Post the February 17th, 2017 fire event, during the fourth phase of Defendants' RICO enterprises' fraud schemes, employees of the Defendants' RICO violating enterprises repeatedly made statements directly and via the wires, such as:

    i.     "State Farm will reimburse you for emergency purchases". And;

    ii.    "State Farm will reimburse you for your rental car expenses". And;

    iii.   "State Farm will make sure everything is fixed correctly". And;

    iv.   "Don't worry, you won't suffer any further loss." And;

    v.    "State Farm will not place the hail claims on your record." And;

    vi.   "You won't see any increase in premiums due to the hail and smoke damage to your cars".  And;

    vii.   "State Farm won't cancel your insurance coverage, we expect this kind of loss due to catastrophic events".  And;

   viii.   "Don't' worry about a cost increase due to the fire, one event does not make you 'high risk'".

These statements were fraudulent misrepresentations made by the RICO violating enterprises' employees as:

1) 'state farm' never intended to reimburse Plaintiffs for emergency purchases preauthorized by Defendants' 'field' employees. And;

2) 'state farm' never intended to reimburse Plaintiffs for rental car expenses paid by the Plaintiffs resultant from damages incurred to Plaintiffs' vehicles (property) due to Defendants' failure to provide adequate protection for Plaintiffs' vehicles despite a contractual requirement to do so. And;

3) 'state farm 'never intended to 'fix' everything correctly regarding Plaintiffs' property or businesses. And;

4) 'state farm' never intended to prevent Plaintiffs from suffering any further loss to Plaintiffs' property or businesses. And.

5) The Defendants knew of their intention to illegally cause Plaintiffs further monetary losses and injuries to businesses. And;

6) Employees of Defendants knew the 'hail and smoke' damage claims were being claimed against Plaintiffs' Automobile Policy in accordance with the directives of the Defendants' RICO violating enterprises. And;

7) Defendants knew of their intent to illegally seize and steal a monetary asset of the Plaintiffs, the Plaintiffs' Auto Insurance Policy, in order to 'offset' the RICO enterprises' 'losses' due to the claims of the Plaintiffs. And;

8) Defendants knew their acts of fraud would illegally transfer liability and responsibility to the Plaintiffs and would directly injure the Plaintiffs, Despite the Defendants' employees' statements otherwise. And;

9) Employees of the RICO violating enterprises had specific knowledge the 'claims' department operated in a manner to 'cancel' Plaintiffs' insurance coverages, and cause further future financial loss, and injury. And;

10) Defendants had knowledge they would purposefully, and with knowledge of the frauds conducted by the Defendants, wrongfully classified Plaintiffs as 'high-risk' in order to end contractual relationships with the Plaintiffs and to obscure the fraud schemes of the RICO violating enterprises.

Plaintiffs detrimentally relied on the fraudulent statements of the RICO violating enterprises' employees and Plaintiffs' injuries were a direct result of Defendants' frauds, and such injuries and damages are foreseeable and natural consequences of the Defendants' illegal schemes.  Plaintiffs had every reason to believe the Defendants' employees' statements and factually believe the Defendants would act in 'good faith', as well as, take every precaution to assure Plaintiffs were not further injured. Plaintiffs were the only parties injured due to the misrepresentations of the Defendants.

**25.**    **Defendants' Mental State.**

At all times Defendants and employees of Defendants conducting the RICO violating enterprises' frauds, and racketeering activities had actual knowledge the conduct of the enterprises was illegal.  In issuing their materially false, and fraudulent statements via the wires and mails, Defendants intended to obtain money by fraudulent pretenses, and to cause loss of money and property by fraudulent pretenses, fraudulent representations, and by statements which were materially false.  Defendants, in facilitation of the fraud, obtained and gained money and an advantage at the expense of the Plaintiffs.   As shown in ***Paragraph 24*** (***Plaintiff's Reliance***) the Defendants conduct, as well as the conduct of the employees of the enterprises was so obvious in misleading the Plaintiffs that each actor acting on behalf of the Defendants, as well as the Defendants, themselves must have been aware of the intentional misleading of the Plaintiffs.

## *V -1. Enterprises.*

**26.**    **State Farm Mutual Automobile Insurance Company.**

Defendant Auto is organized under the laws of the State of Illinois, and is a privately-owned "C" Corporation, operating under the laws of the State of Illinois. Defendant Auto is a 'person' as defined in 18 U.S.C. § 1961(3) and is and entity capable of holding a legal or beneficial interest in property. Defendant Auto's "State Farm" interlocked tri-oval logo was originally created in 1946 to symbolize the 'three separate companies' offering products within State Farm Mutual Automobile Insurance Company's third-party agency network.  Defendant Auto's interlocked tri-oval logo was updated in 1953, and for sixty years (up until 2012) was critical to the "State Farm brand image" of three separate and independent companies, jointly offering insurance products for

sale through a third-party agency network managed and controlled by State Farm Mutual Automobile Insurance Company.

Defendant Auto solely sells automotive insurance products.  Defendant Auto's third-party agent network consists of approximately 616 "state farm" locations across the nation as reported by Dun and Bradstreet.   For a period of more than eighty years, the third-party agents clearly stipulated to potential buyers of insurance product that in fact, each product was sold by, maintained by, and underwritten by an independently operating company, which was distinctly different from State Farm Mutual Automobile Insurance Company. This clarity created a crystal clear and well-defined person/enterprise distinction between State Farm Mutual Automobile Insurance Company, its third-party agency network, and the products of distinctly different and independent companies sold by the third-party agents network.

Defendant Auto owns 26 independently operating and distinctly separate companies, each conducting a distinctly different enterprise. Each of these separate and distinct enterprises offer individually separate products that are sold by Defendant Auto's third-party agent network, in an association in fact relationship manner.    Each of the 26 independent companies owned by Defendant Auto are distinctly different and operationally separate corporate entities, which are connected in an association in fact relationship solely due to their ownership by Defendant Auto, and their association in fact relationship to the third-party agent network.

Defendant Auto is distinctly different as a corporate entity from 'the state farm group' and Defendant Tipsord, Farney, Harbert, Smith, and Wey's activities and conduct of the RICO violating enterprise known as 'the state farm group' is distinctly different from *functions of employees'* of Defendant Auto. Further, as Defendants Smith, and Wey are not employees of Defendant Auto, their activities and conduct of RICO violating enterprises are functionally distinguishable from the 'corporation' known as State Farm Mutual Automobile Insurance Company, and its automobile policy sales operations.

The 26 individually different and independently separate companies (enterprises) owned by Defendant Auto are free to act independently and advance their own interests contrary to the other

25 individual enterprises. This 'free to act' distinction clearly separates the operations of the independent companies owned by Defendant Auto from Defendant Auto. Further, this 'free to act' uniquely separates the independent corporate enterprise function, with the 'association in fact' relationship between the independent companies owned by Defendant Auto, and the RICO violating enterprise known as 'the state farm group' unlawfully established and operated by the Defendants.   Defendants Tipsord, Farney, Harbert, Smith, and Wey abuse their directorate positions within Defendant Auto and the independent companies owned by Defendant Auto to establish, operate, participate, and conduct, the RICO violating enterprise known as 'the state farm group' by association in fact enterprises within the independent companies owned by Defendant Auto.

On December 15th, 2011, Defendants Tipsord, and Harbert, as well as, other un-named directors of Defendant Auto, by acts of conspiracy, caused a change to the registered trade name / trademark of State Farm Mutual Automobile Insurance Company, filed with the United States Trademark Office, registration number 4227731, to state *"Insurance underwriting services in the fields of auto, home, health, life, and fire; providing banking services; mutual fund investments; financial analysis and consultation."*   In fact, State Farm Mutual Automobile Insurance Company does not provide underwriting services in the fields of home, health, life, and fire.

In fact, State Farm Mutual Automobile Insurance Company only underwrites automobile insurance policies, which it obtains a lawful fee for. These facts create a person/enterprise distinction between State Farm Mutual Automobile Insurance Company and "the state farm group". Further, Defendants' acts in excess of their authorities as Directors, not as employees of Defendant Auto, create a functionally clear distinction between the actions of the 'corporation' and the unlawful activities of a conspiracy of persons lead by Defendant Tipsord to unlawfully directly and indirectly acquire, maintain, and control an interest in a company engaged in and affecting interstate commerce.

Defendant Auto is negligent for failing to maintain the clear and concise operation and sales activities, which was the hallmark of the operation and management of the third-party agents network. Defendants Tipsord and Harbert substantially changed the operation and sales management and operations activities on January 1st 2012. This change was due to the conspiracy

of Defendants Tipsord, Farney, Smith, Harbert, and Wey and their plan to conduct frauds schemes through racketeering activities and to establish a conglomerate of independent and separate association in fact Racketeering enterprises to conduct said patterns of racketeering activity. Defendants Tipsord, Farney, Smith, Harbert and Wey intended to and then began to directly and indirectly conduct said fraud schemes and racketeering activities within the association in fact enterprises deeply integrated within the independent and separate companies owned by State Farm Mutual Automobile Insurance Company.

Defendant Auto is an 'enterprise' which is a distinct and separate enterprise from State Farm Fire and Casualty Company. Defendant Auto is an 'enterprise' which is a distinct and separate enterprise than the association in fact enterprise that is known as "the State Farm Group". Defendant Auto manages and operates a separate enterprise from either the State Farm Fire and Casualty Company enterprise or the "State Farm Group" association in fact RICO violating enterprise. Defendant Auto is also a separate enterprise and operates, as well as manages, a separate enterprise from that of State Farm Lloyds and / or State Farm Lloyds Inc.

Defendant Auto is both a 'central figure' and the aggressor in the schemes to defraud the Plaintiffs, as such, Defendant Auto is vicariously liable for the RICO violating enterprise acts pursuant to 18 U.S.C. § 1962(c). Defendant Auto is vicariously liable under the respondeat superior doctrine as employees of the independent companies it owns and its own employees that actively engaged, conducted, participated, managed, and established the RICO Enterprise known as 'the state farm group', which defrauded the Plaintiffs.

Defendant Auto is the corporate employer of the RICO violating employees engaged within the RICO violating enterprises, and Defendant Auto significantly benefited from the acts of its RICO violating employees and the RICO violating acts of Defendants Tipsord, Farney, Smith, Harbert, and Wey, which were (1) related to and committed within the course of employment within the independent companies owned of Defendant Auto; (2) the RICO violating acts of the RICO violating employees, and the RICO violating association in fact enterprises were committed in furtherance of the independent corporations owned by Defendant Auto's conduct of business; and (3) Defendant Auto, as a corporation, authorized and / or acquiesced in the acts of the RICO violating enterprises

which defrauded and injured the Plaintiffs.  Defendant Auto is negligent for failing to prohibit, inhibit, and deny the ability of the Defendants to operate and conduct the "State Farm Group" fraud schemes and racketeering activities.  Defendant Auto has nefariously profited due to this purposeful and knowledgeable neglect and dereliction of fiduciary duty.

**27.      State Farm Fire and Casualty Company.**

Defendant Fire (Herein after Defendant Fire), is organized under the laws of the State of Illinois, and is a privately-owned "C" Corporation, operating under the laws of the State of Illinois. Defendant Fire is a 'person' as defined in 18 U.S.C. § 1961(3) and is an entity capable of holding a legal or beneficial interest in property. Defendant Fire primarily sells homeowners insurance products, which are unique and separate products from State Farm Mutual Automobile Insurance Company and the products sold and offered by the other Defendants in this matter.

Defendant Fire is an 'enterprise' which is a distinct and separate enterprise from State Farm Mutual Automobile Insurance Company.  Defendant Fire is an 'enterprise' which is a distinct and separate enterprise than the association in fact enterprise that is known as "the State Farm Group". Defendant Fire manages and operates a separate enterprise from either State Farm Mutual Automobile Insurance Company enterprise or the "State Farm Group" association in fact RICO violating enterprise. Defendant Fire is also a separate enterprise and operates, as well as manages, a separate enterprise from that of State Farm Lloyds and / or State Farm Lloyds Inc.

Defendant Fire is negligent for failing to maintain the clear and concise operation and sales activities, which was the hallmark of the operation and management of the third-party agents network. The RICO violating Defendants substantially changed the operation and sales management and operations activities on January 1st 2012. This change was due to the conspiracy of Defendants Tipsord, Farney, Smith, Harbert, and Wey and their plan to conduct frauds schemes through racketeering activities and to establish a conglomerate of independent and separate association in fact Racketeering enterprises to conduct said patterns of racketeering activity. Defendants Tipsord, Farney, Smith, Harbert and Wey intended to and then began to directly and indirectly conduct said fraud schemes and racketeering activities within the association in fact enterprises deeply integrated within the independent and separate companies owned by State Farm

Mutual Automobile Insurance Company, of which Defendant Fire was one, and was actively engaged in the frauds and racketeering activities.

Defendant Fire is both a 'central figure' and the aggressor in the schemes to defraud the Plaintiffs, as such, Defendant Fire is vicariously liable for the RICO violating enterprise acts pursuant to 18 U.S.C. § 1962(c). Defendant Fire is vicariously liable under the respondeat superior doctrine as its employees actively engaged, conducted, participated, managed, and established the RICO Enterprise known as 'the state farm group', which defrauded the Plaintiffs.

## 28.   State Farm Lloyds

State Farm Lloyds (Hereafter Lloyds) is organized and operates under the laws of the State of Texas. Lloyds conducts its entire business operations in the State of Texas and its headquarters are located at 1251 State St. Richardson, TX 75082.

    a.  Lloyds was founded in 1983 and operates as under Texas law, as a 'Lloyds plan provider'.

    b.  Lloyds is corporate enterprise owned by State Farm Mutual Automobile Insurance Company but is operationally independent and distinctly separate company from State Farm Mutual Automobile Insurance Company.

    c.  Lloyds products are unique and separate products from State Farm Mutual Automobile Insurance Company and all the products sold and offered by the other Defendants in this matter.

    d.  Lloyds sells its products, only in the State of Texas, using the third-party agent network managed by State Farm Mutual Automobile Insurance Company.

    e.  Lloyds is a operationally separate corporate entity and independent company from State Farm Mutual Automobile Insurance Company, and is a distinctly separate company from any other distinct and independent companies owned by State Farm Mutual Automobile Insurance Company.

Lloyds is a Corporate 'enterprise' which is a distinct and separate enterprise from State Farm Mutual Automobile Insurance Company. Lloyds is an corporate 'enterprise' which is a distinct and separate enterprise than the association in fact enterprise that is known as "the State Farm Group". Lloyds manages and operates a separate enterprise from either State Farm Fire and Casualty Company enterprise or the 'State Farm Group' association in fact RICO violating

enterprise. Lloyds is also a separate enterprise and operates, as well as manages, a separate enterprise from that of State Farm Lloyds, Inc.

Lloyds is negligent for failing to maintain the clear and concise operation and sales activities, which was the hallmark of the operation and management of the third-party agents network. The RICO violating Defendants substantially changed the operation and sales management and operations activities on January 1st 2012.  This change was due to the conspiracy of Defendants Tipsord, Farney, Smith, Harbert, and Wey and their plan to conduct frauds schemes through racketeering activities and to establish a conglomerate of independent and separate association in fact Racketeering enterprises to conduct said patterns of racketeering activity. Defendants Tipsord, Farney, Smith, Harbert and Wey intended to and then began to directly and indirectly conduct said fraud schemes and racketeering activities within the association in fact enterprises deeply integrated within the independent and separate companies owned by State Farm Mutual Automobile Insurance Company, of which Lloyds was one having harbored at least two association in fact racketeering enterprises managed and controlled by the Defendants and was actively engaged in the frauds and racketeering activities.

Lloyds is both a 'central figure' and the aggressor in the schemes to defraud the Plaintiffs, as such Lloyds is vicariously liable for the RICO violating enterprise acts pursuant to 18 U.S.C. § 1962(c).  Lloyds is vicariously liable under the respondeat superior doctrine as its employees actively engaged, conducted, participated, managed, and established the RICO Enterprise known as 'the state farm group', which defrauded the Plaintiffs.  However, as a subsidiary of Defendant Auto, Lloyds' liability is transferred to Defendant Auto.

## 29. State Farm Lloyds, Inc.

State Farm Lloyds, Inc. (Hereafter "INC") is organized and operates under the laws of the State of Texas.  "INC" conducts its entire business operations in the State of Texas and its headquarters are located at 1251 State St. Richardson, TX 75082.

   a. "INC" was founded in December of 1982 and operates as under Texas law, as an 'attorney in fact'.

b.  "INC" is owned by State Farm Lloyds, but is operationally independent and a distinctly separate company from State Farm Lloyds.

c.  "INC" sells no products.

d.  "INC"'s sole purpose is to manage the insurance operations of "State Farm Lloyds" as required by Texas Law.

"INC" is an operationally separate Corporation and independent company from State Farm Lloyds, and is operationally and in purpose, a distinctly separate company from any other distinct and independent companies owned by State Farm Mutual Automobile Insurance Company.

"INC" is an corporate 'enterprise' which is a distinct and separate enterprise from State Farm Mutual Automobile Insurance Company.  "INC" is an corporate 'enterprise' which is a distinct and separate enterprise than the association in fact enterprise that is known as "the State Farm Group".  "INC" manages and operates a separate enterprise from either State Farm Fire and Casualty Company enterprise or the 'State Farm Group' association in fact RICO violating enterprise. "INC" is also a separate enterprise and operates, as well as manages, a separate enterprise from that of State Farm Lloyds.  In Fact, "INC"'s sole purpose as 'attorney in fact' is to assure Lloyds does not engage in nefarious or criminal activities as required by Texas law.

"INC" is negligent for failing to maintain the clear and concise operation and sales activities, which was the hallmark of the operation and management of the third-party agents network. The RICO violating Defendants substantially changed the operation and sales management and operations activities on January 1st 2012.  This change was due to the conspiracy of Defendants Tipsord, Farney, Smith, Harbert, and Wey and their plan to conduct frauds schemes through racketeering activities and to establish a conglomerate of independent and separate association in fact Racketeering enterprises to conduct said patterns of racketeering activity. Defendants Tipsord, Farney, Smith, Harbert and Wey intended to and then began to directly and indirectly conduct said fraud schemes and racketeering activities within the association in fact enterprises deeply integrated within the independent and separate companies owned by State Farm Mutual Automobile Insurance Company, of which "INC" is one, and manages, as well as is associated with Lloyds which is an enterprise actively engaged in frauds and racketeering activities.  Once

again, Inc is a subsidiary of Defendant Auto, and as such labilities of Inc transfer to Defendant Auto, for association in Defendant Auto's criminalities, and frauds.

**30.    The State Farm Group.**

The State Farm Group is an "Association in Fact" Enterprise with a distinct hierarchy and distinct structure in management of the conglomerate.  Further, the 'State Farm Group' 'parent' enterprise of the RICO violating conglomerate of association in fact enterprises, has three required structure features.  1) 'a purpose' which is to engage in a complex series of fraud schemes, deceptive trade and sales practices, and fraudulent acts in order to illegally obtain monies and income from an ever-expanding course of fraudulent activities and criminalities.  2) to establish enterprises and to operate, conduct, and manage the fraud schemes, deceptive trade and sales practices , and fraudulent acts to illegally obtain monies and income derived from patterns of racketeering activities and criminalities through acts of conspiracy between the managing parties (Defendants) and the abuse of Defendants Tipsord, Farney, Smith, Harbert, and Wey's "employee positions" within the companies owned by State Farm Mutual Automobile Insurance Company, of which Defendants Tipsord, Farney, Smith, Harbert, and Wey hold separate, but interlocking directorate and officer positions. 3) the "State Farm Group" RICO violating conglomerate enterprise has existed since at least January 1st, 2012 and has had more than sufficient longevity for those associated within the association in fact 'parent' enterprise, and the 'subsidiary' association in fact RICO violating enterprises to conduct the purpose of the State Farm Group's RICO violating purpose.

The 'parent' RICO violating association in fact enterprise is conducted jointly and with coordination by the "directorship" of Defendants Tipsord, Farney, Smith, Harbert, and Wey, who themselves constitute the "operational" management of the individual 'subsidiary' RICO violating association in fact enterprises, as well as the executive management team of the State Farm Group. The Defendants assume the following 'parent company' directorial management roles:

  a.  In management of the State Farm Group RICO violating enterprise, Defendant Tipsord acts in a manner to be considered as the enterprises' President and Managing Director.

  b.  In management of the State Farm Group RICO violating enterprise, Defendant Harbert acts in a manner to be considered as the enterprises' Chief Operations Officer, Senior Vice President of Sales, and Director of enterprise operating policies.

c. In management of the State Farm Group RICO violating enterprise, Defendant Farney acts in a manner to be considered as the enterprises' Treasurer and Auditor.

d. In management of the State Farm Group RICO violating enterprise, Defendant Smith acts in a manner to be considered as the enterprises' Chief Financial Officer and Director of Operations – Stop Loss.

e. In management of the State Farm Group RICO violating enterprise, Defendant Wey acts in a manner to be considered as the enterprises' Senior Vice President of Operations.

Within the "State Farm Group's" association in fact RICO violating subsidiary enterprises, Defendants Tipsord, Farney, Smith, Harbert and Wey under-take 'day in and day out" operational duties as officers of the 'subsidiary' association in fact enterprises conducted within the independent and separate operating companies owned by State Farm Mutual Automobile Insurance Company.   Defendants Tipsord, Farney, Smith, Harbert, and Wey abuse their independent and separate 'officer' roles within the independent and separate operating companies owned by State Farm Mutual Automobile Insurance Company in order to operate, manage, conduct and participate in, as well as execute the conspirator's RICO violating 'state farm group' business model.

