3) Defendants, in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used the term, word, symbols, and devices shown or used as 'state farm' to fraudulently portray, misrepresent and mischaracterize 'state farm' and did not clearly nor concisely state or show 'state farm' is a registered trademark of State Farm Mutual Automobile Insurance Company.

4) Defendants, in connection with goods and services in unlawful interstate transmission commercial advertising and promotion, falsely used the term, word, symbols, and devices shown or used as 'state farm' to fraudulently portray, misrepresent and mischaracterize the operational characteristics of the products sold and offered for sale failing to clearly and concisely differentiate the nature, characteristics, and / or qualities of one of the enterprises from another of the enterprises owned by State Farm Mutual Automobile Insurance Company.

5) Defendants, in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used the term, word, symbols, and devices shown or used as 'state farm' to fraudulently portray, misrepresent and mischaracterize the operational characteristics of the products sold and offered for sale failing to clearly and concisely differentiate the nature, characteristics, and / or qualities of one of the enterprises from the RICO violating enterprises participating and conducting patterns of racketeering activities and sales fraud schemes as part of the 'State Farm Group' racketeering enterprise, or conglomerate of association in fact RICO violating enterprises.

6) Defendants, in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used terms, words, symbols, and devices in order to cause confusion as to the affiliation and association between the enterprises conducted and owned by State Farm Mutual Automobile Insurance Company.

7) Defendants, in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used terms, words, symbols, and devices in order to cause confusion as to the affiliation and association between the enterprises conducted and owned by State Farm Mutual Automobile Insurance Company.

8) Defendants, in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used terms, words, symbols, and devices in order to cause confusion as to the connection, association and/or commercial activities and differences between the commercial enterprises conducted and owned by State Farm Mutual Automobile Insurance Company.

9) Defendants, in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used terms, words, symbols, and devices in order to cause confusion as to the connection, association and/or commercial activities and differences between the commercial enterprises conducted and owned by State Farm Mutual Automobile Insurance Company.

10) Defendants, in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used terms, words, symbols, and devices in order to cause confusion as to the connection, association and/or commercial activities and differences between the commercial enterprises conducted and owned by State Farm Mutual Automobile Insurance Company.

C. Defendants' messages failed to clearly state 'State Farm' was not a company, but a registered trademark owned by State Farm Mutual Automobile Insurance Company, and materially misrepresented the true operational model of independent and separately operating companies.

1) Defendants, in connection with goods and services in unlawful interstate transmissions, misrepresented the actual characteristics of the operations of the separately operating companies, and fraudulent alleged 'state farm was like a good neighbor' and 'always there' to make sure parties insured by 'state farm' never suffered a financial loss, continued to live happily, financially stable, and without any monetary, financial, emotional, or physical stress despite the tragedies associated in catastrophic losses.

2) Defendants, in connection with goods and services in unlawful interstate transmissions, misrepresented the actual characteristics of the operations of the separately operating companies, graphically misrepresenting the true corporate interests and commercial activities of the Defendants, which where to deny payments, deny viable claims, to by acts of fraud and criminality attempt to 'enforce' the terms and conditions of fraudulently sold and delivered contracts issued by financially inferior companies, of lesser values and characteristics than that offered for sale and purchased by the Plaintiffs.

3) Defendants, in connection with goods and services in unlawful interstate transmissions, failed to clearly disclose the operations of the companies using the name, terms, symbols and devices and registered marks 'state farm' owned by Defendant Auto were in fact operationally separate companies, operating independently, and selling products of different origination, value, quality, and indemnification quality/value thereby purposefully and intentionally failing to disclose material information necessary for the Plaintiffs to make a fully informed decision.

D. Plaintiffs were misled by Defendants' unlawful interstate transmissions in connection with Defendants' goods and services to believe:

  1) 'state farm' would always conduct its activities, and operate in the best interest of 'its members', and would pay for any and all losses suffered by the Plaintiffs in a timely and benevolent manner. And;
  2) 'state farm' was operationally one company. And;
  3) 'state farm' would act 'like a good neighbor' acting in a manner, and pattern of behavior to include:

      a) always act in 'good faith'. And;
      b) always have the best interest of the Plaintiffs at heart. And;
      c) would conduct its operations truthfully and without any form of deception, misrepresentation, or any act of nefarious behavior. And;
      d) take all steps and precautions to protect the Plaintiffs' assets, properties and persons. And;
      e) act in a reliable manner to protect the property, business and personal interests of the Plaintiffs. And;
      f) always act in a manner to prohibit loss or injury to Plaintiffs' property, business, and personal interests.

  4) 'state farm' would keep all promises made to the Plaintiffs.

E. Plaintiffs were exposed to more than 1,000 of the Defendants' unlawful interstate transmissions made in connection to commerce, misrepresenting the Defendants' products, goods, services and commercial activities transmitted by the Defendants in conduct and participation of the Defendants' fraudulent 'like a good neighbor' campaign. Each of the transmissions viewed by the Plaintiffs constitutes a predicate act of 'wire fraud' as defined in 18 U.S.C. § 1343.

F. Plaintiffs were damaged by reason of the Defendants' pattern of racketeering activity. Plaintiffs relied on the Defendants' fraudulent statements and transmissions made via the unlawful interstate use of wires, and the Defendants' fraudulent statements, images, use of terms, words, and symbols used by the Defendants within the unlawful interstate wire transmissions. Defendants' fraudulent interstate use of the wires, with the intent to defraud the Plaintiffs, was a proximate cause of the injuries to Plaintiffs' properties and businesses. To support Plaintiffs' proximate cause allegation:

1) The Defendants could foresee how the Defendants' unlawful interstate transmissions in connection to Defendants' commercial acts, and the Defendants' fraudulent statements, material misrepresentations of fact, purposeful omissions, mischaracterizations of corporate operations and commercial activities, and purpose failures to disclose would lead to the Plaintiffs' injuries and harm inflicted upon them, due to the confusion and related frauds caused by the Defendants' activities which prohibited the Plaintiffs from being fully informed sufficient to protect their own interests.

2) The Plaintiffs relied on the Defendants' unlawful interstate wire transmissions where Defendants made false promises, material misrepresentations, and misrepresentations of the Defendants' character and commercial conduct as part of Defendants' scheme to defraud the Plaintiffs by misleading the Plaintiffs to trust and rely on the Defendants' professional conduct, opinion, and character.   As such, the Plaintiffs could not reasonably foresee Defendants' purposefully nefarious and unlawful conduct, or the Defendants' fraudulent schemes, which resulted in the injuries sustained by the Plaintiffs.

3) The Plaintiffs could not reasonably foresee the fire event, nor could they reasonably foresee Defendants' calculated frauds, and purposefully fraudulent commercial "failures", or intended acts of negligence as part of the Defendants' fraud schemes, or the purposefully fraudulent conduct and patterns of the Defendants' criminal behavior, and racketeering activities which caused the degree of the injuries suffered by the Plaintiffs.

4) The Plaintiffs are not among the people or any party that could have foreseen the Defendants' unlawful conduct or the Plaintiffs' injuries resultant from the Defendants' enterprises' fraud schemes, and patterns of racketeering activities conducted by the conglomerate 'state farm group' enterprise or the individual Defendants acting in a conspiracy to illegally obtain monies through a continuing pattern of frauds as conducted by the Defendants, and resultant injuries suffered by the Plaintiffs due to the fraudulent, negligent and unlawful acts of the Defendants, and the Defendants' complex criminal conglomerate enterprise 'business' model.

G. Defendants' unlawful interstate wire transmissions containing the Defendants' fraudulent campaign and associated fraudulent propaganda was so pervasive, protracted and relentless, the unlawful interstate wire transmissions of the Defendants' 'like a good neighbor' jingle has become a cultural 'icon' and so commonly known, the average American can recite the words to the jingle after only hearing the melody. This clearly defines to continuity, pervasiveness, and unrelenting conduct of the Defendants' interstate conducted fraud schemes.

**161.**   On or about 05 April 2012, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, Defendant enterprise, State Farm Mutual Automobile Insurance Company released on the wires (internet websites maintained by Defendant Auto) and through the US postal service mailed to the Plaintiffs a "Annual Report to the State Farm Mutual Policy Holders" which uses confusing, and deceptive language and misrepresents the 'enterprises' of 'state farm' as one entity.   The fraudulent document sent via the mails and the wires as part of Defendants' single entity fraud scheme, fraudulent sales schemes, fraudulent sales practices, and deceptive marketing practices, which are part of the Defendants schemes to defraud Plaintiffs in order for the Defendants to unlawfully obtain monies and properties from Plaintiffs, included graphic misrepresentations to the 'enterprises' operational characteristics, misrepresented the financial status of the 'subsidiaries', and obscured, as well as, materially misrepresented the value, quality, and operational model of the 'state farm' enterprises, including Defendant Auto, Defendant Fire, Lloyds, and obscured, as well as promoted the "state farm group" fraud scheme established by, conducted by, and participated in, by all of the Defendants. The annual report also misrepresented the nature of the relationship of 'its members' and the powers and authorities of the 'members' in the operation, and operational control of the 'enterprises', including Defendant Auto, and its enterprises, including the State Farm Group conglomerate of RICO violating enterprises.   Defendants' statements also misrepresented the financial status, operation, cash reserves, usage of monies, and management of monies, as well as, the source of monies obtained by the enterprises, in conduct of the enterprises, and the related fraud schemes, and RICO violating enterprises actively conducting patterns of racketeering activities.

A. Plaintiffs relied on the truthful reporting of the financial status and operation of the enterprises as part of their decision to purchase products from 'state farm' and their decisions to 'allow' the Defendants' enterprises to 'act like a good neighbor' and to provide the Defendants' enterprises a good faith chance to 'make life go right' as the Defendants' fraudulent advertising continuously promoted was the true and factual operational model, corporate character, and desire of senior management of 'state farm' to do. Plaintiffs were directly and proximately damaged by the fraudulent

statements of the officers of 'state farm' and the fraudulent material presented by the enterprises signed by officers of 'state farm' which fraudulently misrepresented the ethical operation of the enterprises and the direct management participation of the members of the enterprises 'board of directors' as promoted within the documents sent via the mails and the wires.

**162.**   On or about 05 April 2013, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, Defendant enterprise, State Farm Mutual Automobile Insurance Company released on the wires (internet websites maintained by Defendant Auto) and through the US postal service mailed to the Plaintiffs a "Annual Report to the State Farm Mutual Policy Holders" which uses confusing, and deceptive language and misrepresents the 'enterprises' of 'state farm' as one entity.   The fraudulent document sent via the mails and the wires as part of Defendants' single entity fraud scheme, fraudulent sales schemes, fraudulent sales practices, and deceptive marketing practices, which are part of the Defendants' schemes to defraud Plaintiffs in order for the Defendants to unlawfully obtain monies and properties from Plaintiffs, included graphic misrepresentations to the 'enterprises' operational characteristics, misrepresented the financial status of the 'subsidiaries', and obscured, as well as, materially misrepresented the value, quality, and operational model of the 'state farm' enterprises, including Defendant Auto, Defendant Fire, Lloyds, and obscured, as well as promoted the "state farm group" fraud scheme established by, conducted by, and participated in, by all of the Defendants. The annual report also misrepresented the nature of the relationship of 'its members' and the powers and authorities of the 'members' in the operation, and operational control of the 'enterprises', including Defendant Auto, and its enterprises, including the State Farm Group conglomerate of RICO violating enterprises.   Defendants' statements also misrepresented the financial status, operation, cash reserves, usage of monies, and management of monies, as well as, the source of monies obtained by the enterprises, in conduct of the enterprises, and the related fraud schemes, and RICO violating enterprises actively conducting patterns of racketeering activities.

A. Plaintiffs relied on the truthful reporting of the financial status and operation of the enterprises as part of their decision to purchase products from 'state farm' and their decisions to 'allow' the Defendants' enterprises to 'act like a good neighbor' and to provide the Defendants' enterprises a good faith chance to 'make life right' as the Defendants' fraudulent advertising continuously promoted was the true and factual operational model, corporate character, and desire of senior management of 'state farm' to do. Plaintiffs were directly and proximately damaged by the fraudulent statements of the officers of 'state farm' and the fraudulent material presented by the enterprises signed by officers of 'state farm' which fraudulently misrepresented the ethical operation of the enterprises and the direct management participation of the members of the enterprises 'board of directors' as promoted within the documents sent via the mails and the wires.

**163.** On or about 05 April 2014, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, Defendant enterprise, State Farm Mutual Automobile Insurance Company released on the wires (internet websites maintained by Defendant Auto) and through the US postal service mailed to the Plaintiffs a "Annual Report to the State Farm Mutual Policy Holders" which uses confusing, and deceptive language and misrepresents the 'enterprises' of 'state farm' as one entity.   The fraudulent document sent via the mails and the wires as part of Defendants' single entity fraud scheme, fraudulent sales schemes, fraudulent sales practices, and deceptive marketing practices, which are part of the Defendants' schemes to defraud Plaintiffs in order for the Defendants to unlawfully obtain monies and properties from Plaintiffs, included graphic misrepresentations to the 'enterprises' operational characteristics, misrepresented the financial status of the 'subsidiaries', and obscured, as well as, materially misrepresented the value, quality, and operational model of the 'state farm' enterprises, including Defendant Auto, Defendant Fire, Lloyds, and obscured, as well as promoted the "state farm group" fraud scheme established by, conducted by, and participated in, by all of the Defendants. The annual report also misrepresented the nature of the relationship of 'its members' and the powers and authorities of the 'members' in the operation, and operational control of the 'enterprises', including Defendant Auto, and its enterprises, including the State Farm Group

conglomerate of RICO violating enterprises. Defendants statements also misrepresented the financial status, operation, cash reserves, usage of monies, and management of monies, as well as, the source of monies obtained by the enterprises, in conduct of the enterprises, and the related fraud schemes, and RICO violating enterprises actively conducting patterns of racketeering activities.

    A.  Plaintiffs relied on the truthful reporting of the financial status and operation of the enterprises as part of their decision to purchase products from 'state farm' and their decisions to 'allow' the Defendants' enterprises to 'act like a good neighbor' and to provide the Defendants' enterprises a good faith chance to 'make life go right' as the Defendants' fraudulent advertising continuously promoted was the true and factual operational model, corporate character, and desire of senior management of 'state farm' to do. Plaintiffs were directly and proximately damaged by the fraudulent statements of the officers of 'state farm' and the fraudulent material presented by the enterprises signed by officers of 'state farm' which fraudulently misrepresented the ethical operation of the enterprises and the direct management participation of the members of the enterprises 'board of directors' as promoted within the documents sent via the mails and the wires.

**164.**  On or about 05 April 2015, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, Defendant enterprise, State Farm Auto Mobile Insurance Company released on the wires (internet websites maintained by Defendant Auto) and through the US postal service mailed to the Plaintiffs a "Annual Report to the State Farm Mutual Policy Holders" which uses confusing, and deceptive language and misrepresents the 'enterprises' of 'state farm' as one entity. The fraudulent document sent via the mails and the wires as part of Defendants' single entity fraud scheme, fraudulent sales schemes, fraudulent sales practices, and deceptive marketing practices, which are part of the Defendants' schemes to defraud Plaintiffs in order for the Defendants to unlawfully obtain monies and properties from Plaintiffs, included graphic misrepresentations to the 'enterprises' operational characteristics, misrepresented the financial status of the 'subsidiaries', and obscured, as well as, materially misrepresented the

value, quality, and operational model of the 'state farm' enterprises, including Defendant Auto, Defendant Fire, Lloyds, and obscured, as well as promoted the "state farm group" fraud scheme established by, conducted by, and participated in, by all of the Defendants. The annual report also misrepresented the nature of the relationship of 'its members' and the powers and authorities of the 'members' in the operation, and operational control of the 'enterprises', including Defendant Auto, and its enterprises, including the State Farm Group conglomerate of RICO violating enterprises.  Defendants' statements also misrepresented the financial status, operation, cash reserves, usage of monies, and management of monies, as well as, the source of monies obtained by the enterprises, in conduct of the enterprises, and the related fraud schemes, and RICO violating enterprises actively conducting patterns of racketeering activities.

A. Plaintiffs relied on the truthful reporting of the financial status and operation of the enterprises as part of their decision to purchase products from 'state farm' and their decisions to 'allow' the Defendants' enterprises to 'act like a good neighbor' and to provide the Defendants' enterprises a good faith chance to 'make life go right' as the Defendants' fraudulent advertising continuously promoted was the true and factual operational model, corporate character, and desire of senior management of 'state farm' to do. Plaintiffs were directly and proximately damaged by the fraudulent statements of the officers of 'state farm' (including Defendant Tipsord who signed the document) and the fraudulent material presented by the enterprises signed by officers of 'state farm' which fraudulently misrepresented the ethical operation of the enterprises and the direct management participation of the members of the enterprises' 'board of directors' as promoted within the documents sent via the mails and the wires.

### *ii. Conduct of the State Farm Group's Racketeering Enterprise "A"*

**165.** Due to the RICO Defendants' constant, and persistent fraudulent television advertising used with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, Plaintiffs were induced to on or about 21 January 2016 to contact Defendant Auto's 1-800 State Farm telephone number and engaged

within an employee of RICO violating enterprise "A" to inquire about the purchase of a $5 Million-dollar homeowners insurance policy, comprised of 'structure' coverage of $1 Million dollars, and "contents" coverage of $4 Million dollars. Employee of RICO violating enterprise "A" answered the telephone call stating, "State Farm" and failed to identify the customer service representative's name, physical location, or exact company represented other than "state farm." Plaintiffs specifically requested a homeowners policy issued from "State Farm Fire and Casualty Company." Employee of RICO violating enterprise "A" then 'transferred' Plaintiffs to another 'department' whose employee answered the phone as "State Farm, how may I help you?" identifying Plaintiffs by name and confirming Plaintiffs' request. In response of the Plaintiffs' request, employee of the RICO violating enterprise "A" responded, "state farm will issue that coverage", and stated an amount to be paid for said coverage, issued from "State Farm Fire and Casualty Company."