These duties, relationships and participations consist of:

a. On or about January 1, 2012, Defendants Tipsord, and Harbert in abuse of their directors positions with State Farm Mutual Automobile Insurance Company caused the issuance of a directive instructing Defendants Farney, Harbert, Smith and Wey to act in separate companies owned by State Farm Mutual Automobile Company to cause the establishment and participation within the 'single entity fraud scheme' causing all employees of independently operating, and distinctly separate companies to stop using clear and distinct language in identifying the company they represented and to start solely identifying themselves as 'with state farm.'

b. On or about January 1, 2012, Defendant Harbert, in abuse of his officer position as 'chief marketing officer' of State Farm Mutual Automobile Insurance Company, State Farm Fire Insurance Company, and State Farm Life Insurance Company, caused the issuance of a directive instructing the third party agents network contracted to State Farm Mutual Automobile Insurance Company causing all employees of independently operating, and distinctly separate agents network to stop using clear and distinct language in identifying the exact name of the company selling or issuing insurance products, providing banking services, and providing investment services, as well as all other products or services sold by the 'captive' third party agents network to identify all companies products, services, and good as 'state farm' products. This act was to

cause the establishment of the 'State Farm Group' enterprise and cause the third-party agents networks' 100% participation with the 'single entity fraud scheme'.

c. On or about January 1, 2012, or shortly thereafter, Defendants Tipsord, Farney, and Smith, in abuse of their officers positions in separate companies owned by State Farm Mutual Automobile Company, caused the comingling of incomes and monies, from activities, including fraudulent activities as part of the Defendants' fraud schemes derived from the sales activities of the third-party agents network, and the established national call center sales forces, to be deposited into a series of 'clearing' accounts managed and controlled by Defendant Smith acting in various forms, in order to engage in money laundering operations on behalf of 'the state farm group'. These monies consolidated were, from as many as 17 separate and independent companies owned by State Farm Mutual Automobile Insurance Company.

d. On or about January 1, 2012, or shortly thereafter, Defendants Wey, Harbert, Smith and Farney, in abuse of their individual and separate officers positions within State Farm Fire and Casualty Company, State Farm Lloyds, State Farm Lloyds, Inc., State Farm County Mutual Insurance Company of Texas, State Farm Life and Accident Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company, State Farm General Insurance Company, State Farm Florida Insurance Company, and Hiroad Assurance Company caused the individually independent and separately operating companies owned by State Farm Mutual Automobile Insurance Company to enter into a series of 'claims handing contracts' with State Farm Fire and Casualty Company where all the other allegedly independently operating and distinctly separate companies' 'claims activities' would be consolidated under the direct management and control of 'the state farm group' conspirators.

e. On or about January 1, 2012, or shortly thereafter, The 'state farm group' conspiring Defendants Tipsord, Farney, Smith and Wey, in abuse of their officers/employees positions held within State Farm Fire and Casualty Company, directly and indirectly implemented a series of 'national corporate policies', which are updated on an annual and quarterly basis, "claims handling manuals", and "claims processing policy manuals" instructing the employees of State Farm Fire and Casualty Company conduct patterns of behavior to "delay and deny" viable and lawful insurance loss claims consolidated from the independent and separately operating companies owned by State Farm Mutual Automobile Insurance Company, namely State Farm Lloyds, State Farm Lloyds, Inc., State Farm County Mutual Insurance Company of Texas, State Farm Life and Accident Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company, State Farm General Insurance Company, State Farm Florida Insurance Company, and Hiroad Assurance Company, and "defend" any litigation that might arise against the Defendants due to the negligent, and fraudulent, as well as RICO violating activities conducted by the enterprises under the control and management of Defendants Tipsord, Farney, Smith, Harbert, and Wey.

f. On or about January 1, 2012, or shortly thereafter, the 'state farm group' conspiring Defendants Tipsord, Farney, Smith, Harbert and Wey, in abuse of their

officers/employees positions held within separate and independent companies owned by State Farm Mutual Automobile Insurance Company, caused directly and indirectly the establishment of a series of "national call/ customer service" centers owned by State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, located in Georgia, Texas, Illinois, California, Florida, and Arizona. The Conspiring Defendants then established and operate a national 'sales' center which affects interstate commerce with the distinct purpose to operate and conduct the State Farm Group's fraudulent sales schemes and deceptive trade / sales practices. Employees of the centers are trained directly and indirectly by Defendants Harbert, Smith, and Wey and instructed to only use the term and word "state farm" in order to cause confusion, and misrepresentation during the sales and product facilitation processes. Employees are encouraged to meet sales and production goals via cash and payment bonuses paid from monies and incomes derived directly and indirectly from the Defendants' patterns of racketeering behavior. Employees are instructed to make fraudulent promises and material misrepresentations to customers such as 'state farm will insure you for …' and 'you will receive that policy' without giving the customer any great specifics, or actual information to the exact product just sold to the customer and paid for at that time by the customer. This aspect constitutes the establishment, implementation, and Defendants' receipt of monies derived from fraudulent acts and patterns of racketeering behavior regarding the 'bait' side of the 'bait and switch' fraud scheme. These acts are entirely conducted by the use of wires, as the call centers are completely operated via a telephone network.

g.  On or about January 1, 2012, or shortly thereafter, the 'state farm group' conspiring Defendants Tipsord, Farney, Smith, Harbert and Wey, in abuse of their officers/employees positions held within separate and independent companies owned by State Farm Mutual Automobile Insurance Company, directly and indirectly caused the establishment of a national 'underwriting' product and customer referral system and then caused State Farm Lloyds, State Farm Lloyds, Inc., State Farm County Mutual Insurance Company of Texas, State Farm Life and Accident Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company, State Farm General Insurance Company, State Farm Florida Insurance Company, and Hiroad Assurance Company to enter into 'product facilitation agreements' in which the separate and independent company owned by State Farm Mutual Automobile Insurance Company would be forced to accept a paid sales contact from 'the state farm group's call centers, and then deliver an insurance product to the captive customer. The product issued by State Farm Lloyds, State Farm Lloyds, Inc., State Farm County Mutual Insurance Company of Texas, State Farm Life and Accident Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company, State Farm General Insurance Company, State Farm Florida Insurance Company, and Hiroad Assurance Company is often not the same product described or offered to the customer at the point of sale. This aspect constitutes the establishment, implementation, and Defendants' delivery of product derived from fraudulent acts and patterns of racketeering behavior regarding the 'switch' side of the 'bait and switch' fraud scheme. These acts are entirely conducted by the use of wires, and the delivery of fraudulently induced product is conducted by the usage of the United States Postal Service.

h.  On or about March 1st, 2012, or shortly thereafter, and every year thereafter annually, the 'state farm group' conspiring Defendants Tipsord, Farney, and Harbert, in abuse of their directors positions held within State Farm Mutual Automobile Insurance Company, directly and indirectly cause the issuance of the "Annual Report to State Farm Mutual Policyholders" in which the Defendants release a statement to the policy holders of automobile insurance issued by State Farm Mutual Automobile Insurance Company where the Defendants make materially false, deceptive, and misleading descriptions of fact in order to cause confusion and to deceive as to commercial activities of State Farm Mutual Automobile Insurance Company and to conceal the operations of the State Farm Group from the members of State Farm Mutual Automobile Insurance Company.

i.  Since March 1st, 2015, and then annually thereafter, Defendant Tipsord has issued direct statements of fraud, material misrepresentation of fact, and made materially false, deceptive, and misleading descriptions of fact in order to cause confusion and to deceive as to commercial activities of State Farm Mutual Automobile Insurance Company and to conceal the operations of the State Farm Group from the members of State Farm Mutual Automobile Insurance Company within the "Annual Report to State Farm Mutual Policyholders" issued to members via the mail and the wires, and openly available to the public via the internet on websites owned by State Farm Mutual Automobile Insurance Company but distinctly and directly, as well as, indirectly under the control of Defendant Auto, and Defendants Tipsord, Farney, Smith, Harbert, and Wey at:

   1)  2015 report: Https://static1.st8fm.com/es_US/content_pages/1/pdf/us/2015-annual-report.pdf
   2)  2016 report: Https://static1.st8fm.com/es_US/content_pages/1/pdf/us/2016-annual-report.pdf
   3)  2017 report: Https://static1.st8fm.com/es_US/content_pages/1/pdf/us/2017-annual-report.pdf
   4)  2018 report: Https://static1.st8fm.com/es_US/content_pages/1/pdf/us/2018-annual-report.pdf

Defendants Tipsord, Farney, Harbert, Smith, and Wey planned the fraud schemes and racketeering activities years in advance of the implementation of the State Farm Group frauds and RICO violating activities. They worked together to gather the necessary tools, agreements, and necessary assets, and additionally, they annually 'divvy' up the proceeds of the enterprises' monies derived through a pattern of racketeering activity in the form of investment, and bonus accounts operated and maintained by the same RICO violating enterprise from the state farm group's association in fact money laundering enterprises State Farm V.P. Management Corporation, State Farm Investment Management Corporation, State Farm International

Holding Company, State Farm Associate's Funds Trust, State Farm Mutual Fund Trust, and State Farm Companies Foundation, all companies under the management and control of Defendants Smith and Tipsord.

"The State Farm Group" enterprise is a distinctly different enterprise from State Farm Mutual Automobile Insurance Company. Defendants Tipsord, Farney, Harbert, Smith, and Wey's activities and conduct of the RICO violating enterprise known as 'the state farm group' is distinctly different from '*functions of employees*' of Defendant Auto. Further, as Defendants Smith, and Wey are not employees of Defendant Auto, their activities and conduct of RICO violating enterprises are functionally distinguishable from the 'corporation' known as State Farm Mutual Automobile Insurance Company, and its automobile policy sales operations.

Defendants Tipsord, Farney, Harbert, Smith, and Wey abuse their directorate positions within Defendant Auto and the independent companies owned by Defendant Auto to establish, operate, participate, and conduct the RICO violating enterprise known as 'the state farm group' by association in fact enterprises within the independent companies owned by Defendant Auto. A crucial element of Defendants Tipsord, Farney, Smith, Harbert, and Wey's 'state farm group' RICO violating conglomerate business model which they use as a guide to establish, conduct, manage, participate, and carry on the enterprises' patterns of racketeering activities and acts of fraud include the abuse of the assets of State Farm Mutual Automobile Insurance Company and the use of proceeds, monies and incomes derived directly and indirectly from the enterprises' patterns of racketeering behaviors. The State Farm Group enterprise operated and managed by Defendants Tipsord, Farney, Smith, Harbert, and Wey uses proceeds, monies and incomes from enterprises managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, and monies directly and indirectly derived from RICO violating enterprises' patterns of racketeering behavior to:

    a.  promote and establish enterprises which affect interstate commerce. And;

    b.  promote and establish enterprises which conduct, and participate in patterns of racketeering activities which affect interstate commerce. And;

c.  cause the enterprises conducting and participating in patterns of racketeering activities to which affect interstate commerce to hire and pay third party attorneys using monies derived directly and indirectly from patterns of racketeering activities to provide legal defense for claims made against Defendants Tipsord, Farney, Smith, Harbert, and Wey for their association with and employment by association in fact RICO violating enterprises which directly and indirectly participate and conduct patterns of racketeering activities which affect interstate commerce. And;

d.  cause the establishment of enterprise, and promote the unlawful operation of enterprises, using monies derived directly and indirectly from patterns of racketeering activities to provide unlawful methods of income distribution of, investment of, and the creation of investment products for the purposes of investment, and fraud, using incomes received directly and indirectly from enterprises, conducted controlled, managed, and maintained in association and participation by Defendants Tipsord, Farney, Smith, Harbert, and Wey, in order to allow Defendants Tipsord, Farney, Smith, Harbert, and Wey to receive incomes derived directly and indirectly from enterprises engaged directly and indirectly in patterns of racketeering activity, which use the incomes of the enterprises, to invest directly and indirectly, in part and in whole, in the acquisition, establishment, and/or operation of enterprises which affect interstate commerce.

On December 15th, 2011, Defendants Tipsord, and Harbert, as well as, other un-named directors of Defendant Auto, by acts of conspiracy, caused a change to the registered trade name / trademark of State Farm Mutual Automobile Insurance Company, filed with the United States Trademark Office, registration number 4227731, to state "*Insurance underwriting services in the fields of auto, home, health, life, and fire; providing banking services; mutual fund investments; financial analysis and consultation.*"   In fact, State Farm Mutual Automobile Insurance Company does not provide underwriting services in the fields of home, health, life, and fire.  Additionally, it is not corporately registered as a holding company.

In fact, State Farm Mutual Automobile Insurance Company only underwrites automobile insurance policies, which it obtains a lawful fee for. These facts create a person/enterprise distinction between State Farm Mutual Automobile Insurance Company and 'the state farm group". Further, Defendants' acts in excess of their authorities as Directors, not as employees of Defendant Auto, create a functionally clear distinction between the actions of the 'corporation' and the unlawful activities of a conspiracy of persons lead by Defendant Tipsord to unlawfully directly and indirectly acquire, maintain, and control an interest in a company engaged in and affecting interstate commerce.

The "State Farm Group" is an 'enterprise' which is a distinct and separate enterprise from State Farm Fire and Casualty Company.  The "state farm group" is a separate enterprise from that of State Farm Lloyds and / or State Farm Lloyds, Inc.  The "State Farm Group" is distinctly different individually from the individual Defendants Tipsord, Farney, Smith, Harbert, and Wey. Defendants Tipsord, Farney, Smith, Harbert, and Wey conducted and participated in the conduct of the affairs, operations and establishment of 'the state farm group' exercising managerial roles in the affairs of 'the state farm group' enterprise.   Defendants Tipsord, Farney, Harbert, Smith, and Wey are liable for Plaintiffs' injuries and damages due to Defendants Tipsord, Farney, Smith, Harbert, and Wey's participation and conduct of the affairs of the 'State Farm Group' RICO violating "conglomerate" enterprise, and the subsidiary 'association in fact' RICO violating enterprises managed, conducted and participated within by the individual Defendants Tipsord, Farney, Smith, Harbert, and Wey due to the direct and indirect affairs and conduct of the associated enterprises' conduct of racketeering activities including extortion, robbery, wire fraud, mail fraud, and engagement in monetary transactions in property derived from specified unlawful activity.

**31.**    **Association in Fact Enterprise activities within the operations of the state farm group**

The 'state farm group' conglomerate operates subsidiary 'association in fact' enterprises deeply embedded within the separate and independent companies owned by State Farm Mutual Automobile Insurance Company.   The 'association in fact' subsidiary RICO violating enterprises are distinct and independent from the enterprises of the operationally independent and distinctly separate companies owned by State Farm Mutual Auto Mobile Insurance Company which harbor the association in fact RICO violating enterprises conducted, managed, operated and directed by Defendants Tipsord, Farney, Harbert, Smith, and Wey acting jointly to execute the conspiracies 'state farm group' fraudulent business model.

The State Farm Group RICO violating conglomerate enterprise, established and operates seven distinct enterprises, each with a separate operational objective, each conducting multiple predicate acts of racketeering activities, along the State Farm Group's business model's four step 'scope of work'.  This four-step scope of work contains the following steps and operational objectives.

      i.    Revenue Creation.

a) Objective –

1. to defraud parties in order to illegally obtain incomes and monies through acts of fraud including fraudulent marketing and sales practices, including bait sales tactics, sales by misrepresentation and deception.

2. to defraud parties in order to illegally obtain incomes and monies through acts of fraud including falsely delivering products sold by 'bait and switch' sales tactics, deliver products of substantially less value than those offered at sale, and delivery of products sold by deception.

3. to defraud parties through the sales of products issued in enhancement of enterprises engaged in money laundering, and products derived from incomes, monies, and investment of proceeds derived monies obtained by and derived from enterprises engaged in patterns of racketeering activity.

ii.   Revenue retention.
a) Objective –

1. to defraud parties in order, maintain illegally obtain incomes and monies through acts of fraud including false promises, material misrepresentations of character and commercial activities, and fraudulent misrepresentation of commercial intent and characteristics. Also known as the 'delay' process.

2. to defraud parties in order, maintain illegally obtain incomes and monies through acts of fraud including false promises, material misrepresentations of character and commercial activities, and fraudulent misrepresentation of commercial intent and characteristics. Also known as the 'delay' process. Also known as the 'deny or denial' process

3. to defraud parties in order, maintain illegally obtain incomes and monies through acts of fraud including material misrepresentations of fact, material misrepresentations of character and commercial activities, fraudulent misrepresentation of commercial intent and characteristics, acts of criminality including extortion, robbery, and fraud, including the usage of third-party agents to conduct acts of criminality including fraud, perjury, and fraud upon the court. Also known as the 'defend' process.

iii.   Revenue (money) laundering.
a) Objective –

1. to establish, and/ or control and operate enterprises who receive income derived directly and indirectly from a pattern of racketeering activity in order to create and sell investment grade securities to institutional investors.

2. to establish, and/ or control and operate enterprises who receive income derived directly and indirectly from a pattern of racketeering activity in order invest illegally obtained monies in investment grade securities purchased from institutions, companies, governments, and private banks.

3. to establish, and/ or control and operate enterprises who receive income derived directly and indirectly from a pattern of racketeering activity in order to invest in and establish holding and investment companies in order to offer, and purchase investment grade securities, assets, and other enterprises.

   iv. Distribution and money multiplication.
     a) Objective –

1. to establish, and/ or control and operate enterprises who disburse income derived directly and indirectly from a pattern of racketeering activity, and monies derived from illegal investing into investment grade securities to RICO violating Defendants Tipsord, Farney, Smith, Harbert, and Wey, as well as other criminally participating parties.

2. to establish, and/ or control and operate enterprises who receive income derived directly and indirectly from a pattern of racketeering activity and conduct long term tax abatement and reinvestment strategies for reinvestment of monies derived from patterns of racketeering activities for the benefit of and eventual distribution to RICO violating Defendants Tipsord, Farney, Smith, Harbert, and Wey, as well as other criminally participating parties.

This four-step scope of work directly translates to the operations, conduct and RICO violations of seven distinctly different and operationally separate association in fact enterprises. These seven enterprises operate jointly, yet independently in accordance to the State Farm Group RICO violating conglomerate enterprise business model, operating within the independent companies owned by State Farm Mutual Automobile Insurance Company, are independently managed from the operations of the independent companies. 'Persons', including Defendants who act within the enterprises, and on behalf of the state farm group enterprise, manage and establish the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs, in order to illegally obtain monies and property through the enterprises' schemes, racketeering activities and acts of fraud managed, organized, established, and conducted by, and in association with Defendants Tipsord, Farney, Harbert, Smith

and Wey.   The RICO association in fact enterprises, their conduct, operational location, and RICO violations are as follows:

**1)  Revenue Creation Enterprises**

    i.   Subsidiary RICO violating association in fact enterprise "A" the "bait" enterprise

        a)  Conduct of Enterprise "A" the 'bait' enterprise.

            1.  To defraud parties in order to illegally obtain incomes and monies through acts of fraud including fraudulent marketing and sales practices, including bait sales tactics, sales by misrepresentation and deception.

        b)  Companies owned by State Farm Mutual Automobile Insurance Company domiciling the RICO violating association in fact enterprise "A" the bait enterprise.

            1.  State Farm Mutual Automobile Insurance Company.
            2.  State Farm Fire and Casualty Company.
            3.  State Farm Life Insurance Company.

        c)  Conduct of Enterprise A, which constitute violations of the RICO Act.

            1.  Distribution of material containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of and placement into, authorized depository for mail to be sent, delivered and received by the Postal Service, and in acts which affect interstate commerce, with knowledge said material would be received by the Plaintiffs. Violating 18 U.S.C. § 1341.

            2.  Distribution of writings, signs, signals, pictures and sounds containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of wire, radio, and television communication in interstate commerce with knowledge said material would be received by the Plaintiffs.

    ii.  Subsidiary RICO violating association in fact enterprise "B" the "Switch" enterprise

        a)  Conduct of Enterprise "B" the 'Switch' enterprise.

            1.  To defraud parties in order to illegally obtain incomes and monies through acts of fraud including fraudulent marketing and sales practices, including bait and switch sales tactics, sales by misrepresentation and deception.

2. To defraud parties in order to illegally obtain incomes and monies through acts of fraud including falsely delivering products sold by 'bait and switch' sales tactics, deliver products of substantially less value than those offered at sale, and delivery of products sold by deception.

3. To defraud parties through the sales of products issued in enhancement of enterprises engaged in money laundering, and products derived from incomes, monies, and investment of proceeds derived monies obtained by and derived from enterprises engaged in patterns of racketeering activity.

b) Companies owned by State Farm Mutual Automobile Insurance Company domiciling the RICO violating association in fact enterprise "B" the bait enterprise.

1. State Farm Lloyds,
2. State Farm Lloyds, Inc.,
3. State Farm County Mutual Insurance Company of Texas,
4. State Farm Life and Accident Insurance Company,
5. State Farm Indemnity Company,
6. State Farm Guaranty Insurance Company,
7. State Farm General Insurance Company,
8. State Farm Florida Insurance Company,
9. Hiroad Assurance Company
10. State Farm Life Insurance Company.

c) Conduct of Enterprise B, which constitute violations of the RICO Act.

1. Distribution of material containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of and placement into, authorized depository for mail to be sent, delivered and received by the Postal Service, and in acts which affect interstate commerce, with knowledge said material would be received by the Plaintiffs. Violating 18 U.S.C. § 1341.

2. Distribution of writings, signs, signals, pictures and sounds containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of wire, radio, and television communication in interstate commerce with knowledge said material would be received by the Plaintiffs.

## 2) Revenue Retention Enterprises

i. <u>Subsidiary RICO violating association in fact enterprise "C" the "Delay" enterprise</u>

a) Conduct of Enterprise "C" the 'Delay' enterprise.

   1. To defraud parties in order to maintain illegally obtain incomes and monies through acts of fraud including false promises, material misrepresentations of character and commercial activities, and fraudulent misrepresentation of commercial intent and characteristics. Also known as the 'delay' process.

b) Companies owned by State Farm Mutual Automobile Insurance Company domiciling the RICO violating association in fact enterprise "C" the "Delay" enterprise.