A. Employees of the RICO violating enterprise "A", in connection with goods and services in unlawful interstate transmissions with the intent to propagate the State Farm Group's 'single entity fraud scheme', Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, caused the unlawful interstate distribution of signals and sounds containing false statements, pretenses, and promises with the intent to defraud, and in execution of the State Farm Group's fraud schemes participated and conducted activities designed to defraud the Plaintiffs in order to obtain monies by fraud, and fraudulent means, and pretenses by unlawful interstate usage of wire transmissions and communications in interstate commerce with knowledge said fraudulent material would be received by the Plaintiffs. Factually:

1) Employees of the RICO violating enterprise "A", in connection with goods and services in unlawful interstate transmissions, used in commerce the terms, words, and combination thereof in a series of statements including the word 'state farm' to cause confusion, and to cause mistake, in order to deceive Plaintiffs, as to the affiliation of one company owned by Defendant Auto from that of another company owned by Defendant Auto.

2) Employees of the RICO violating enterprise "A", in connection with goods and services in unlawful interstate transmissions, used in commerce the terms, words, and combination thereof in a series of statements including the word 'state farm' in order to deceive Plaintiffs, as to the origin of products, goods, and services.

3) Employees of the RICO violating enterprise "A", in connection with goods and services used in unlawful interstate transmissions in commerce the terms, words, and combination thereof in a series of statements including the word 'state farm'

in order to deceive Plaintiffs, as to the origin of goods, and commercial activities by another person.

4) Employees of the RICO violating enterprise "A", in promotion of goods and services used in unlawful interstate transmissions in commerce the terms, words, and combination thereof in a series of statements including the word 'state farm' in order to deceive Plaintiffs, as to the origin of products, goods, and services.

B. Employees of the RICO violating enterprise "A"'s messages unlawfully transmitted in unlawful interstate transmissions failed clearly state 'State Farm' was not a company, but a registered trademark owned by State Farm Mutual Automobile Insurance Company, and materially misrepresented the true operational model of independent and separately operating companies.

1) Defendants' employees' unlawful interstate transmissions in connection with the Defendants' goods, services, and commercial activities misrepresented the actual characteristics of the operations of the separately operating companies, and fraudulently alleged 'state farm would issue" when 'state farm' cannot issue anything as 'state farm' is not a company.

2) Defendants' employees' unlawful interstate transmissions in connection with the Defendants' goods, services, and commercial activities misrepresented the actual characteristics of the operations of the separately operating companies, graphically misrepresenting the true corporate interests and commercial activities of the Defendants, which were to deny payments, deny viable claims, to by acts of fraud and criminality attempt to 'enforce' the terms and conditions of fraudulently sold and delivered contracts issued by financially inferior companies, of lesser values and characteristics than that offered for sale and purchased by the Plaintiffs.

3) Defendants' employees' unlawful interstate transmissions in connection with the Defendants' goods, services, and commercial activities failed to clearly disclose the operations of the companies and misrepresented the characteristics of the commercial activities of the separate and independent companies using the name 'state farm' in a confusing manner in order to sell products of different origination, value, quality, and indemnification quality/value thereby acting purposefully, intentionally, negligently and fraudulently by failing to disclose material information necessary for the Plaintiffs to make a fully informed decision.

C. Plaintiffs were misled to believe, due to the Defendants' unlawful interstate transmissions in connection with the Defendants' fraudulent statements, acts, and

fraudulent use of words, and terms which affected interstate commerce in connection to the Defendants' goods, services, and commercial activities:

1) 'state farm' would deliver a $5 Million-dollar homeowners insurance contract, comprised of 'structure' coverage of $1 Million dollars, and "contents" coverage of $4 Million dollars issued by State Farm Fire and Casualty Company. And;

2) 'state farm' was operationally one company. And;

3) 'state farm' would act in the best interest of the Plaintiffs to protect the Plaintiffs' property from catastrophic loss. And.

4) 'state farm' was a company of high character and moral standing due to its 'more than 90 years in business, protecting the property of its members."

5) 'state farm' would keep all promises made to the Plaintiffs.

D. Plaintiffs were exposed to the Defendants' fraudulent messages made by the Defendants' unlawful interstate transmissions in connection with the Defendants' goods, services, and commercial activities transmitted by the Defendants' RICO violating Enterprise "A" employees.   The unlawful interstate transmissions of Defendants' fraudulent statements over the telephone wires constitute a predicate act of 'wire fraud' as defined in 18 U.S.C. § 1343.

E. Plaintiffs were damaged by reason of the Defendants' interstate commerce affecting pattern of racketeering activity. Plaintiffs relied on the Defendants' fraudulent statements and transmissions made unlawfully via Defendants' fraudulent interstate use of the wires, and the fraudulent statements, misrepresentation of terms, and words, used by the Defendants within the interstate wire transmissions.   Defendants' fraudulent interstate use of the wires, with the intent to defraud the Plaintiffs in a manner that affected interstate commerce, was a proximate cause of the injuries to Plaintiffs' properties and businesses.   To support Plaintiffs' proximate cause allegation:

1) The Defendants could foresee how the Defendants' unlawfully transmitted interstate and purposefully fraudulent statements, and material misrepresentations of fact, as well as, purposeful omissions, mischaracterizations of corporate operations and commercial activities, and purpose failures to disclose would lead to the Plaintiffs' injuries and harm inflicted upon them, due to the confusion and related frauds caused by the

Defendants' activities which prohibited the Plaintiffs from being fully informed sufficient to protect their own interests.

2) The Plaintiffs relied on the Defendants' unlawfully transmitted interstate false promises, material misrepresentations, and misrepresentations of the Defendants' character and commercial conduct which misled the Plaintiffs to trust and rely on the Defendants' professional conduct, opinion, and character. As such, the Plaintiffs could not reasonably foresee Defendants' purposefully nefarious and unlawful conduct, which resulted in the injuries sustained by the Plaintiffs.

3) The Plaintiffs could not reasonably foresee the fire event, nor could they reasonably foresee Defendants' calculated frauds, and purposefully fraudulent commercial "failures", or intended acts of negligence as part of the Defendants' interstate fraud schemes, or the Defendants' purposefully fraudulent conduct and interstate commerce affecting patterns of the Defendants' criminal behavior, and racketeering activities which caused the degree of the injuries suffered by the Plaintiffs.

4) The Plaintiffs are not among the people or any party that could have foreseen the Defendants' interstate commerce affecting unlawful conduct or the Plaintiffs' injuries resultant from the Defendants' enterprises' unlawful interstate fraud schemes, and patterns of racketeering activities conducted by the conglomerate 'state farm group' enterprise or the individual Defendants acting in a conspiracy to illegally obtain monies through a continuing pattern of frauds as conducted by the Defendants, and resultant injuries suffered by the Plaintiffs due to the fraudulent, negligent and unlawful acts of the Defendants, and the Defendants' complex criminal conglomerate enterprise 'business' model.

**166.**   Over a two-week period of time after 21, January 2016, Plaintiffs received four phone calls from various employees with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, of RICO violating Enterprise "A", each identifying themselves as "calling from 'State Farm'". Each RICO violating Enterprise "A" employee, in participation of the State Farm Group's single entity fraud scheme repeated sole use of the term 'state farm'. Defendant Auto's employees stated, "the best deals were to be had, when they "'bundled' products", and offered Plaintiffs "automobile insurance policies covering Plaintiffs' four vehicles" issued by 'State Farm'". On 18 February, 2016, Plaintiffs succumb to Defendants' fraudulent sales practices and purchased two contracts from the Defendants' RICO violating enterprises, a homeowners

insurance contract from State Farm Fire and Casualty Company in the amount of $5. Million and an automobile insurance contract from State Farm Automobile Insurance Company.

A. Employees of the RICO violating enterprise "A", in connection with goods and services in unlawful interstate transmissions with the intent to propagate the State Farm Group's 'single entity fraud scheme', caused the distribution of signals and sounds containing false statements, pretenses, and promises with the intent to defraud, and in execution of the State Farm Group's fraud schemes participated and conducted activities designed to defraud the Plaintiffs in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of wire transmissions and communications in interstate commerce with knowledge said fraudulent material would be received by the Plaintiffs. Factually:

   1) Employees of the RICO violating enterprise "A", in connection with goods and services in unlawful interstate transmissions, used in commerce the terms, words, and combination thereof in a series of statements including the word 'state farm' to cause confusion, and to cause mistake, in order to deceive Plaintiffs, as to the affiliation of one company owned by Defendant Auto from that of another company owned by Defendant Auto.

   2) Employees of the RICO violating enterprise "A", in connection with goods and services in unlawful interstate transmissions, used in commerce the terms, words, and combination thereof in a series of statements including the word 'state farm' in order to deceive Plaintiffs, as to the origin of products, goods, and services.

   3) Employees of the RICO violating enterprise "A", in connection with goods and services in unlawful interstate transmissions, used in commerce the terms, words, and combination thereof in a series of statements including the word 'state farm' in order to deceive Plaintiffs, as to the origin of goods, and commercial activities of and by another person.

   4) Employees of the RICO violating enterprise "A", in connection with goods and services in unlawful interstate transmissions, used in commerce the terms, words, and combination thereof in a series of statements including the word 'state farm' in order to deceive Plaintiffs, as to the origin of products, goods, and services.

B. Employees of the RICO violating enterprise "A"'s messages in connection with goods and services in unlawful interstate transmissions failed to clearly state 'State Farm' was not a company, but a registered trademark owned by State Farm Mutual Automobile Insurance Company, and materially misrepresented the true operational model of independent and separately operating companies.

   1) Defendants' employees, in connection with goods and services in unlawful interstate transmissions, misrepresented the actual characteristics of the operations of the separately operating companies, and fraudulently alleged,

"state farm would issue" when 'state farm' cannot issue anything as 'state farm' is not a company.

2) Defendants' employees, in connection with goods and services in unlawful interstate transmissions, misrepresented the actual characteristics of the operations of the separately operating companies, graphically misrepresenting the true corporate interests and commercial activities of the Defendants, which were to deny payments, deny viable claims, to by acts of fraud and criminality attempt to 'enforce' the terms and conditions of fraudulently sold and delivered contracts issued by financially inferior companies, of lesser values and characteristics than that offered for sale and purchased by the Plaintiffs.

3) Defendants' employees, in connection with goods and services in unlawful interstate transmissions, failed to clearly disclose the operations of the companies and misrepresented the characteristics of the commercial activities of the separate and independent companies using the name 'state farm' in a confusing manner in order to sell products of different origination, value, quality, and indemnification quality/value thereby acting purposefully, intentionally, negligently and fraudulently by failing to disclose material information necessary for the Plaintiffs to make a fully informed decision.

4) Defendants' employees, in connection with goods and services in unlawful interstate transmissions, failed to clearly disclose the operations of the companies and misrepresented the characteristics of the commercial activities of the separate and independent companies using the name 'state farm' in a confusing manner in order to sell products of different origination, value, quality, and indemnification quality/value thereby acting purposefully, intentionally, negligently and fraudulently by failing to disclose the existence of State Farm Lloyds.

5) Defendants' employees, in connection with goods and services in unlawful interstate transmissions, failed to clearly disclose the operations of the companies and misrepresented the characteristics of the commercial activities of the separate and independent companies using the name 'state farm' in a confusing manner in order to sell products of different origination, value, quality, and indemnification quality/value thereby acting purposefully, intentionally, negligently and fraudulently by failing to disclose or discuss what a "Lloyds-Plan" was, or its existence.

6) Defendants' employees, in connection with goods and services in unlawful interstate transmissions, failed to clearly disclose the operations of the companies and misrepresented the characteristics of the commercial activities of the separate and independent companies using the name 'state farm' in a confusing manner in order to sell products of different origination, value, quality, and indemnification quality/value thereby acting purposefully,

intentionally, negligently and fraudulently by failing to disclose "state farm's" operations in Texas pertaining to sales of insurance products.

7) Defendants' employees, in connection with goods and services in unlawful interstate transmissions, failed to clearly disclose the operations of the companies and misrepresented the characteristics of the commercial activities of the separate and independent companies using the name 'state farm' in a confusing manner in order to sell products of different origination, value, quality, and indemnification quality/value thereby acting purposefully, intentionally, negligently and fraudulently by failing to disclose the lawful requirement of the State of Texas regarding the issuance or sales of insurance products in the State of Texas.

8) Defendants' employees, in connection with goods and services in unlawful interstate transmissions, failed to clearly disclose the operations of the companies and misrepresented the characteristics of the commercial activities of the separate and independent companies using the name 'state farm' in a confusing manner in order to sell products of different origination, value, quality, and indemnification quality/value thereby acting purposefully, intentionally, negligently and fraudulently by failing to disclose the existence of State Farm Lloyds and State Farm Lloyds, Inc.

9) Defendants' employees, in connection with goods and services in unlawful interstate transmissions, failed to clearly disclose the operations of the companies and misrepresented the characteristics of the commercial activities of the separate and independent companies using the name 'state farm' in a confusing manner in order to sell products of different origination, value, quality, and indemnification quality/value thereby acting purposefully, intentionally, negligently and fraudulently by failing to disclose the role of State Farm Lloyds.

10) Defendants' employees, in connection with goods and services in unlawful interstate transmissions, failed to clearly disclose the operations of the companies and misrepresented the characteristics of the commercial activities of the separate and independent companies using the name 'state farm' in a confusing manner in order to sell products of different origination, value, quality, and indemnification quality/value thereby acting purposefully, intentionally, negligently and fraudulently by failing to disclose the role of State Farm Lloyds, Inc.

C. Plaintiffs were misled by the Defendants' fraudulent statements made in connection with Defendants' goods and services in unlawful interstate transmissions' purposeful fraud scheme designed to fraudulently obtain monies by false pretenses, fraudulent promises, and fraudulent representations, to believe:

1) 'state farm' would deliver a $5 Million-dollar homeowners insurance contract, comprised of 'structure' coverage of $1 Million dollars, and "contents" coverage of $4 Million dollars issued by State Farm Fire and Casualty Company. And;

2) 'state farm' was operationally one company. And;

3) 'state farm' would act in the best interest of the Plaintiffs to protect the Plaintiffs' property from catastrophic loss. And.

4) 'state farm' was a company of high character and moral standing due to its 'more than 90 years in business, protecting the property of its members."

5) 'state farm' would keep all promises made to the Plaintiffs.

D.   Plaintiffs were exposed to the Defendants' fraudulent messages made in connection with Defendants' goods and services in unlawful interstate transmissions' purposeful fraud scheme designed to fraudulently obtain monies by false pretenses, fraudulent promises, and fraudulent representations, transmitted by the Defendants' RICO violating Enterprise "A" employees.  The transmissions of Defendants' fraudulent statements over the telephone wires constitutes a predicate act of 'wire fraud' as defined in 18 U.S.C. § 1343.

E.   Plaintiffs were damaged by reason of the Defendants' pattern of racketeering activity. Plaintiffs relied on the Defendants' fraudulent statements and transmissions made by the unlawful transmission via the interstate usage of wires, and the fraudulent statements, misrepresentation of terms, and words, used by the Defendants within the wire transmissions affected interstate commerce.  Defendants' fraudulent interstate use of the wires, with the purposefully fraudulent schemes with the focused intent of unlawfully obtaining money by repeated acts of fraud, used to defraud the Plaintiffs, was a proximate cause of the injuries to Plaintiffs' properties and businesses.  To support Plaintiffs' proximate cause allegation:

1) The Defendants could foresee how the Defendants' unlawful use of the interstate wires to execute their schemes of fraud comprising fraudulent statements, material misrepresentations of fact, purposeful omissions, mischaracterizations of corporate operations and commercial activities, and purpose failures to disclose would lead to the Plaintiffs' injuries and harm inflicted upon them, due to the confusion and related frauds caused by the Defendants' racketeering activities which prohibited the Plaintiffs from being fully informed sufficient to protect their own interests.

2) The Plaintiffs relied on the Defendants' false promises, material misrepresentations, and misrepresentations of the Defendants' character and commercial conduct which misled the Plaintiffs to trust and rely on the Defendants' professional conduct, opinion, and character. As such, the Plaintiffs could not reasonably foresee Defendants' purposefully nefarious and unlawful conduct, which resulted in the injuries sustained by the Plaintiffs.

3) The Plaintiffs could not reasonably foresee the fire event, nor could they reasonably foresee Defendants' calculated frauds, and purposefully fraudulent commercial "failures", or intended acts of negligence as part of the Defendants' interstate fraud schemes, or the Defendants' purposefully fraudulent conduct and interstate commerce affecting patterns of the Defendants' criminal behavior, and racketeering activities which caused the degree of the injuries suffered by the Plaintiffs.

4) The Plaintiffs are not among the people or any party that could have foreseen the Defendants' interstate commerce affecting unlawful conduct or the Plaintiffs' injuries resultant from the Defendants' enterprises' unlawful interstate fraud schemes, and patterns of racketeering activities conducted by the conglomerate 'state farm group' enterprise or the individual Defendants acting in a conspiracy to illegally obtain monies through a continuing pattern of frauds as conducted by the Defendants, and resultant injuries suffered by the Plaintiffs due to the fraudulent, negligent and unlawful acts of the Defendants, and the Defendants' complex criminal conglomerate enterprise 'business' model.

**167.** On or about 05 April 2016, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, Defendant enterprise, State Farm Mutual Automobile Insurance Company released on the wires (internet websites maintained by Defendant Auto) and through the US postal service mailed to the Plaintiffs a "Annual Report to the State Farm Mutual Policy Holders" which uses confusing, and deceptive language and misrepresents the 'enterprises' of 'state farm' as one entity. The fraudulent document sent via the mails and the wires as part of Defendants' single entity fraud scheme, fraudulent sales schemes, fraudulent sales practices, and deceptive marketing practices, which are part of the Defendants' schemes to defraud Plaintiffs in order for the Defendants to unlawfully obtain monies and properties from Plaintiffs, included graphic misrepresentations to the 'enterprises' operational characteristics, misrepresented the financial status of the 'subsidiaries', and obscured, as well as, materially misrepresented the value, quality, and operational model of the 'state farm' enterprises, including Defendant

Auto, Defendant Fire, Lloyds, and obscured, as well as promoted the "state farm group' fraud scheme established by, conducted by, and participated in, by all of the Defendants.   The annual report also misrepresented the nature of the relationship of 'its members' and the powers and authorities of the 'members' in the operation, and operational control of the 'enterprises', including Defendant Auto, and its enterprises, including the State Farm Group conglomerate of RICO violating enterprises.   Defendants' statements also misrepresented the financial status, operation, cash reserves, usage of monies, and management of monies, as well as, the source of monies obtained by the enterprises, in conduct of the enterprises, and the related fraud schemes, and RICO violating enterprises actively conducting patterns of racketeering activities.