   1. State Farm Mutual Automobile Insurance Company.
   2. State Farm Fire and Casualty Company.
   3. State Farm Life Insurance Company.

c) Conduct of Enterprise C, which constitute violations of the RICO Act.

   1. Distribution of material containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of and placement into, authorized depository for mail to be sent, delivered and received by the Postal Service, and in acts which affect interstate commerce, with knowledge said material would be received by the Plaintiffs. Violating 18 U.S.C. § 1341.

   2. Distribution of writings, signs, signals, pictures and sounds containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of wire, radio, and television communication in interstate commerce with knowledge said material would be received by the Plaintiffs.

   3. Defendants' enterprises, and enterprise employees in establishment, participation and conduct of the racketeering activities actively engaged in acts of extortion, robbery, and conspiracy to commit robbery, and extortion in the furtherance of Defendants' fraud schemes, racketeering activities, and other criminalities which affected commerce in violation of 18 U.S.C. § 1951.

   4. Defendants' enterprises, and enterprise employees traveled interstate, used interstate mail, and commercial facilities in establishment, participation and conduct of the racketeering activities which actively engaged in acts of extortion, robbery which violated 18 U.S.C. § 1961(1) and conspiracy to commit robbery, and extortion in the furtherance of Defendants' fraud schemes, racketeering activities, and other criminalities which affected

commerce in violation of 18 U.S.C. § 1951, these activities violated 18 U.S.C. § 1952.

5. Defendants' enterprises, and enterprise employees in establishment, participation and conduct of the racketeering activities actively engaged in acts of extortion, and robbery in the furtherance of the enterprises' plans, and participation of racketeering enterprises in violation of 18 U.S.C. § 1961(1).

ii.    Subsidiary RICO violating association in fact enterprise "D" the "Deny" enterprise

   a) Conduct of Enterprise "D" the 'Deny' enterprise.

   1. To defraud parties in order to maintain illegally obtained incomes and monies through acts of fraud including false promises, material misrepresentations of character and commercial activities, and fraudulent misrepresentation of commercial intent and characteristics. Also known as the 'delay' process. Also known as the 'deny or denial' process

   b)    Companies owned by State Farm Mutual Automobile Insurance Company domiciling the RICO violating association in fact enterprise "D" the "Deny" enterprise.

   1. State Farm Fire and Casualty Company.
   2. State Farm Mutual Automobile Insurance Company.
   3. State Farm Lloyds,
   4. State Farm Lloyds, Inc.,
   5. State Farm County Mutual Insurance Company of Texas,
   6. State Farm Life and Accident Insurance Company,
   7. State Farm Indemnity Company,
   8. State Farm Guaranty Insurance Company,
   9. State Farm General Insurance Company,
   10. State Farm Florida Insurance Company,
   11. Hiroad Assurance Company
   12. State Farm Life Insurance Company.

   c)    Conduct of Enterprise D, which constitute violations of the RICO Act.

   1. Distribution of material containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of and placement into, authorized depository for mail to be sent, delivered and received by the Postal Service, and in acts which affect interstate commerce, with knowledge said material would be received by the Plaintiffs. Violating 18 U.S.C. § 1341.

2. Distribution of writings, signs, signals, pictures and sounds containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of wire, radio, and television communication in interstate commerce with knowledge said material would be received by the Plaintiffs. Violating 18 U.S.C. § 1343

3. Extortion by extraction of anything of value by threat, and / or placing the Plaintiffs in fear of injury threat and force. Violating 18 U.S.C. § 1961(1)

4. Robbery by threat, and intimidation, the taking and removal of Plaintiffs' property, by acts of extortion, that was in the care, custody, control and management of the Plaintiffs. Violating 18 U.S.C. § 1961 (1).

5. Whoever (Defined as Defendants and employees of the state farm group's association in fact RICO violating enterprises) affects commerce by extortion or conspires to commit extortion, in furtherance of a plan (the Deny and Defend enterprise plans) and do anything in violation of this section (violation of 18 U.S.C. § 1952 travel to promote racketeering activity). Violating 18 U.S.C. § 1951.

6. Whoever (Defined as Defendants and employees of the state farm group's association in fact RICO violating enterprises) travels in interstate commerce or uses the mail or any facility in interstate commerce with intent to distribute proceeds of any unlawful activity, or otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and performs or attempts to perform an act. Violating 18 U.S.C. § 1952.

iii. <u>Subsidiary RICO violating association in fact enterprise "E" the "Defend" enterprise</u>

a) Conduct of Enterprise "E" the 'Defend' enterprise.

1. To defraud parties in order to maintain illegally obtained incomes and monies through acts of fraud including material misrepresentations of fact, material misrepresentations of character and commercial activities, fraudulent misrepresentation of commercial intent and characteristics, acts of criminality including extortion, robbery, and fraud, including the usage of third-party agents to conduct acts of criminality including fraud, perjury, and fraud upon the court. Also known as the 'defend' process.

b) Companies owned by State Farm Mutual Automobile Insurance Company domiciling the RICO violating association in fact enterprise "E" the "Defend" enterprise.

1. State Farm Fire and Casualty Company.

2. State Farm Lloyds,
3. State Farm Lloyds, Inc.,
4. State Farm County Mutual Insurance Company of Texas,
5. State Farm Life and Accident Insurance Company,
6. State Farm Indemnity Company,
7. State Farm Guaranty Insurance Company,
8. State Farm General Insurance Company,
9. State Farm Florida Insurance Company,
10. Hiroad Assurance Company
11. State Farm Life Insurance Company.

c) Conduct of Enterprise E, which constitute violations of the RICO Act.

1. Distribution of material containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of and placement into, authorized depository for mail to be sent, delivered and received by the Postal Service, and in acts which affect interstate commerce, with knowledge said material would be received by the Plaintiffs. Violating 18 U.S.C. § 1341.

2. Distribution of writings, signs, signals, pictures and sounds containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of wire, radio, and television communication in interstate commerce with knowledge said material would be received by the Plaintiffs. Violating 18 U.S.C. § 1343

3. Extortion by extraction of anything of value by threat, and / or placing the Plaintiffs in fear of injury threat and force. Violating 18 U.S.C. § 1961(1)

4. Robbery by threat, and intimidation, the taking and removal of Plaintiffs' property, by acts of extortion, that was in the care, custody, control and management of the Plaintiffs. Violating 18 U.S.C. § 1961 (1).

5. Whoever (Defined as Defendants and employees of the state farm group's association in fact RICO violating enterprises) affects commerce by extortion or conspires to commit extortion, in furtherance of a plan (the Deny and Defend enterprise plans) and do anything in violation of this section (violation of 18 U.S.C. § 1952 travel to promote racketeering activity). Violating 18 U.S.C. § 1951.

6. Whoever (Defined as Defendants and employees of the state farm group's association in fact RICO violating enterprises) travels in interstate commerce or uses the mail or any facility in interstate commerce with intent to distribute proceeds of any unlawful activity, or otherwise promote,

manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and performs or attempts to perform an act. Violating 18 U.S.C. § 1952.

**3) Revenue (money) Laundering Enterprises.**

    i.    Subsidiary RICO violating association in fact enterprise "F" the "Laundry" enterprise

        a) Conduct of Enterprise "F" the 'Laundry' enterprise.

            1. To establish, and/ or control and operate enterprises who receive income derived directly and indirectly from a pattern of racketeering activity in order to create and sell investment grade securities to institutional investors.

            2. To establish, and/ or control and operate enterprises who receive income derived directly and indirectly from a pattern of racketeering activity in order invest illegally obtained monies in investment grade securities purchased from institutions, companies, governments, and private banks.

            3. To establish, and/ or control and operate enterprises who receive income derived directly and indirectly from a pattern of racketeering activity in order to invest in and establish holding and investment companies in order to offer, and purchase investment grade securities, assets, and other enterprises.

        b) Companies owned by State Farm Mutual Automobile Insurance Company domiciling the RICO violating association in fact enterprise "F" the "Laundry" enterprise.

            1. State Farm Lloyds, Inc.,
            2. State Farm Lloyds,
            3. State Farm Bank F.S.B.,
            4. State Farm Investment Management Corporation,
            5. State Farm Associate's Funds Trust,
            6. State Farm Mutual Fund Trust,
            7. State Farm Variable Product Trust,
            8. State Farm V.P. Management Corporation.

        c) Conduct of Enterprise F, which constitute violations of the RICO Act.

            1. Distribution of material containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of and placement into, authorized depository for mail to be sent, delivered and received by the Postal Service, and in acts which affect interstate commerce, with knowledge said material would be received, violating 18 U.S.C. § 1341.

2. Distribution of writings, signs, signals, pictures and sounds containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of wire, radio, and television communication in interstate commerce with knowledge said material would be received, violating 18 U.S.C. § 1343.

3. Whoever (Defined as Defendants and employees of the state farm group's association in fact RICO violating enterprises) affects commerce by extortion or conspires to commit extortion, in furtherance of a plan (the Deny and Defend enterprise plans) and do anything in violation of this section (violation of 18 U.S.C. § 1952 travel to promote racketeering activity). Violating 18 U.S.C. § 1951.

4. Whoever (Defined as Defendants and employees of the state farm group's association in fact RICO violating enterprises) travels in interstate commerce or uses the mail or any facility in interstate commerce with intent to distribute proceeds of any unlawful activity, or otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and performs or attempts to perform an act. Violating 18 U.S.C. § 1952.

**4) <u>Distribution and Money Multiplication Enterprises</u>**

i. <u>Subsidiary RICO violating association in fact enterprise "G" the "Paymaster" enterprise</u>

  a) Conduct of Enterprise "G" the 'Paymaster' enterprise.

1. To establish, and/ or control and operate enterprises who disburse income derived directly and indirectly from a pattern of racketeering activity, and monies derived from illegal investing into investment grade securities to RICO violating Defendants Tipsord, Farney, Smith, Harbert, and Wey, as well as other criminally participating parties.

2. To establish, and/ or control and operate enterprises who receive income derived directly and indirectly from a pattern of racketeering activity and conduct long term tax abatement and reinvestment strategies for reinvestment of monies derived from patterns of racketeering activities for the benefit of and eventual distribution to RICO violating Defendants Tipsord, Farney, Smith, Harbert, and Wey, as well as other criminally participating parties.

  b) Companies owned by State Farm Mutual Automobile Insurance Company domiciling the RICO violating association in fact enterprise "F" the "Laundry" enterprise.

1. State Farm Bank F.S.B.
2. State Farm Investment Management Corporation
3. State Farm Associate's Funds Trust
4. State Farm Mutual Fund Trust
5. State Farm Variable Product Trust
6. State Farm V.P. Management Corporation
7. Oglesby Reinsurance Company
8. State Farm Companies Foundation
9. Top Layer Reinsurance Ltd.
10. DaVinci Re Holdings Ltd
11. DaVinci Reinsurance Ltd.

c)   Conduct of Enterprise G, which constitute violations of the RICO Act.

1. Distribution of material containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of and placement into, authorized depository for mail to be sent, delivered and received by the Postal Service, and in acts which affect interstate commerce, with knowledge said material would be received by Plaintiffs, violating 18 U.S.C. § 1341.

2. Distribution of writings, signs, signals, pictures and sounds containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of wire, radio, and television communication in interstate commerce with knowledge said material would be received, by the Plaintiffs, violating 18 U.S.C. § 1343.

3. Whoever (Defined as Defendants and employees of the state farm group's association in fact RICO violating enterprises) affects commerce by extortion or conspires to commit extortion, in furtherance of a plan (the Deny and Defend enterprise plans) and do anything in violation of this section (violation of 18 U.S.C. § 1952 travel to promote racketeering activity). Violating 18 U.S.C. § 1951.

4. Whoever (Defined as Defendants and employees of the state farm group's association in fact RICO violating enterprises) travels in interstate commerce or uses the mail or any facility in interstate commerce with intent to distribute proceeds of any unlawful activity, or otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and performs or attempts to perform an act. Violating 18 U.S.C. § 1952.

## 32.   Common Characteristics of the Association in Fact Enterprises.

The State Farm Group Enterprise managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, controls, conducts, manages, and participates within the fraud and racketeering activities of the more than 8 distinctly separate RICO violating enterprises which comprise the 'long arms' of the total "state farm group" RICO violating conglomerate, as RICO violating subsidiary enterprises.   These association in fact enterprises operating within '"the state farm group's" RICO violating schemes exhibit three characteristics. These are:

A. *A common or share purpose among its members;*

1) All members of the enterprise, including individual Defendants' common purpose was to defraud the Plaintiffs, and to illegally obtain monies through continuing acts of fraud.

2) All members of the enterprise, including the individual Defendants' shared purpose was to defraud the Plaintiffs through continuing acts of material misrepresentation of facts.

3) All members of the enterprise, including the individual Defendants, as well as employees and third-party agents of the enterprise have a common and shared purpose to defraud the Plaintiffs through the continuing illegal abuse of trademarks in order to sow confusion, and to materially misrepresent facts, quality of products, origination of products, value of products, and other facts during and after the sale of insurance products.

4) All members of the enterprise, including the individual Defendants, as well as employees and third-party agents of the enterprise have a common and shared purpose to defraud the Plaintiffs by obscuring the exact corporate party Plaintiffs were in fact engaged in conversation with, in order to sow confusion and to obscure the fraud schemes, and racketeering activities.

5) All members of the enterprise, including the individual Defendants' common and shared purpose was to engage in a single entity trade name fraud scheme managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, knowingly, and purposefully committed acts of fraud in order to illegally obtain monies from the Plaintiffs.

6) All members of the enterprise, including the individual Defendants, and individual employees of the enterprises, as well as third party agents' common and shared purpose was to engage in a single entity trade name fraud scheme in order to knowingly, and purposefully commit acts of fraud in order to illegally obtain monies from the Plaintiffs, and to by further acts of fraud, obscure the racketeering

enterprises in a manner to attempt to convey the acts of the enterprises as 'being normal and appropriate' acts of business.

7) All members of the enterprise, including the individual Defendants, maintain in common the practice of the usage of illegally obtained monies, derived from racketeering activities in the conduct, and participation of the RICO violating schemes and enterprises.

8) All members of the enterprise, including the individual Defendants, maintain in common the practice of the usage of illegally obtained monies, derived from racketeering activities in the propagation, facilitation, and conduct of the RICO violating schemes and enterprises.

B. *continuity of structure and personnel;*

1) All members of the enterprise, including the individual Defendants, and all of the employees of the enterprises, including third party agents, voice a continuity of structure as 'being with "state farm"'.

2) All members of the enterprise, including the individual Defendants, and all of the employees of the enterprises, including third party agents, voice a continuity of personnel as being employed by "state farm".

3) All members of the enterprise, including the individual Defendants, and all of the employees of the enterprises, including third party agents and attorneys as associated with enterprises managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud.

C. *an ascertainable structure distinct from that inherent in the pattern of racketeering.*

1) All members of the enterprise are distinctly separate corporate entities from the 'state farm group' racketeering enterprise.

   a) State Farm Mutual Automobile Insurance Company is a distinctly different corporation (enterprise) from 'the state farm group'. Its sole registered purpose is to operate as a 'cooperative to the benefit its members', who are purchasers of automobile insurance policies sold by State Farm Mutual Automobile Insurance Company.

   b) State Farm Fire and Casualty Company is a distinctly different corporation (enterprise) from 'the state farm group'. Its sole registered purpose is to sell homeowners issuance policies.

c) State Farm Lloyds is a distinctly different corporation (enterprise) from 'the state farm group'. Its sole stated purpose is to be a 'Lloyds' plan provider as regulated by the State of Texas.

d) State Farm Lloyds, Inc., is a wholly owned subsidiary of State Farm Lloyds and is a distinctly different corporation (enterprise) from 'the state farm group'. Its sole stated purpose is to act as the 'attorney in fact' for State Farm Lloyds.

e) The various corporate enterprises owned by State Farm Mutual Automobile Insurance Company are distinctly separate corporate enterprises from 'the state farm group' and operate under individual corporate charters, and ownership that is distinctly different from that of 'the state farm group".

**33.**    **Common Structural Characteristics of the Association in Fact Enterprises.**

The "State Farm Group" RICO violating enterprise controls, conducts, and manages a conglomerate of association in fact enterprises which participates within and conducts the fraud and racketeering activities, which affect interstate commerce and are managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud. This conglomerate of crime consists of more than 8 distinctly separate RICO violating association in fact enterprises, which comprise the 'long arms' of the total "state farm group" RICO violating conglomerate, as RICO violating subsidiary association in fact enterprises, each of which affect interstate commerce. These association in fact enterprises operating within 'the state farm group's' RICO violating schemes exhibit three structural features. These are:

A. "A purpose"

1) The association in fact enterprises "A" through "G" all conducted schemes and frauds designed to defraud parties, including Plaintiffs in order to illegally obtain monies from fraud, to illegally retain monies obtained from fraud, to illegally invest and participate in profits derived from the fraud scheme, as well as the incomes and proceeds derived from illegal activities, and racketeering activities, and to unlawfully profit and receive proceeds from the criminal activities, fraud schemes and patterns of racketeering activities.

B. Relationships among those associated with the enterprise.

1) The association in fact enterprises "A" through "G" all conducted schemes and frauds designed to defraud parties, including Plaintiffs, using the exact same 'single entity trade name fraud scheme' managed, and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, abused the words, terms, symbols and devices of State Farm Mutual Automobile Insurance Company.

2) The association in fact enterprises "A" through "G" jointly conducted, managed, and operated jointly in a 'step by step' process and a quid pro quo manner the conduct of the enterprises and utilized the same pattern of behaviors and patterns of racketeering activity in conduct and participation of the 'state farm group' fraud scheme, and racketeering activities as managed and participated within by Defendants Tipsord, Farney, Smith, Harbert, and Wey.

C. Longevity sufficient to permit those associates to pursue the enterprises' purpose.

1) All of the "A" through "G" association in fact enterprises jointly conducting and participating within the 'state farm group' RICO violating racketeering and fraud scheme enterprise established, organized, conducted, managed, and participated within by Defendants Tipsord, Farney, Smith, Harbert, and Wey have existed since before January 1st 2012, and have had a longevity sufficient enough for all those associated within the enterprises to conduct the purpose of the individual association in fact subsidiary RICO violating enterprises and the purpose, objectives, and goals of the State Farm Group RICO violating 'parent' enterprise. Additionally, annually and quarterly participants within the association in fact enterprises receive distributions of incomes, bonuses and payment incentives to continue in the conduct of the racketeering activities of the enterprises.

## *V-2. Activities of the Enterprises.*

## **34.    Frauds and Schemes conducted by the Enterprises.**

The State Farm Group establishing and operating Defendants constructed a very complex organizational structure centered around simple and effective, as well as, well established and recognized fraud schemes.  The schemes utilized by Defendants Tipsord, Farney, Harbert, Smith and Wey, are historically known to be highly profitable, and structurally sound should the enterprise design a sufficiently complex and convoluted corporate structure in order to sow confusion, and distort the appearance of propriety.  Simply put, the fraud schemes and racketeering activities are not the 'normal' conduct of lawful insurance business.  The fraud and racketeering activities are clear and concise bait and switch, as well as, fraudulent sales activities placed in front of traditional insurance company operations.

The schemes illegally profit from the fraudulent sales of products, and the fraudulent referral of sales from independent agent networks, and non-product affiliated, and unlicensed sales associates conducting fraudulent, deceptive, and characteristically fraudulent sales operations using a pattern of fraud and racketeering activities to conduct said sales fraud schemes. The schemes and frauds are inherently unlawful as the Defendants have a duty to disclose all materially factual information, including the exact name of the issuing company, and the name of the company with which the Plaintiff is engaged in at all times pursuant to federal and state laws regarding clarity of disclosure to products and insurance company operations, and products.  These basic schemes are as follows:

### A. <u>Single Entity Trade Name Fraud Scheme.</u>

i.   Defendants Tipsord, Farney, Smith, Harbert and Wey, as well as, other un-named directors of Defendant Auto conspired and agreed that someone, including employees of the enterprises, and the Defendants themselves would commit at least two predicate acts which would violate the RICO act including mail and wire fraud in furtherance of the Defendants' other fraud schemes, to abuse the trademarks and trade names of State Farm Mutual Automobile Insurance Company in order to create "the state farm group" RICO violating enterprise.

ii.  On December 15th, 2011, Defendants Tipsord, and Harbert, as well as, other un-named directors of Defendant Auto, in establishment, operation, participation, and conduct, of the RICO violating enterprise known as 'the state farm group' caused directives to be issued to change the long-standing and clear trademarks and tradenames owned by Defendant Auto, to be changed in a

manner to conduct and establish the fraud schemes and racketeering activities of the RICO violating enterprises in furtherance of the conspirators' plan to defraud the Plaintiffs. Defendants Tipsord, and, Harbert, by acts of conspiracy, caused a change to the registered trade name / trademark of State Farm Mutual Automobile Insurance Company, filed with the United States Trademark Office, registration number 4227731, to state "*Insurance underwriting services in the fields of auto, home, health, life, and fire; providing banking services; mutual fund investments; financial analysis and consultation.*" In fact, State Farm Mutual Automobile Insurance Company does not provide underwriting services in the fields of home, health, life, and fire. In fact, State Farm Mutual Automobile Insurance Company only underwrites automobile insurance policies, which it obtains a lawful fee for. These facts create a person/enterprise distinction between State Farm Mutual Automobile Insurance Company and "the state farm group."

iii. On January 01, 2012, Defendants Tipsord, Farney, Smith, Harbert and Wey, as well as, other un-named directors of Defendant Auto, in establishment, operation, participation, and conduct of the RICO violating enterprise known as 'the state farm group' began a criminal enterprise engaged in activities which affect interstate commerce. The Defendants have actual knowledge the activities of RICO violating enterprise would be and are illegal, their intent was to intentionally obtain monies, and cause loss of monies and property, by means of materially false, fraudulent pretenses, and fraudulent misrepresentations.

a. The 'state farm group' RICO enterprise purposefully and intentionally use in commerce words, terms, names, symbols, and devices and combination thereof in an intentionally confusing manner to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, and association of products, goods, and services, including origin of 'state farm' products, goods and services in commercial activities, to include the RICO enterprises commercial advertising and promotion. and;

b. The Defendants, in conduct and participation of the RICO enterprise known as 'the state farm group,' created the 'single entity' fraud using the term 'state farm', as well as associated words, terms, names, symbols and devices and combinations thereof in a nebulous and confusing manner with purposeful intent to sow confusion, make materially false and misleading representations of fact in order to:

1) intentionally perpetrate fraud schemes upon unwitting parties. and;
2) fraudulently induce Plaintiffs to purchase 'state farm' products. and;
3) to obscure the quality of the products, and;
4) to obscure the value of the products, and;

5) to obscure the origin of the products, and;

6) to cause confusion as to the value of the underwriting of said products, and;

7) mislead a description of fact relating to products, enterprises, and liabilities, and;

8) enable the ability to make false statements during sales, and claims activities, as well as in litigation. and;

9) make misleading misrepresentations of fact. and;

10) deceive the affiliation of one person with another person. and;

11) deceive the connection of one person with another person. and;

12) deceive as to the association of one person to another person, and;

13) make materially false misrepresentations of Defendants' commercial activities. and;

14) misrepresent the nature, characteristics, and qualities of Defendants' commercial activities.

iv. From January 01, 2012, through at least November 4th, 2019, Defendants Tipsord, Farney, Smith, Harbert and Wey, established, operated, participated in, and conducted the activities, and affairs of the RICO violating enterprise known as 'the state farm group' in order to purposefully conduct a series of illegal criminal association in fact enterprises engaged in activities which affect interstate commerce.  The Defendants have actual knowledge the activities of RICO violating enterprise would be and are illegal, their intent was to intentionally obtain monies, and cause loss of monies and property, by means of materially false, fraudulent pretenses, and fraudulent misrepresentations.

v. All of the State Farm Group Conglomerates' subsidiary "association in fact" RICO violating enterprises defined as enterprises "A" through "G" participate within the single entity trade name fraud scheme, managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, participated in the abuse of names, terms, words, symbols, and devices in order to conduct the fraud schemes and patterns of racketeering activities, as a joint and intrigue part of their individual and unique operational requirements, in conducting the individual and independent association in fact enterprises "A" through "G" interstate commerce affecting patterns of behavior and racketeering activities, criminalities and frauds.