   A.  Plaintiffs relied on the truthful reporting of the financial status and operation of the enterprises as part of their decision to purchase products from 'state farm' and their decisions to 'allow' the Defendants' enterprises to 'act like a good neighbor' and to provide the Defendants' enterprises a good faith chance to 'make life go right' as the Defendants' fraudulent advertising continuously promoted was the true and factual operational model, corporate character, and desire of senior management of 'state farm' to do. Plaintiffs were directly and proximately damaged by the fraudulent statements of the officers of 'state farm' (including Defendant Tipsord who signed the document) and the fraudulent material presented by the enterprises signed by officers of 'state farm' which fraudulently misrepresented the ethical operation of the enterprises and the direct management participation of the members of the enterprises' 'board of directors' as promoted within the documents sent via the mails and the wires.

### *iii. Conduct of the State Farm Group's Racketeering Enterprise "B"*

**168.**  On 12, April 2016, Plaintiffs received by the mails, sent by Defendant Auto with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, to their residence located at 605 Lake Kiowa Drive West, Gainesville, Texas, a letter from Defendant Auto stating in the envelope was the Homeowners insurance contract purchased from 'state farm'.   The contract fraudulently

delivered by the mails, was a homeowners 'policy' from "State Farm Lloyds" in the amount of $756,650.  The contract product unlawfully delivered and fraudulently 'sold' as part of the Defendants' 'bait and switch' fraud scheme, and racketeering enterprises, was approximately $4.3 Million dollars less in value than that 'sold' to the Plaintiffs, from a company other than that quoted to and purchased by the Plaintiffs, and from a company of sufficiently lesser quality, value, and asset base, resulting in a 'contract' that was markedly different and inferior to the product offered to the Plaintiffs, by the sales enterprises, and purchased by the Plaintiffs from the Defendants' enterprises.  The receipt of fraudulently sold 'Lloyds contract' via the mails constitutes a predicate act pursuant to 18 U.S.C. § 1341.

A. Plaintiffs relied on the Defendants' enterprises to properly and lawfully deliver the product purchased by the Plaintiffs from the Defendants' enterprises.

B. Plaintiffs sent a letter to Defendant Auto's headquarters in Bloomington, Illinois regarding the issue and asking for assistance.

### iv. Joint Conduct of the State Farm Group's Racketeering Enterprises "A" and "B"

169. On 12, April 2016, Plaintiffs, after receiving by the mails, sent by Defendant Auto to their residence located at 605 Lake Kiowa Drive West, Gainesville, Texas, the fraudulently sold contract, called 'state farm's' 1 800 customer service telephone number listed on the letter sent from Defendant Auto within the envelope containing the homeowners insurance contract purchased from 'state farm'.  Plaintiffs stated, the contract fraudulently delivered by the mails, was a homeowners 'policy' from "State Farm Lloyds" in the amount of $756,650 and was approximately $4.2 Million dollars less in value than the $ 5 Million State Farm Fire and Casualty Company Homeowners contract 'sold' to the Plaintiffs by the sales enterprises of 'state farm'. Immediately, the 'customer service' representative with the intent to defraud the Plaintiffs, in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, answered the phone call using 'state farm, how may I help you?', and after Plaintiffs stated the issue, the representative stated 'that was issued in error, let me fix that', and stated 'the computer system has you insured for $ 5 Million issued from State Farm Fire".   Plaintiffs requested the correct contract be mailed to them and was assured by the customer service representative that 'state farm would send that out immediately'.

A. Plaintiffs relied on the Defendants' enterprises to properly and lawfully deliver the product purchased by the Plaintiffs from the Defendants' enterprises, and relied upon the statements of the customer service representative the 'issue' would be cleared shortly, and the Plaintiffs were in fact insured by 'state farm for $5 Million'.

**170.**   Defendant Auto and Defendant fire are negligent for failure to deliver product offered and sold to Plaintiffs during the February 2016 sales activities.

**171.**   On or about 12, June 2016, Plaintiffs, from their residence located at 605 Lake Kiowa Drive West, Gainesville, Texas, called Defendant Auto's 'state farm's 1 800 customer service telephone number listed on the letter sent from Defendant Auto within the envelope containing the homeowners insurance contract purchased from 'state farm'. Plaintiffs stated, the contract fraudulently delivered by the mails, was a homeowners 'policy' from "State Farm Lloyds" in the amount of $756,650 and was approximately $4.2 Million dollars less in value than the $ 5 Million State Farm Fire and Casualty Company Homeowners contract 'sold' to the Plaintiffs by the sales enterprises of 'state farm'. Immediately, the 'customer service' representative with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, answered the phone call using 'state farm, how may I help you?', and after Plaintiffs stated the issue, the representative stated, "we know contract was issued in error… you are insured for $5 Million," and "the other contract has been canceled and you are insured by 'state farm fire'." Further, the employee of Defendants' enterprises stated 'the Fire contract was sent to you in May". Plaintiffs requested the correct contract be re-mailed to them and was assured by the customer service representative that 'state farm would send that out immediately'.

A. Plaintiffs relied on the Defendants' enterprises to properly and lawfully deliver the product purchased by the Plaintiffs from the Defendants' enterprises, and relied upon the statements of the customer service representative the 'issue' would be cleared shortly, and the Plaintiffs were in fact insured by 'state farm for $5 Million'.

**172.**   Defendant Auto and Defendant fire are negligent for failure to deliver product offered and sold to Plaintiffs during the February 2016 sales activities, and after the assurance a 'correct contract' would be mailed on June 12th, 2016.

**173.**   On or about 28, July 2016, Plaintiffs, from their residence located at 605 Lake Kiowa Drive West, Gainesville, Texas, called Defendant Auto's 'state farm's' 1 800 customer service telephone number listed on the letter sent from Defendant Auto within the envelope containing the homeowners insurance contract purchased from 'state farm'. Plaintiffs stated the contract fraudulently delivered by the mails, was a homeowners 'policy' from "State Farm Lloyds" in the amount of $756,650 and was approximately $4.2 Million dollars less in value than the $ 5 Million State Farm Fire and Casualty Company Homeowners contract 'sold' to the Plaintiffs by the sales enterprises of 'state farm'. Immediately, the 'customer service' representative with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, answered the phone call using 'state farm, how may I help you?', and after Plaintiffs stated the issue of the two previous phone calls, and the Defendants' two failed attempts to properly mail the correct contract, the representative stated "_we know contract was issued in error… you are insured for $5 Million,_" and _"the other contract has been canceled and you are insured by 'state farm fire'_ adding, _"don't worry, 'state farm has you covered, and I'll get that escalated to find out why you haven't received that"._ Further, the employee of Defendants' enterprises stated "_the Fire contract was sent to you in May, and once again on July 1st, perhaps it's not through the mail yet"._ Plaintiffs requested the correct contract be re-mailed to them and was assured by the customer service representative that 'state farm would send that out immediately'.

    A.   Plaintiffs relied on the Defendants' enterprises to properly and lawfully deliver the product purchased by the Plaintiffs from the Defendants' enterprises, and relied upon the statements of the customer service representative the 'issue' would be cleared shortly, and the Plaintiffs were in fact insured by 'state farm for $5 Million'.

**174.**   Defendant Auto and Defendant fire are negligent for failure to deliver product offered and sold to Plaintiffs during the February 2016 sales activities, and after the assurance a 'correct contract' would be mailed on June 12th, 2016 which they apparently failed to do.

**175.**   On or about 15, August 2016, Plaintiffs, from their residence located at 605 Lake Kiowa Drive West, Gainesville, Texas, called Defendant Auto's 'state farm's' 1 800 customer service telephone number listed on the letter sent from Defendant Auto within the envelope

containing the homeowners insurance contract purchased from 'state farm'. Plaintiffs stated the contract fraudulently delivered by the mails, was a homeowners 'policy' from "State Farm Lloyds" in the amount of $756,650 and was approximately $4.2 Million dollars less in value than the $ 5 Million State Farm Fire and Casualty Company Homeowners contract 'sold' to the Plaintiffs by the sales enterprises of 'state farm'. Immediately, the 'customer service' representative with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, answered the phone call using 'state farm, how may I help you?', and after Plaintiffs stated the issue of the incorrect contract, and the now two failed mailing attempts, stating the Plaintiffs have still not received the correct contract sold to them.   The Defendants' employee stated, "don't worry, state farm has you covered, and if there is a loss you will be covered for $5 Million." Plaintiffs' cellphone lost connection and Plaintiffs were not able to reestablish the phone call to customer service.

    A.  Plaintiffs relied on the Defendants' enterprises to properly and lawfully deliver the product purchased by the Plaintiffs from the Defendants' enterprises, and relied upon the statements of the customer service representative the 'issue' would be cleared shortly, and the Plaintiffs were in fact insured by 'state farm for $5 Million'.

**176.**   Defendant Auto and Defendant fire are negligent for failure to deliver product offered and sold to Plaintiffs during the February 2016 sales activities, and after the assurance a 'correct contract' would be mailed on June 12th, 2016, and several times thereafter.

**177.**   On or about 25, September 2016, Plaintiffs, from their residence located at 605 Lake Kiowa Drive West, Gainesville, Texas, called Defendant Auto's 'state farm's' 1 800 customer service telephone number listed on the letter sent from Defendant Auto within the envelope containing the Homeowners insurance contract purchased from 'state farm'. Plaintiffs asked about the status of the now four times mailed 'correct contract', and asked for the contract to be emailed or faxed.   The Defendants' employee with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, stated, that was beyond their ability but would request that be done, and stated "don't" worry, state farm has you covered" assuring the Plaintiffs 'state farm always pays its claims'.

    A. Plaintiffs relied on the Defendants' enterprises to properly and lawfully deliver the product purchased by the Plaintiffs from the Defendants' enterprises, and relied upon the statements of the customer service representative the 'issue' would be cleared shortly, and the Plaintiffs were in fact insured by 'state farm for $5 Million'.

**178.** Defendant Auto and Defendant fire are negligent for failure to deliver product offered and sold to Plaintiffs during the February 2016 sales activities, and fraudulent ongoing assurances a 'correct contract' would be mailed, emailed, or faxed.

**179.** On or about 21, October 2016, Plaintiffs, from their residence located at 605 Lake Kiowa Drive West, Gainesville, Texas, once again called Defendant Auto's 'state farm's' 1 800 customer service telephone number listed on the letter sent from Defendant Auto within the envelope containing the homeowners insurance contract purchased from 'state farm'. Plaintiffs stated the issues and asked about the email or fax copies and the Defendants' employee, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, stated "we know the contract was issued in error… you are insured for $5 Million," and "the other contract has been canceled and you are insured by 'state farm fire." The employee was unable to determine what department was supposed to forward the emailed contract to the Plaintiffs but 'escalated the call' to a supervisor for a return call to the Plaintiffs.

    A. Plaintiffs relied on the Defendants' enterprises to properly and lawfully deliver the product purchased by the Plaintiffs from the Defendants' enterprises, and relied upon the statements of the customer service representative the 'issue' would be cleared shortly, and the Plaintiffs were in fact insured by 'state farm for $5 Million'.

**180.** Defendant Auto and Defendant fire are negligent for failure to deliver product offered and sold to Plaintiffs during the February 2016 sales activities, and after the assurance a 'correct contract' would be mailed on June 12th, 2016.

**181.** On or about 15, November 2016, Plaintiffs, while at their residence located at 605 Lake Kiowa Drive West, Gainesville, Texas, noticed the 'supervisor' had failed to call back and once again called Defendant Auto's 'state farm's' 1 800 customer service telephone number listed on the letter sent from Defendant Auto within the envelope containing the Homeowners insurance contract purchased from 'state farm'. Plaintiffs were told by a

customer service representative of "state farm" with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, they would have to contact the 800 number to schedule an 'onsite' survey to get a hard copy of the correct contract as it had been so long since the contract's sale date, and 'state farm' needed to make sure there was no 'change' in the property.  Plaintiffs were told "don't' worry it's just a process state farm uses, in case…." and "state farm fire has you insured for $5 Million."

    A. Plaintiffs relied on the Defendants' enterprises to properly and lawfully deliver the product purchased by the Plaintiffs from the Defendants' enterprises, and relied upon the statements of the customer service representative the 'issue' would be cleared shortly, and the Plaintiffs were in fact insured by 'state farm for $5 Million'.

**182.** Defendant Auto and Defendant fire are negligent for failure to deliver product offered and sold to Plaintiffs during the February 2016 sales activities, and after the assurance a 'correct contract' would be mailed on June 12th, 2016.

**183.** On or about 1, December 2016, Plaintiffs, from their residence located at 605 Lake Kiowa Drive West, Gainesville, Texas, called Defendant Auto's 'state farm's' 1 800 customer service telephone number listed on the letter sent from Defendant Auto within the envelope containing the Homeowners' insurance contract purchased from 'state farm'.  Plaintiffs attempted to schedule a 'home inspection' and were advised to make sure they had moved all of the items they intended to have in the home from their storage locations as "if there isn't $4 Million in contents in the house, the inspector might cancel the policy".  Defendants' employee, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, stated until Plaintiffs "asked for the inspection, 'state farm fire' has you covered for $5 Million in coverage".  Plaintiffs worked from that date until January 15th, 2017 to consolidate all of the items in storage into their residence, which in the end, resulted in additional losses in excess of $1.2 Million more than the $5 Million coverage.

    A. Plaintiffs relied on the Defendants' enterprises to properly and lawfully deliver the product purchased by the Plaintiffs from the Defendants' enterprises, and relied upon

the statements of the customer service representative the 'issue' would be cleared shortly, and the Plaintiffs were in fact insured by 'state farm for $5 Million'.

**184.** Defendant Auto and Defendant fire are negligent for failure to deliver product offered and sold to Plaintiffs during the February 2016 sales activities, and after the assurance a 'correct contract' would be mailed on June 12th, 2016.

**185.** On or about 15, January 2017, Plaintiffs, from their residence located at 605 Lake Kiowa Drive West, Gainesville, Texas, called Defendant Auto's 'state farm's' 1 800 customer service telephone number listed on the letter sent from Defendant Auto within the envelope containing the Homeowners insurance contract purchased from 'state farm'. Plaintiffs requested the 'home inspection' and requested a scheduled date for such to occur. Defendants' employee, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, told the Plaintiffs "don't worry, state farm has you covered" and Plaintiff Vanderbol stated they now had more in the house than was on the original homeowners contract purchased from "state farm fire". The Defendants' employee stated, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, she would note the file, and "don't worry, 'state farm always pays, and to make sure that change was addressed on the renewal of the policy."

   A. Plaintiffs relied on the Defendants' enterprises to properly and lawfully deliver the product purchased by the Plaintiffs from the Defendants' enterprises, and relied upon the statements of the customer service representative the 'issue' would be cleared shortly, and the Plaintiffs were in fact insured by 'state farm for $5 Million'.

**186.** Defendant Auto and Defendant fire are negligent for failure to deliver product offered and sold to Plaintiffs during the February 2016 sales activities, and after the assurance a 'correct contract' would be mailed on June 12th, 2016.

### *v. Continuing Direct Conduct of the State Farm Group Racketeering Enterprise to cause confusion and deception to deceive and inhibit the Plaintiffs.*

**187.** On June 2nd, 2016 Defendant Auto, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud,

acting in a conspiracy, with the State Farm Group enterprise, Defendant Fire, and Defendants Tipsord, Farney, Smith, Harbert, and Wey, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, jointly conducted and participated in a national advertising campaign known as "***help life go right***" commercial promotion and national advertising campaign, with the intent to propagate the State Farm Group's 'single entity fraud scheme'. Defendant Auto, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, acting in a conspiracy, with the State Farm Group enterprise, Defendant Fire, and Defendants Tipsord, Farney, Smith, Harbert, and Wey, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, jointly in conduct and participation caused the interstate distribution of writings, signs, signals, pictures and sounds containing false statements, pretenses, and promises with the intent to defraud, and execution of a scheme to defraud in order to obtain monies by fraud, and fraudulent means, and pretenses by unlawful interstate usage of wire, radio, and television transmissions and communications in interstate commerce with knowledge said fraudulent material would be received by the Plaintiffs. The Defendants' fraudulent marketing campaign was first viewed by the Plaintiffs on or about June 12th, 2016 and was viewed by television and internet streaming services, while Plaintiffs were at their home located at 605 Kiowa Drive West, Lake Kiowa Texas, or other residences of the Plaintiffs including those in Denton Texas, Gainesville, Texas, McKinney Texas, or at the residences of friends and family located in McKinney Texas, Las Vegas, Nevada, or while traveling, on the following approximate dates, and locations:

    a) June 12th, 2016 – Lake Kiowa, Texas.
    b) August 5th, 2016 – Lake Kiowa, Texas.
    c) September 18th, 2016 – McKinney, Texas.
    d) October 28th, 2016 – Tucumcari, New Mexico.
    e) October 29th, 2016 – Flagstaff, Arizona.
    f) October 31st, 2016 – Las Vegas, Nevada
    g) November 3rd, 2016 - Las Vegas, Nevada.
    h) December 11th, 2016 – Lake Kiowa, Texas.
    i) December 25th, 2016 Lake Kiowa, Texas.
    j) February 14th, 2017 – Lake Kiowa, Texas.
    k) March 5th, 2017 – Lake Kiowa, Texas.
    l) February 16th, 2017- Lake Kiowa, Texas.
    m) April 1-18th 2017- Denton, Texas.

n) June 18th 2017 – September 18th 2018 – McKinney, Texas
o) October 1 – December 21st 2018 – Pottsboro, Texas. (YouTube)
p) December 24th-27th 2018 – Milton, Florida.
q) January 4th – February 17th 2019 Pottsboro, Texas. (YouTube)
r) February 18th -21st 2019 Bainbridge, Georgia.
s) February 24th – April 24th 2019 Pottsboro, Texas. (YouTube)
t) July 1 – November 18th, 2019 Frisco, Texas (YouTube)

A. The Fraudulent interstate transmissions and communications broadcast with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, consisted of writings, signs, signals, pictures and sounds transmitted by the wires with the average duration of thirty seconds each transmission. During the aforementioned period of time, Defendants caused the unlawful interstate transmissions of hundreds of thousands of hours of fraudulent materials which constantly and continuously exposed the Plaintiffs to the Defendants' unlawfully transmitted interstate fraudulent messages designed to defraud the Plaintiffs in order to obtain monies by fraud, and fraudulent means, and false pretenses.   Factually:

1) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in connection with goods and services in unlawful interstate transmission of commercial advertising and promotion, used the term, word, symbols, and devices shown or used as 'state farm' to fraudulently portray and misrepresent 'state farm' as one company.

2) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used the term, word, symbols, and devices shown or used as 'state farm' to fraudulently portray, misrepresent and mischaracterize 'state farm' as a company when in fact there is no company incorporated under the name 'state farm'.

3) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used the term, word, symbols, and devices shown or used as 'state farm' to fraudulently portray, misrepresent and mischaracterize 'state farm' and did not clearly nor concisely state or show 'state farm' is a registered trademark of State Farm Mutual Automobile Insurance Company.

4) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in connection with goods and services in unlawful interstate transmission commercial advertising and promotion, falsely used the term, word, symbols, and devices shown or used as 'state farm' to fraudulently portray, misrepresent and mischaracterize the operational characteristics of the products sold and offered for sale failing to clearly and concisely differentiate the nature, characteristics, and / or qualities of one of the enterprises from another of the enterprises owned by State Farm Mutual Automobile Insurance Company.

5) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used the term, word, symbols, and devices shown or used as 'state farm' to fraudulently portray, misrepresent and mischaracterize the operational characteristics of the products sold and offered for sale failing to clearly and concisely differentiate the nature, characteristics, and / or qualities of one of the enterprises from the RICO violating enterprises participating and conducting patterns of racketeering activities and sales fraud schemes as part of the 'State Farm Group' racketeering enterprise, or conglomerate of association in fact RICO violating enterprises.

    b) Factually, Defendants, and Defendants' enterprises, and Defendants' association in fact enterprises, never intend to 'make things right' and with knowledge:

        i.   acted in a manner to fail to restore Plaintiffs after a loss, to the same financial or economic status, as Plaintiffs held before a loss due to the Defendants' acts, activities, and commercial activities.

        ii.  conducted commercial activities in a manner to inhibit Plaintiffs' recovery from loss of financial and economic status, as Plaintiffs held or were able to reasonably obtain due to the Defendants' acts, activities, and commercial activities.

        iii. participated in racketeering activities to purposefully inhibit, and delay the Plaintiffs' recovery from loss of financial and economic status, as Plaintiffs held or were able to reasonably obtain due to the Defendants' acts, activities, and commercial activities.

        iv. Defendants were actively participating and conducting racketeering activities, which were designed to never 'make things right' for any party that purchased ANY insurance product from the Defendants' enterprises.

6) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used terms, words, symbols, and devices in order to cause confusion as to the affiliation and association between the enterprises conducted and owned by State Farm Mutual Automobile Insurance Company.

7) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used terms, words, symbols, and devices in order to cause confusion as to the affiliation and association between the enterprises conducted and owned by State Farm Mutual Automobile Insurance Company.

8) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used terms, words, symbols, and devices in order to cause confusion as to the connection, association and/or commercial activities and differences between the commercial enterprises conducted and owned by State Farm Mutual Automobile Insurance Company.

9) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used terms, words, symbols, and devices in order to cause confusion as to the connection, association and/or commercial activities and differences between the commercial enterprises conducted and owned by State Farm Mutual Automobile Insurance Company.

10) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud in connection with goods and services in unlawful interstate transmission in commercial advertising and promotion, falsely used terms, words, symbols, and devices in order to cause confusion as to the connection, association and/or commercial activities and differences between the commercial enterprises conducted and owned by State Farm Mutual Automobile Insurance Company.

B. Defendants' messages failed to clearly state 'State Farm' was not a company, but a registered trademark owned by State Farm Mutual Automobile Insurance Company,

and materially misrepresented the true operational model of independent and separately operating companies.

1) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud in connection with goods and services in unlawful interstate transmissions, misrepresented the actual characteristics of the operations of the separately operating companies, and fraudulently alleged 'state farm always made things 'right''' and 'was always there' to make sure parties insured by 'state farm' never suffered a financial loss, continued to live happily, financially stable, and without any monetary, financial, emotional, or physical stress despite the tragedies associated in catastrophic losses.

2) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud in connection with goods and services in unlawful interstate transmissions, misrepresented the actual characteristics of the operations of the separately operating companies, graphically misrepresenting the true corporate interests and commercial activities of the Defendants, which were to deny payments, deny viable claims, by acts of fraud and criminality attempt to 'enforce' the terms and conditions of fraudulently sold and delivered contracts issued by financially inferior companies, of lesser values and characteristics than that offered for sale and purchased by the Plaintiffs.

3) Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud in connection with goods and services in unlawful interstate transmissions, failed to clearly disclose the operations of the companies using the name, terms, symbols and devices and registered marks 'state farm' owned by Defendant Auto were in fact operationally separate companies, operating independently, and selling products of different origination, value, quality, and indemnification quality/value thereby purposefully and intentionally failing to disclose material information necessary for the Plaintiffs to make a fully informed decision.

C. Plaintiffs were misled by Defendants' unlawful interstate transmissions broadcast with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in connection with Defendants' goods and services to believe:

1) 'state farm' would always conduct in activities, and operate in the best interest of 'its members', and would pay for any and all losses suffered by the Plaintiffs in a timely and benevolent manner. And;

2) 'state farm' was operationally one company. And;

3) 'state farm' would act 'to make things right' acting in a manner, and pattern of behavior to include:
    i.    always act in 'good faith'. And;
    ii.   always have the best interest of the Plaintiffs at heart. And;
    iii.   would conduct its operations truthfully and without any form of deception, misrepresentation, or any act of nefarious behavior. And;
    iv.   take all steps and precautions to protect the Plaintiffs' assets, properties and persons. And;
    v.   act in a reliable manner to protect the property, business and personal interests of the Plaintiffs. And;
    vi.   always act in a manner to prohibit loss or injury to Plaintiffs' property, business, and personal interests.

4) 'state farm' would keep all promises made to the Plaintiffs.

5) 'state farm' would 'make things right', despite all of the commercial activities of the Defendants that had been fraudulently represented to the Plaintiffs as 'errors' and were allegedly in the process of being 'corrected' in the 'claims' process.

D. Plaintiffs were exposed to more than 100 of the Defendants' unlawful interstate transmissions made with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in connection to commerce, misrepresenting the Defendants' products, goods, services and commercial activities transmitted by the Defendants in conduct and participation of the Defendants' fraudulent 'make things right' campaign. Each of the transmissions viewed by the Plaintiffs constitutes a predicate act of 'wire fraud' as defined in 18 U.S.C. § 1343.

E. Plaintiffs were damaged by reason of the Defendants' pattern of racketeering activity. Plaintiffs relied on the Defendants' fraudulent statements and transmissions made via the unlawful interstate use of wires, and the Defendants' fraudulent statements, images, use of terms, words, and symbols used by the Defendants within the unlawful interstate wire transmissions. Defendants' fraudulent interstate use of the wires, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, was a proximate cause of the injuries to Plaintiffs' properties and businesses. To support Plaintiffs' proximate cause allegation:

1) The Defendants could foresee how the Defendants' unlawful interstate transmissions with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in connection to Defendants' commercial acts, and the Defendants' fraudulent statements, material misrepresentations of fact, purposeful omissions, mischaracterizations of corporate operations and commercial activities, and purpose failures to disclose would lead to the Plaintiffs' injuries and harm inflicted upon them due to the confusion and related frauds caused by the Defendants' activities which prohibited the Plaintiffs from being fully informed sufficient to protect their own interests.

2) The Plaintiffs relied on the Defendants' unlawful interstate wire transmissions where Defendants made false promises, material misrepresentations, and misrepresentations of the Defendants' character and commercial conduct as part of Defendants' scheme to defraud the Plaintiffs by misleading the Plaintiffs to trust and rely on the Defendants' professional conduct, opinion, and character.   As such, the Plaintiffs could not reasonably foresee Defendants' purposefully nefarious and unlawful conduct, or the Defendants' fraudulent schemes, which resulted in the injuries sustained by the Plaintiffs.

3) The Plaintiffs could not reasonably foresee the Defendants' calculated frauds, and purposefully fraudulent commercial "failures", or intended acts of negligence as part of the Defendants' fraud schemes, or the purposefully fraudulent conduct and patterns of the Defendants' criminal behavior, and racketeering activities which caused the degree of the injuries suffered by the Plaintiffs.

4) The Plaintiffs are not among the people or any party that could have foreseen the Defendants' unlawful conduct with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, or the Plaintiffs' injuries resultant from the Defendants' enterprises' fraud schemes, and patterns of racketeering activities conducted by the conglomerate 'state farm group' enterprise or the individual Defendants acting in a conspiracy to illegally obtain monies through a continuing pattern of frauds as conducted by the Defendants, and resultant injuries suffered by the Plaintiffs due to the fraudulent, negligent and unlawful acts of the Defendants, and the Defendants' complex criminal conglomerate enterprise 'business' model.

**188.**   _**Conduct of the State Farm Group's Racketeering Enterprise "C"**_

**189.**   Plaintiffs suffer catastrophic loss on February 17th, 2017 and make a claim to "state farm" for restitution from loss. Factually, State Farm Agent Jim Goldsworthy's employee, Tammy Gilbreath was at the 605 Kiowa Drive West, Gainesville, Texas fire scene during the event

and presented a business card from herself and from "*State Farm Fire Claims*" specialist Chuck Pedroso to Plaintiff Quinn during the Fire event.

**190.**   On or about February 19th, 2017, at 605 Kiowa Drive West, Gainesville TX, State Farm Group RICO violating employee of Enterprise "B", Chuck Pedroso, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, acting on behalf of Defendant Fire, provided Plaintiffs a 'business card' and identifies himself as 'Chuck with State Farm' directly participating in the single entity fraud scheme. Defendants' employee, Pedroso, further stated he was 'a claims adjuster with "State Farm'', and was there 'to make things right', and 'would act to help 'State Farm' process the claim.' Defendants' employee, Pedroso's business card presented the 'state farm tri-logo' (modified by Defendants to conduct the State Farm Group Fraud Schemes) showing Pedroso as a 'claims specialist' with 'State Farm Fire Claims" located at "PO box 106169, Atlanta Georgia (an address box listed to Defendant Fire). Factually,

    A. Defendants' employees' activities are tied directly to the Defendants' criminal enterprise with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, schemes, and shows the long running pattern of behaviors and racketeering activities.

        1) Defendant Pedroso, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, offered to, and presented a fraudulent document in commerce which graphically and fraudulently used symbols, words, terms, and names, in commerce, and in connection with the goods and services of products fraudulently sold by the State Farm Group racketeering enterprise, in order to cause confusion, mistake, deception, as to Pedroso's affiliation (a person), and his corporate affiliations, and the commercial activities of 'state farm' and the Defendants, as well as, the intention of the enterprises.

        2) Defendants' employee, Pedroso's card shows interstate travel in conduct of Defendants' fraud scheme, and participation within the Defendants' fraud schemes, and racketeering enterprises in violation of 18 U.S.C. § 1951 and section 1952. Including:

            a) Pedroso affects commerce in furtherance of Defendants' single entity fraud scheme.

            b) Pedroso acting in participation with the Defendants' single entity trade name fraud scheme, managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises'

schemes and acts of fraud, affects commerce in the furtherance of Defendants' enterprises for purposes of furthering unlawful activities such as:

    i.    extortion

    ii.    robbery

    iii.    fraud

    c)  Pedroso, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in participation with unlawful activity, travels in interstate commerce to:

    i.    promote unlawful activity

        1)  extortion

        2)  robbery

        3)  fraud

    ii.    manage and establish unlawful activity

        1)  robbery

        2)  extortion

        3)  fraud

    iii.    facilitate and promote the racketeering enterprises' ability to conduct future frauds, extortion, robbery, and other criminalities.

3) Defendants' employee, Pedroso's statements with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, show participation, promotion, conduct and carrying on of the Defendants' fraud schemes, and participation in the Defendants' conspiracy to conduct unlawful activities as defined 18 U.S.C. § 1952(b), a violation of 18 U.S.C. § 1951(a). Including:

    a)  Pedroso's actions and activities with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, shows participation, facilitation, and furtherance of the Defendants' plan and the interlocked enterprises' conspiracy, and Pedroso's own act of conspiracy to affect commerce by:

    i.    robbery

    ii.    extortion

4) Defendants' employees' card and statements shows his participation within the Defendants' fraud schemes with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, and the Defendants' management and participation, as well as conduct of the ongoing fraud schemes, and racketeering activities of the participating RICO violating enterprises. Including:

      a)  Pedroso's actions and activities with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, shows participation, facilitation, and furtherance of the Defendants' plan and the interlocked enterprises conspiracy, and Pedroso's own act of conspiracy to affect commerce by:

          i.   robbery

         ii.   extortion

B.  Plaintiffs relied on Pedroso's representations that he was a 'fire claims adjuster' and were misled by Pedroso's business card's statement and misleading use of words, terms and statement "State Farm Fire Claims" which mischaracterized the enterprises, and the products of the enterprises. Pedroso's statements with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, continually and in a confusing manner referring to 'state farm' mislead Plaintiffs to believe the enterprises were processing a claim under the $5 Million "State Farm Fire and Casualty Contract" sold to the Plaintiffs instead of the actual conduct of the enterprise which was to fraudulently and criminally, through any means necessary, to fraudulently 'affirm' the 'validity' of the verbally canceled "Lloyds" contract.

C.  Plaintiffs were directly and proximately damaged by the misrepresentations, and the carrying on of the enterprises' fraud and racketeering enterprises by Defendants' enterprise employee, Pedroso.

    1)  Plaintiffs had no way of knowing exactly what 'state farm' Pedroso was employed by, nor which 'state farm' enterprise activity he was conducting or participating within.

    2)  The Defendants directly knew the misuse of terms, and the purposeful misclassification and mischaracterization of the products and commercial activities of the enterprises would lead to the Plaintiffs' injury, as this was the purposeful conduct of the enterprises themselves.

    3)  Plaintiffs were not party to any group that could logically differentiate Pedroso's or the enterprises' conduct or commercial activities.

**191.**    On or about February 27th, 2017, Plaintiffs were called to a meeting at the offices of third-party agent of State Farm, Jim Goldsworthy, located at 113 E California Street, Gainesville Texas. In participation and in conduct of the meeting were 'enterprise' employees Allan Severance, and Chuck Pedroso. In attendance at the meeting were third-party agent of Defendant Auto, Jim Goldsworthy, and employee of Goldsworthy, Tammy Gilbreath, and Plaintiffs Quinn and Vanderbol. The meeting was called by the Defendants' enterprises

with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in order to 'discuss the fire claim' and the process of obtaining payment for the loss suffered on February 17th, 2017.   During the meeting, State Farm Group RICO violating employee, Chuck Pedroso, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, acting as an agent or employee of Defendant Fire, and Enterprise "C", extorts Plaintiffs by threat of removal of benefits, monies, and residency attempting to force Plaintiffs into signing a 'subrogation' agreement allowing the jointly acting racketeering enterprises controlled by Defendants Tipsord, Farney, Smith, Harbert, and Wey participating and conducting the State Farm Group racketeering enterprise fraud schemes' in an unlawful attempt to cause the enforcement of the fraudulently delivered 'Lloyds contract' in order to obscure the Defendants' earlier sales fraud schemes, and patterns of racketeering behavior.   Defendants' RICO violating enterprise employee, Pedroso participated and conducted the single entity fraud schemes, patterns of racketeering activities, and gross criminalities by continuously and nefariously misrepresenting the commercial activities of the Defendants in acts of criminality and fraudulent usage of statements, terms, words and phrases, such as, "*state farm requires you to sign this subrogation agreement*", "*state farm won't pay you anything if you don't sign this*", "*your contract requires you to sign this*", "*if you don't sign this agreement, you will be in breach of contract*", and "*I'm concerned claims will stop paying for your hotel if you don't sign this...*" and "*I've seen people thrown out..... by "claims" and not paid for not signing this*", and finally, "*sign this, it's mandatory, if you don't you won't get paid, and likely be sued*". Plaintiffs felt threatened and feared the actions of the Defendants if they failed to act as demanded by the Defendants' employee, Mr. Pedroso.   Further, Mr. Pedroso, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, then stated "if 'state farm' claims won't pay you the total amount, 'state farm' will hire an attorney to recover and pay you any and all amounts you lost in this claim."   Plaintiffs finally and reluctantly relented and signed the 'subrogation' agreement under duress after obtaining Mr. Pedroso's promise that 'no party would enter the property or remove anything from the property without (plaintiffs) consent, attendance, and permission at the time of the removal, and only with (plaintiffs) approval."