### B.  The Bundling Scheme

The unique and separate State Farm Group fraud scheme participating "association in fact" RICO violating enterprise known as "enterprise A" falsely represented and alleged Plaintiffs would save money, and be 'better protected' if they purchased a homeowners product offered by 'state farm' in addition to automobile insurance offered by "State Farm Mutual Automobile Insurance Company". This scheme is commonly referred to as 'bundling' and it is when parties selling products wish to fraudulently entice parties into making an immediate purchase, and is used to expand the revenues of the sales force, and to increase the weekly pay of the sales associate engaged in sales activities. Enterprise "A"'s employees made materially false and fraudulent statements including:

   a) Enterprise "A"'s employee's statement Plaintiffs would '*save money by bundling*' was fraudulent; as the cost of an Automobile Policy offered for sale separately and without a 'bundled' product priced at a later date was not more than that purchased by the Plaintiff during the 'bait and switch' sales event on February 18. 2016.

   b) Enterprise "A"'s employee's statement Plaintiffs would '*be safer by bundling*' was fraudulent due to the fact had Plaintiffs not bundled or purchased automobile insurance from State Farm Mutual Automobile Insurance Company during the 'bait and switch' sales event of February 18, 2016, Plaintiffs would have not suffered injuries to their businesses due to State Farm Mutual Automobile Insurance Company's fraudulent reporting of Plaintiffs being responsible for injuries to their vehicle assets due to the frauds and negligence of the RICO violating State Farm Group enterprises, managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud are identified as association in fact enterprises "B", "C", "D", and "E".

   c) Enterprise "A"'s employee's statement Plaintiffs would "*save money by bundling a homeowners policy*" was fraudulent as the $5 Million State Farm Fire and Casualty Company homeowners policy was never delivered and the fraudulently delivered 'switch' product was not of the same value, quality, or characteristics of the product bought and paid for by the Plaintiffs, and due to the negligence, fraud, and deceptive sales practices of the RICO violating State Farm Group Enterprises, Plaintiffs suffered a catastrophic loss to their property that would not have occurred had the Defendants delivered the product sold to the Plaintiffs at the point of sale. The intent of the enterprises' employees was to defraud the Plaintiffs in order to illegally obtain monies and properties from the Plaintiffs.

### C. **Bait and Switch Fraud Scheme.**

*d)* The unique and separate State Farm Group fraud scheme participating "association in fact" RICO violating enterprise known as "Enterprise A" fraudulently represented 'state farm' was selling and delivering to Plaintiffs a homeowners insurance policy in the amount of Five Million Dollars issued by State Farm Fire and Casualty Company. Plaintiffs purchased and paid for the falsely represented 'homeowners insurance contract' and an automobile insurance contract issued by State Farm Mutual Automobile Insurance on or about Feb. 18, 2016. Enterprise "A' employees were very specific Plaintiffs would receive a product from 'State Farm Fire' prior to Plaintiffs submitting payment for the items purchased. On April 12, 2016, Plaintiffs received via the US Postal Service, an insurance contract issued by State Farm Lloyds. The product was delivered in an envelope addressed from State Farm Mutual Automobile Insurance Company, and was not the product sold to the Plaintiffs by enterprise A. State Farm Lloyds is an active participant in the State Farm Group fraud schemes enterprises B, C, D and E, acting jointly with State Farm Fire and Casualty Company in the delay, denial and defend enterprises, and activities of negligently prohibiting Plaintiffs from obtaining the product purchased during the 'bait' side of the sales processes of the State Farm Group's racketeering activities. The intent of the enterprises' employees was to defraud the Plaintiffs in order to illegally obtain monies and properties from the Plaintiffs. The product delivered by Enterprise "B" was:

1. of significantly lesser value that that offered and purchased by the Plaintiffs from Enterprise A. And;

2. of significantly lesser quality than that offered and sold by Enterprise A to Plaintiffs. And;

3. issued by an inferior company, of lesser asset value, and of higher risk, than the product of the company offered for purchase and purchased by the Plaintiffs from Enterprise A. And;

4. issued by a company of lower reputation, lesser financial means, and offering a lesser product than the product of the company offered for purchase and purchased by the Plaintiffs from Enterprise A. And;

5. of significantly lesser value, quality, and reputation and Enterprise "B" refused to issue a printed copy of the product of the company offered for purchase and purchased by the Plaintiffs from Enterprise A.

All of these facts, issues, and conduct of the enterprises are hallmarks of the traditional 'bait and switch' fraudulent sales, and deceptive business practices schemes.

## D. Misrepresentation Fraud Scheme.

The unique and separate State Farm Group fraud scheme participating "association in fact" RICO violating enterprise known as "Enterprise B" conducted a highly confusing and directly fraudulent series of communications via the wires and the mails in order to prohibit the Plaintiffs from obtaining a written copy of the homeowners insurance policy in the amount of Five Million Dollars issued by State Farm Fire and Casualty Company, and purchased by the Plaintiffs. Plaintiffs continuously contacted State Farm Group's enterprise "B" employees who continuously identified themselves as 'with state farm' and continuously and repeated "state farm has you covered" and "you have an homeowners policy valued at Five Million dollars".

Employees of the State Farm Group's Enterprise "B" fraudulently and negligently prohibited Plaintiffs from obtaining lawful and honest services from other insurance carriers due to their fraudulent statements, misrepresentations, and misrepresentation of commercial, and company conduct. The intent of the enterprises' employees was to defraud the Plaintiffs in order to illegally obtain monies and properties from the Plaintiffs. Employees of the association in fact State Farm Group RICO violating enterprise fraudulently and negligently misrepresented Plaintiffs' true risk and materially misrepresented not only the conduct of the enterprises, but also the quality of the enterprises' products, and the activities of the companies/ enterprises should the Plaintiffs suffer a loss, which they did, on February 17th, 2017. The statements of employees conducting the state farm group's Enterprise "B" activities were fraudulent due to:

1. The Defendants never intended to issue, or deliver the contract offered to and purchased by the Plaintiffs from Enterprise A. And;

2. The Defendants never intended to indemnify the Plaintiffs from loss in the amount of indemnification offered to and purchased by the Plaintiffs from Enterprise A. And;

3. The Defendants' sole purpose and intention was to delay the Plaintiffs until the product offered to and purchased by the Plaintiffs from Enterprise A would expire. And;

4. The Defendants' sole purpose and intention was to delay the Plaintiffs until the product offered to and purchased by the Plaintiffs from Enterprise A would expire, and then Defendants would claim the product sold to the Plaintiffs was no longer available to them. And;

5. In the statistically unlike event Plaintiffs would suffer a catastrophic loss, the intention of the Defendants to claim the product fraudulently delivered to the Plaintiffs was valid and the Plaintiffs did not understand what they purchased.

### *V-3. Management, and Conduct of the State Farm Group RICO Violating Enterprise*

#### *a-1. The investment in, establishment of, and operation of,*

**35.**   On December 15th, 2011, Defendants Tipsord, and Harbert, as well as, other un-named directors of Defendant Auto with purposeful and actual knowledge conspired and agreed that someone, including employees of the enterprises, and the Defendants themselves would commit at least two predicate acts which would violate the RICO act including mail and wire fraud in furtherance of the Defendants' other fraud schemes,   to establish, operate and conduct an illegal RICO violating enterprise known as 'the state farm group' with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud. Defendants Tipsord, Harbert, and other un-named directors of Defendant Auto knew:

A. The State Farm Group RICO violating enterprise would conduct interstate commerce affecting enterprise affairs beyond the lawful purpose of State Farm Automobile Insurance Company, as chartered within the State of Illinois.

B. The establishment and operation of the RICO violating enterprise known as the State Farm Group was graphically beyond the authorities granted to them by the members of State Farm Mutual Automobile Insurance Company.

1) The Defendants Tipsord, Harbert, and other un-named directors of Defendant Auto purposely failed to bring the establishment of the 'state farm group' to a vote of the members of State Farm Mutual Automobile Insurance Company in order to obtain approval.

2) The Defendants Tipsord, Harbert, and other un-named directors of Defendant Auto purposely failed to bring the change of trademarks and trade names necessary to operate the 'state farm group' fraud schemes to a vote of the members of State Farm Mutual Automobile Insurance Company in order to obtain approval.

3) The Defendants Tipsord, Harbert, and other un-named directors of Defendant Auto purposely failed to bring the 'bundling' scheme necessary to conduct the frauds of the 'state farm group' to a vote of the members of State Farm Mutual Automobile Insurance Company in order to obtain approval.

4) The Defendants Tipsord, Harbert, and other un-named directors of Defendant Auto purposely failed to adequately explain the change in financial status of the company, and the resultant change of revenues, and how such change of revenues would benefit the members of State Farm Mutual Automobile Insurance Company in order to obtain approval of the members.

5) The Defendants Tipsord, Harbert, and other un-named directors of Defendant Auto purposely failed to adequately explain the change in compensation for officers and directors participating in the "state farm group' scheme based upon the change in financial status of the company, and the resultant change of revenues, and how such change of revenues would benefit the members of State Farm Mutual Automobile Insurance Company in order to obtain approval of the members.

6) The Defendants Tipsord, Harbert, and other un-named directors of Defendant Auto purposely failed to obtain the approval of the members in order to significantly change the operational nature of State Farm Mutual Automobile Insurance Company which affected:

   a) the 'benefit to the members'. And;
   b) the dividend paid to the members. And;
   c) the assets of State Farm Mutual Automobile Insurance Company. And;
   d) the value of State Farm Mutual Automobile Insurance Company. And;
   e) the 'good standing' of State Farm Mutual Automobile Insurance Company. And;
   f) the established 'good will' of State Farm Mutual Automobile Insurance Company. And;
   g) the value of products jointly sold by the 'state farm group' fraud schemes sold to the members of State Farm Mutual Automobile Insurance Company. And;
   h) the quality of products jointly sold by the 'state farm group' fraud schemes sold to the members of State Farm Mutual Automobile Insurance Company. And;
   i) the origination of products jointly sold by the 'state farm group' fraud schemes sold to the members of State Farm Mutual Automobile Insurance Company. And;
   j) the characteristics of products jointly sold by the 'state farm group' fraud schemes sold to the members of State Farm Mutual Automobile Insurance Company. And;
   k) the nature of products jointly sold by the 'state farm group' fraud schemes sold to the members of State Farm Mutual Automobile Insurance Company. And;

C. The Defendants Tipsord, Harbert, and other un-named directors of Defendant Auto establishment and operation of the RICO violating enterprise known as the State Farm Group, was beyond the authorities granted to them by the members of State Farm Mutual Automobile Insurance Company. The Defendants Tipsord, Harbert, and other un-named directors of Defendant Auto had specific knowledge the activities contemplated and agreed to were in excess of their authorities as Directors of State Farm Mutual Automobile Insurance Company, and the conduct of the 'State Farm Group" was illegal. The conspirators purposefully and with actual knowledge intended to defraud parties (including the Plaintiffs) in order to illegally obtain

monies, and cause loss of property, by means of fraudulent pretenses, false representations.   The Defendants Tipsord, Harbert, and other un-named directors of Defendant Auto caused:

1) in connection with goods and services used in commerce usage of:

   a)  the word "state farm"

     i.  in a false and/ or misleading description of fact, or false or misleading representation of fact, in order to:
       1)  to cause confusion.
       2)  to cause mistake

       3)  to deceive as to affiliation

          a)  between enterprises participating within the "state farm group" fraud scheme
          b)  between enterprises participating and conduct racketeering activities as part of the "state farm group" fraud schemes.
          c)  between employees of enterprises participating and conducting racketeering activities, as part of the 'state farm group' fraud schemes.

       4)  to deceive as to association of persons with another person
          a)  between enterprises participating within the "state farm group" fraud scheme
          b)  between enterprises participating and conduct racketeering activities as part of the "state farm group" fraud schemes.
          c)  between employees of enterprises participating and conducting racketeering activities, as part of the 'state farm group' fraud schemes.

       5)  to deceive as to connection of commercial activities.

          a)  in order to conduct the fraudulent 'single entity trade name fraud scheme' managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud,
          b)  in order to conduct the bundling fraud schemes
          c)  in order to conduct racketeering activities:
             1)   of mail and wire fraud in participation with the single entity fraud scheme.
             2)  in order to illegally obtain monies derived directly and indirectly from patterns of racketeering activities.

3) by such acts necessary to obscure the frauds conducted in participation with the 'state farm group' and the 'single entity' frauds including further racketeering activities including robbery, extortion, and fraud.

B. the term "state farm"

a) in a false and/ or misleading description of fact, or false or misleading representation of fact, in order to:

1) to cause confusion.
2) to cause mistake
3) to deceive as to affiliation
4) between enterprises participating within the "state farm group" fraud scheme

5) between enterprises participating and conduct racketeering activities as part of the "state farm group" fraud schemes.
6) between employees of enterprises participating and conducting racketeering activities, as part of the 'state farm group' fraud schemes.
7) to deceive as to association of persons with another person

   i. between enterprises participating within the "state farm group" fraud scheme
   ii. between enterprises participating and conduct racketeering activities as part of the "state farm group" fraud schemes.
   iii. between employees of enterprises participating and conducting racketeering activities, as part of the 'state farm group' fraud schemes.

8) to deceive as to connection of commercial activities.

   i. in order to conduct the fraudulent 'single entity trade name fraud scheme' managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud.

      1. in order to conduct the bundling fraud schemes
      2. in order to conduct racketeering activities:

         a. of mail and wire fraud in participation with the single entity fraud scheme.
         b. in order to illegally obtain monies derived directly and indirectly from patterns of racketeering activities.

  c. by such acts necessary to obscure the frauds conducted in participation with the 'state farm group' and the 'single entity' frauds including further racketeering activities including robbery, extortion, and fraud.

C. the name "state farm"

 a. in a false and/ or misleading description of fact, or false or misleading representation of fact, in order to:
  1) to cause confusion.
  2) to cause mistake
  3) to deceive as to affiliation

   i. between enterprises participating within the "state farm group" fraud scheme
   ii. between enterprises participating and conduct racketeering activities as part of the "state farm group" fraud schemes.

   iii. between employees of enterprises participating and conducting racketeering activities, as part of the 'state farm group' fraud schemes.

  4) to deceive as to association of persons with another person

   i. between enterprises participating within the "state farm group" fraud scheme
   ii. between enterprises participating and conduct racketeering activities as part of the "state farm group" fraud schemes.
   iii. between employees of enterprises participating and conducting racketeering activities, as part of the 'state farm group' fraud schemes.

  5) to deceive as to connection of commercial activities.

   i. in order to conduct the fraudulent 'single entity trade name fraud scheme' managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud,
   ii. in order to conduct the bundling fraud schemes
   iii. in order to conduct racketeering activities:

    a. of mail and wire fraud in participation with the single entity fraud scheme.
    b. in order to illegally obtain monies derived directly and indirectly from patterns of racketeering activities.

      c.  by such acts necessary to obscure the frauds conducted in participation with the 'state farm group' and the 'single entity' frauds including further racketeering activities including robbery, extortion, and fraud.

D.  the symbol and devices associated with or registered as marks "state farm", to include the 'tri logo', the text symbol, and other referenced symbols or devices.

    i.   in a false and/ or misleading description of fact, or false or misleading representation of fact, in order to:

      1)  to cause confusion.
      2)  to cause mistake
      3)  to deceive as to affiliation
         a)  between enterprises participating within the "state farm group" fraud scheme
         b)  between enterprises participating and conduct racketeering activities as part of the "state farm group" fraud schemes.
         c)  between employees of enterprises participating and conducting racketeering activities, as part of the 'state farm group' fraud schemes.

      4)  to deceive as to association of persons with another person
         a)  between enterprises participating within the "state farm group" fraud scheme
         b)  between enterprises participating and conduct racketeering activities as part of the "state farm group" fraud schemes.
         c)  between employees of enterprises participating and conducting racketeering activities, as part of the 'state farm group' fraud schemes.

      5)  to deceive as to connection of commercial activities.
         a)  in order to conduct the fraudulent 'single entity trade name fraud scheme' managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud,
         b)  in order to conduct the bundling fraud schemes
         c)  in order to conduct racketeering activities:
            a.  of mail and wire fraud in participation with the single entity fraud scheme.
            b.  in order to illegally obtain monies derived directly and indirectly from patterns of racketeering activities.

    c. by such acts necessary to obscure the frauds conducted in participation with the 'state farm group' and the 'single entity' frauds including further racketeering activities including robbery, extortion, and fraud.

E. And any and all combinations of names, words, terms, symbols and devices associated with or registered as marks "state farm", to include the 'tri logo', the text symbol, and other referenced symbols or devices.

    i. in a false and/ or misleading description of fact, or false or misleading/ representation of fact, in order to:

    1) to cause confusion.
    2) to cause mistake
    3) to deceive as to affiliation
       a) between enterprises participating within the "state farm group" fraud scheme
       b) between enterprises participating and conduct racketeering activities as part of the "state farm group" fraud schemes.
       c) between employees of enterprises participating and conducting racketeering activities, as part of the 'state farm group' fraud schemes.

    4) to deceive as to association of persons with another person

       a) between enterprises participating within the "state farm group" fraud scheme
       b) between enterprises participating and conduct racketeering activities as part of the "state farm group" fraud schemes.
       c) between employees of enterprises participating and conducting racketeering activities, as part of the 'state farm group' fraud schemes.

    5) to deceive as to connection of commercial activities.

       a) in order to conduct the fraudulent 'single entity trade name fraud scheme' managed and established by the   Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud,
       b) in order to conduct the bundling fraud scheme.
       c) in order to conduct racketeering activities:
          a. of mail and wire fraud in participation with the single entity fraud scheme.
          b. in order to illegally obtain monies derived directly and indirectly from patterns of racketeering activities.

    c.  by such acts necessary to obscure the frauds conducted in participation with the 'state farm group' and the 'single entity' frauds including further racketeering activities including robbery, extortion, and fraud.