A. The statements of the Defendants' enterprises' employees comprise acts of:

**a)** **Fraud,**

1) The Defendants' RICO violating enterprise employee, Pedroso, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, participated and conducted the Defendants' RICO violating fraud schemes by making fraudulent statements, used words, statements, terms, symbols, and devices, as well as combinations thereof, in connection with Defendants' goods and services affect interstate commerce, due to the interstate usage and transmissions of false and/or misleading descriptions of fact, as well as, false and/or misleading representations of fact which caused Plaintiffs' confusion, and caused Plaintiffs to make mistakes.   Further, RICO violating enterprises' employee Pedroso's activities with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud usage of false statements, and patterns of racketeering activities were conducted to deceive the Plaintiffs as to the affiliation, and association between Defendants' persons, employees, and enterprises, as well as association and commercial activities of Defendants' goods, services, and commercial activities of persons, Defendants' RICO violating enterprises employees, and the commercial activities and characteristics of the enterprises authorities, rights, and lawful governance, for the purposes of defrauding the Plaintiffs in order to illegally obtain monies or property from the Plaintiffs. The statements made by the RICO violating enterprises' employee with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, included, but was not limited to:

   a) use of terms, name, word, and symbol "state farm' in a purposefully confusing and deceptive manner.

   b) use of terms, and words 'state farm fire claims', "claims", and 'fire claims' in a purposefully confusing and deceptive manner.

   c) mischaracterization of commercial activities in order to cause confusion, mistake, or deceive as to the affiliation, connection and association of:

      i.    state farm
      ii.   Defendant Fire
      iii.  Defendant Auto
      iv.   Lloyds
      v.    the RICO violating enterprises known as "enterprises A through G"

2)   Defendants' RICO violating enterprises' employee, Pedroso, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, acted in conduct and participation of the pattern of racketeering activities used confusing, convoluted and material misrepresentations of fact, and materially misrepresentations of the Defendants' commercial activities and failed to:

   a)   clearly state he was acting on behalf of Defendant Fire in an attempt to unlawfully enforce the terms and conditions of the racketeering enterprises' fraudulent sales activities and associated wire frauds.

   b)   clearly state he was acting on behalf of Lloyds in an attempt to unlawfully enforce the terms and conditions of the racketeering enterprises' fraudulent sales activities and associated wire frauds.

   c)   clearly state he was acting on behalf of Lloyds in an attempt to unlawfully enforce the terms and conditions of the racketeering enterprises' unlawfully delivered fraudulently sold product as part of the RICO violating enterprises' fraudulent sales activities and associated mail frauds.

   d)   clearly state to Pedroso's affiliation (a person), and his corporate affiliations, and the commercial activities of 'state farm' and the Defendants, as well as, the intention of the enterprises.

   e)   clearly state, acknowledge or address the fact Lloyds lacked any authority to enforce the unlawfully delivered 'Lloyds contract', as an act of mail fraud, due to:

      i.   the Plaintiffs' June 12, 2016, declaration the contract was invalid as it was not the product bought and paid for 'State Farm Fire and Casualty Company Homeowners Contract valued at $5 Million.

      ii.   the Defendants' RICO violating enterprises' admission and statements that 'the Lloyds contract was issued in error." made on 12, June, 2016.

      iii.   the Defendants' RICO violating enterprises' admission and statements that 'the Lloyds contract was issued in error." made on 28, July, 2016.

      iv.    the Defendants' RICO violating enterprises' admission and statements that 'the Lloyds contract was issued in error." made on 15, August, 2016.

      v.    the Defendants' RICO violating enterprises' admission and statements that ''state farm' has you covered for $5 Million 'made on 25, September, 2016.

      vi.    the Defendants' RICO violating enterprises' admission and statements that ''state farm' has you covered for $5 Million 'made on 21, October, 2016.

      vii.    the Defendants' RICO violating enterprises' admission and statements that ''state farm' has you covered for $5 Million 'made on 15, November, 2016.

      viii.    the Defendants' RICO violating enterprises' admission and statements that ''state farm' has you covered for $5 Million 'made on 1, December, 2016.

      ix.    the Defendants' RICO violating enterprises' admission and statements that "the Lloyds contract was canceled and 'state farm' has you covered for $5 Million 'made on 12, June, 2016.

      x.    the Defendants' RICO violating enterprises' admission and statements that "the Lloyds contract was issued in error" and "'state farm' has you covered for $5 Million " made on 28, August, 2016.

      xi.    the Defendants' RICO violating enterprises' admission and statements that "the Lloyds contract was issued in error", "don't worry, 'state farm' has you covered' and "'state farm' has you covered for $5 Million "made on 15, January, 2017.

3)  Plaintiffs were made to believe, due to the RICO violating Defendants' employee's fraudulent statements and criminalities:

    a)  if the Plaintiffs did not participate in the "processes required by 'claims'" (meaning Defendants' claims department's process and procedures) the Plaintiffs would not receive restitution in the amount of $5 Million, or any amount, as previously assured to the Plaintiffs by the promises made by the conspiring racketeering enterprises made to the Plaintiffs from March of 2016 through February of 2017 .

b) Defendants' enterprises required Plaintiffs' compliance in order to obtain payment.

c) Plaintiffs and 'claims agents' were at the mercy of the Defendants' enterprises claims department's, and the process undertaken was required by state and federal law.

d) Defendants would hire an attorney to recover any losses the Plaintiffs incurred should 'state farm claims' not pay $5 Million as promised, and contracted.

4) Defendants' employee's commerce affecting activities with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, violated 18 U.S.C. § 1951 and 18 U.S.C. §1952, in travel and use of commerce facilities, by conspiracy in participation in furtherance of a series of Defendants' enterprises plans to defraud Plaintiffs in violation of several sections of 18 U.S.C. § 1961, and in violation of 18 U.S.C. § 1952(b), as defined in 18 U.S.C. § 1952(b), and 18 U.S.C. § 1961(1)

**b)   Extortion**

1) Defendants' enterprises' employee Pedroso, in conduct and participation with the racketeering activities of the State Farm Group fraud and racketeering schemes, used fraudulent messages, statements, words, acts of violence, intimidation and threats designed to rob, extort and defraud the Plaintiffs in order to obtain monies and property by fraud, and fraudulent means, and false pretenses.

a)   Including the:
i.   the threat of violence, "kick you out of hotel"
ii.   the fraudulent statement "this form is mandatory"
iii.   the fraudulent statement "the law requires you to sign this", indicating potential civil and criminal legal action should the Plaintiffs not sign.
iv.   the fraudulent statement "state farm will pay you"
v.   the fraudulent and intimidating statement "I'm concerned what claims would do to you."
vi.   the fraudulent statement "you have to sign this, it's required in the contract you signed" (inferring to the fraudulently sold, and allegedly replaced by Defendant Fire contract, "Lloyds contract"
vii.   the fraudulent statement "claims will sort out the payment issue" referring the difference in contracts continuing "but, not if you don't sign this".
viii.   the extortive statement "don't sign this, don't get paid".

2) By the Defendants' employee's fraudulent and coercive statements made with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, Plaintiffs were made to believe, due to the RICO violating Defendants' employee's fraudulent statements and criminalities:

   i. if the Plaintiffs did not conduct the processes required by 'claims' they would not receive restitution in the amount of $5 Million as previously assured to the Plaintiffs by the racketeering enterprises.

   ii. Defendants' enterprises required Plaintiffs' compliance in order to obtain payment from Defendant Fire, and should they not comply, they would be physically removed from their living accommodations, and left financially destitute.

   iii. Plaintiffs and 'claims agents' were at the mercy of the Defendants' enterprises claims departments, and the process undertaken was required by state and federal, "law, and at the end of the day, "State Farm" would make sure Plaintiffs recovered their losses totaling $5 million due to the fire event, from state farm, at all cost, at the expense of 'state farm'"

3) Defendants' employee's commerce affecting activities violated 18 U.S.C. § 1951 and 18 U.S.C. §1952, in travel and use of commerce facilities, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, by conspiracy in participation in furtherance of a series of Defendants' enterprises plans to defraud Plaintiffs in violation of several sections of 18 U.S.C. § 1961, and in violation of 18 U.S.C. § 1952(b), as defined in 18 U.S.C. § 1952(b), and 18 U.S.C. § 1961(1)

c) **Robbery of personal property rights**

1) In furtherance of the Defendants' enterprises' plan to defraud the Plaintiffs by unlawful, and criminal activities, the Defendants' RICO violating enterprises with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, required the Plaintiffs' compliance in document form, in order to obtain the appearance of propriety and legality by obtaining the Plaintiffs' signature on the demanded and coerced 'subrogation agreement' which due to extortion, intimidation and under duress, the Plaintiffs executed, after providing a 'no admittance notice' to the Defendants' employees.    The fraudulently and coercively obtained 'subrogation agreement' was executed by force, and intimidation in order to rob the Plaintiffs of personal property rights to their fire scene, their

automobile insurance policy, and automobiles so the Defendants' enterprises could conduct the enterprises' complex denial of claims fraud schemes, and to inhibit / prohibit the Plaintiffs from obtaining evidence, or maintaining evidence of the negligence of the builder and the Defendants who jointly insured both the negligent builder, and the Plaintiffs individually.

2) Defendants' employees' commerce affecting activities violated 18 U.S.C. § 1951 and 18 U.S.C. §1952, in travel and use of commerce facilities, by conspiracy in participation in furtherance of a series of Defendants' enterprises plans to defraud Plaintiffs in violation of several sections of 18 U.S.C. § 1961, and in violation of 18 U.S.C. § 1952(b), as defined in 18 U.S.C. § 1952(b), and 18 U.S.C. § 1961(1)

### d)   Robbery of incorporeal personal property rights

1) In furtherance of the Defendants' enterprises' plan to defraud the Plaintiffs by unlawful, and criminal activities, the Defendants' RICO violating enterprises with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, required the Plaintiffs' compliance in document form, in order to obtain the appearance of propriety and legality by obtaining the Plaintiffs' signature on the demanded and coerced 'subrogation agreement' which due to extortion, intimidation and under duress, the Plaintiffs executed, after providing a 'no admittance notice' to the Defendants' employees.    The fraudulently and coercively obtained 'subrogation agreement' was executed by force, and intimidation in order to rob the Plaintiffs of personal corporeal property rights within their automobile insurance policy, in order to deny the Plaintiffs an ability to inhibit the Defendants' enterprises' complex denial of claims fraud schemes, and to inhibit / prohibit the Plaintiffs from obtaining evidence, or maintaining evidence of the negligence of the builder and the Defendants who jointly insured both the negligent builder, and the Plaintiffs individually

2) Defendants' employees' commerce affecting activities violated 18 U.S.C. § 1951 and 18 U.S.C. §1952, in travel and use of commerce facilities, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, by conspiracy in participation in furtherance of a series of Defendants' enterprises plans to defraud Plaintiffs in violation of several sections of 18 U.S.C. § 1961, and in violation of 18 U.S.C. § 1952(b), as defined in 18 U.S.C. § 1952(b), and 18 U.S.C. § 1961(1)

B. In total, during the February 27th, 2017 meeting, Plaintiffs were intimidated by the conduct of the racketeering enterprises' blatant and obviously threating statements,

and patterns of racketeering activities.   Defendants' employee Pedroso, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, directly violated:

    i.    18 U.S.C. § 1961(1) in a way by extorting the Plaintiffs to sign the 'subrogation agreement', individually and, as part of Defendants';

    1) criminal schemes.
    2) racketeering activities as part of:
      a) the state farm fraud scheme.
      b) the state farm group RICO violating enterprise.
      c) Lloyds' participation in state farm group RICO violating enterprises:
        i. Enterprise A.
        ii. Enterprise B.
        iii. Enterprise C.
        iv. Enterprise D.

    ii.    18 U.S.C. § 1951 (a) in a way by extorting Plaintiffs in a way to affect commerce, individually and, as part of Defendants';

    1) criminal schemes.
    2) racketeering activities as part of:
      a) the state farm fraud scheme.
      b) the state farm group RICO violating enterprises.
      c) Lloyds' participation in state farm group RICO violating enterprises:
        i. Enterprise A.
        ii. Enterprise B.
        iii. Enterprise C.
        iv. Enterprise D.

    iii.    18 U.S.C. § 1951 (a) in a way by conspiring in furtherance of a plan in violation of 18 U.S.C. § 1951, and 1952, individually and, as part of Defendants';

    1) criminal schemes.
    2) racketeering activities as part of:
      a) the state farm fraud scheme.
      b) the state farm group RICO violating enterprises.
      c) Lloyds' participation in state farm group RICO violating enterprises:
        i. Enterprise A.
        ii. Enterprise B.
        iii. Enterprise C.
        iv. Enterprise D.

    iv.    18 U.S.C. § 1951 (a) in a way by threatening Plaintiffs' property by an act of emotional and physical intimidation, and violence alluding

to the Plaintiffs' 'removal' from the hotel, individually and, as part of Defendants';
- 1) criminal schemes.
- 2) racketeering activities as part of:
    - a) the state farm fraud scheme.
    - b) the state farm group RICO violating enterprises.
    - c) Lloyds' participation in state farm group RICO violating enterprises:
        - i. Enterprise A.
        - ii. Enterprise B.
        - iii. Enterprise C.
        - iv. Enterprise D.

v.   18 U.S.C. § 1951 (a) in a way by robbery of Plaintiffs' personal property rights affecting Plaintiffs' personal property and corporeal property rights through:
- ii.   conspiracy to extort and defraud the Plaintiffs in participation with:
    - 1) the state farm fraud scheme.
    - 2) the state farm group RICO violating enterprise.
    - 3) Lloyds' participation in state farm group RICO violating enterprises:
        - a) Enterprise A.
        - b) Enterprise B.
        - c) Enterprise C.
        - d) Enterprise D.
        - e) Enterprise E.

- iii.   conspiracy to commit robbery, in order to defraud Plaintiffs in participation with:
    - 1) the state farm fraud scheme.
    - 2) the state farm group RICO violating enterprises.
    - 3) Lloyds' participation in state farm group RICO violating enterprises:
        - a) Enterprise A.
        - b) Enterprise B.
        - c) Enterprise C.
        - d) Enterprise D.
        - e) Enterprise E.

- iv.   conspiracy to robbery in furtherance of a plan in participation with:
    - 1) the state farm fraud scheme.
    - 2) the state farm group RICO violating enterprises.
    - 3) Lloyds' participation in state farm group RICO violating enterprises:

a) Enterprise A.
b) Enterprise B.
c) Enterprise C.
d) Enterprise D.

v.   in furtherance of Defendants plan to defraud the Plaintiffs as part of Defendants';

    1) criminal schemes.
    2) racketeering activities as part of:
       a) the state farm fraud scheme.
       b) the state farm group RICO violating enterprises.
       c) Lloyds' participation in state farm group RICO violating enterprises:
          i.   Enterprise A.
          ii.   Enterprise B.
          iii.   Enterprise C.
          iv.   Enterprise D.

vi.   18 U.S.C. § 1952 in use of a commercial facility (defined as Jim Goldsworthy's 'state farm' agency office, a separate commercial facility) to:

a) commit a crime of violence to further the unlawful activity of extortion.
b) commit a crime of violence to further the unlawful activity of robbery to include:
    1) robbery of Plaintiffs' personal property
       a) directly, and;
       b) by conspiracy.
    2) robbery of Plaintiffs' corporeal personal property (rights to property both residential and contractual to the verbal contract with Defendant Fire, and the automobile contract with Defendant Auto)
       a) directly, and
       b) by conspiracy.

c) carry on unlawful activity
    1) robbery. And;
    2) extortion.

d) facilitate the future acts of unlawful activities of:
    1) robbery of the Plaintiffs' personal property including the:
       a) April 7th, 2017 theft of the Plaintiffs' fireplace
       b) June 28 2017 theft of Plaintiffs' automobile policy. and

      c)   August 10, 2017 theft of Plaintiffs' corporeal rights under the State Farm Automobile Insurance policy purchased from Defendant Auto.

  2)  future extortion with the intent to rob Plaintiffs of personal property including the:

    a)  extortion and robbery of the Plaintiffs' personal property including the:

      i.   April 7th, 2017 theft of the Plaintiffs' fireplace

      ii.  June 28th, 2017 theft of Plaintiffs' automobile policy. and

      iii.  August 10, 2017 theft of Plaintiffs' corporeal rights under the State Farm Automobile Insurance policy purchased from Defendant Auto.

**192.**  On February 27th, 2017, Plaintiffs received from Defendant Auto, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, via the internet wires an email copy of the fraudulently sold 'Lloyds" contract which was significantly different than the copy fraudulently mailed to Plaintiffs by Defendant Auto on April 12, 2016. Defendant Auto's copy changed the benefits of the Plaintiffs, and also granted the Defendants' broader 'authorities' than the original fraudulently delivered "Lloyds contract' and was in every aspect markedly and significantly different from the "State Farm Fire" contract sold, and described to the Plaintiffs. Defendants' fraudulent usage of the wires in furtherance of a scheme to defraud the Plaintiffs, and illegally obtain 'property' is a predicate act of wire fraud pursuant to 18 U.S.C. § 1343.

**193.**  On or about 05 April 2017, Defendants' enterprise, State Farm Mutual Automobile Insurance Company with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, released on the wires (internet websites maintained by Defendant Auto) and through the US postal service mailed to the Plaintiffs a "Annual Report to the State Farm Mutual Policy Holders" which uses confusing, and deceptive language and misrepresents the 'enterprises' of 'state farm' as one entity. The fraudulent document sent via the mails and the wires as part of Defendants' single entity fraud scheme, fraudulent sales schemes, fraudulent sales practices, and deceptive marketing practices, which are part of the Defendants' schemes to defraud Plaintiffs in order for the

Defendants to unlawfully obtain monies and properties from Plaintiffs, included graphic misrepresentations to the 'enterprises' operational characteristics, misrepresented the financial status of the 'subsidiaries', and obscured, as well as, materially misrepresented the value, quality, and operational model of the 'state farm' enterprises, including Defendant Auto, Defendant Fire, Lloyds, and obscured, as well as promoted the "state farm group" fraud scheme established by, conducted by, and participated in, by all of the Defendants. The annual report also misrepresented the nature of the relationship of 'its members' and the powers and authorities of the 'members' in the operation, and operational control of the 'enterprises', including Defendant Auto, and its enterprises, including the State Farm Group conglomerate of RICO violating enterprises.  Defendants' statements also misrepresented the financial status, operation, cash reserves, usage of monies, and management of monies, as well as, the source of monies obtained by the enterprises, in conduct of the enterprises, and the related fraud schemes, and RICO violating enterprises' actively conducting patterns of racketeering activities.

A. Plaintiffs relied on the truthful reporting of the financial status and operation of the enterprises as part of their decision to purchase products from 'state farm' and their decisions to 'allow' the Defendants' enterprises to 'act like a good neighbor' and to provide the Defendants' enterprises a good faith chance to 'make life right' as the Defendants' fraudulent advertising continuously promoted was the true and factual operational model, corporate character, and desire of senior management of 'state farm' to do. Plaintiffs were directly and proximately damaged by the fraudulent statements of the officers of 'state farm' (including Defendant Tipsord who signed the document) and the fraudulent material presented by the enterprises signed by officers of 'state farm' which fraudulently misrepresented the ethical operation of the enterprises and the direct management participation of the members of the enterprises' 'board of directors' as promoted within the documents sent via the mails and the wires.