The Defendants Tipsord, Harbert, and other un-named directors of Defendant Auto conspired and agreed that someone, including employees of the enterprises, and the Defendants themselves would commit at least two predicate acts which would violate the RICO act including mail and wire fraud in furtherance of the Defendants' other fraud schemes, and agreed to cause confusion in order to deceive parties who were exposed to, marketed to, acquired, and / or purchased products, goods and services, offered for sale and sold by 'the state farm group', through the third-party agents network, and resources, of State Farm Mutual Automobile Insurance Company. And in acts of conspiracy and fraud, agreed to manage, conduct and participate in commercial advertising and promotions in order to misrepresent the nature, characteristics, qualities, and commercial activities in order to conduct the fraud schemes, and racketeering activities agreed to by Defendants Tipsord, Harbert, and other un-named directors of Defendant Auto, which injured the Plaintiffs. The manner and behavior of the commercial advertising was consistent and supported the activities, objectives, conduct, participation and management of those outlined in **Paragraph 30 Section C.**

### *a-2. The activities of the "Individual" Defendants to engage, conduct, participate in RICO violating enterprises, which affect interstate commerce.*

**36.**    For a period of more than two years prior to December 15th 2011, Defendants Tipsord, Farney, Smith, Harbert and Wey met in secret and conspired and agreed that someone, including employees of the enterprises, and the Defendants themselves would commit at least two predicate acts which would violate the RICO act including mail and wire fraud, extortion and robbery in furtherance of the Defendants' other fraud schemes, to invest monies unlawfully obtained from State Farm Mutual Automobile Insurance company. Defendants Tipsord, Farney, Smith, Harbert, and Wey conspired and agreed that someone, including employees of the enterprises, and the Defendants themselves would commit at least two predicate acts which would violate the RICO act including mail and wire fraud in furtherance of the Defendants' other fraud schemes, and agreed to cause the aforementioned RICO violations by abuse of their various positions as directors and officers in subsidiary companies owned by State Farm Mutual Automobile Insurance Company, in order to establish RICO violating association in fact enterprises, which would affect interstate commerce, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud. Defendants Tipsord, Farney, Smith, Harbert, and Wey conspired and agreed that someone,

including employees of the enterprises, and the Defendants themselves would commit at least two predicate acts which would violate the RICO act including mail and wire fraud in furtherance of the Defendants' other fraud schemes, and agreed to cause the aforementioned RICO violations in which they would participate as principles, in order to establish and operate the RICO violating racketeering enterprise known as 'the state farm group'. Which Defendants Tipsord, Farney, Smith, Harbert, and Wey acting jointly in a conspiracy would operate not only 'the state farm groups' complicated 'association in fact' subsidiary enterprise conglomerate of association in fact enterprises obscured within the companies owned by State Farm Mutual Automobile Insurance Company. But also, jointly be employed by the companies owned by State Farm Mutual Automobile Insurance Company which they intended to abuse in order to utilize to conduct the 'state farm group' fraud and racketeering schemes by abusing the Defendants' 'officer', 'employee' and 'directors' positions within the companies owned by State Farm Mutual Automobile Insurance Company. Defendants Tipsord, Farney, Smith, Harbert, and Wey jointly agreed the goal was it illegally obtain income derived directly and indirectly from a pattern of racketeering activities conducted by the association in fact enterprises within the 'state farm group' RICO violating enterprise fraud and racketeering scheme by their association, management, conduct within, and participation of the activities with 'association in fact' RICO violating enterprises, which conducted, participated in, and engaged in RICO violating activities which affect interstate commerce, in execution of the Defendants' conspiracy, fraud schemes, criminalities, and criminal enterprises.

**37.** Defendants Tipsord, Farney, Smith, Harbert, and Wey, acting as 'persons' within a conspiracy, for a period of more than two years prior to December 15th, 2011 and for a period of time thereafter continuing at least until August 15th 2019, traveled with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, utilized commercial airlines, chartered aircraft, and company owned aircraft, or aircraft leased to State Farm Mutual Automobile Insurance Company repeatedly traveling between the offices of State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, State Farm Lloyds, State Farm Lloyds, Inc. and Chase Bank North America Inc. located in Bloomington Illinois, Chicago Illinois, Atlanta Georgia, Austin Texas,

Richardson Texas, New York City New York, Columbus Ohio and Washington D.C., with the intent to aid in racketeering enterprises and acted, worked, and conducted acts to:

A. establish the RICO violating enterprise known as 'the state farm group" with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud.

B. establish the subsidiary 'association in fact enterprises' conducting and participating in RICO violating activities.

C. establish the 'single entity fraud scheme' with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, and its related racketeering activities including:
   1) mail fraud. And;
   2) wire fraud. And;
   3) bank fraud. And;
   4) acts of bribery. And;
   5) engagement in acts to conduct money laundering

D. promote the 'single entity fraud scheme' with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in order to conduct the fraud and racketeering schemes, by acts of fraud and racketeering activity including:
   1) mail fraud. And;
   2) wire fraud. And;
   3) bank fraud. And;
   4) acts of bribery. And
   5) engagement to establish money laundering activities.

E. facilitate the schemes and frauds of 'the state farm group' RICO violating enterprise with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud in order to establish and manage the conduct of the fraud and racketeering schemes, by acts of fraud and racketeering activity including:
   1) mail fraud. And;
   2) wire fraud. And;
   3) bank fraud. And;
   4) acts of bribery. And
   5) engagement to establish money laundering activities.

F. carry on the unlawful activities necessary to manage, promote, and facilitate the promotion, management and conduct of 'the state farm group' fraud and racketeering enterprises with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud. Including the establishment of bank accounts required to conduct the enterprises, both corporate,

and association in fact RICO violating, established with, maintained and operated at JP Morgan Chase Bank NA, Columbus Ohio.

**38.** Over a period of a year prior to December 15th, 2011, in a purposeful, calculating, and collusive manner, with the intent to commit frauds, and other criminalities, Defendant Tipsord, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, acting in abuse of his position as a director, and co-chairman of State Farm Mutual Automobile Insurance Company, with purposeful and actual knowledge such conduct, and participation would be illegal, conspired with other Directors of State Farm Mutual Automobile Insurance Company, who knew the acts would by illegal, and in abuse of their directorate positions, to establish, operate and conduct an illegal RICO violating enterprise known as 'the state farm group'.

**39.** Over a period of a year prior to December 15th, 2011, in a purposeful, calculating, and collusive manner, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, with the intent to commit frauds, and other criminalities, Defendant Harbert, acting in abuse of his position as a Director of State Farm Mutual Automobile Insurance Company, with purposeful and actual knowledge such conduct, and participation would be illegal, conspired with other Directors of State Farm Mutual Automobile Insurance Company, who knew the acts would by illegal, and in abuse of their directorate positions, to establish, operate and conduct an illegal RICO violating enterprise known as 'the state farm group'.

**40.** Shortly prior to December 15th, 2011, in a purposeful, calculating, and collusive manner, with the intent to commit frauds, and other criminalities, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, Defendant Tipsord, acting in abuse of his position as a director, and co-chairman of State Farm Mutual Automobile Insurance Company, with purposeful and actual knowledge such conduct, and participation would be illegal, conspired with other Directors of State Farm Mutual Automobile Insurance Company, who knew the acts would by illegal, and in abuse of their directorate positions, acted in association with a criminal enterprise scheme to engage in

activities which affect interstate commerce to establish, operate and conduct an illegal RICO
violating enterprise known as 'the state farm group'.

**41.**     Shortly prior to December 15th, 2011, in a purposeful, calculating, and collusive manner, with
the intent to commit frauds, and other criminalities with the intent to defraud the Plaintiffs in
order to illegally obtain monies and property through the enterprises' schemes and acts of fraud,
Defendant Harbert, acting in abuse of his position as a Director of State Farm Mutual Automobile
Insurance Company, with purposeful and actual knowledge such conduct, and participation
would be illegal, conspired with other Directors of State Farm Mutual Automobile Insurance
Company, who knew the acts would by illegal, and in abuse of their directorate positions, acted
in association with a criminal enterprise scheme to engage in activities which affect interstate
commerce to establish, operate and conduct an illegal RICO violating enterprise known as 'the
state farm group'.

**42.**     On January 1st, 2012 and for a period of more than seven years thereafter in repeated acts of
interstate travel, Defendants Tipsord, Farney, Smith, Harbert, and Wey, acting as 'persons'
within a conspiracy, with the intent to defraud the Plaintiffs in order to illegally obtain monies
and property through the enterprises' schemes and acts of fraud, utilizing commercial airlines,
chartered aircraft, and company owned aircraft, or aircraft leased to State Farm Mutual
Automobile Insurance Company repeatedly traveled between the offices of State Farm Mutual
Automobile Insurance Company, State Farm Fire and Casualty Company, State Farm Lloyds,
State Farm Lloyds, Inc., and Chase Bank North America Inc. located in Bloomington Illinois,
Chicago Illinois, Atlanta Georgia, Austin Texas, Richardson Texas, New York City New York,
and Washington D.C.,  with the intent to aid in racketeering enterprises and acted, worked, and
conducted acts to:

> A. establish, manage, facilitate the promotion of, and carry on the RICO violating
>    enterprise known as 'the state farm group" with the intent to defraud the Plaintiffs in
>    order to illegally obtain monies and property through the enterprises' schemes and acts
>    of fraud,
> B. establish, manage, facilitate the promotion of, and carry on the subsidiary 'association
>    in fact enterprises' conducting and participating in RICO violating activities with the
>    intent to defraud the Plaintiffs in order to illegally obtain monies and property through
>    the enterprises' schemes and acts of fraud.

C. establish, manage, facilitate the promotion of, and carry on the 'single entity' fraud schemes of the RICO violating enterprise, and the 'association in fact' subsidiary RICO violating enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, and their related racketeering activities including:

  1)  mail fraud. And;
  2)  wire fraud. And;
  3)  bank fraud. And;
  4)  acts of bribery. And;
  5)  engagement in acts to conduct money laundering

D. promote the 'single entity fraud scheme' in order to establish, manage, facilitate the promotion of, and carry on of the RICO violating enterprise, and the 'association in fact' subsidiary RICO violating enterprises which conduct the fraud and racketeering schemes, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, by acts of fraud and racketeering activity including:

  1)  mail fraud. And;
  2)  wire fraud. And;
  3)  bank fraud. And;
  4)  acts of bribery. And;
  5)  extortion. And;
  6)  robbery. And;
  7)  money laundering activities.

E. facilitate the schemes and frauds of 'the state farm group' RICO violating enterprise to manage, facilitate the promotion of, and carry on of the 'association in fact' subsidiary RICO violating enterprises which conduct the fraud and racketeering schemes in order to establish and manage the conduct of the fraud and racketeering schemes racketeering activities with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, including:

  1)  mail fraud. And;
  2)  wire fraud. And;
  3)  bank fraud. And;
  4)  acts of bribery. And;
  5)  extortion. And;
  6)  robbery. And;
  7)  money laundering activities.

F. carry on the unlawful activities necessary with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and

acts of fraud, to manage, promote, and facilitate the promotion, management and conduct of 'the state farm group' fraud and racketeering enterprises.

**43.** Since January 1st, 2012 and for a period of more than seven years thereafter, Defendants Tipsord, Farney, Smith, Harbert and Wey with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, have caused the investment of illegally obtained monies derived from patterns of racketeering activity to make payments to third party agents and association in fact enterprises in order to engage in marketing and promotion activities in order to directly and indirectly conduct, manage, promote and participate in the 'state farm group' single entity trade name fraud scheme, managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, and associated racketeering activities. Defendants with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud:

    A. From 2012 through 2018, conducted in order to use in commerce, the 'like a good neighbor' national advertising campaign which in connection with the goods, products, and services, abused the trade names, marks, symbol, names and devices owned by State Farm Mutual Automobile Insurance company in a manner to falsely portray:

        1) State Farm as one company, misrepresenting:

            a) the nature of State Farm Mutual Automobile Insurance Company
            b) the nature, characteristics, and origin of products sold by the third-party agents' network managed and controlled by State Farm Mutual Automobile Insurance Company.
            c) misrepresenting the connection between State Farm Mutual Automobile Insurance Company and the operation of the companies owned by State Farm Mutual Automobile Insurance Company.
            d) the fact that each product 'sold' by the third-party agent network managed by State Farm Mutual Automobile Insurance Company is not underwritten by State Farm Mutual Automobile Insurance Company.
            e) the fact that each product 'sold' by the third-party agent network managed by State Farm Mutual Automobile Insurance Company is not a direct liability against the assets of State Farm Mutual Automobile Insurance Company.
            f) the fact that each product 'sold' by the third-party agent network managed by State Farm Mutual Automobile Insurance Company is in

fact sold and issued by a company of significant lesser asset value, and a higher risk product than one fully indemnified by the total assets of State Farm Mutual Automobile Insurance Company.

2) The true 'character' of 'State Farm" and its operating policies;
    a) factually 'state farm' does not act like a 'good neighbor'
    b) factually 'state farm' is not 'always there' to act in the best interests of the injured party requiring assistance.
    c) factually 'state farm' operates solely to profit from the pain and suffering of injured parties.

3) the actual 'claims and payment' processes of 'State Farm'.
    a) factually 'state farm' does not pay claims in a timely manner.
    b) factually 'state farm' does not act in the best interest of the injured party.
    c) factually 'state farm' uses claims policies and manuals designed to deny claims, and to unreasonably reduce the value of items in order to reduce the total amounts paid by the Defendants to injured parties.
    d) factually 'state farm' has a significant history of 'bad faith' practices including theft, extortion, robbery, and falsification of documents.
    e) factually 'state farm' has a corporate culture instilled by Defendants Tipsord, Farney, Smith, Harbert, and Wey not to 'pay one more cent than absolutely necessary' in payment of a claim, and often underpays a claim with the understanding the injured party will lack the financial resources to litigate 'state farm' in order to fully recover from actual losses.
    f) factually 'state farm' has a long and nefarious history of making false promises of restitution, only to delay payment until a time the injured party is financially ruined, or the statute of limitations to bring a claim against 'state farm' has passed.

B. From 2012 through 2018, the Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in order to use in commerce, spent hundreds of millions of dollars from monies and income derived from patterns of racketeering activity to promote in connection with the goods, products, and services in commercial advertising the misrepresentative nature, characteristics, and qualities of State Farm Mutual Automobile Insurance Company, and 'the state farm groups' products, goods, services, and commercial activities and engaged patterns of racketeering activities designed and intended to conduct a series of schemes to defraud parties under fraudulent pretenses in order to illegally obtain money and property:

1) By use of the wires, Defendants purchased thousands of hours of commercial TV advertising used to make false statements, pretenses, representations, in order to defraud parties.  In total, more than 250 Million people over 7 years from 2012 to 2019 were exposed to the Defendants' frauds over television

media.  This constitutes more than 250 Million predicate acts of wire fraud relating to the 'like a good neighbor' campaign.

2) By use of the wires, Defendants used online advertising in the form of broadcast emails, web pages, banner advertising campaigns, and direct emails to parties which were used to make false statements, pretenses, representations, in order to defraud parties.  In total, more than 100 Million people have been exposed to an email, or electronic advertising on the Internet directly and indirectly over the 7 years comprising 2012 to 2019.  This constitutes more than 100 million predicate acts of wire fraud relating to the 'like a good neighbor' campaign.

3) By use of the mails, Defendants used direct mail advertising, and correspondence in the form of letters, fliers, notices, and reports to parties which were used to make false statements, pretenses, representations, in order to defraud parties.  In total, more than 100 Million people have been exposed to a mailing directly and indirectly mailed via the US Postal Service over the 7 years comprising 2012 to 2019.  This constitutes more than 100 Million acts of mail fraud relating to the 'like a good neighbor' campaign.

C. From 2016 through to date, Defendants, in order to use in commerce, conducted the 'help life go right' national advertising campaign in connection with the goods, products, and services, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, abused the trade names, marks, symbol, names and devices owned by State Farm Mutual Automobile Insurance company in a manner to falsely portray:

1) State Farm as one company, misrepresenting:

a) the nature of State Farm Mutual Automobile Insurance Company
b) the nature, characteristics, and origin of products sold by the third-party agents' network managed and controlled by State Farm Mutual Automobile Insurance Company.
c) misrepresenting the connection between State Farm Mutual Automobile Insurance Company and the operation of the companies owned by State Farm Mutual Automobile Insurance Company.
d) the fact that each product 'sold' by the third-party agent network managed by State Farm Mutual Automobile Insurance Company is not underwritten by State Farm Mutual Automobile Insurance Company.
e) the fact that each product 'sold' by the third-party agent network managed by State Farm Mutual Automobile Insurance Company is not a direct liability against the assets of State Farm Mutual Automobile Insurance Company.
f) the fact that each product 'sold' by the third-party agent network managed by State Farm Mutual Automobile Insurance Company is in fact sold and issued by a company of significant lesser asset value,

and a higher risk product than one fully indemnified by the total assets of State Farm Mutual Automobile Insurance Company.

2) The true 'character' of "State Farm" and its operating policies;

    a) factually 'state farm' does not act like a 'make it', 'make life' or 'make things' right.

    b) factually 'state farm' is not 'always there' to act in the best interests of the injured party requiring assistance.

    c) factually 'state farm' operates solely to profit from the pain and suffering of injured parties.

3) the actual 'claims and payment' processes of 'State Farm'.

    a) factually 'state farm' does not pay claims in a timely manner

    b) factually 'state farm' does not act in the best interest of the injured party.

    c) factually 'state farm' uses claims policies and manuals designed to deny claims, and to unreasonably reduce the value of items in order to reduce the total amounts paid by the Defendants to injured parties.

    d) factually 'state farm' has a significant history of 'bad faith' practices including theft, extortion, robbery, and falsification of documents.

    e) factually 'state farm' has a corporate culture instilled by Defendants Tipsord, Farney, Smith, Harbert, and Wey not to 'pay one more cent than absolutely necessary' in payment of a claim, and often underpays a claim with the understanding the injured party will lack the financial resources to litigate 'state farm' in order to fully recover from actual losses.

    f) factually 'state farm' has a long and nefarious history of making false promises of restitution, only to delay payment until a time the injured party is financially ruined, or the statute of limitations to bring a claim against 'state farm' has passed.

D. From 2018 through to date, the Defendants, in order to use in commerce with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, spent hundreds of millions of dollars from monies and income derived from patterns of racketeering activity to promote in connection with the goods, products, and services, in commercial advertising the misrepresentative nature, characteristics, and qualities of State Farm Mutual Automobile Insurance Company, and 'the state farm groups' products, goods, services, and commercial activities and engaged patterns of racketeering activities designed and intended to conduct a series of schemes to defraud parties under fraudulent pretenses in order to illegally obtain money and property:

1) By use of the wires, Defendants purchased thousands of hours of commercial TV advertising used to make false statements, pretenses, representations, in order to defraud parties. In total, more than 50 Million people over almost 2

years from 2018 to 2019, were exposed to the Defendants' frauds over television media. This constitutes more than 50 Million predicate acts of wire fraud relating to the 'help life go right' campaign.

2) By use of the wires, Defendants used online advertising in the form of broadcast emails, web pages, banner advertising campaigns, and direct emails to parties which were used to make false statements, pretenses, representations, in order to defraud parties. In total, more than 100 Million people have been exposed to an email, or electronic advertising on the internet directly and indirectly over the almost 2 years comprising 2018 to 2019. This constitutes more than 100 million predicate acts of wire fraud relating to the 'help life go right' campaign.

3) By use of the mails, Defendants used direct mail advertising, and correspondence in the form of letters, fliers, notices, and reports to parties which were used to make false statements, pretenses, representations, in order to defraud parties. In total, more than 10 Million people have been exposed to a mailing directly and indirectly mailed via the US Postal Service over the almost 2 years comprising 2018 to 2019. This constitutes more than 10 Million acts of mail fraud relating to the 'help life go right' campaign.

E. Since January 1st 2012, and on a reoccurring basis thereafter in order to use in commerce, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, Defendants Tipsord, Farney, Harbert, Smith and Wey, as well as other un-named parties participating with the 'State Farm Group' RICO violating enterprise, and RICO violating 'association in fact' subsidiary enterprises conducting patterns of racketeering activities under the direct and indirect control of Defendants Tipsord, Farney, Smith, Harbert, and Wey, but distinctly different and independent enterprises and companies from State Farm Mutual Automobile Insurance Company, caused in connection with the goods, products, and services, the production of documents, business cards, letters, mailers, webpages, websites, and various forms of electronic communications, including emails, and smart-phone applications which graphically abused the name, and term 'state farm', and graphically misrepresented the 'tri-oval' logo owned by State Farm Mutual Automobile Insurance Company. The Defendants' usage:

1) was intentional to cause confusion. And;
2) was intentional to cause mistake. And;
3) was intentional in order to:
   a) deceive as to;

          i.    affiliation,

          ii.   connection

          iii.  association of persons / enterprises

          iv.  commercial activities.

b) misrepresent the;

          i.    nature of products, goods and services

          ii.   characteristics of the companies offering independent products, goods, and services.

          iii.  commercial activities of;

               1) State Farm Mutual Automobile Insurance Company

               2) 'the state farm group'

               3) the companies owned by State Farm Mutual Automobile Insurance Company

               4) the association in fact enterprises conducting patterns of racketeering activities.

               5) the enterprises associated and participating with enterprises conducting racketeering activities.

c) to misrepresent the nature and characteristics of association in fact enterprises and employees of association in fact enterprises which conducted patterns of racketeering activities under the direct and indirect management and direction of Defendants Tipsord, Farney Smith, Harbert, and Wey.

Defendants, as well as the employees of the RICO Violating association in fact enterprises, used said documents, business cards, letters, mailers, webpages, websites, and various forms of electronic communications, including emails, and smart-phone applications with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, graphically abused the name, and term 'state farm', and graphically misrepresented the 'tri-oval' logo owned by State Farm Mutual Automobile Insurance Company to commit more than 40 predicate acts of mail and wire fraud, two predicate acts of extortion, and at least two predicate acts of robbery directly against the Plaintiffs in this case, from a period that lasted from on or about January 15th, 2016 through August 19th, of 2019.

**44.** Since January 1st, 2012 and for a period of more than seven years thereafter, Defendants Tipsord, Farney, Smith, Harbert and Wey with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, have jointly acted in association with the conspiracy's 'state farm group' RICO violating enterprise and have

invested monies unlawfully obtained by State Farm Mutual Automobile Insurance company which have been derived from the 'State Farm Group' RICO violating enterprise schemes, frauds, and patterns of racketeering activities in order to participate as principals, to establish, operate, and control 'association in fact' enterprises engage in racketeering activities which affect interstate commerce.

**45.**   Since January 1st, 2012 and for a period of more than seven years thereafter, Defendants Tipsord, Farney, Smith, Harbert and Wey with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, have abused their various positions as directors and officers in subsidiary companies owned by State Farm Mutual Automobile Insurance Company, in order to establish RICO violating association in fact enterprises, which illegally affect interstate commerce due to the patterns of racketeering activities conducted jointly by the conspiracy of the Defendants, who seek and have received income derived directly and indirectly from the RICO violating enterprises, and association in fact enterprises patterns of racketeering activities.

**46.**   Since January 1st, 2012 and for a period of more than seven years thereafter, Defendants Tipsord, Farney, Smith, Harbert and Wey with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, participated within the 'association in fact' RICO violating enterprises as principles, concealed within companies owned by State Farm Mutual Automobile Insurance Company, in order to establish and operate the RICO violating racketeering enterprise known as 'the state farm group' in order to obtain, maintain, and acquire through direct and indirect means control of companies owned by State Farm Mutual Automobile Insurance Company in order to conduct RICO violating enterprises and activities which affect interstate commerce.