### *vii. Conduct of the State Farm Group's Racketeering Enterprise "D"*

**194.**    Shortly after February 27th, 2017, Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, despite being in possession of Plaintiffs' notice of no entry' given to the Defendants on February 27th, 2017, and after giving the Plaintiffs assurances that 'no one would enter' the Plaintiffs' residence or property, or remove any materials from said property, and no meeting would be held at the property without the Plaintiffs' notification in advance, approval and attendance, Defendants' enterprises identified as Enterprise D and Enterprise E hired a third party attorney (hereinafter identified as "participating without disclosure agent 1"), most likely hired by Lloyds, in order to illegally enforce the 'Lloyds' contract under the fraudulently obtained under duress and extortion 'subrogation agreement'. On or about April 7th, 2017, Lloyds, third party agent "participating without disclosure agent 1" acting along with Defendants' enterprises' employee Pedroso, and Randy and Shelly Baker (negligent builders insured by 'state farm'), and unidentified others illegally trespassed onto Plaintiffs' property without their consent or notice, and robbed the Plaintiffs of personal property constituting a fireplace, which was the source of the fire event caused by the negligence of the builders, Randy and Shelly Baker.    Defendants' agents, employees and conspiring builders were confronted by Jeremy with Lake Kiowa Security and told they were not to remove any property from the scene and told they were trespassing on the property. Defendants' agent, "participating without disclosure agent 1" then stated "if we don't take this now, they (meaning Plaintiffs) won't get paid, and we'll cut off benefits to them immediately" in an act to extort, and rob the Plaintiffs.  In response, Jeremy contacted Cooke County Texas, Sheriff's Department.

**195.**    During the on or about April 7th, 2017 illegal trespass and robbery event conducted by Lloyds, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, third party agent "participating without disclosure agent 1" acting along with Defendants' enterprises' employee Pedroso, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, and Randy and Shelly Baker (negligent builders insured by 'state farm'), and unidentified others, enacted in an attempt to illegally enforce the fraudulent 'Lloyds contract.'  Cooke County Sheriff's Deputy Fuller responded and

Defendants' agents and employees provided the fraudulently obtained by extortion 'subrogation agreement' to show 'ability' to be at the site.  Deputy Fuller took all of the parties' names and left the scene after making a report and due to the frauds and criminal misrepresentations of the Defendants' employees and agents, determined the matter to be a 'civil issue'.

**196.** On or about April 7th, 2017, during the robbery and extortion event, and shortly after Deputy Fuller left the scene, Lake Kiowa Security agent Jeremy who was still on the scene, contacted Plaintiffs who stated 'let nothing leave the scene'.  Jeremy reported this to the Defendants' agents, employees and nefarious parties and Defendants' agents and employees with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, responded with physical force to forcibly remove the Plaintiffs' personal property while making the statement 'we take this or we don't pay' and by force moved past Security agent Jeremy and illegally removed the Plaintiffs' personal property.

**197.** In total, during the trespass event mentioned in paragraphs 194-197, Defendants' employees and agents with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, with knowledge and purpose committed the act of robbery in furtherance of a pattern of racketeering activity, a violation of 18 U.S.C. § 1961(1), further, employees of Defendant Fire and Lloyds conducted interstate travel in participation, carrying on, and facilitation of the acts of robbery and extortion, which are violations of 18 U.S.C. § 1951, 18 U.S.C. § 1952, and 18 U.S.C. § 1961(1).  Further, by deception and fraud, Defendants' agents interfered with a Texas Law Enforcement office in commission of his duties constitutes a violation of *Texas Penal Code 38.25(a)(1)*.  Further, Defendants' enterprises' usage of a third-party attorney in association in fact enterprises hired by the Defendants, Defendants' association in fact enterprises and corporate enterprises managed and established by the Defendants and Defendant's enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, engaged in a pattern of racketeering activity is a violation of 18 U.S.C. § 1962(d), and management of the third-party agent engaged in acts of robbery and extortion is a violation of 18 U.S.C. § 1962(c), as part of the State Farm Group's pattern of

racketeering activities, participate in fraud schemes and racketeering activities using unwary third party attorneys managed by Defendants' enterprises unwittingly by fraud conduct racketeering activities , managed by Defendants' Enterprises 'D' and 'E' under the direct and indirect association with Defendants Tipsord, Farney, Smith, Harbert, and Wey, as well as, Defendant Fire, Lloyds, and INC, and employees of the aforementioned corporate Defendants and parties working in concert with the association in fact racketeering enterprises.

A. As stated, Defendants' engagement of third-party attorneys, hired by enterprises managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, who actively make deceptive misrepresentation to third parties (Plaintiffs and the courts) constitutes acts of participation in the fraud schemes conducted by the Defendants' enterprises. The usage and engagement of third-party counsels constitutes a violation of 18 U.S.C. § 1962(d), and 18 U.S.C. § 1962(c), the active usage of the term 'state farm' by an attorney to sow confusion, and deception in the court room constitutes a violation of the Texas code of Disciplinary Conduct, Rule 3.05(a) and Rules of Conduct and Law which prohibit 'persons', including an attorney from engaging in acts of fraud, deception, or coercion.

B. Plaintiffs relied on the ethical and lawful conduct of Defendants' legal counsels in order to attempt to find a resolution to the 'failures' and frauds of the Defendants' enterprises. Plaintiffs have been damaged and injured by the continuous conduct of the Defendants, and their third-party agents participation in the single entity fraud scheme and related racketeering enterprises.

1) Plaintiffs had no foreseeable way to anticipate the gross misconduct and unethical, as well as, unlawful conduct of the enterprises, and the enterprises' engagement of willing, purposeful and intentional participation of third-party attorneys in the Defendants' 'single entity' fraud schemes and patterns of racketeering activities used by enterprises managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud. As such, Plaintiffs' expanding injuries due to the long-term effects of Defendants' frauds, and the Defendants' fraudulent database reporting have graphically increased the Plaintiffs injuries.

### *viii. Joint Conduct of the State Farm Group's Racketeering Enterprises "C" and "D"*

**198.**   After the April 7th, 2017 event, and after Defendant Auto with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, fraudulently emailed a markedly different 'Lloyds' contract to the Plaintiffs than the one discussed at the February 27th, 2017 meeting in which the Defendants extorted, intimidated and ultimately coerced, and fraudulently induced the Plaintiffs into signing Defendants' "subrogation' agreement.   Defendants' enterprises graphically increased their acts of intimidation to include causing Plaintiffs to take detailed pictures of all items 'on scene' at the fire event, and to include making a complete list of all items owned by the Plaintiffs.   Defendants' enterprises refused to acknowledge the factual total amount of coverage or reimbursement from the fire event, and caused the Plaintiffs to utilize their personal lines of credit for daily living items, which Defendants alleged were to be paid by 'state farm' as part of the 'period of recovery' benefit of the Plaintiffs' "homeowners policy" Defendants failed to reimburse Plaintiffs for items already approved, and caused significant delay in repayment of expenses which significantly financially injured, damaged and reduced the Plaintiffs' financial status, ability, and credit worthiness.   Defendants' acts of intimidation, and negligence violate Texas statute, for deceptive trade and business practices.

**199.**   Defendants' enterprises despite informing the Plaintiffs on February 27th,2017, that Plaintiffs had 'two years' to submit claims forms for restitution from the fire loss event, and despite Plaintiffs receiving a letter sent via the US Postal Service, on February 22nd 2017, from Defendant Auto affirming the two-year period, on or about March 10th, 2017 Plaintiff Quinn was told in a phone call from an employee of Defendant Fire, employee Icyana Kendrick, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, "*to submit the claims forms soon*". Defendants' enterprises' employee used language and terms in a manner so confusing, intimidating, and in a purposeful manner to cause fear, that Plaintiff Quinn feared if the Plaintiffs did not submit all claims for 'contents' to 'state farm' by March 24th, 2017, the Plaintiffs would not be paid any amount by 'state farm' under the homeowners contract, of any type.   As a result of the Defendants' acts of intimidation, and misrepresentations, in order to fraudulently induce Plaintiffs' submission of claims, and to fraudulently induce Plaintiffs' signatures on said 'claims forms', Plaintiffs made a partial claim for personal

property lost during the fire event substantially less than the $5 Million amount actually lost in the fire event. This single event violates Texas Deceptive Trade Practices act for Defendants' deceptive trade practices, regarding Defendants' acts of intimidation, coercion, fraudulent inducement to obtain Plaintiffs' signature, and false and misleading statements in order to deceive the Plaintiffs in furtherance of the Defendants' enterprises' schemes and frauds conducted over the wires in order to defraud the Plaintiffs and illegally obtain money and / or property in interstate commerce, that affects commerce. A violation of 18 U.S.C. § 1343, a violation of 18 U.S.C. § 1341, and an act of extortion pursuant to 18 U.S.C. § 1951, and 18 U.S.C. § 1961(1).

### ix. *Continuing Conduct of the State Farm Group's Racketeering Enterprise "D"*

**200.** On or about April 18th, 2017, Defendant Fire's 'claims' employees with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, informed the Plaintiffs, via an interstate telephone call that the Plaintiffs' "claims forms were insufficient" and "how was state farm to know if the Plaintiffs actually had the items listed on the claims list". Defendant Fire's claims employees 'required proof' of Plaintiffs' items, and mandated that "Plaintiffs need to dig through the scene and take pictures of the remains of items" or "state farm would reject the claim". Defendants' enterprise extorted Plaintiffs and caused Plaintiffs purposeful exposure to a knowingly toxic and dangerous environment. Plaintiffs feared the Defendants' enterprises would reject Plaintiffs' less than $800,000 contents claim and deny Plaintiffs other future claims for the remaining losses totaling more than $5 Million should Plaintiffs refuse to comply with the Defendants' demands. Plaintiffs' monies from claims on insurance contracts either the fraudulent Lloyds contract, or the 'state farm fire' contract constitutes 'monies and property'. Defendants' acts of furtherance of a scheme to obtain monies or property by acts of fraud in the use of interstate communications is a predicate act in violation of 18 U.S.C. § 1343, in the furtherance of acts of extortion, a violation of 18 U.S.C. § 1961(1), and in the interference with commerce, and the affect of commerce, by extortion and threat in the commission of the furtherance of Defendants' plan to defraud the Plaintiffs, a violation of 18 U.S.C. § 1951(a). Further, Defendants are negligent for the fraudulent inducement of Plaintiffs to enter a known toxic environment. For the record, on July 4th, 2017, Plaintiff Vanderbol was

diagnosed with lymphatic cancer, with the possibility the cause of said, was due to exposure to toxic materials.

**201.** On June 28th, 2017, Plaintiffs received from Defendant Auto, delivered by the US Postal Service, a letter notifying Plaintiffs their 'Automobile" insurance was going to be canceled due to Defendant Fire declaring 14 events of damage to Plaintiffs' automobiles due to the negligence of Defendant Fire, and the enterprises as 'events which the Plaintiffs were responsible.' This act of Defendants with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, is a direct act of fraud, and theft of Plaintiffs' auto insurance assets which resulted in further damages to Plaintiffs' businesses due to the fraudulent reporting of the Defendants to national insurance and credit databases.

**202.** On June 28th, 2017' Plaintiffs made a telephone call and contacted Defendant Auto's third-party network agent Jim Goldsworthy, who acting on the behalf Defendant Auto, to discuss Defendant Auto's "letter of cancelation". Defendant Auto's third-party agent stated the 'letter was issued in error' and extorted Plaintiffs of monies by making fraudulent statements stating "State Farm" will continue your policy and you need to make a payment on the Auto policy", and "if you don't make a payment, State Farm will cancel you." Further, Plaintiffs were told, "Lloyds made an error and 'state farm' will get that corrected." Plaintiff Vanderbol drove to Defendant Auto's agent, and presented a payment for continuation of the Automobile policy purchased from State Farm Mutual Automobile Insurance Company during the 'bait and switch' fraud scheme of Enterprise "A". Defendant Auto's agent presented Plaintiff a printed receipt derived from Defendant Auto's interstate computer network with the title 'state farm insurance companies' on top of the receipt. Plaintiffs made the payment on the Automobile insurance contract based upon Defendant Auto's enterprises' fraudulent sales associate's statement with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, "the automobile contract will not be canceled if you make the payment." Plaintiff was threatened by Defendants' constant threat of financial ruin and was in fear of injury to his person, fear of injury to Plaintiff Quinn and fear of injuries to Plaintiffs' businesses from which both

Plaintiffs relied upon for income, and ability to meet financial requirements necessary to conduct daily living.

As such, Plaintiff Vanderbol, acting out of fear, paid Defendants.

1.  Defendant Auto's employees, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, and third party agent Jim Goldsworthy, in connection with Defendants' goods and services in unlawful interstate transmissions with the intent to propagate the State Farm Group's 'single entity fraud scheme', caused the distribution of signals and sounds containing false statements, pretenses, and promises with the intent to defraud, and in execution of the State Farm Group's fraud schemes participated and conducted activities designed to defraud the Plaintiffs in order to obtain monies by fraud, and fraudulent means, and pretenses by usage of wire transmissions and communications in interstate commerce with knowledge said fraudulent material would be received by the Plaintiffs. Factually:

    a)  Employees of the RICO violating enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in connection with goods and services in unlawful interstate transmissions, used in commerce the terms, words, and combination thereof in a series of statements including the word 'state farm' to cause confusion, and to cause mistake, in order to deceive Plaintiffs.

    b)  Employees of the RICO violating enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud in connection with goods and services in unlawful interstate transmissions, used in commerce the terms, words, and combination thereof in a series of statements including the word 'state farm' in order to deceive Plaintiffs, as to the commercial activities of Defendant Auto, and the State Farm Group RICO violating enterprises.

    c)  Employees of the RICO violating enterprise "A", with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud in connection with goods and services in unlawful interstate transmissions, used in commerce the terms, words, and combination thereof in a series of statements including the word 'state farm' in order to ***extort*** Plaintiffs.

2.  Defendant Auto's employees, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, and third-party agent Jim Goldsworthy, messages in connection with Defendants' goods and services in unlawful interstate transmissions, failed to clearly state 'State Farm' was not

a company, but a registered trademark owned by State Farm Mutual Automobile Insurance Company, and materially misrepresented the true operational model of independent and separately operating companies.

a) Defendants' employees, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud in connection with goods and services in unlawful interstate transmissions, misrepresented the actual characteristics of the operations of the separately operating companies, and fraudulently used marks, names, terms, and devices to cause Plaintiffs confusion in order to defraud and extort the Plaintiffs by fraudulently alleging 'state farm would not cancel' when in fact, the enterprises' schemes had already determined to defraud the Plaintiffs, and were acting to defame the Plaintiffs.

b) Defendants' employees, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud in connection with goods and services in unlawful interstate transmissions, misrepresented the actual characteristics of the operations of the separately operating companies and graphically misrepresenting the true corporate interests and commercial activities of the Defendants, which where to deny payments, deny viable claims, to by acts of fraud and criminality attempt to 'enforce' the terms and conditions of fraudulently sold and delivered 'Lloyds' contract by the purposeful, calculating, and fraudulent defamation of the Plaintiffs.

c) Defendants' employees, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud in connection with goods and services in unlawful interstate transmissions, failed to clearly disclose the operations of the companies and misrepresented the characteristics of the commercial activities of the separate and independent companies using the name 'state farm' in a confusing manner in order to defraud the Plaintiffs purposefully acting to intentionally, negligently and fraudulently failing to disclose material information necessary for the Plaintiffs to make a fully informed decision in order for the Plaintiffs to protect their own financial interests, and to obtain legal counsel in order to protect their interests through litigation.

3. Plaintiffs were misled by the Defendants' fraudulent statements made with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in connection with Defendants' goods and services in unlawful interstate transmissions purposeful fraud scheme designed to

fraudulently obtain monies by false pretenses, fraudulent promises, and fraudulent representations, to believe:

    a) 'state farm' would not cancel Plaintiffs' auto policy. And;
    b) 'state farm' would correct the 'errors' of 'claims processor' Lloyds. And;
    c) 'state farm' would act in the best interest of the Plaintiffs to protect the Plaintiffs from further financial loss. And.
    d) 'state farm' would keep all promises made to the Plaintiffs. And;
    e) "state farm management was aware of the issues and were acting to correct the error".

4. Plaintiffs were exposed to the Defendants' fraudulent messages made with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in connection with Defendants' goods and services in unlawful interstate transmissions' purposeful fraud scheme designed to fraudulently obtain monies by false pretenses, fraudulent promises, and fraudulent representations, transmitted by the Defendants' RICO violating Enterprises, including Defendant Auto, acting under the direct control of Defendants Tipsord, Farney, and Harbert, as well as Lloyds acting under the direct control of Defendants Smith and Wey. The transmissions of Defendants' fraudulent statements over the telephone wires constitutes a predicate act of 'wire fraud' as defined in 18 U.S.C. § 1343. Defendants' direct threat to obtain monies from Plaintiffs in an act of fraud constitutes a predicate act of 'extortion', as defined in 18 U.S.C. § 3559(c)(2), in violation of 18 U.S.C. § 1961(1)

5. Plaintiffs were damaged by reason of the Defendants' pattern of racketeering activity. Plaintiffs relied on the Defendants' fraudulent statements and transmissions made by the unlawful transmission via the interstate usage of wires, and the fraudulent statements, misrepresentation of terms, and words, used by the Defendants within the wire transmissions affected interstate commerce. Defendants' fraudulent interstate use of the wires, with the purposefully fraudulent schemes with the focused intent of unlawfully obtaining money by repeated acts of fraud, used to defraud the Plaintiffs, was a proximate cause of the injuries to Plaintiffs' properties and businesses. To support Plaintiffs' proximate cause allegation:

a) The Defendants could foresee how the Defendants' unlawful use of the interstate wires with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, to execute their schemes of fraud comprising fraudulent statements, material misrepresentations of fact, purposeful omissions, mischaracterizations of corporate operations and commercial activities, and purpose failures to disclose would lead to the Plaintiffs' injuries and harm inflicted upon them, due to the confusion and related frauds caused by the Defendants' racketeering activities which prohibited the Plaintiffs from being fully informed sufficient to protect their own interests.

b) The Plaintiffs relied on the Defendants' false promises, material misrepresentations, and misrepresentations of the Defendants' character and commercial conduct which misled the Plaintiffs to trust and rely on the Defendants' professional conduct, opinion, and character. As such, the Plaintiffs could not reasonably foresee Defendants' purposefully nefarious and unlawful conduct, which resulted in the injuries sustained by the Plaintiffs.

c) The Plaintiffs could not reasonably foresee the fire event, nor could they reasonably foresee Defendants' calculated frauds, and purposefully fraudulent commercial "failures", or intended acts of negligence as part of the Defendants' interstate fraud schemes, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, or the Defendants' purposefully fraudulent conduct and interstate commerce affecting patterns of the Defendants' criminal behavior, and racketeering activities which caused the degree of the injuries suffered by the Plaintiffs.

d) The Plaintiffs were not among the people or any party that could have foreseen the Defendants' interstate commerce affecting unlawful conduct or the Plaintiffs' injuries resultant from the Defendants' enterprises' unlawful interstate fraud schemes, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, and patterns of racketeering activities conducted by the conglomerate 'state farm group' enterprise or the individual Defendants acting in a conspiracy to illegally obtain monies through a continuing pattern of frauds as conducted by the Defendants, and resultant injuries suffered by the Plaintiffs due to the fraudulent, negligent and unlawful acts of the Defendants, and the Defendants' complex criminal conglomerate enterprise 'business' model.