**47.**   Since January 1st, 2012 and for a period of more than seven years thereafter, Defendants Tipsord, Farney, Smith, Harbert and Wey have not only operated 'the state farm groups' complicated 'association in fact' subsidiary enterprise conglomerate of association in fact enterprises obscured within the companies owned by State Farm Mutual Automobile Insurance Company, but also with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, directly issued fraudulent 'national corporate

policy manuals' to employees of State Farm Mutual Automobile Insurance Company, and companies which are owned by State Farm Mutual Automobile Insurance company in order to conduct the fraud and racketeering activities of the RICO violating 'association in fact' enterprises and direct State Farm Mutual Automobile Insurance Company's third-party agency network in the conduct of the 'state farm group's' RICO violating enterprises' fraud and racketeering schemes by the individual management of each RICO violating enterprise in facilitation of the plans previously agreed to by Defendants Tipsord, Farney, Smith, Harbert, and Wey.

**48.** Since January 1st, 2012 and for a period of more than seven years thereafter, Defendants, Smith, Harbert and Wey with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, have individually managed the fraud and racketeering activities of the RICO violating 'association in fact' enterprises and direct State Farm Mutual Automobile Insurance Company's third-party agency network in the conduct of the 'state farm group's' RICO violating enterprises' fraud and racketeering schemes, and have derived and received directly and indirectly income from monies derived directly and indirectly from patterns of racketeering activity including:

    1) mail fraud. And;
    2) wire fraud. And;
    3) bank fraud. And;
    4) acts of bribery. And;
    5) extortion. And;
    6) robbery. And;
    7) money laundering activities.

**49.** Since January 1st, 2012 and for a period of more than seven years thereafter, Defendants, Tipsord Farney, Smith, Harbert and Wey with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, have abused their positions as "employees" of the separate companies owned by State Farm Mutual Automobile Insurance Company in order to utilize Defendants Tipsord, Farney, Smith, Harbert, and Wey's interlocking 'officer', 'employee' and 'director's' positions within the individual and separate companies owned by State Farm Mutual Automobile Insurance Company in order to conduct the 'state farm group' fraud and racketeering schemes of:

    1) mail fraud. And;

2) wire fraud. And;
3) bank fraud. And;
4) acts of bribery. And;
5) extortion. And;
6) robbery. And;
7) money laundering activities.

**50.** Since January 1st, 2012 and for a period of more than seven years thereafter, Defendants, Tipsord Farney, Smith, Harbert and Wey with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, have abused their positions as "employees" of the separate companies owned by State Farm Mutual Automobile Insurance Company in order to utilize Defendants Tipsord, Farney, Smith, Harbert, and Wey's interlocking 'officer', 'employee' and 'director's' positions within the individual and separate companies owned by State Farm Mutual Automobile Insurance Company in order to illegally obtain income and monies directly and indirectly derived from patterns of racketeering activities conducted by the association in fact enterprises within the 'state farm group' RICO violating enterprise fraud and racketeering schemes which were individually managed as part of Defendants Tipsord, Farney, Smith, Harbert, and Wey's unique, separate and individual association and management of separate companies owned by State Farm Mutual Automobile Insurance company which Defendants Tipsord Farney, Smith, Harbert, and Wey used to conduct, and participate, and facilitate the activities of the 'association in fact' RICO violating enterprises, which conducted, participated in, and engaged in RICO violating activities which affect interstate commerce, in execution of the Defendants conspiracy, fraud schemes, criminalities, and criminal enterprises. Which conducted a pattern of Racketeering activities which included:

1) mail fraud. And;
2) wire fraud. And;
3) bank fraud. And;
4) acts of bribery. And;
5) extortion. And;
6) robbery. And;
7) money laundering activities.

### *a-3 The Roles of the Individual Defendants defined.*

**51.** Defendant Tipsord is a Member of the Board of Directors of State Farm Mutual Automobile Insurance Company, and said position is entirely separate in every manner, from any employee

position, or any employment agreement held by Defendant Tipsord with State Farm Mutual Automobile Insurance Company.

**52.** Defendant Tipsord is a Member of the Board of Directors of State Farm Fire and Casualty Company, a company that is completely separate and a distinctly independent company from that of State Farm Mutual Automobile Insurance Company.   Defendant Tipsord's Director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Tipsord with State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.

**53.** Defendant Tipsord is a Member of the Board of Directors of State Farm Life Insurance Company, a company, which is completely separate, and a distinctly independent company from that of State Farm Mutual Automobile Insurance Company. Defendant Tipsord's Director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Tipsord with State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, or State Farm Life Insurance Company.

**54.** Defendant Tipsord is a Member of the Board of Directors of State Farm Bank F.S.B., a company, which is completely separate, and a distinctly independent company, and conducts business operations with a distinctly different purpose from that of State Farm Mutual Automobile Insurance Company.   Defendant Tipsord's Director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Tipsord with State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, or State Farm Life Insurance Company.

**55.** Defendant Tipsord is employed by State Farm Mutual Automobile Insurance Company as President and Chief Executive Officer.  Defendant Tipsord's employee positions are entirely separate in every manner, from any director position held by Defendant Tipsord on the Board of Directors of State Farm Mutual Automobile Insurance Company.

**56.** Defendant Tipsord is employed by State Farm Fire and Casualty Company, a company which is completely separate and a distinctly independent company from that of State Farm Mutual

Automobile Insurance Company as the President and Chief Executive Officer of State Farm Fire and Casualty Company. Defendant Tipsord's employee positions are entirely separate in every manner, from any director position held by Defendant Tipsord on the Board of Directors of State Farm Mutual Automobile Insurance Company and/or State Farm Fire and Casualty Company.

**57.** Defendant Tipsord is employed by State Farm General Insurance Company, a company, which is completely separate and a distinctly independent company from that of State Farm Mutual Automobile Insurance Company as the President of State Farm General Insurance Company.

**58.** Defendant Tipsord is employed by State Farm Life Insurance Company, a company, which is completely separate and a distinctly independent company from that of State Farm Mutual Automobile Insurance Company, as the President of State Farm Life Insurance Company.

**59.** Defendant Tipsord is employed by State Farm Life and Accident Assurance Company, a company which is completely separate and a distinctly independent company from that of State Farm Mutual Automobile Insurance Company as the President of State Farm Life and Accident Assurance Company.

**60.** Defendant Tipsord is employed by State Farm Health Insurance Company, a company, which is completely separate and a distinctly independent company from that of State Farm Mutual Automobile Insurance Company as the President of State Farm Health Insurance Company.

**61.** Defendant Tipsord is employed by State Farm Investment Management Corporation, a company, which is completely separate and a distinctly independent company from that of State Farm Mutual Automobile Insurance Company as the President of State Farm Investment Management Corporation.

**62.** Defendant Tipsord is employed by State Farm VP Management Corporation, a company, which is completely separate and a distinctly independent company from that of State Farm Mutual Automobile Insurance Company as the President of State Farm VP Management Corporation.

**63.** Defendant Tipsord is employed by State Farm Associates' Fund Trust, a company, which is completely separate and a distinctly independent company from that of State Farm Mutual Automobile Insurance Company as the President of State Farm Associates' Fund Trust.

**64.** Defendant Tipsord is employed by State Farm Mutual Fund Trust, a company, which is completely separate and a distinctly independent company from that of State Farm Mutual Automobile Insurance Company as the President of State Farm Mutual Fund Trust.

**65.** Defendant Tipsord is employed by State Farm Variable Product Trust, a company, which is completely separate and a distinctly independent company from that of State Farm Mutual Automobile Insurance Company as the President of State Farm Variable Product Trust.

**66.** Defendant Tipsord is employed by State Farm Variable Product Trust, a company, which is completely separate and a distinctly independent company from that of State Farm Mutual Automobile Insurance Company as the President of State Farm Variable Product Trust.

**67.** Defendant Tipsord is employed by State Farm Companies Foundation, a company, which is completely separate and a distinctly independent company from that of State Farm Mutual Automobile Insurance Company as the President of State Farm Companies Foundation.

**68.** Defendant Farney is a Member of the Board of Directors of State Farm Bank F.S.B, a company, which is a completely separate and a distinctly independent company that conducts business operations with a distinctly different purpose from that of State Farm Mutual Automobile Insurance Company. Defendant Farney's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Farney with State Farm Mutual Automobile Insurance Company.

**69.** Defendant Farney is a Member of the Board of Directors of State Farm Florida Insurance Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company. Defendant Farney's director

position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Farney with State Farm Mutual Automobile Insurance Company.

**70.**   Defendant Farney is a Member of the Board of Directors of State Farm Florida Insurance Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Farney's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Farney with State Farm Mutual Automobile Insurance Company.

**71.**   Defendant Farney is a Member of the Board of Directors of State Farm Guaranty Insurance Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Farney's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Farney with State Farm Mutual Automobile Insurance Company.

**72.**   Defendant Farney is a Member of the Board of Directors of State Farm Florida Insurance Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Farney's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Farney with State Farm Mutual Automobile Insurance Company.

**73.**   Defendant Farney is a Member of the Board of Directors of State Farm Florida Insurance Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Farney's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Farney with State Farm Mutual Automobile Insurance Company.

**74.**   Defendant Farney is employed by State Farm Mutual Automobile Insurance Company as the Chief Financial Officer, Treasurer, and Senior Vice President of State Farm Mutual Automobile Insurance Company.

**75.**     Defendant Farney is employed by State Farm Fire and Casualty Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance, as the Chief Financial Officer, Treasurer, and Senior Vice President of State Farm Fire and Casualty Company.

**76.**     Defendant Farney is employed by State Farm Life Insurance Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance, as the, Treasurer, and Senior Vice President of State Farm Life Insurance Company.

**77.**     Defendant Farney is employed by Hiroad Assurance Company, a company, distinctly different and independent of State Farm Mutual Automobile Insurance Company as the Treasurer, and Vice President of Hiroad Assurance Company.

**78.**     Defendant Farney is employed by Oglesby Assurance Corporation, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company as the Treasurer, and Vice President of Oglesby Assurance Corporation.

**79.**     Defendant Farney is employed by State Farm Health Insurance Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance, as the President, Chief Financial Officer, and Treasurer of State Farm Health Insurance Company.

**80.**     Defendant Smith is a Member of the Board of Directors of State Farm Fire and Casualty Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Smith's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Smith with State Farm Mutual Automobile Insurance Company.

**81.**     Defendant Smith is a Member of the Board of Directors of State Farm Life Insurance Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Smith's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Smith with State Farm Mutual Automobile Insurance Company.

**82.**   Defendant Smith is a Member of the Board of Directors of State Farm Life and Accident Assurance Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Smith's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Smith with State Farm Mutual Automobile Insurance Company.

**83.**   Defendant Smith is a Member of the Board of Directors of State Farm General Insurance Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company. Defendant Smith's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Smith with State Farm Mutual Automobile Insurance Company.

**84.**   Defendant Smith is a Member of the Board of Directors of State Farm Investment Management Corporation, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Smith's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Smith with State Farm Mutual Automobile Insurance Company.

**85.**   Defendant Smith is a Member of the Board of Directors of State Farm V.P. Management Corporation, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Smith's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Smith with State Farm Mutual Automobile Insurance Company.

**86.**   Defendant Smith is a Member of the Board of Directors of State Farm Lloyds, Inc., a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Smith's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Smith with State Farm Mutual Automobile Insurance Company.

**87.**   Defendant Smith is a Member of the Board of Directors of Oglesby Reinsurance Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Smith's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Smith with State Farm Mutual Automobile Insurance Company.

**88.**   Defendant Smith is a Member of the Board of Directors of State Farm Health Insurance Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Smith's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Smith with State Farm Mutual Automobile Insurance Company.

**89.**   Defendant Smith is a Member of the Board of Directors of State Farm International Holding Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Smith's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Smith with State Farm Mutual Automobile Insurance Company.

**90.**   Defendant Smith is a Member of the Board of Directors of State Farm Investor Services Company (Canada), is an international company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company, and a company that affects interstate and foreign commerce.   Defendant Smith's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Smith with State Farm Mutual Automobile Insurance Company.

**91.**   Defendant Smith is employed by State Farm Mutual Automobile Insurance Company as the Chief Financial Officer, and Executive Vice President of State Farm Mutual Automobile Insurance Company.

**92.**    Defendant Smith is employed by State Farm Fire and Casualty Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance, as the Chief Financial Officer, Treasurer, and Senior Vice President of State Farm Fire and Casualty Company.

**93.**    Defendant Smith is employed by State Farm Life Insurance Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance, as the Treasurer, and Vice President of State Farm Life Insurance Company.

**94.**    Defendant Smith is employed by State Farm Life and Accident Assurance Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company as the Treasurer and Senior Vice President of State Farm Life and Accident Assurance Company.

**95.**    Defendant Smith is employed by State Farm County Mutual Insurance Company of Texas, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the Treasurer, and Vice President of State Farm County Mutual Insurance Company of Texas.

**96.**    Defendant Smith is employed by State Farm Indemnity Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the Treasurer, of State Farm Indemnity Company.

**97.**    Defendant Smith is employed by State Farm Guaranty Insurance Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the Treasurer, and Vice President of State Farm Guaranty Insurance Company.

**98.**    Defendant Smith is employed by State Farm General Insurance Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the Treasurer, and Vice President of State Farm General Insurance Company.

**99.**    Defendant Smith is employed by State Farm Florida Insurance Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the Treasurer, and Vice President of State Farm Florida Insurance Company.

**100.** Defendant Smith is employed by State Farm Investment Management Corporation, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the Senior Vice President of State Farm Investment Management Corporation.

**101.** Defendant Smith is employed by State Farm V.P. Management Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the Senior Vice President of State Farm V.P. Management Company.

**102.** Defendant Smith is employed by State Farm Associates Fund Trust, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the Senior Vice President and Treasurer of State Farm Associates Fund Trust.

**103.** Defendant Smith is employed by State Farm Lloyds, Inc., a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the Vice President and Treasurer of State Farm Lloyds, Inc.

**104.** Defendant Smith is employed by State Farm Mutual Fund Trust, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the Senior Vice President and Treasurer of State Farm Mutual Fund Trust.

**105.** Defendant Smith is employed by State Farm Companies Foundation, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the Senior Vice President and Treasurer of State Farm Companies Foundation.

**106.** Defendant Smith is employed by State Farm Variable Product Trust, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the Senior Vice President and Treasurer of State Farm Variable Product Trust.

**107.** Defendant Smith is employed by Oglesby Reinsurance Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the Vice President and Treasurer of Oglesby Reinsurance Company.

**108.**   Defendant Smith is employed by State Farm Health Insurance Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the President and Treasurer of State Farm Health Insurance Company.

**109.**   Defendant Harbert is a Member of the Board of Directors of State Farm Fire and Casualty Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Harbert's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Harbert with State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.

**110.**   Defendant Harbert is a Member of the Board of Directors of State Farm Life Insurance Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Harbert's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Harbert with State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.

**111.**   Defendant Harbert is a Member of the Board of Directors of State Farm Investment Management Corporation, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Harbert's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Harbert with State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.

**112.**   Defendant Harbert is a Member of the Board of Directors of State Farm V.P. Management Corporation, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.  Defendant Harbert's director position is entirely separate in every manner, from any employee position, or any employment

agreement held by Defendant Harbert with State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.

**113.** Defendant Harbert is a Member of the Board of Directors of State Farm Lloyds, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.    Defendant Harbert's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Harbert with State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.

**114.** Defendant Harbert is a Member of the Board of Directors of State Farm Health Insurance Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company. Defendant Harbert's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Harbert with State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.

**115.** Defendant Harbert is employed by State Farm Mutual Automobile Insurance Company as the Executive Vice President and Chief Agency and Marketing Officer of State Farm Mutual Automobile Insurance Company.

**116.** Defendant Harbert is employed by State Farm Fire and Casualty Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance, as the Executive Vice President and Chief Agency and Marketing Officer of State Farm Fire and Casualty Company.

**117.** Defendant Harbert is employed by State Farm Fire and Casualty Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance, as the Executive Vice President and Chief Agency and Marketing Officer of State Farm Fire and Casualty Company.

**118.** Defendant Harbert is employed by State Farm Life and Accident Assurance Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance, as the Senior Vice President of State Farm Life and Accident Assurance Company.

**119.**   Defendant Harbert is employed by State Farm Investment Management Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance, as the Senior Vice President of State Farm Investment Management Company.

**120.**   Defendant Harbert is employed by State Farm V.P. Management Corporation, a company distinctly different and independent of State Farm Mutual Automobile Insurance, as the Senior Vice President of State Farm Investment Management Company.

**121.**   Defendant Harbert is employed by State Farm Health Insurance Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance, as the Senior Vice President and Chief Agency and Marketing of State Farm Investment Management Company.

**122.**   Defendant Wey is a Member of the Board of Directors of State Farm Fire and Casualty Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.    Defendant Wey's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Wey with State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.

**123.**   Defendant Wey is a Member of the Board of Directors of State Farm Lloyds, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.    Defendant Wey's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Wey with State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.

**124.**   Defendant Wey is a Member of the Board of Directors of State Farm County Mutual Insurance Company of Texas, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.    Defendant Wey's director position is entirely separate in every manner, from any employee position, or any

employment agreement held by Defendant Wey with State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.

**125.** Defendant Wey is a Member of the Board of Directors Oglesby Reinsurance Company, a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Wey's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Wey with State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.

**126.** Defendant Wey is a Member of the Board of Directors of Top Layer Reinsurance Ltd., a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.   Defendant Wey's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Wey with State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.

**127.** Defendant Wey is a Member of the Board of Directors of DaVinci Re Holdings Ltd., a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.  Defendant Wey's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Wey with State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.

**128.** Defendant Wey is a Member of the Board of Directors of DaVinci Reinsurance Ltd., a company, which is a completely separate and a distinctly independent company, from that of State Farm Mutual Automobile Insurance Company.  Defendant Wey's director position is entirely separate in every manner, from any employee position, or any employment agreement held by Defendant Wey with State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company.

**129.**   Defendant Wey is employed by State Farm Mutual Automobile Insurance Company as the Senior Vice President of State Farm Mutual Automobile Insurance Company.

**130.**   Defendant Wey is employed by State Farm Fire and Casualty Company, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the Executive Vice President of State Farm Fire and Casualty Company.

**131.**   Defendant Wey is employed by State Farm Lloyds, a company distinctly different and independent of State Farm Mutual Automobile Insurance Company, as the President of State Farm State Farm Lloyds.

**132.**   Defendant Wey is employed by State Farm Lloyds, Inc., a wholly owned subsidiary of State Farm Lloyds, and a company distinctly different and independent of State Farm Mutual Automobile Insurance, as the President and Secretary of State Farm Lloyds, Inc.

*a-4. The Individual Defendant's usage of Companies owned by State Farm Automobile Insurance to engage, conduct, and participate in Racketeering Activities,*

**133.**   For a period of more than two years prior to December 15th 2011, Defendants Tipsord, Farney, Smith, Harbert and Wey, with the intent to defraud the Plaintiffs, in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, conspired to unlawfully acquire, and maintain control directly and indirectly of enterprises which affect interstate commerce.   Defendants Tipsord, Farney, Smith, Harbert, and Wey conspired to unlawfully acquire, maintain control, and to become associated with the enterprises known as:

     A.   State Farm Fire and Casualty Company.
     B.   State Farm Life Insurance Company.
     C.   State Farm Life and Accident Company.
     D.   State Farm Health Insurance Company.
     E.   State Farm Bank F.S.B.
     F.   State Farm Investment Management Corporation.
     G.   State Farm V.P. Management Corporation.
     H.   State Farm Florida Insurance Company.
     I.   State Farm Insurance Guaranty Company.
     J.   State Farm General Insurance Company.
     K.   State Farm Lloyds, Inc.

    L.  State Farm Lloyds.
    M.  Oglesby Reinsurance Company.
    N.  State Farm International Holding Company.
    O.  State Farm Investor Services Company (Canada).
    P.  State Farm County Mutual Insurance Company of Texas.
    Q.  Top Layer Reinsurance Ltd.
    R.  DaVinci Re Holdings Ltd.
    S.  DaVinci Reinsurance Ltd.

**134.**  For a period of more than two years prior to December 15th 2011 and for a significant period of time thereafter, Defendants Tipsord and Harbert, in abuse of their Director positions on the Board of Directors of State Farm Mutual Automobile Insurance Company caused the implantation of national corporate policies, directives, memorandums, and instructions from the Board of Directors of Defendant Auto necessary to establish and operate the RICO violating enterprises operating within the companies owned by Defendant Auto.  Defendants Tipsord and Farney, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, engaged in unlawful activities to directly and indirectly establish the RICO violating enterprise known as "the State Farm Group" and directly caused Defendants Tipsord, Farney, Smith, Harbert, and Wey to be elected, and seated on the Boards of Directors of distinctly separate and independent companies owned by State Farm Mutual Automobile Insurance Company in order to establish, operate and maintain illegal RICO violating enterprises, and association in fact enterprises, as part of the conspirators' 'State Farm Group" fraud scheme.  The enterprises which affect interstate commerce which are distinctly separate and independent companies from State Farm Mutual Automobile Insurance Company, in which the Defendants sought to, and eventually did obtain illegally control of in order to establish, maintain, participate and conduct the State Farm Group fraud schemes and associated RICO violating enterprises were:

    A.  State Farm Fire and Casualty Company.
    B.  State Farm Life Insurance Company.
    C.  State Farm Life and Accident Company.
    D.  State Farm Health Insurance Company.
    E.  State Farm Bank F.S.B.
    F.  State Farm Investment Management Corporation.
    G.  State Farm V.P. Management Corporation.
    H.  State Farm Florida Insurance Company.
    I.  State Farm Insurance Guaranty Company.
    J.  State Farm General Insurance Company.