*x.*  ***Conduct of the State Farm Group's Racketeering Enterprise "E"***

**203.** On June 21st 2017, Plaintiffs hired attorney Brett Eisberner to review the matter with 'state farm.' Shortly thereafter, Plaintiffs received a letter from Defendants' enterprises third party attorney, "Participating without disclosure agent 1" stating he was hired by Lloyds to represent 'state farm' and was not hired to represent the Plaintiffs or to conduct any recovery of monies on Plaintiffs' behalf.   Further, Plaintiffs were told "the Bakers (the negligent builder of Plaintiffs' home) have no assets, and no insurance, so recovery is useless".

**204.** On or about November 15th, 2017, due to records searches conducted by the Plaintiffs, Plaintiffs discovered "the Bakers" in fact have substantial assets residing in multiple trusts and businesses, and that Defendants, defined as Defendant Fire, Defendant Auto, Lloyds, and 'state farm group' in fact are the insurers of 'the Bakers' personal property, residential property, businesses, and automobiles.

**205.** On or about March 28th, 2018, Plaintiffs' attorney is told by 'Lloyds' employee Jerry Silvernail who stated with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, the 'Lloyds contract is valid', 'state farm has paid all that it is going to pay', and the 'fireplace will be destroyed in less than 30 days.

**206.** On March 1st, 2019 Plaintiffs file two separate civil cases in the 235th District of Cooke County Texas seeking restitution from injuries from State Farm Lloyds, Inc., Jim Goldsworthy, Shelly Baker, Randy Baker, and various companies and trusts owned or managed by the Bakers.

**207.** On 13, February 2019, Plaintiffs file two separate civil RICO cases in this Honorable Court.

**208.** In response, Defendants' enterprises with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, hired third party attorneys, identified as "participating without disclosure agents 2, and 3", most likely hired nationally by Defendant Auto, to fraudulently enforce the 'Lloyds' contract, to seek and obtain dismissal of all of Plaintiffs' claims in state and federal court, including this

matter before the court. Defendants' enterprises managed and directed by Defendants Tipsord, Farney, Smith, Harbert, and Wey, hire the same two attorneys to represent what Defendants allege to be four separately operating and managed companies, independently operating. Defendants' legal counsel directly engages in the Defendants' 'single entity trade name fraud scheme' managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, in every correspondence with the Plaintiffs in order to confuse, deceive and materially misrepresent, and cause mistakes as to material fact. Defendants' legal counsels primarily communicate to the Plaintiffs in emails sent via the wires during a period from March 2019 through November 2019, in each reference, Defendants' agents / attorneys only communicate and utilizing the 'single entity fraud' and abuse of names, marks, terms, symbols, in violation of 15 U.S.C. § 1125, and Texas Deceptive trade practices act, as well as declared as violations of the Texas Insurance Code.

**209.**   On July 8th, 2019, Defendant Auto with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, causes one of its employees to endorse and submit and affidavit to the 235th District Court of Cooke County Texas attesting to 'the validity' of the 'Lloyds' contract as the 'sold contract'. The affidavit was attached to the fraudulently emailed (a separate and predicate act of wire fraud) contract emailed by Defendant Auto on February 27th, 2017. The Defendants' usage of third-party attorneys, identified as "participating without disclosure agents 2, and 3", hired by enterprises managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, who in furtherance and assistance to assist the Defendants' enterprises who execute fraud schemes in the court system is an act of aggravated perjury. Defendants' Enterprises "D" and "E" have a long-standing history acting in furtherance of the Defendants' pattern of behaviors constituting 'mad dog' defense tactics including the fraudulent submission of evidence, perjury, and fraud, with the common thread of absolute denial that "state farm does nothing wrong, and the allegations against 'state farm' are absolutely false". The submission of the fraudulent contract and affidavit

was submitted by the wires to the 235th District Court of Cook County Texas and may constitute a predicate act of wire fraud as defined in 18 U.S.C. § 1343 due to the Defendants' intention such wire, and usage of the fraudulent message is to defraud the Plaintiffs of monies and properties in the furtherance of the Defendants' fraud schemes, and racketeering enterprises, and is directly tied to Defendants' enterprises' employee Pedroso's acts of extortion, coercion, fraudulent inducement and robbery committed on February 27th, 2017 in defense of the Defendants interstate enterprise bait and switch fraud schemes, which affects interstate commerce.

A. As stated in Paragraph 25, Defendants' engagement of third-party attorneys, who are hired by enterprises managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, who actively make deceptive misrepresentation to third parties (Plaintiffs and the courts) constitutes acts of participation in the fraud schemes conducted by the Defendants' enterprises. The usage and engagement of third-party counsels identified as "participating without disclosure agents 2, and 3", constitutes a violation of 18 U.S.C. § 1962(d), and 18 U.S.C. § 1962(c), the active usage of the term 'state farm' by an attorney to sow confusion, and deception in the court room constitutes a violation of the Texas code of Disciplinary Conduct, Rule 3.05(a) and Rules of Conduct and Law which prohibit 'persons', including an attorney from engaging in acts of fraud, deception, or coercion. At best "participating without disclosure agents 2, and 3", are witnesses in fact to the activities and directions of the Defendants' enterprises, and 'persons' instructing the activities of fraud and racketeering, at worst the knowledgeable participation of "participating without disclosure agents 2, and 3", would be a criminal offense by the agents, which Plaintiffs are not arguing at this time.

B. Plaintiffs relied on the ethical and lawful conduct of Defendants' legal counsels in order to attempt to find a resolution to the 'failures' and frauds of the Defendants' enterprises. Plaintiffs have been damaged and injured by the continuous conduct of the Defendants, and their third-party agents participation in the single entity fraud scheme and related racketeering enterprises.

1) Plaintiffs had no foreseeable way to anticipate the gross misconduct and unethical, as well as, unlawful conduct of the enterprises, and the enterprises' engagement of willing, purposeful and intentional participation of third-party attorneys in the Defendants' 'single entity' fraud schemes and patterns of racketeering activities with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, managed and established by the Defendants and Defendants' enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud. As

such, Plaintiffs' expanding injuries due to the long-term effects of Defendants'
frauds, and the Defendants' fraudulent database reporting have graphically
increased the Plaintiffs' injuries.

**210.**   On or about 05 April 2019, Defendant enterprise, State Farm Auto Mobile Insurance
Company with the intent to defraud the Plaintiffs in order to illegally obtain monies and
property through the enterprises' schemes and acts of fraud, released on the wires (internet
websites maintained by Defendant Auto) and through the US postal service mailed to the
Plaintiffs a "Annual Report to the State Farm Mutual Policy Holders" which uses confusing,
and deceptive language and misrepresents the 'enterprises' of 'state farm' as one entity.  The
fraudulent document sent via the mails and the wires as part of Defendants' single entity
fraud scheme, fraudulent sales schemes, fraudulent sales practices, and deceptive marketing
practices, which are part of the Defendants schemes to defraud Plaintiffs in order for the
Defendants to unlawfully obtain monies and properties from Plaintiffs, included graphic
misrepresentations to the 'enterprises' operational characteristics, misrepresented the
financial status of the 'subsidiaries', and obscured, as well as, materially misrepresented the
value, quality, and operational model of the 'state farm' enterprises, including Defendant
Auto, Defendant Fire, Lloyds, and obscured, as well as promoted the "state farm group' fraud
scheme established by, conducted by, and participated in, by all of the Defendants.   The
annual report also misrepresented the nature of the relationship of 'its members' and the
powers and authorities of the 'members' in the operation, and operational control of the
'enterprises', including Defendant Auto, and its enterprises, including the State Farm Group
conglomerate of RICO violating enterprises.  Defendants statements also misrepresented the
financial status, operation, cash reserves, usage of monies, and management of monies, as
well as, the source of monies obtained by the enterprises, in conduct of the enterprises, and
the related fraud schemes, and RICO violating enterprises actively conducting patterns of
racketeering activities.

   A.   Plaintiffs relied on the truthful reporting of the financial status and operation of the
        enterprises as part of their decision to purchase products from 'state farm' and their
        decisions to 'allow' the Defendants' enterprises to 'act like a good neighbor' and to
        provide the Defendants enterprises' a good faith chance to 'make life right' as the
        Defendants' fraudulent advertising continuously promoted was the true and factual
        operational model, corporate character, and desire of senior management of 'state
        farm' to do. Plaintiffs were directly and proximately damaged by the fraudulent

statements of the officers of 'state farm' (including Defendant Tipsord who signed the document) and the fraudulent material presented by the enterprises signed by officers of 'state farm' which fraudulently misrepresented the ethical operation of the enterprises and the direct management participation of the members of the enterprises' 'board of directors' as promoted within the documents sent via the mails and the wires.

### *xii. Conduct of the State Farm Group's Racketeering Enterprise "F"*

**211.**   Payments made to Defendants' enterprises at the purchase of the Homeowners policy in February of 2016, and the automobile insurance policy purchased from Defendant Auto, in February of 2016, and payments made to Defendant Auto, for renewal of auto policy in 2016, and the extortion payment made on June 28th, 2017 to Defendant Auto, whether addressed in check form or credit case and made payable to State Farm Auto, or State Farm Fire, or just "State Farm" all cleared and was posted to one bank showing Defendants' enterprises' combined and comingled monies.   Unfortunately, this also shows that Defendants cause Bank managers and bank employees to make false entries into bank registries, logs, account statements in violation of 18 U.S.C. § 1005, and likely in violation of 18 U.S.C. § 656, and 18 U.S.C. § 1006   to 'state farm Defendants' enterprises' combine and comingle monies goes back to 2016 payments of auto and fire policy.   Pursuant to law, sec. 1006 employees, agents, or officers of banks or financial institutions, including insurance companies, and any party connected to the FDIC, or a bank, lending or insurance institution authorized or acting under the laws of the United States, relating to accounts that are insured by the FDIC which are mislabeled, or by making acceptance of a draft improperly labeled, or with intent to defraud any institution, or person in the receipt of monies causes a false report, and false entry.   Purposefully causing such false entry in a total amount to the level conducted by the Defendants' enterprises constitutes violations of 18 U.S.C. § 1005, and 18 U.S.C. § 656.

A.   Plaintiffs were directly injured by the Defendants use of monies derived from unlawful patterns of racketeering activities, and investment of said funds, and comingling of unlawfully obtained monies, as Defendants' enterprises with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, utilize the monies derived from illegal activities and unlawful investments in furtherance of the enterprises, fraudulent advertising schemes, sales fraud schemes and operations of the RICO violating association in fact racketeering enterprises, which fraudulently induced the Plaintiffs, and the injured and damaged the Plaintiffs through the conglomerate RICO violating

enterprises' joint operation in fraud and racketeering enterprises designed to illegally obtain monies and property from the Plaintiffs my acts of criminality, acts of racketeering and direct and indirect acts of fraud.

212. On or about 05 April 2019, Defendant enterprise, State Farm Auto Mobile Insurance Company with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud released on the wires (internet websites maintained by Defendant Auto) and through the US postal service mailed to the Plaintiffs a "Annual Report to the State Farm Mutual Policy Holders" which uses confusing, and deceptive language and misrepresents the 'enterprises' of 'state farm' as one entity.  The fraudulent document sent via the mails and the wires as part of Defendants' single entity fraud scheme, fraudulent sales schemes, fraudulent sales practices, and deceptive marketing practices, which are part of the Defendants schemes to defraud Plaintiffs in order for the Defendants to unlawfully obtain monies and properties from Plaintiffs, included graphic misrepresentations to the 'enterprises' operational characteristics, misrepresented the financial status of the 'subsidiaries', and obscured, as well as, materially misrepresented the value, quality, and operational model of the 'state farm' enterprises, including Defendant Auto, Defendant Fire, Lloyds, and obscured, as well as promoted the "state farm group' fraud scheme established by, conducted by, and participated in, by all of the Defendants.   The annual report also misrepresented the nature of the relationship of 'its members' and the powers and authorities of the 'members' in the operation, and operational control of the 'enterprises', including Defendant Auto, and its enterprises, including the State Farm Group conglomerate of RICO violating enterprises.  Defendants statements also misrepresented the financial status, operation, cash reserves, usage of monies, and management of monies, as well as, the source of monies obtained by the enterprises, in conduct of the enterprises, and the related fraud schemes, and RICO violating enterprises actively conducting patterns of racketeering activities.

   A. Plaintiffs relied on the truthful reporting of the financial status and operation of the enterprises as part of their decision to purchase products from 'state farm' and their decisions to 'allow' the Defendants' enterprises to 'act like a good neighbor' and to provide the Defendants' enterprises a good faith chance to 'make life right' as the Defendants' fraudulent advertising continuously promoted was the true and factual

operational model, corporate character, and desire of senior management of 'state farm' to do. Plaintiffs were directly and proximately damaged by the fraudulent statements with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud of the officers of 'state farm' (including Defendant Tipsord who signed the document) and the fraudulent material presented by the enterprises signed by officers of 'state farm' which fraudulently misrepresented the ethical operation of the enterprises and the direct management participation of the members of the enterprises' 'board of directors' as promoted within the documents sent via the mails and the wires.

B. Plaintiffs were directly injured by the Defendants use of monies derived from unlawful patterns of racketeering activities, and investment of said funds as Defendants enterprises utilize the monies derived from illegal activities and unlawful investments in furtherance of the enterprises, fraudulent advertising schemes, sales fraud schemes and operations of the RICO violating association in fact racketeering enterprises, which fraudulently induced the Plaintiffs, and the injured and damaged the Plaintiffs through the conglomerate RICO violating enterprises' joint operation in fraud and racketeering enterprises designed to illegally obtain monies and property from the Plaintiffs by acts of criminality, acts of racketeering and direct and indirect acts of fraud.

### *xii. Conduct of the State Farm Group's Racketeering Enterprise "G"*

**213.**  According to regulatory filings made by Defendant Auto, and its enterprises filed during a period of time from June 10, 2014, through August 25th 2019, Defendants receive monies from investments and incomes collected and maintained by enterprises A through G to JP Morgan Chase NA Columbus in accounts maintained by the Defendants under agreement with JP Morgan Chase.

A. Plaintiffs were directly injured by the Defendants' use of monies derived from unlawful patterns of racketeering activities, and investment of said funds as Defendants' enterprises with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, utilize the monies derived from illegal activities and unlawful investments in furtherance of the enterprises, fraudulent advertising schemes, sales fraud schemes and operations of the RICO violating association in fact racketeering enterprises, which fraudulently induced the Plaintiffs, and injured and damaged the Plaintiffs through the conglomerate RICO violating enterprises' joint operation in fraud and racketeering enterprises designed to illegally obtain monies and property from the Plaintiffs by acts of criminality, acts of racketeering and direct and indirect acts of fraud.

**214.**  Defendants utilize monies transferred for investments and incomes collected and maintained by enterprises A through G in JP Morgan Chase NA Columbus attempting to enforce and

legitimize the Lloyds contract. On June, 08, 2017 Plaintiffs received a payment from "State Farm Lloyds" in the amount of $90,426.50. The check (a contract) also shows Defendants Tipsord and Farney acting as 'officers' of State Farm Lloyds make fraudulent payment to Plaintiffs, as 'authorized parties'. Defendant Tipsord's status as an officer of an insurance company, Defendants Fire, and Auto, and the fraudulent use of a bank (JP Morgan Chase) to draft checks for Lloyds, a company Defendant Tipsord is NOT an officer or a director of, and from a comingled monies account, is a direct violation of 18 U.S.C. § 1005. The issuance of the check to the Plaintiffs from a single account drafting checks in payment from Lloyds and Defendant Auto shows the operation of ONE enterprise, by acts of fraud, and misrepresentation, as the Defendants fraudulently allege to be separately operating and completely independent of each other.

**215.** Defendants utilize monies transferred for investments and incomes collected and maintained by enterprises A through G then transferred to JP Morgan Chase NA Columbus, to operate and conduct racketeering activities for the entire 'state farm group' RICO violating conglomerate enterprise. On May, 15, 2017 Plaintiffs received a payment from "State Farm Mutual Automobile Insurance Company" in the amount of $8,865.92. The two checks are from two separate and allegedly independently operating companies, yet, the checks both bare the same routing number, and the same account number, yet bear the names of each of the Defendants' enterprises, marked separately. The checks (a contract) also show Defendants Tipsord and Farney acting as 'officers' of Lloyds, and Defendant Auto as 'authorized parties'. Defendant Tipsord's status as an officer of an insurance company, Defendants Fire, and Auto, and the fraudulent use of a bank (JP Morgan Chase) to draft checks for Lloyds, a company Defendant Tipsord is NOT an officer or a director of, and from a comingled monies account, is a direct violation of 18 U.S.C. § 1005. The issuance of the check to the Plaintiffs from a single account drafting checks in payment from Lloyds and Defendant Auto shows the operation of ONE enterprise, by acts of fraud, and misrepresentation, as the Defendants fraudulently allege to be separately operating and completely independent of each other. The fraudulently issued check was also delivered via the US Postal Service, from Defendant Auto from Bloomington, Illinois to Plaintiffs in

McKinney, Texas, showing interstate commerce activity, and furtherance of a fraud scheme and racketeering activity, in the use of the mails, a violation of 18 U.S.C. § 1341.