      K.  State Farm Lloyds, Inc.
      L.  State Farm Lloyds.
      M.  Oglesby Reinsurance Company.
      N.  State Farm International Holding Company.
      O.  State Farm Investor Services Company (Canada).
      P.  State Farm County Mutual Insurance Company of Texas.
      Q.  Top Layer Reinsurance Ltd.
      R.  DaVinci Re Holdings Ltd.
      S.  DaVinci Reinsurance Ltd.

**135.**  For a period of more than two years prior to December 15th 2011 and for a significant period of time thereafter, once Defendants Tipsord, Farney, Smith, Harbert, and Wey were seated on the Board of Directors of the distinctly separate and operationally independent companies owned by State Farm Mutual Automobile Company, Defendants Tipsord, Farney, Smith, Harbert, and Wey with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, began, in the abuse of their powers as Directors, and as part of the conspirators 'state farm group' fraud scheme's operational plan,   to employ Defendants Tipsord, Farney, Smith, Harbert, and Wey as 'employees' of the distinctly separate and operationally independent companies owned by State Farm Mutual Automobile Insurance Company, in order to execute the RICO violating "state farm group" fraud scheme, and to establish, operate, and maintain the RICO violating enterprises, and RICO violating association in fact enterprises which conducted affairs and activities that not only affected interstate commerce but also conducted patterns of racketeering activity.   These separate and independent companies which employed Defendants Tipsord, Farney, Smith, Harbert, and Wey distinctly to directly and indirectly conduct the individual enterprises, and conduct, participate and manage the subsidiary 'association in fact' RICO violating enterprises' patterns of Racketeering Activity are:

      A.  State Farm Fire and Casualty Company
      B.  State Farm General Insurance Company
      C.  State Farm Life Insurance Company
      D.  State Farm Life and Accident Assurance Company.
      E.  State Farm Health Insurance Company
      F.  State Farm Management Corporation.
      G.  State Farm V.P. Management Corporation.
      H.  State Farm Associate's Funds Trust
      I.  State Farm Mutual Fund Trust
      J.  State Farm Variable Product Trust.

K.  State Farm Companies Foundations.
L.  Hiroad Assurance Company Corporation.
M.  State Farm Life and Accident Assurance Company.
N.  State Farm Mutual Insurance Company of Texas.
O.  State Farm Indemnity Company
P.  State Farm Guaranty Insurance Company.
Q.  State Farm Florida Insurance Company.
R.  State Farm Lloyds
S.  State Farm Lloyds, Inc.
T.  Oglesby Reinsurance Company.

**136.**   From on or about December 15th, 2011 until as recent as September 25th 2019, once employed
as senior officers within the distinctly separate and independent companies owned by State Farm
Mutual Automobile Insurance Company, Defendants Tipsord, Farney, Smith, Harbert and Wey
with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through
the enterprises' schemes and acts of fraud, established, operated, managed, conducted, and
participated within the RICO violating enterprises, and subsidiary RICO violating 'association
in fact' enterprises' activities and patterns of racketeering activities, as agreed by the conspirators
within the greater "state farm group" fraud schemes' operational plan.    Defendants Tipsord,
Farney, Smith, Harbert and Wey jointly and individually, and through the abuse of Defendant
Tipsord and Harbert's' Board of Directors positions with State Farm Mutual Automobile
Insurance Company, conducted the RICO violating activities through the façade of 'propriety'
and began to establish, manage and conduct RICO violating activities directing employees of the
independent and distinctly separate companies to conduct patterns of racketeering activities
through management and control of said employees, by 'national corporate policies', 'financial
incentives', memorandums, employee training guides, working guides, work policy directives,
and direct verbal communications.

**137.**   Defendants Tipsord, Farney, Smith, Harbert and Wey's RICO violating fraud schemes and
racketeering enterprises, while fairly complex in structure, is very simple in operation.
Defendants Tipsord, Farney, Smith, Harbert and Wey, with the intent to defraud the Plaintiffs in
order to illegally obtain monies and property through the enterprises' schemes and acts of fraud,
conspiratorially planned to defraud parties, including the Plaintiffs.  The conspirators plan relied
on conducting a fraud scheme so confusing that the average person could not easily, or readily

define or understand that "state farm' was in fact operationally more than one company. The purpose of the structure of the 'enterprises' established, operated, and managed by Defendants Tipsord, Farney, Smith, Harbert, and Wey, was to defraud the Plaintiffs by using confusing and deceptive language, to misrepresent the facts, and materially misrepresent the operations of the individual companies, jointly operating and participating within the single entity fraud schemes. Additionally to this purposefully fraudulent and deceptive trade practices and sales activities, constituting a substantial pattern of racketeering activity, was the Defendants' enterprises' corrupt, coercive, criminal and fraudulent 'post-sales' practices, including purposeful and intentional criminal acts, and employment of unwitting third-parties, who due to the Defendants' deceptive and fraudulent practices, conduct, and management of unwitting third parties, the Defendants were able to use to conduct and participate in gross acts of fraudulently induced criminality, to conduct criminal acts of extortion, and robbery, in a sufficient and ongoing manner enough to establish a second and well documented pattern of racketing activities and behaviors of the associated 'state farm' enterprises, acting jointly with the Defendants' fraudulent and deceptive sales and racketeering enterprises operation.

**138.** Since January 1st, 2012, Defendants Tipsord, Farney, Smith, Harbert and Wey have conducted and operated RICO violating 'the state farm group' fraud schemes and racketeering enterprises with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud. The enterprises, under the control of Defendants Tipsord, Farney, Smith, Harbert, and Wey, operated, and conducted a series of 'bait and switch' fraud schemes within the States of Texas and Florida using separate and independent companies State Farm Lloyds, State Farm Lloyds, Inc., State Farm County Insurance Company of Texas, State Farm Fire and Casualty Company, State Farm Bank F.S.B., and State Farm Florida Insurance Company, as well as State Farm Mutual Automobile Insurance Company's third party agent's network. Defendant Harbert directly and indirectly instructed employees of State Farm Mutual Automobile Insurance Company's third-party agents network to only use the term, word, and phrase "state farm" when communicating with parties, including the Plaintiffs in order to sow confusion, and enable the RICO violating enterprises' fraud schemes. Defendants Tipsord, Farney, Smith, Harbert and Wey instructed employees of the RICO violating enterprises to only

use the term, word, and phrase "state farm" when communicating with parties, including the Plaintiffs, in order sow confusion, and enable the RICO violating enterprises' fraud schemes.

**139.** Since January 1, 2012, in high value markets, such as Texas and Florida, Defendants Tipsord, Farney, Smith, Harbert and Wey RICO violating 'the state farm group' fraud schemes and racketeering enterprises with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, conduct 'bait and switch' sale frauds where RICO violating employees of the RICO violating association in fact enterprises, acting in participation with and in conduct of 'the State Farm group" fraud scheme make a series of fraudulent statements and promises intentionally designed to deceive the consumer, obscure the origination, source, value, and characteristics of the products sold to the consumer. The RICO violating patterns of racketeering activity used by the employees under the direct and indirect control of Defendants Tipsord, Farney, Smith, Harbert, and Wey include:

    A. Mail fraud
    B. Wire fraud
    C. Bank fraud.

**140.** Since January 1st, 2012, the RICO violating association in fact enterprises with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, and directly and indirectly under the control and management of Defendants Tipsord, Farney, Smith, Harbert, and Wey which have conducted and participated in the 'state farm group' fraud bait and switch fraud scheme have received income derived directly and indirectly from a pattern of racketeering which includes:

    A. Mail fraud
    B. Wire Fraud
    C. Bank Fraud

**141.** Since January 1st 2012, the RICO violating association in fact enterprises with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, and directly and indirectly under the control and management of Defendants Tipsord, Farney, Smith, Harbert, and Wey receiving income derived directly and indirectly from a pattern of racketeering include:

    A. State Farm Mutual Fire Insurance Company
    B. State Farm Fire Insurance Company

     C.  State Farm Investment Management Corporation.
     D.  State Farm V.P. Management Corporation.
     E.  Oglesby Reinsurance Company
     F.  State Farm Bank F.S.B.
     G.  Top Layer Reinsurance Ltd.
     H.  DaVinci Re Holdings Ltd.
     I.  DaVinci Reinsurance Ltd.

**142.**  Since January 1st, 2012, Defendants Tipsord, Farney, Smith, Harbert, and Wey's money laundering plan, and racketeering activities operating with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, have included the investment of the proceeds of such unlawfully derived income invested by the RICO violating enterprises managed, controlled, and participated in as directors and employees including;

     A.  State Farm Bank F.S.B.
     B.  State Farm V.P. Management Corporation.
     C.  Navigant Consulting
     D.  Hiroad Assurance Company
     E.  State Farm Investment Management Corporation.
     F.  Oglesby Reinsurance Company
     G.  State Farm Associates Funds Trust
     H.  State Farm Mutual Fund Trust
     I.  State Farm Companies Foundation
     J.  DaVinci Reinsurance Ltd.
     K.  DaVinci Re Holdings Ltd.
     L.  State Farm Investor Services Company (Canada).

These separate and independent companies owned by State Farm Mutual Automobile Insurance Company with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, then invest monies, and income, and the proceeds of such income, in part, which was derived directly and indirectly from a pattern of racketeering activities in order to acquire an interest in, establish the operation and management of enterprises, and conduct patterns of racketeering activities which affect interstate commerce.  These aforementioned companies often mark these investments as 'on behalf of State Farm Mutual Automobile Insurance Company' in order to obscure the racketeering activity, and to construct the façade of propriety. These aforementioned companies have invested in more than 400 distinctly separate and independent enterprises including:

| | Name of Company | CUSIP Number | Acquired | Maintain | Affecting Interstate Commerce |
|---|---|---|---|---|---|
| 1 | Nucor Corp. | 670346105 | Y | Y | Y |
| 2 | Gatx Corp | 361448103 | Y | Y | Y |
| 3 | Hon Industries Inc. | 438092108 | Y | Y | Y |
| 4 | The Newhall Land and Farming Co. | 651426108 | Y | Y | Y |
| 5 | McCormick &amp; Co., Inc. | 579780206 | Y | Y | Y |
| 6 | Osmonics Inc. | 688350107 | Y | Y | Y |
| 7 | Helmerich &amp; Payne, Inc. | 423452101 | Y | Y | Y |
| 8 | Precision Castparts Corp. | 740189105 | Y | Y | Y |
| 9 | Vulcan Materials Co. | 929160109 | Y | Y | Y |
| 10 | Biomet Inc. | 090613100 | Y | Y | Y |
| 11 | Aptargroup Inc. | 038336103 | Y | Y | Y |
| 12 | Sigma-Aldrich Corp. | 826552101 | Y | Y | Y |

**143.**    Since January 1st, 2012, the RICO violating association in fact enterprises with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud and operating directly and indirectly under the control and management of Defendants Tipsord, Farney, Smith, Harbert, and Wey who manage said operations, activities, and conduct directly as employees of the separate and independent companies owned by State Farm Mutual Automobile Insurance Company.   Also conduct various

association in fact RICO violating enterprise schemes as part of the 'State Farm Group' fraud and racketeering plan as designed within Defendants Tipsord, Farney, Smith, Harbert, and Wey 'state farm group' operating plan with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, through corporate policies, memorandums, management directives, and contract between independent companies in order to conduct racketeering enterprises and racketeering activities including:

   A.  Single entity trade name fraud managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud.

     1) All RICO violating association in fact enterprises, including State Farm Mutual Automobile Insurance Company's third-party agents;

       1) intentionally engage in abuse of terms, names and symbols in order to confuse, mislead, misrepresent, cause mistake, make misleading descriptions of fact, and make material misrepresentation of facts as to.

         a) the characteristics of the company
         b) the characteristics of the product
         c) the source of the product
         d) the origin of the product
         e) commercial activities of 'the state farm group'
         f) commercial activities of State Farm Mutual Automobile Insurance Company.

       2) engage with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in commercial advertising, promotion, and misrepresents the characteristics, qualities and nature of:

         a) the characteristics of the company, including the third-party agents' enterprise.
         b) the characteristics of the product
         c) the source of the product
         d) the origin of the product
         e) commercial activities of 'the state farm group'
         f) commercial activities of State Farm Mutual Automobile Insurance Company.

     2) All RICO violating association in fact enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, including State Farm Mutual Automobile Insurance Company's third-party agents;

       1) intentionally engage in abuse of terms, names and symbols in order to confuse, mislead, misrepresent, cause mistake, make misleading

descriptions of fact, and make material misrepresentation in patterns of racketeering activity including:
- a) acts of wire fraud. And;
- b) acts of mail fraud. And;
- c) bank fraud. And;
- d) engage in monetary transaction in property derived from specified unlawful activity.

2) engage with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in commercial advertising, promotion, and misrepresents the characteristics, qualities and nature of in patterns of racketeering activity including:
- a) acts of wire fraud. And;
- b) acts of mail fraud.

3) All RICO violating association in fact enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, including State Farm Mutual Automobile Insurance Company's third-party agents;

1) intentionally receive monies and payments from consumers, such as the Plaintiffs, in the form of bank drafts, credit card payments, and cash issued in the name of 'state farm', a company that does not legally exist, and a company which is not the same company as the enterprise or the association in fact enterprise.  This causes the issuance and acceptance of a fraudulent monetary instrument.

B. Delay through misrepresentation fraud scheme.

1) All RICO violating association in fact enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, including State Farm Mutual Automobile Insurance Company's third-party agents;

1) intentionally engage in abuse of terms, names and symbols in order to confuse, mislead, misrepresent, cause mistake, make misleading descriptions of fact, and make material misrepresentation of facts as to.
- a) the characteristics of the company
- b) the characteristics of the product
- c) the source of the product
- d) the origin of the product
- e) commercial activities of 'the state farm group'
- f) commercial activities of State Farm Mutual Automobile Insurance Company.

2) engage with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in false statements and fraudulent promises to mislead and obscure the true intention of the RICO violating enterprises including:
   a) the characteristics of the company, including the third-party agents' enterprise.
   b) the characteristics of the product
   c) the source of the product
   d) the origin of the product
   e) commercial activities of 'the state farm group'
   f) commercial activities of State Farm Mutual Automobile Insurance Company.

2) All RICO violating association in fact enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, including State Farm Mutual Automobile Insurance Company's third-party agents;

   1) intentionally engage in abuse of terms, names and symbols in order to confuse, mislead, misrepresent, cause mistake, make misleading descriptions of fact, and make material misrepresentation in patterns of racketeering activity in order to conduct:
      a) acts of wire fraud. And;
      b) acts of mail fraud. And;
      c) bank fraud. And;
      d) engage in monetary transaction in property derived from specified unlawful activity.

3) All RICO violating association in fact enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud including State Farm Mutual Automobile Insurance Company's third-party agents;

   1) intentionally engage in fraud schemes with the knowledge said acts are illegal and are specifically orchestrated to defraud the parties.

C. Denial by Frauds and Criminality.

   1) All RICO violating association in fact enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, including State Farm Mutual Automobile Insurance Company's third-party agents;

   1) intentionally engage in abuse of terms, names and symbols in order to confuse, mislead, misrepresent, cause mistake, make misleading descriptions of fact, and make material misrepresentation of facts as to.
      a) the characteristics of the company

b) the characteristics of the product
c) the person to person relationship and distinctions between the RICO violating enterprises.
d) commercial activities of 'the state farm group'
e) commercial activities of State Farm Mutual Automobile Insurance Company.

2) engage in false statements and fraudulent promises to mislead and obscure the true intention of the RICO violating enterprises including:
a) the characteristics of the company
b) the characteristics of the product
c) the person to person relationship and distinctions between the RICO violating enterprises.
d) commercial activities of 'the state farm group'
e) commercial activities of State Farm Mutual Automobile Insurance Company.

2) All RICO violating association in fact enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, including State Farm Mutual Automobile Insurance Company's third-party agents;

1) intentionally engage in abuse of terms, names and symbols in order to confuse, mislead, misrepresent, cause mistake, make misleading descriptions of fact, and make material misrepresentation in patterns of racketeering activity in order to conduct:
a) acts of wire fraud. And;
b) acts of mail fraud. And;
c) bank fraud. And;
d) extortion. And;
e) robbery. And;
f) engage in monetary transaction in property derived from specified unlawful activity.

3) All RICO violating association in fact enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, including State Farm Mutual Automobile Insurance Company's third-party agents;

1) intentionally engage in fraud schemes with the knowledge said acts are illegal and are specifically orchestrated to defraud the parties.

**144.**   Defendants Tipsord, Farney, Smith, Harbert, and Wey, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, receive income derived directly and indirectly from patterns of racketeering activity

conducted by the "State Farm Group" enterprises, which they manage, and directly and indirectly participate, control and conduct; including money laundering, extortion, mail fraud, wire fraud, bank fraud, and engaging in monetary transactions in property derived from specified unlawful activity.

145.   Defendants Tipsord, Farney, Smith, Harbert, and Wey, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, receive income derived directly and indirectly from patterns of racketeering activity conducted by the 'State Farm Group' enterprises which they manage, and directly and indirectly participate, control and conduct.   Defendants Tipsord, Farney, Smith, Harbert, and Wey receive these incomes in the form of 'stock' incentive programs, investment programs, bonus payments, discount loans, self-depreciating loans, and associated asset transfers.   These payments of income derived directly and indirectly from patterns of racketeering activities, which include the receipt of incomes from 'investments' made from income, parts of income, and proceeds from incomes, which was derived directly and indirectly from patterns of racketeering activities, and the establishment and operations of enterprises engaged in interstate commerce.   Including payments of income and monies from:

| | |
|---|---|
| A. | State Farm Automobile Insurance Company |
| B. | State Farm Fire and Casualty Company |
| C. | State Farm General Insurance Company |
| D. | State Farm Life Insurance Company |
| E. | State Farm Life and Accident Assurance Company. |
| F. | State Farm Health Insurance Company |
| G. | State Farm Management Corporation. |
| H. | State Farm V.P. Management Corporation. |
| I. | State Farm Associate's Funds Trust |
| J. | State Farm Mutual Fund Trust |
| K. | State Farm Variable Product Trust. |
| L. | State Farm Companies Foundations. |
| M. | Hiroad Assurance Company Corporation. |
| N. | State Farm Life and Accident Assurance Company. |
| O. | State Farm Mutual Insurance Company of Texas. |
| P. | State Farm Indemnity Company |
| Q. | State Farm Guaranty Insurance Company. |
| R. | State Farm Florida Insurance Company. |
| S. | State Farm Lloyds |
| T. | State Farm Lloyds, Inc. |

U.      Oglesby Reinsurance Company.
V.      Navigant Consulting
W.      Hiroad Assurance Company
X.      State Farm Investment Management Corporation.
Y.      Oglesby Reinsurance Company
Z.      State Farm Associates Funds Trust
AA.     State Farm Mutual Fund Trust
BB.     State Farm Companies Foundation
CC.     DaVinci Reinsurance Ltd.
DD.     DaVinci Re Holdings Ltd.
EE.     State Farm Investor Services Company (Canada)
FF.     State Farm Bank F.S.B.

### *a-5 Pattern of Racketeering Activity and relatedness.*

**146.**   Plaintiffs allege to be defrauded by the Defendants' materially misrepresentation of fact that 'state farm' is one company, as falsely characterized and materially misrepresented within the Defendants' commercial advertising.

**147.**   Plaintiffs allege to be defrauded by the Defendants' 'single entity fraud schemes' and related 'bait and switch' sales fraud schemes.   On or about February 18, 2016, the Defendants accepted monies from the Plaintiffs, due to frauds related with the Defendants' 'like a good neighbor' national advertising fraud scheme and fraudulent misrepresentations of RICO violating enterprises' 'sales' representatives. This act constitutes one unique predicate act of wire fraud, as part of a pattern of racketeering activity.

**148.**   Plaintiffs have alleged to have been defrauded by the Defendants' "bait and switch' fraud scheme when Defendants fraudulently induced to purchase two insurance products sold within the 'state farm group' fraud schemes. This act constitutes one unique predicate act of wire fraud, as part of a pattern of racketeering activity.

**149.**   The products bought and paid for consisted of one automobile insurance product issued and delivered by State Farm Mutual Automobile Insurance Company, and the other materially misrepresented product that was advertised by, promoted by, and offered by the RICO violating enterprise, but never delivered, as sold. The 'switched' product was a homeowners policy of lesser value, and issued by an independent, materially separate and financially less

stable company, State Farm Lloyds, which the Defendants illegally delivered to the Plaintiffs via the US Postal Service on or about April 12, 2016.

**150.** Plaintiffs allege to be defrauded by the Defendants' RICO violating enterprises' continuous and long-lasting false statements and false promises made over the wires by Defendants' employees to the Plaintiffs after Plaintiffs received the fraudulently delivered 'switch' product, illegally sold and delivered in pattern of Racketeering Activity. These unique and individual acts of wire fraud constitute more than 40 predicate acts of racketeering activities.

**151.** Plaintiffs allege to be defrauded by the Defendants' RICO violating enterprises' employee Chuck Pedroso's acts of extortion to obtain the Plaintiffs' signature on a 'subrogation' agreement which Defendants fraudulently allege was part of the 'switch' contract criteria. This act on February 27 2017, constitutes a unique and separate predicate act of racketeering activity.

**152.** Plaintiffs allege to be defrauded by the Defendants' RICO violating enterprises' false promises and statements of RICO violating employee Chuck Pedroso's statement "state farm will hire an attorney to recover any monies State Farm does not pay you" which was made to fraudulently induce Plaintiffs to signing the aforementioned 'subrogation agreement' signed under duress.

**153.** Plaintiffs allege to be defrauded by the extortion of third-party agents employed by the 'association in fact enterprise' which led to the robbery of the Plaintiffs by the same third-party agents, and other employees of association in fact RICO violating enterprises conducting patterns of racketeering activities. These acts on April 7th 2017, constitute two separate and unique predicate acts of racketeering activities.