A. Plaintiffs were directly damaged by the comingling funds, and the jointly operating enterprises of the Defendants, with the intent to defraud the Plaintiffs in order to illegally obtain monies and property through the enterprises' schemes and acts of fraud, who used the commingled funds to operate, and conduct the Defendants' enterprises which actively engaged in acts of extortion, and robbery in the conduct of the enterprises' operations and conduct to protect the fraudulent sales and marketing conglomerate enterprises of the Defendants, all of which operated jointly to defraud the Plaintiffs in furtherance of a scheme to illegally obtain monies and properties from the Plaintiffs through acts of fraud, and patterns of racketeering activities.

### Injuries to Plaintiffs

**216.** Plaintiffs suffered injury and damages to property due to the Defendants' fraud schemes, patterns of racketeering behaviors and activities, and Defendants' purposeful acts of negligence by:

A. The Defendants' failure to properly deliver the products sold to the Plaintiffs in Defendants' "bait and switch" scheme. And;

B. The Defendants' ongoing and consistent negligence and fraud in failing to deliver the product sold to the Plaintiffs after receiving notice of their failures to deliver the correct product sold to the Plaintiffs. And;

C. The Defendants' acts of fraud, extortion, and robbery in the Defendants' fraudulent and criminal attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product criminally and fraudulently delivered to the Plaintiffs through the illegal use of the mails and the wires. And;

D. The Defendants' theft of Plaintiffs' personal property (Fireplace) through the Defendants' frauds and criminalities in attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product. And;

E. The Defendants' theft of Plaintiffs' personal property (corporeal rights as members of State Farm Mutual Automobile Insurance Company). And;

F. The Defendants' theft and destruction of Plaintiffs' personal property required to recover monies in litigation against the negligent builder. And;

G. The Defendants' fraudulent and purposefully negligent 'failure' to adhere to the terms and conditions of the fraudulently sold 'bait and switch' product, which the Defendants were attempting to enforce upon the Plaintiffs, which resulted in further damage to Plaintiffs' property (automobiles). And;

H. The Defendants' theft of the Plaintiffs' personal property (automobile insurance contract), by acts of fraud, and in participation with the racketeering activities of the jointly operating criminal enterprises. And;

I. The Defendants' fraudulent reporting to national databases, negligently and fraudulently reporting Plaintiffs as 'high risk', when in fact, the actions of the Defendants themselves, and the related negligence was the direct basis of the

reporting.  Plaintiffs were damaged in 'property' relating to this specific issue due to the destruction of established personal employment contracts.

Plaintiffs suffered direct and proximate injuries to Plaintiffs' property due to the fraud schemes, racketeering activities and enterprises established, conducted, participated and operated by the Defendants in the amount of $8,555,000.00.   Plaintiffs' injuries were resultant from, and directly related to the Defendants' fraudulent inducement of the Plaintiffs into Defendants' 'bait and switch' fraud scheme, and related acts of conglomerate racketeering enterprises activities.   Defendants' fraudulent sales and 'post sale' racketeering activities used to defraud the Plaintiffs, and unlawfully obtain monies and properties from the Plaintiffs, included the Defendants' bait and switch frauds, other sales fraud schemes and marketing fraud schemes, and the fraudulent inducement of the Plaintiffs by the illegal and unlawful use of the mail and the wires, as well as direct acts of racketeering and criminalities against the Plaintiffs, including robbery, extortion, acts of intimidation, fraudulent inducement to obtain Plaintiffs' signatures, coercion, and criminal negligence.

    i.  Plaintiffs property injured and damaged are defined as:

        a) building structure located at 605 Kiowa Drive west
        b) Plaintiff Quinn's vehicle
        c) Plaintiff Vanderbol's automobiles including 2008 BMW, 2004 Ford Excursion, 1999 Toyota Land Cruiser.
        d) Plaintiffs personal property located at 605 Kiowa Drive West

    ii.  Plaintiffs suffered personal injuries in the form of:

        a) Loss of income,
        b) loss of status and life style
        c) emotional duress
        d) physical harm (exposure to toxic environments)
        e) Loss of business investment, and surety.

**217.**   Plaintiffs suffered injury and damages to their businesses due to the Defendants' fraud schemes, patterns of racketeering behaviors and activities, and Defendants' purposeful acts of negligence by:

    A. The Defendants' failure to properly deliver the products sold to the Plaintiffs in Defendants' "bait and switch" scheme. And;
    B. The Defendants' ongoing and consistent negligence and fraud in failing to deliver the product sold to the Plaintiffs after receiving notice of their failures to deliver the correct product sold to the Plaintiffs. And;

C.  The Defendants' acts of fraud, extortion, and robbery in the Defendants' fraudulent and criminal attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product criminally and fraudulently delivered to the Plaintiffs through the illegal use of the mails and the wires. And;

D.  The Defendants' theft of Plaintiffs' personal property (Fireplace) through the Defendants' frauds and criminalities in attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product. And;

E.  The Defendants' theft of Plaintiffs' personal property (corporeal rights as members of State Farm Mutual Automobile Insurance Company). And;

F.  The Defendants' theft and destruction of Plaintiffs' personal property required to recover monies in litigation against the negligent builder. And;

G.  The Defendants' fraudulent and purposefully negligent 'failure' to adhere to the terms and conditions of the fraudulently sold 'bait and switch' product, which the Defendants were attempting to enforce upon the Plaintiffs, which resulted in further damage to Plaintiffs' property (automobiles). And;

H.  The Defendants' theft of the Plaintiffs' personal property (automobile insurance contract), by acts of fraud, and in participation with the racketeering activities of the jointly operating criminal enterprises. And;

I.  The Defendants' fraudulent reporting to national databases, negligently and fraudulently reporting Plaintiffs as 'high risk', when in fact, the actions of the Defendants themselves, and the related negligence was the direct basis of the reporting.  Plaintiffs were damaged in 'property' relating to this specific issue due to the destruction of established personal employment contracts. And;

J.  The Defendants' failure to make adequate, correct, and full restitution to the Plaintiffs in a reasonable amount of time, based upon the correct contract sold to the Plaintiffs. And;

K.  The Defendants' failure to make proper restitution resulted in a complete 'shut-down' of business operations for a significant period of time due to the total losses suffered personally, by the Plaintiffs, and the businesses' loss of 'labor' and 'services' from the Plaintiffs due to the frauds, criminalities and acts of negligence by the Defendants.

L.  The Defendants' purposefully negligent failures, frauds and criminalities, and acts of defamation of the Plaintiffs resulted in a loss of 'equity', and 'value' which graphically financially injured the business, due to the Plaintiffs' loss of reputation, status, credibility, 'creditworthiness' and 'risk assessment'.

M.  The Defendants' fraudulent reporting to national databases graphically injured the businesses' ability to obtain underwriting for insurance and credit which:
   1)  dramatically and irrationally increased the costs of operations.
   2)  dramatically and irrationally increased the costs of monies and lines of credit.
   3)  dramatically increased the costs of operations, insurance, financial transactions, import of products, and costs of goods sold to a level the company was no longer profitable, or obtained the margin of profitability required by the business third party investors.
   4)  caused the businesses to no longer meet the requirements to obtain monies from signed investment agreements.

N.  The Defendants' fraudulent schemes, operations and criminalities operating in a manner to damage the Plaintiffs, in order to obscure the Defendants' fraud schemes

and criminality lasted for a period of time beyond a reasonable period of time, and as such, the businesses lost viability, profitability, and the ability to operate beyond their monetary reserves, and capabilities resulting in a complete collapse of the businesses.

O. The Defendants' causation of the collapse of the Plaintiffs' businesses, resulted in a complete loss of equity value and value of intellectual property held and assigned by the businesses.

Plaintiffs suffered direct and proximate damages and injuries to Plaintiffs' businesses due to the fraud schemes, racketeering activities and enterprises established, conducted, participated and operated by the Defendants in the amount of $70,800,000.00. Plaintiffs' injuries were resultant from, and directly related to the Defendants' fraudulent inducement of the Plaintiffs into Defendants' 'bait and switch' fraud scheme, and related acts of conglomerate racketeering enterprises' activities. Defendants' fraudulent sales and 'post sale' racketeering activities used to defraud the Plaintiffs, and unlawfully obtain monies and properties from the Plaintiffs included the Defendants' bait and switch frauds, other sales fraud schemes and marketing fraud schemes, and the fraudulent inducement of the Plaintiffs by the illegal and unlawful use of the mail and the wires, as well as direct acts of racketeering and criminalities against the Plaintiffs, including robbery, extortion, acts of intimidation, fraudulent inducement to obtain Plaintiffs' signatures, coercion, and criminal negligence. And further acts of negligence, fraud, and criminalities conducted by the Defendants, and their enterprises including acts to defame the Plaintiffs, and the Defendants' purposefully fraudulent reporting of losses suffered by the Plaintiffs due to the acts of Defendants' frauds, and purposeful negligence to national risk reporting databases causing significant damage to the Plaintiffs' businesses, and resulted in incorrect, and the Defendants' purposefully fraudulent misrepresentation of the Plaintiffs, as risk parties. All of which greatly affected the businesses' ability to conduct commerce, and operate viability, to a point in which the businesses became insolvent.

 i. Plaintiffs businesses injured and damaged are defined as:

  a) OPM Research and Development Inc.
  b) 9-Ten Holdings Inc.
  c) Neoteric Ventures Inc.
  d) Irr. Trust for the Benefit of John S. Vanderbol III and associated developmental projects including: resurrection fitness, post stroke survival tactics book, and product lines.

    ii.  Businesses suffered injuries including:
        a)  loss of income
        b)  loss of investments in hand
        c)  loss of underwriting
        d)  loss of professional services of:
            1.  Plaintiff Vanderbol
            2.  Plaintiff Quinn
            3.  company staff hired
            4.  company staff contracted
            5.  subcontractor design services
            6.  subcontractor production services

        e)  loss of product in development
        f)  loss of invested monies
        g)  loss of equity value
        h)  loss of market opportunity
        i)  loss of viability of projects in development.

## CLAIMS FOR RELIEF

### Plaintiffs' federal claims

### Count 1
### Pursuant to 18 U.S.C. § 1962(c)

**218.**   The allegations of paragraphs 13 through 217 are incorporated herein by reference.

**219.**   This Count is against Defendants Tipsord, Farney, Smith, Harbert, and Wey (herein after the "Count 1 Defendants").

**220.**   The State Farm Group enterprise is an enterprise engaged in and whose activities affect interstate commerce.  The Count 1 Defendants are employed by or associated with the enterprise.

**221.**   The Count 1 Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs.  Specifically, the Count 1 Defendants agreed to:

    A. create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
        1)  defraud parties, such as the plaintiffs.

2) defraud banking institutions

3) conduct a single entity fraud scheme designed to defraud parties

4) engage in association in fact enterprises engaged in racketeering activities

5) manage and operate association in fact relationships in a complex and confusion operational manner which:

   a) was designed to conduct racketeering activities

   b) hired third party attorneys to commit

      i. acts of fraud upon consumers of 'state farm products'

      ii. acts of fraud upon the court system of the states and the federal government

      iii. acts of criminalities under false pretenses

      iv. and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 1 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

6) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

   a) members of 'state farm automobile insurance company'

   b) government regulators

   c) banking officers, and banking institutions in general

   d) purchasers of debentures sold by 'state farm' enterprises.

   e) purchasers of 'state farm' products

   f) depositors in 'state farm bank fsb"

B. create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

   1) issuance of directives to employees of the enterprises including:

      a) 'national corporate policies'

      b) memorandums

      c) training manuals

      d) claims and policy handling procedures manuals

      e) sales directives and training manuals

      f) marketing directives and training manuals

      g) contracts between joint enterprises

      h) contracts with third party agents, and agencies, including law firms

      i) instruction manual to attorneys.

   2) issuances of directives to third party agents of the enterprises including:

      a) 'national corporate policies'

      b) memorandums

      c) training manuals

      d) claims and policy handling procedures manuals

       e) sales directives and training manuals
       f) marketing directives and training manuals
       g) contracts between joint enterprises
       h) contracts with third party agents, and agencies, including law firms
       i) instruction manual to attorneys.

3) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
       a) 'national corporate policies'
       b) memorandums
       c) training manuals
       d) claims and policy handling procedures manuals
       e) sales directives and training manuals
       f) marketing directives and training manuals
       g) contracts between joint enterprises
       h) contracts with third party agents, and agencies, including law firms
       i) instruction manual to attorneys.

C. creation of, usage of, participation in, and furtherance of the 'single entity fraud scheme' with knowledge and intent to:
  1) defraud parties, such as the plaintiffs.
  2) defraud banking institutions
  3) conduct a single entity fraud scheme designed to defraud parties
  4) engage in association in fact enterprises engaged in racketeering activities
  5) manage and operate association in fact relationships in a complex and confusion operational manner which:
       a) was designed to conduct racketeering activities
       b) hired third party attorneys to commit
          i. acts of fraud upon consumers of 'state farm products'
          ii. acts of fraud upon the court system of the states and the federal government
          iii. acts of criminalities under false pretenses
          iv. and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 1 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.
  6) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
       a) members of 'state farm automobile insurance company'
       b) government regulators
       c) banking officers, and banking institutions in general

     d) purchasers of debentures sold by 'state farm' enterprises.
     e) purchasers of 'state farm' products
     f) depositors in 'state farm bank fsb"

7) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

    a) issuance of directives to employees of the enterprises including:
       i.    'national corporate policies'
       ii.   memorandums
       iii.  training manuals
       iv.  claims and policy handling procedures manuals
       v.   sales directives and training manuals
       vi.  marketing directives and training manuals
       vii.  contracts between joint enterprises
       viii. contracts with third party agents, and agencies, including law firms
       ix.  instruction manual to attorneys.

    b) issuances of directives to third party agents of the enterprises including:
       i.    'national corporate policies'
       ii.   memorandums
       iii.  training manuals
       iv.  claims and policy handling procedures manuals
       v.   sales directives and training manuals
       vi.  marketing directives and training manuals
       vii.  contracts between joint enterprises
       viii. contracts with third party agents, and agencies, including law firms
       ix.  instruction manual to attorneys.

    c) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
       i.    'national corporate policies'
       ii.   memorandums
       iii.  training manuals
       iv.  claims and policy handling procedures manuals
       v.   sales directives and training manuals
       vi.  marketing directives and training manuals
       vii.  contracts between joint enterprises
       viii. contracts with third party agents, and agencies, including law firms
       ix.  instruction manual to attorneys.

D. Authorize the usage of, participate in the usage of, approve the usage of, and / or engage in marketing activities, sales activities, or operational activities of an

individual enterprise which used the term 'state farm' instead of the full legal, and lawfully registered company enterprise name such as,   'State Farm Mutual Automobile Insurance Company, or State Farm Fire and Casualty Company, or State Farm Lloyds, or State Farm Lloyds Inc in any form of communication to any party, including:

    1) use in marketing materials
    2) use in sales activities
    3) use in claims activities
    4) usage in general conversation
    5) use in interviews
    6) use in reports to
        a) members of state farm mutual automobile insurance company
        b) government officials
        c) given in testimony to government officials
        d) given in conversation with government regulators

E. Engage in interstate sales and marketing activities using the term 'state farm' to obscure the operational differences between the 'state farm' and the 25 companies owned by Defendant Auto, and the association in fact enterprises, with the knowledge such usage would affect interstate commerce, in order to:

    1) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
        a) defraud parties, such as the plaintiffs.
        b) defraud banking institutions
        c) conduct a single entity fraud scheme designed to defraud parties
        d) engage in association in fact enterprises engaged in racketeering activities
        e) manage and operate association in fact relationships in a complex and confusion operational manner which:
            i. was designed to conduct racketeering activities
           ii. hired third party attorneys to commit
                1) acts of fraud upon consumers of 'state farm products'
                2) acts of fraud upon the court system of the states and the federal government
                3) acts of criminalities under false pretenses
                4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 1 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

    2) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of

association in fact enterprises harbored in companies owned by Defendant Auto to:
- a) members of 'state farm automobile insurance company'
- b) government regulators
- c) banking officers, and banking institutions in general
- d) purchasers of debentures sold by 'state farm' enterprises.
- e) purchasers of 'state farm' products
- f) depositors in 'state farm bank fsb"

3) create, establish, and operate enterprises with purposeful knowledge and intent to:
- a) defraud parties, such as the plaintiffs.
- b) defraud banking institutions
- c) conduct a single entity fraud scheme designed to defraud parties
- d) engage in association in fact enterprises engaged in racketeering activities
- e) manage and operate association in fact relationships in a complex and confusion operational manner which:
  - i. was designed to conduct racketeering activities
  - ii. hired third party attorneys to commit
    - 1) acts of fraud upon consumers of 'state farm products'
    - 2) acts of fraud upon the court system of the states and the federal government
    - 3) acts of criminalities under false pretenses
    - 4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 1 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.
  - iii. operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
    - 1) members of 'state farm automobile insurance company'
    - 2) government regulators
    - 3) banking officers, and banking institutions in general
    - 4) purchasers of debentures sold by 'state farm' enterprises.
    - 5) purchasers of 'state farm' products
    - 6) depositors in 'state farm bank fsb"

    iv.   create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

        1)  Issuance of directives to employees of the enterprises including:

           a)  'national corporate policies'
           b)  memorandums
           c)  training manuals
           d)  claims and policy handling procedures manuals
           e)  sales directives and training manuals
           f)  marketing directives and training manuals
           g)  contracts between joint enterprises
           h)  contracts with third party agents, and agencies, including law firms
           i)  instruction manual to attorneys.

    v.   issuances of directives to third party agents of the enterprises including:

        1)  'national corporate policies'
        2)  memorandums
        3)  training manuals
        4)  claims and policy handling procedures manuals
        5)  sales directives and training manuals
        6)  marketing directives and training manuals
        7)  contracts between joint enterprises
        8)  contracts with third party agents, and agencies, including law firms
        9)  instruction manual to attorneys.

    vi.   issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:

        1)  'national corporate policies'
        2)  memorandums
        3)  training manuals
        4)  claims and policy handling procedures manuals
        5)  sales directives and training manuals
        6)  marketing directives and training manuals
        7)  contracts between joint enterprises
        8)  contracts with third party agents, and agencies, including law firms
        9)  instruction manual to attorneys.

F.  Used interlocking directorates, interlinked officers positions in various and separate companies, and sperate but jointly interlinked employee positions in independent and