**154.** Plaintiffs allege to be defrauded by the Defendants' continued abuse and misuse of the 'word' and 'term' "State Farm" which the Defendants used to obscure the characteristics and commercial activities of the state farm group, and the association in fact enterprises engaged in patterns of racketeering activity.   Defendants falsely used the terms, words, devices, symbols and combination of these things, in connection with commerce to misrepresent the nature of the commercial activities, characteristics of the activities of the enterprises, and

nature of the intent of the commercial activities of the enterprises in all manners communicated including verbally, and by the mail in the form of letters, documents, 'contracts' both lawful and fraudulent, and advertisements, as well as, by the wires in the forms of emails, reports, forms, websites, webpages, and applications online.  The abuse of names, words, and devices fraud and fraud schemes constitute more than 150 individual predicate acts of racketeering activities in the fraudulent use of mail and wires.

**155.**   The pattern and duration of the Defendants' racketeering activity is clearly defined by the predicate acts of the Defendants as follows:

    A.  Predicate acts related to national advertising campaigns:

        1)  Wire fraud – 'like a good neighbor' campaign

            a)  Pattern of activity - illegal use of the wires to transmit fraud schemes to propagate a scheme to illegally obtain money and property by false pretenses, representations, and false promises.
            b)  Usage and purpose – to conduct and participate a single entity fraud scheme and to establish a RICO violating enterprise known as 'the state farm group".
            c)  Duration – from January 1st 2012 to approximately 12th April 2019.
            d)  Predicate acts – more than 250 Million.

        2)  Mail fraud - 'like a good neighbor' campaign

            a)  Pattern of activity - illegal use of the Postal Service to transmit fraud schemes to propagate a scheme to illegally obtain money and property by false pretenses, representations, and false promises.
            b)  Usage and purpose – to conduct and participate a single entity fraud scheme and to establish a RICO violating enterprise known as 'the state farm group".
            c)  Duration – from January 1st 2012 to approximately 12th April 2019.
            d)  Predicate acts – more than 100 Million.

        3)  Wire fraud – 'make life go right' campaign

            a)  Pattern of activity - illegal use of the wires to transmit fraud schemes to propagate a scheme to illegally obtain money and property by false pretenses, representations, and false promises.
            b)  Usage and purpose – to conduct and participate a single entity fraud scheme and to establish a RICO violating enterprise known as 'the state farm group".
            c)  Duration – from June 06th, 2016 to ongoing.
            d)  Predicate acts – more than 50 Million.

4) Mail fraud - 'make life go right' campaign

    a) Pattern of activity - illegal use of the Postal Service to transmit fraud schemes to propagate a scheme to illegally obtain money and property by false pretenses, representations, and false promises.

    b) Usage and purpose – to conduct and participate a single entity fraud scheme and to establish a RICO violating enterprise known as 'the state farm group".

    c) Duration – from June 06th, 2016 to ongoing.

    d) Predicate acts – more than 100 Million.

B. Predicate acts related to abuse of logo, marks, words, terms and devices as shown in Paragraph 38 D. 3).

1) Mail fraud – abuse of marks, terms, words, and devices in business cards, letters, form, reports, billing statements, and notices.

    a) Pattern of activity - illegal use of the Postal Service to transmit fraud schemes to propagate a scheme to illegally obtain money and property by false pretenses, representations, and false promises.

    b) Usage and purpose – to conduct and participate a single entity fraud scheme and to establish a RICO violating enterprise known as 'the state farm group".

    c) Duration – from January 1st 2012 to ongoing.

    d) Predicate acts – more than 100 Million.

C. The Predicate acts of Defendants' Racketeering enterprises with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the Racketeering enterprises' schemes, frauds and criminalities directed at the Plaintiffs which directly and proximately caused injuries and damages to the Plaintiffs' properties and business due to Plaintiffs' unwitting inducement into the Defendants' enterprises which conducted complex and confusing patterns of racketeering activities which used fraudulent and misleading statements to induce the Plaintiffs into the complex enterprises' schemes and then used similar deceptive, and fraudulent statements in order to obscure the fraudulent and deceptive trade practices, and criminalities of the Defendants' RICO violating enterprises. Plaintiffs were directly injured due to the Defendants' pattern of racketeering activities which included:

1) Wire fraud related to national advertising campaigns

    a) Pattern of activity - illegal use of the wires to transmit and conduct fraud schemes to propagate a scheme to illegally obtain money and property from the Plaintiffs by false pretenses, representations, and false promises.

    b) Usage and purpose – to conduct and participate a single entity fraud scheme and to conduct the fraud schemes of the RICO violating enterprise known as 'the state farm group; against the Plaintiffs.

    c) Duration – from January 1st 2012 to ongoing.
    d) Predicate acts – more than 100.

2) Wire fraud due to Defendants' direct engagement of the Plaintiffs by wire.

    a) Pattern of activity - illegal use of the wires to transmit and conduct fraud schemes to propagate a scheme to illegally obtain money and property from the Plaintiffs by false pretenses, representations, and false promises.
    b) Usage and purpose – to conduct and participate a single entity fraud scheme and to defraud the Plaintiffs through the RICO violating enterprise known as "the state farm group's" schemes, frauds, and criminalities.
    c) Duration – from January 1st 2012 to ongoing.
    d) Predicate acts – more than 100.

3) Mail fraud due to Defendants' direct engagement of the Plaintiffs and Defendants abuse of marks, terms, words, and devices in business cards, letters, form, reports, billing statements, and notices.

    a) Pattern of activity - illegal use of the Postal Service to transmit fraud schemes to propagate a scheme to illegally obtain money and property by false pretenses, representations, and false promises.
    b) Usage and purpose – to conduct and participate a single entity fraud scheme and to defraud the Plaintiffs through the RICO violating enterprise known as "the state farm group" schemes, frauds, and criminalities.
    c) Duration – from January 1st 2012 to ongoing.
    d) Predicate acts – more than 100.

4) Extortion of Plaintiffs to obtain Plaintiffs' signatures.
    a) Pattern of activity – to illegally obtain Plaintiffs' signatures by threat 'state farm won't pay you a dime if you don't sign this now" and 'we'll move you out of the hotel'.
    b) Purpose – to conduct the RICO violating enterprise known as "the state farm group" schemes, frauds, and criminalities. In order to fraudulently assert the 'Lloyds' contract was valid, and to create a 'reason' not to pay $5 Million in restitution for losses resultant from a fire event, Defendants had previously stated Plaintiffs were insured from, in Defendants' earlier fraudulent statements, as an extension of the 'bait and switch' fraud scheme.
    c) Duration – February 27th, 2017.
    d) Predicate act – 1.

5) Extortion of Plaintiffs to obtain Plaintiffs' property.

    a) Pattern of activity – to illegally obtain Plaintiffs' property by threat "state farm won't pay you a dime if you don't let us take this now" and "we'll kick you out today."

    b) Purpose – to conduct the RICO violating enterprise known as "the state farm group" schemes, frauds, and criminalities. To illegally obtain and then destroy evidence of negligence on behalf of the builder of Plaintiffs' residence. To obscure the fact "state farm' also insures the negligent builder and to further obscure the fact 'state farm' is liable for the negligent loss under the builders insurance policy. To prohibit Plaintiffs' restitution for losses resultant from a fire event. And to obscure Defendants' earlier fraudulent statements, as an extension of the 'bait and switch' fraud scheme.

    c) Duration – February 27th, 2017.

    d) Predicate act – 1.

6) Robbery of Plaintiffs' property by threat and force.

    a) Pattern of activity – to illegally obtain Plaintiffs' property by threat "state farm won't pay you a dime if you don't let us take this now" and "we'll kick you out today" and removal of property by force consisting as physical threat, and physical removal by third party agent hired by a RICO violating association in fact enterprise.

    b) Purpose – to conduct the RICO violating enterprise known as "the state farm group" schemes, frauds, and criminalities. To illegally obtain and then destroy evidence of negligence on behalf of the builder of Plaintiffs' residence. To obscure the fact "state farm' also insures the negligent builder and to further obscure the fact 'state farm' is liable for the negligent loss under the builders insurance policy. To prohibit Plaintiffs restitution for losses resultant from a fire event. And to obscure Defendants' earlier fraudulent statements, as an extension of the 'bait and switch' fraud scheme.

    c) Duration –February 27th, 2017.

    d) Predicate act – 1.

7) Robbery of Plaintiffs' property by force.

    a) Pattern of activity – RICO violating enterprises' illegal activities to illegally obtain Plaintiffs' Automobile Insurance policy issued by State Farm Mutual Automobile Insurance Company

    b) Purpose – to conduct the RICO violating enterprise known as "the state farm group" schemes, frauds, and criminalities. To illegally obtain Plaintiffs' assets, and to shift 'blame' from the RICO violating enterprises, and to further financially injure Plaintiffs to inhibit their ability to bring litigation against the RICO enterprises, for frauds conducted by the RICO violating enterprises, and to recover damages to Plaintiffs' property and businesses.

    c) Duration –June 28th, 2017.

    d) Predicate act – 1.

**156.**   The Pattern and Continuity of the Defendants' Racketeering activities are clearly related by similarity of the predicate acts of mail and wire fraud used in the national advertising campaigns, and the continuity of messages, purposes, results, participants, victims, and methods of commission.

**157.**   The Pattern and Continuity of the Defendants' Racketeering activities are clearly related by similarity of the predicate acts of extortion, and the Defendants' usage of 'the single entity' frauds in the continuity of messages, purposes, results, participants, victims, and methods of commission.

**158.**   The Pattern and Continuity of the Defendants' Racketeering activities are clearly related by similarity of the predicate acts of robbery by threat and force, and the Defendants' usage of 'the single entity' frauds in the continuity of messages, purposes, results, participants, victims, and methods of commission.

**159.**   The Defendants' Racketeering activities are 'Open-Ended' and said patterns of racketeering activity have occurred over a substantial period of time of more than 8 years, and there is a significant threat the past conduct will recur in the future and by its very nature, projects into the future with a threat of repetition.   Defendants conduct, management, and operation of enterprises have existed over a substantial period of time and there is a high level threat the conduct will continues the alleged enterprises conducted by the Defendants should be considered as their standard and 'normal' way of conducting the affairs of the enterprises which violate RICO and engage in racketeering activities, but for the Plaintiffs filing of this suit, and should the Plaintiffs NOT PREVAIL there is a high probability the conduct of the enterprises, and the operation, management, and participation of the Defendants in fraud schemes, criminalities and patterns of racketeering activities will continue. These threats exist due to:

   A.   Defendants with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, have shown a more

than 8-year long history of committing fraudulent acts and the threat of this activity and its repetition exists and persists:

1) In national commercial advertising in the conduct of, and in the connection to commerce and in connection with goods and services, Defendants fail to clearly state the characteristics of the 'state farm groups' operational model and fail:

   a) to show the third-party agents under the control of State Farm Mutual Automobile Insurance Company sell products from distinctly different and independent companies.
   b) to show the companies owned by State Farm are not 'backed' by the total assets of State Farm Mutual Automobile Insurance Company.
   c) to clearly differentiate the difference between the individual companies owned by State Farm Mutual Automobile Insurance Company.
   d) to clearly state and identify State Farm Mutual Automobile Insurance Company is not a 'holding company'.
   e) to clearly state and identify State Farm Mutual Automobile Insurance Company ONLY sells Automobile Insurance.
   f) to clearly state and identify in a clear and concise manner the differences between State Farm Mutual Automobile Insurance Company and the separate and independently operating companies owned by State Farm Mutual Automobile Insurance Company and the products sold by third party agents acting in a network managed by State Farm Mutual Automobile Insurance Company.

2) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in national commercial advertising in the conduct of, and in the connection to commerce and in connection with goods and services, Defendants have a history of using words, terms, names, symbols, devices and combination thereof to make false and misleading statements, make misleading descriptions of fact, make false and misleading representations of fact in order to:

   a) likely cause confusion
      i.   as to the affiliation of commercial activities of separate companies owned by State Farm Mutual Automobile Insurance Company jointly sold by the third-party agent network and RICO violating enterprises.

      ii.  as to the connection of commercial activities of separate companies owned by State Farm Mutual Automobile Insurance Company jointly sold by the third-party agent network and RICO violating enterprises.

       iii.    as to the association of commercial activities of separate companies owned by State Farm Mutual Automobile Insurance Company jointly sold by the third-party agent network and RICO violating enterprises.

  b) cause mistake

       i.    as to the affiliation of commercial activities of separate companies owned by State Farm Mutual Automobile Insurance Company jointly sold by the third-party agent network and RICO violating enterprises.

       ii.    as to the connection of commercial activities of separate companies owned by State Farm Mutual Automobile Insurance Company jointly sold by the third-party agent network and RICO violating enterprises.

       iii.    as to the association of commercial activities of separate companies owned by State Farm Mutual Automobile Insurance Company jointly sold by the third-party agent network and RICO violating enterprises.

  c) deceive

       i.    as to the affiliation of commercial activities of separate companies owned by State Farm Mutual Automobile Insurance Company jointly sold by the third-party agent network and RICO violating enterprises.

       ii.    as to the connection of commercial activities of separate companies owned by State Farm Mutual Automobile Insurance Company jointly sold by the third-party agent network and RICO violating enterprises.

       iii.    as to the association of commercial activities of separate companies owned by State Farm Mutual Automobile Insurance Company jointly sold by the third-party agent network and RICO violating enterprises.

3) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in national commercial advertising in the conduct of, and in the connection to commerce and in connection with goods and services, Defendants have a history of using words, terms, names, symbols, devices and combination thereof to make false and misleading statements, make misleading

descriptions of fact, make false and misleading representations of fact in order to:

   a) misrepresent the nature of State Farm Mutual Automobile Insurance products and those products of independent and separate companies owned by State Farm Mutual Automobile Insurance Company.

   b) misrepresent the characteristics of State Farm Mutual Automobile Insurance products and those products of independent and separate companies owned by State Farm Mutual Automobile Insurance Company.

   c) misrepresent the qualities of State Farm Mutual Automobile Insurance products and those products of independent and separate companies owned by State Farm Mutual Automobile Insurance Company.

B.  The Predicate acts of racketeering of the Defendants' 'state farm group' racketeering enterprise and its association in fact RICO violating enterprises are part of Defendants' long-term association that exists for criminal purposes as the Defendants continue to:

   1) With the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, engage in and conduct fraudulent marketing practices with the intent to:
      a) defraud parties through acts of
         i.    confusion
         ii.   obscurity
         iii.  mischaracterization
         iv.   deception
         v.    fraud

   2) With the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, directly and indirect engagement in unlawful acts and illegal activities, in association with, and employment by, enterprises that conduct, operate, manage and participate in Racketeering enterprises which are engaged in racketeering activities including:

      a) Mail fraud violating 18 U.S.C. § 1341.
      b) Wire fraud violating 18 U.S.C. § 1343.
      c) Bank fraud violating 18 U.S.C. § 1344.
      d) Extortion violating 18 U.S.C. § 1961(1), as defined in 18 U.S.C. § 3559(c)(2).
      e) Robbery violating 18 U.S.C. § 1961(1).
      f) Travel in support and promotion of racketeering activities violating 18 U.S.C. § 1951, and 18 U.S.C. § 1952.

g) Money laundering activities violating 18 U.S.C. § 1956, as defined in 18 U.S.C. § 1956(c)(4).

h) Engaging in monetary transactions in property derived from specified unlawful activity including;

    i.    Acts and activities, which constitute an offense in 18 U.S.C. § 1961(1).

    ii.    Financial transactions occurring at whole and in part in the United States violating 18 U.S.C. § 1957

          1) fraud against a foreign bank

          2) attempts to defraud a foreign bank

i) Engaging in activities of misapplication by a bank officer violating 18 U.S.C. § 656.

j) Engaging in activities of misapplication of a bank employee violating 18 U.S.C. § 656.

k) Engaging in fraudulent bank entries violating 18 U.S.C. § 1005.

l) Engagement in fraudulent federal credit institution entries violating 18 U.S.C. § 657.

## *a-6. Conduct of the Enterprises directed specifically at the Plaintiffs*

### *i. Direct Conduct of the State Farm Group Racketeering Enterprise to fraudulently induce the Plaintiffs.*

**160.** From January 1st 2012 through todays' date and ongoing, due to the unique nature of the internet, and due to the width, and breadth of the 'message expansion, due to parties making copies of each broadcast made by the Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, Defendant Auto, acting in a conspiracy, with the State Farm Group enterprise, Defendant Fire, and Defendants Tipsord, Farney, Smith, Harbert, and Wey, jointly conducted and participated in a national advertising campaign known as 'the like a good neighbor' commercial promotion and advertising campaign, with the intent to propagate the State Farm Group's 'single entity fraud scheme'. Defendant Auto, acting in a conspiracy, with the State Farm Group enterprise, Defendant Fire, and Defendants Tipsord, Farney, Smith, Harbert, and Wey, jointly in conduct and participation caused the interstate distribution of writings, signs, signals, pictures and sounds containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by unlawful interstate usage of wire, radio, and television transmissions and communications in interstate commerce with knowledge said fraudulent material would be received by the Plaintiffs.   The Defendants' fraudulent

marketing campaign was first viewed by the Plaintiffs on or about May 15th, 2012 and was viewed by television and internet streaming services, while Plaintiffs were at their various homes over the years located in the states of Texas, Missouri, and internationally while Plaintiff Vanderbol traveled on business, and watched video media via the streaming video internet services in the countries of Thailand, England, Switzerland, Israel, Dubai, Russia, and Japan on the following approximate dates, and locations:

    a)  February 14th, 2012 – Joplin, Mo.
    b)  March 25th, 2012 – Dallas, Texas.
    c)  August 5th, 2012 – Joplin, Mo.
    d)  September 9th, 2012 – Dallas, Texas.
    e)  October 28th, 2012 – Tokyo, Japan.
    f)  October 29th, 2012 – Dallas, Texas.
    g)  October 31st, 2012 – Bangkok, Thailand.
    h)  November 23rd, 2012 - Bangkok, Thailand.
    i)  December 11th, 2012 – Bangkok, Thailand.
    j)  December 24th, 2012 - Bangkok, Thailand.
    k)  December 25-26[th], 2012 – Plano, Texas.
    l)  January 1st, 2013 – Bangkok, Thailand.
    m)  March 15th, 2013 – Bangkok, Thailand.
    n)  February 12th, 2013-Bangkok, Thailand.
    o)  February 19th, 2013 - Dubai, UAE.
    p)  March 3rd, 2013 – Moscow, Russia
    q)  March 15th, 2013 – Geneva, Switzerland.
    r)  March 20th, 2013 – London, England
    s)  May 5th, 2013 – Moscow, Russia.
    t)  May 11th, 2013 – Tel Aviv, Israel.
    u)  July 3rd, 2013 – Lake Kiowa, Texas.
    v)  July 3rd, 2013 – Dallas, Texas.
    w)  November 24th, 2013 – Joplin, Mo.
    x)  November 25th, 2013- Joplin, Mo.
    y)  December 23rd, 2013- Lake Kiowa, Texas.
    z)  December 24th, 2013- Lake Kiowa, Texas
    aa) December 25th, 2013- Lake Kiowa, Texas
    bb) December 25-26[th], 2013 – Plano, Texas.
    cc) January 15th, 2014 – Bangkok, Thailand.
    dd) January 23rd, 2014 – Dubai, UAE
    ee) February 3rd, 2014 – London, England.
    ff) February 4th, 2014 – London, England.
    gg) February 7th, 2014 - Bangkok, Thailand.
    hh) February 8th, 2014 - Bangkok, Thailand.
    ii) February 9th, 2014 - Bangkok, Thailand.
    jj) April 1st, 2014 – Lake Kiowa, Texas
    kk) May 19th, 2014 – Frankfurt, Germany.

ll)  May 24th, 2014 – London, England.

mm)    June 15th, 2014 – Tel Aviv, Israel.

nn) December 24th-25[th] 2014 – Dallas, Texas.

oo) February 13th, 2015 – Lake Kiowa, Texas.

pp) February 14th – July 20th, 2015 – Lake Kiowa, Texas.

qq) February 5th – May 10th, 2015 – Dallas, Texas.

rr)  August 1st – October 1st, 2015 – Lake Kiowa, Texas.

ss)  December 11th, 2015 – Frisco, Texas.

tt)  December 24th – 25th, 2015 – Lake Kiowa, Texas.

uu) February 5th, 2016 – Lake Kiowa, Texas.

vv) November 24th, 2016 – Lake Kiowa, Texas.

ww)    December 24th-25[th], 2016 – Lake Kiowa, Texas.

xx) March 5th, 2017 – Gainesville, Texas.

yy) April 1 – June 1 – 2017, Denton, Texas.

zz) June 15th – 20th, 2017 – McKinney Texas.

aaa)    July 4th, 2017 – streaming – Wisconsin.

bbb)    August 3rd – December 28th, 2018 – Pottsboro, Texas (YouTube)

ccc)    November 17th, 2019 – Frisco, Texas. (YouTube)

ddd)    November 18th, 2019 – Frisco, Texas (YouTube)

B.  The Fraudulent interstate transmissions and communications consisted of writings, signs, signals, pictures and sounds transmitted by the wires with the average duration of thirty seconds each transmission.    During the aforementioned period of time, Defendants caused the unlawful interstate transmissions of hundreds of thousands of hours of fraudulent materials which constantly and continuously exposed the Plaintiffs to the Defendants' unlawfully transmitted interstate fraudulent messages designed to defraud the Plaintiffs in order to obtain monies by fraud, and fraudulent means, and false pretenses.    Factually:

1)  Defendants, in connection with goods and services in unlawful interstate transmission of commercial advertising and promotion, used the term, word, symbols, and devices shown or used as 'state farm' to fraudulently portray and misrepresent 'state farm' as one company.

2)  Defendants, in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used the term, word, symbols, and devices shown or used as 'state farm' to fraudulently portray, misrepresent and mischaracterize 'state farm' as a company when in fact there is no company incorporated under the name 'state farm'.