allegedly separately operated companies owned by Defendant Auto, and utilized employees of separately operating companies owned by Defendant, to cause, engage in, or manage activities to:

1) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
    a) defraud parties, such as the plaintiffs.
    b) defraud banking institutions
    c) conduct a single entity fraud scheme designed to defraud parties
    d) engage in association in fact enterprises engaged in racketeering activities
    e) manage and operate association in fact relationships in a complex and confusion operational manner which:
        i. was designed to conduct racketeering activities
        ii. hired third party attorneys to commit
            1) acts of fraud upon consumers of 'state farm products'
            2) acts of fraud upon the court system of the states and the federal government
            3) acts of criminalities under false pretenses
            4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 1 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.
    f) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
        i. members of 'state farm automobile insurance company'
        ii. government regulators
        iii. banking officers, and banking institutions in general
        iv. purchasers of debentures sold by 'state farm' enterprises.
        v. purchasers of 'state farm' products
        vi. depositors in 'state farm bank fsb"

2) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:
    a) issuance of directives to employees of the enterprises including:
        i. 'national corporate policies'
        ii. memorandums
        iii. training manuals
        iv. claims and policy handling procedures manuals
        v. sales directives and training manuals
        vi. marketing directives and training manuals

       vii.     contracts between joint enterprises

      viii.    contracts with third party agents, and agencies, including law firms

       ix.     instruction manual to attorneys.

b) issuances of directives to third party agents of the enterprises including:

        i.     'national corporate policies'

       ii.     memorandums

      iii.    training manuals

       iv.    claims and policy handling procedures manuals

        v.    sales directives and training manuals

       vi.    marketing directives and training manuals

      vii.    contracts between joint enterprises

      viii.    contracts with third party agents, and agencies, including law firms

       ix.    instruction manual to attorneys.

c) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:

        i.     'national corporate policies'

       ii.     memorandums

      iii.    training manuals

       iv.    claims and policy handling procedures manuals

        v.    sales directives and training manuals

       vi.    marketing directives and training manuals

      vii.    contracts between joint enterprises

      viii.    contracts with third party agents, and agencies, including law firms

       ix.    instruction manual to attorneys.

3) creation of, usage of, participation in, and furtherance of the 'single entity fraud scheme' with knowledge and intent to:

a) defraud parties, such as the plaintiffs.

b) defraud banking institutions

c) conduct a single entity fraud scheme designed to defraud parties

d) engage in association in fact enterprises engaged in racketeering activities

e) manage and operate association in fact relationships in a complex and confusion operational manner which:

        i.     was designed to conduct racketeering activities

       ii.     hired third party attorneys to commit

             1) acts of fraud upon consumers of 'state farm products'

             2) acts of fraud upon the court system of the states and the federal government

      3) acts of criminalities under false pretenses

      4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 1 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

f) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

   i.   members of 'state farm automobile insurance company'

   ii.   government regulators

   iii.   banking officers, and banking institutions in general

   iv.   purchasers of debentures sold by 'state farm' enterprises.

   v.   purchasers of 'state farm' products

   vi.   depositors in 'state farm bank fsb"

g) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

   i.   issuance of directives to employees of the enterprises including:

      1) 'national corporate policies'

      2) memorandums

      3) training manuals

      4) claims and policy handling procedures manuals

      5) sales directives and training manuals

      6) marketing directives and training manuals

      7) contracts between joint enterprises

      8) contracts with third party agents, and agencies, including law firms

      9) instruction manual to attorneys.

   ii.   issuances of directives to third party agents of the enterprises including:

      1) 'national corporate policies'

      2) memorandums

      3) training manuals

      4) claims and policy handling procedures manuals

      5) sales directives and training manuals

      6) marketing directives and training manuals

      7) contracts between joint enterprises

      8) contracts with third party agents, and agencies, including law firms

      9) instruction manual to attorneys.

        iii.    issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:

          1)  'national corporate policies'
          2)  memorandums
          3)  training manuals
          4)  claims and policy handling procedures manuals
          5)  sales directives and training manuals
          6)  marketing directives and training manuals
          7)  contracts between joint enterprises
          8)  contracts with third party agents, and agencies, including law firms
          9)  instruction manual to attorneys.

4) Authorize the usage of, participate in the usage of, approve the usage of, and / or engage in marketing activities, sales activities, or operational activities of an individual enterprise which used the term 'state farm' instead of the full legal, and lawfully registered company enterprise name such as, 'State Farm Mutual Automobile Insurance Company, or State Farm Fire and Casualty Company, or State Farm Lloyds, or State Farm Lloyds Inc in any form of communication to any party, including:

    a)  use in marketing materials
    b)  use in sales activities
    c)  use in claims activities
    d)  usage in general conversation
    e)  use in interviews
    f)  use in reports to
        i.    members of state farm mutual automobile insurance company
        ii.   government officials
        iii.   given in testimony to government officials
        iv.   given in conversation with government regulators

5) Engage in interstate sales and marketing activities using the term 'state farm' to obscure the operational differences between the 'state farm' and the 25 companies owned by Defendant Auto, and the association in fact enterprises, with the knowledge such usage would affect interstate commerce, in order to:

    a)  create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
        i.    defraud parties, such as the plaintiffs.
        ii.   defraud banking institutions
        iii.   conduct a single entity fraud scheme designed to defraud parties
          1)  engage in association in fact enterprises engaged in racketeering activities

2) manage and operate association in fact relationships in a complex and confusion operational manner which:
3) was designed to conduct racketeering activities
4) hired third party attorneys to commit
   a) acts of fraud upon consumers of 'state farm products'
   b) acts of fraud upon the court system of the states and the federal government
   c) acts of criminalities under false pretenses
   d) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 1 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

b) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
   i. members of 'state farm automobile insurance company'
   ii. government regulators
   iii. banking officers, and banking institutions in general
   iv. purchasers of debentures sold by 'state farm' enterprises.
   v. purchasers of 'state farm' products
   vi. depositors in 'state farm bank fsb"

c) create, establish, and operate enterprises with purposeful knowledge and intent to:
   i. defraud parties, such as the plaintiffs.
   ii. defraud banking institutions
   iii. conduct a single entity fraud scheme designed to defraud parties
   iv. engage in association in fact enterprises engaged in racketeering activities
   v. manage and operate association in fact relationships in a complex and confusion operational manner which:
      1) was designed to conduct racketeering activities
      2) hired third party attorneys to commit
         a) acts of fraud upon consumers of 'state farm products'
         b) acts of fraud upon the court system of the states and the federal government

    c) acts of criminalities under false pretenses

    d) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 1 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

3) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

    a) members of 'state farm automobile insurance company'

    b) government regulators

    c) banking officers, and banking institutions in general

    d) purchasers of debentures sold by 'state farm' enterprises.

    e) purchasers of 'state farm' products

    f) depositors in 'state farm bank fsb"

4) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

    a) Issuance of directives to employees of the enterprises including:

        i. 'national corporate policies'

        ii. memorandums

        iii. training manuals

        iv. claims and policy handling procedures manuals

        v. sales directives and training manuals

        vi. marketing directives and training manuals

        vii. contracts between joint enterprises

        viii. contracts with third party agents, and agencies, including law firms

        ix. instruction manual to attorneys.

5) issuances of directives to third party agents of the enterprises including:

    a) 'national corporate policies'

    b) memorandums

      c) training manuals
      d) claims and policy handling procedures manuals
      e) sales directives and training manuals
      f) marketing directives and training manuals
      g) contracts between joint enterprises
      h) contracts with third party agents, and agencies, including law firms
      i) instruction manual to attorneys.

6) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
      a) 'national corporate policies'
      b) memorandums
      c) training manuals
      d) claims and policy handling procedures manuals
      e) sales directives and training manuals
      f) marketing directives and training manuals
      g) contracts between joint enterprises
      h) contracts with third party agents, and agencies, including law firms
      i) instruction manual to attorneys.

G. either directly or indirectly through employees or agents of the enterprises make statements or cause a third party to make statements which include false and fraudulent statements of fact, using the term 'state farm' including:

1) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in advertising activities, promotions, and campaigns.

2) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in sales activities, promotions, and campaigns.

3) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in claims activities, processes, or payment activities.

4) engaging in a corporate scheme, or pattern of communication, or pattern of behavior to never to admit 'state farm':
      a) makes mistakes
      b) was found in court to conduct wrongful activity
      c) does not 'act like a good neighbor'
      d) does not 'help life go right'
      e) engages in nefarious acts
      f) engages in a pattern of behavior to include
         i. abusive claims processes
         ii. abuse of litigation as a profit protection mechanism

            iii.    conducts patterns of theft, and fraud by deception

      g)  conducts a knowingly abusive pattern of company activities

            i.    to deny payments on lawful claims

            ii.    to delay payments on lawful claims

            iii.    to refuse payments on claims based upon knowledge collection of the payment by the claimant would be more costly through litigation than viable, or financially able for the claimant to afford.

      h)  abuses customers good will

      i)  abuses claimants good will and causes financial damage due to 'state farms' operational policies.

5) Defendants knowledge 'state farm' corporate policies unreasonably favor 'state farm' at the expense of the customer, including Plaintiffs

6) Refusing to admit, acknowledge or disclose to prospective consumers 'State Farm' has a significant history which includes:

      a)  settlements of RICO claims against 'state farm'

      b)  state and federal court findings of fact that 'state farm' engaged in:

            i.    sales frauds

            ii.    claims frauds

            iii.    'mad dog' defense tactics

            iv.    abuse of claimants including

                  1)  purposefully causing emotional duress

                  2)  purposeful defamation of claimants character

            v.    abuse of former 'state farm' employees acting as 'whistleblowers'

      c)  sizeable state and federal fines levied for:

            i.    fraudulent

                  1)  sales practices

                  2)  claims activities

                  3)  reporting to government agencies

      d)  Federal court rulings finding 'state farm' guilty of:

            i.    acts to defraud the federal government

            ii.    engaging in interstate fraud

            iii.    frauds against claimants

            iv.    using 'state farms' wealth and financial resources to cause pain, suffering and delay to claimants.

            v.    engaging in unreasonable litigation practices.

H. Directly and or indirectly causing employees of enterprises to engage in racketeering activities in furtherance of fraud schemes, through directives, or company policies which authorize, or cause the commission of acts of:

      1)  mail fraud;

      2)  wire fraud;

      3)  bank fraud;

      4)  extortion;

      5)  robbery

6) violations of 18 USC 1951
7) violations of 18 USC 1952
8) violations of 18 USC 1005
9) violations of 18 USC 1006
10) violations of 18 USC 656
11) and other violations of 18 USC 1961(1) not here in listed.

222. Pursuant to and in furtherance of their fraudulent schemes, Defendants Tipsord, Farney, Smith, Harbert and Wey committed multiple related acts of racketeering activities conducted by enterprises, and directly and indirectly by the Count 1 Defendants including:

A. From 2012 through 2019 engaging in interstate commerce affecting interstate fraud campaigns using the wires, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The campaign in question is known as the 'like a good neighbor campaign, in violation of 18 USC 1343, and constitutes more than 100 individual predicate acts.

B. From 2016 through 2019 engaging in interstate commerce affecting interstate fraud campaigns using the wires, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The campaign in question is known as the 'make life right" campaign, in violation of 18 USC 1343, and constitutes more than 50 individual predicate acts.

C. From 2012 through 2018 engaging in interstate commerce affecting interstate fraudulent marketing and sales supporting activities in the issuance of fraudulent 'annual reports' using the wires, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The reports in question are known as the 'annual reports to the automobile policy owners" in violation of 18 USC 1343, and constitutes more than 6 individual predicate acts.

D. From 2012 through 2018 engaging in interstate commerce affecting interstate fraudulent marketing and sales supporting activities in the issuance of fraudulent 'annual reports' using the US Postal Service, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The reports in question are known as the 'annual reports to the automobile policy owners" in violation of 18 USC 1341, and constitutes more than 6 individual predicate acts.

E. From 2012 through 2019 engaging in interstate commerce affecting interstate issuance of fraudulent statements, sales materials, and 'bills' using the US Postal

Service, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The items in quested are in violation of 18 USC 1341, and constitutes more than 40 individual predicate acts.

F. From December 2015 through August, 2018 engaging in interstate commerce affecting interstate fraudulent marketing and sales activities of the enterprises conducted by employees managed, and controlled by Count 1 Defendants using the wires, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. In violation of 18 USC 1343, and constitutes more than 30 individual predicate acts.

G. From February 27th, 2017 and onward, in a continuing pattern of racketeering behavior conducted by employees, and third-party agents, of the enterprises managed, operated and controlled by the Count 1 Defendants. Employees of the enterprises managed and controlled the Count 1 Defendants engaged in distinctly separate acts of extortion in violation of 18 USC 1951, 18 USC 1952, and 18 USC 1961(1), and constitutes more than six separate and individual predicate acts.

H. From February 27th, 2017 and onward, in a continuing pattern of racketeering behavior conducted by employees, and third-party agents, of the enterprises managed, operated and controlled by the Count 1 Defendants. Employees of the enterprises managed and controlled the Count 1 Defendants engaged in distinctly separate acts of robbery in violation of 18 USC 1951, 18 USC 1952, and 18 USC 1961(1), and constitutes more than eight separate and individual predicate acts.

**223.** The acts listed above in Paragraph 222, Sec. A through H individually set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

**224.** The Count 1 Defendants have directly and indirectly conducted and participated in the conduct of the enterprises' affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

**225.** As a direct and proximate result of the Count 1 Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their businesses and property in that specifically:

A. Plaintiffs suffered injury and damages to property due to the Defendants' fraud schemes, patterns of racketeering behaviors and activities, and Defendants' purposeful acts of negligence by:

    **1)** The Defendants' failure to properly deliver the products sold to the Plaintiffs in Defendants' "bait and switch" scheme. And;

    **2)** The Defendants' ongoing and consistent negligence and fraud in failing to deliver the product sold to the Plaintiffs after receiving notice of their failures to deliver the correct product sold to the Plaintiffs. And;

    **3)** The Defendants' acts of fraud, extortion, and robbery in the Defendants' fraudulent and criminal attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product criminally and fraudulently delivered to the Plaintiffs through the illegal use of the mails and the wires. And;

    **4)** The Defendants' theft of Plaintiffs' personal property (Fireplace) through the Defendants' frauds and criminalities in attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product. And;

    **5)** The Defendants' theft of Plaintiffs' personal property (corporeal rights as members of State Farm Mutual Automobile Insurance Company). And;

    **6)** The Defendants' theft and destruction of Plaintiffs' personal property required to recover monies in litigation against the negligent builder. And;

    7) The Defendants' fraudulent and purposefully negligent 'failure' to adhere to the terms and conditions of the fraudulently sold 'bait and switch' product, which the Defendants were attempting to enforce upon the Plaintiffs, which resulted in further damage to Plaintiffs' property (automobiles). And;

    8) The Defendants' theft of the Plaintiffs' personal property (automobile insurance contract), by acts of fraud, and in participation with the racketeering activities of the jointly operating criminal enterprises. And;

    9) The Defendants' fraudulent reporting to national databases, negligently and fraudulently reporting Plaintiffs as 'high risk', when in fact, the actions of the Defendants themselves, and the related negligence was the direct basis of the reporting. Plaintiffs were damaged in 'property' relating to this specific issue due to the destruction of established personal employment contracts.

B. Plaintiffs suffered direct and proximate injuries to Plaintiffs' property due to the fraud schemes, racketeering activities and enterprises established, conducted, participated and operated by the Defendants in the amount of $8,555,000.00. Plaintiffs' injuries were resultant from, and directly related to the Defendants' fraudulent inducement of the Plaintiffs into Defendants' 'bait and switch' fraud scheme, and related acts of conglomerate racketeering enterprises activities. Defendants' fraudulent sales and 'post sale' racketeering activities used to defraud the Plaintiffs, and unlawfully obtain monies and properties from the Plaintiffs, included the Defendants' bait and switch frauds, other sales fraud schemes and marketing fraud schemes, and the fraudulent inducement of the Plaintiffs by the illegal and unlawful use of the mail and the wires, as well as direct acts of racketeering and criminalities against the Plaintiffs, including

robbery, extortion, acts of intimidation, fraudulent inducement to obtain Plaintiffs' signatures, coercion, and criminal negligence.

    i.   Plaintiffs property injured and damaged are defined as:

        a) building structure located at 605 Kiowa Drive west
        b) Plaintiff Quinn's vehicle
        c) Plaintiff Vanderbol's automobiles including 2008 BMW, 2004 Ford Excursion, 1999 Toyota Land Cruiser.
        d) Plaintiffs personal property located at 605 Kiowa Drive West

    ii.   Plaintiffs suffered personal injuries in the form of:
        a) Loss of income,
        b) loss of status and life style
        c) emotional duress
        d) physical harm (exposure to toxic environments)
        e) Loss of business investment, and surety.

C. Plaintiffs suffered injury and damages to their businesses due to the Defendants' fraud schemes, patterns of racketeering behaviors and activities, and Defendants' purposeful acts of negligence by:

    **1)** The Defendants' failure to properly deliver the products sold to the Plaintiffs in Defendants' "bait and switch" scheme. And;

    **2)** The Defendants' ongoing and consistent negligence and fraud in failing to deliver the product sold to the Plaintiffs after receiving notice of their failures to deliver the correct product sold to the Plaintiffs. And;

    **3)** The Defendants' acts of fraud, extortion, and robbery in the Defendants' fraudulent and criminal attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product criminally and fraudulently delivered to the Plaintiffs through the illegal use of the mails and the wires. And;

    **4)** The Defendants' theft of Plaintiffs' personal property (Fireplace) through the Defendants' frauds and criminalities in attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product. And;

    **5)** The Defendants' theft of Plaintiffs' personal property (corporeal rights as members of State Farm Mutual Automobile Insurance Company). And;

    **6)** The Defendants' theft and destruction of Plaintiffs' personal property required to recover monies in litigation against the negligent builder. And;

    7) The Defendants' fraudulent and purposefully negligent 'failure' to adhere to the terms and conditions of the fraudulently sold 'bait and switch' product, which the Defendants were attempting to enforce upon the Plaintiffs, which resulted in further damage to Plaintiffs' property (automobiles). And;

    8) The Defendants' theft of the Plaintiffs' personal property (automobile insurance contract), by acts of fraud, and in participation with the racketeering activities of the jointly operating criminal enterprises. And;

    9) The Defendants' fraudulent reporting to national databases, negligently and fraudulently reporting Plaintiffs as 'high risk', when in fact, the actions of the Defendants themselves, and the related negligence was the direct basis of the

reporting. Plaintiffs were damaged in 'property' relating to this specific issue due to the destruction of established personal employment contracts. And;

10) The Defendants' failure to make adequate, correct, and full restitution to the Plaintiffs in a reasonable amount of time, based upon the correct contract sold to the Plaintiffs. And;

11) The Defendants' failure to make proper restitution resulted in a complete 'shut-down' of business operations for a significant period of time due to the total losses suffered personally, by the Plaintiffs, and the businesses' loss of 'labor' and 'services' from the Plaintiffs due to the frauds, criminalities and acts of negligence by the Defendants.

12) The Defendants' purposefully negligent failures, frauds and criminalities, and acts of defamation of the Plaintiffs resulted in a loss of 'equity', and 'value' which graphically financially injured the business, due to the Plaintiffs' loss of reputation, status, credibility, 'creditworthiness' and 'risk assessment'.

13) The Defendants' fraudulent reporting to national databases graphically injured the businesses' ability to obtain underwriting for insurance and credit which:

  a) dramatically and irrationally increased the costs of operations.

  b) dramatically and irrationally increased the costs of monies and lines of credit.

  c) dramatically increased the costs of operations, insurance, financial transactions, import of products, and costs of goods sold to a level the company was no longer profitable, or obtained the margin of profitability required by the business third party investors.

  d) caused the businesses to no longer meet the requirements to obtain monies from signed investment agreements.

14) The Defendants' fraudulent schemes, operations and criminalities operating in a manner to damage the Plaintiffs, in order to obscure the Defendants' fraud schemes and criminality lasted for a period of time beyond a reasonable period of time, and as such, the businesses lost viability, profitability, and the ability to operate beyond their monetary reserves, and capabilities resulting in a complete collapse of the businesses.

15) The Defendants' causation of the collapse of the Plaintiffs' businesses, resulted in a complete loss of equity value and value of intellectual property held and assigned by the businesses.

D. Plaintiffs suffered direct and proximate damages and injuries to Plaintiffs' businesses due to the fraud schemes, racketeering activities and enterprises established, conducted, participated and operated by the Defendants in the amount of $70,800,000.00. Plaintiffs' injuries were resultant from, and directly related to the Defendants' fraudulent inducement of the Plaintiffs into Defendants' 'bait and switch' fraud scheme, and related acts of conglomerate racketeering enterprises' activities. Defendants' fraudulent sales and 'post sale' racketeering activities used to defraud the Plaintiffs, and unlawfully obtain monies and properties from the Plaintiffs included the Defendants' bait and switch frauds, other sales fraud schemes and marketing fraud schemes, and the fraudulent inducement of the Plaintiffs by the

illegal and unlawful use of the mail and the wires, as well as direct acts of racketeering and criminalities against the Plaintiffs, including robbery, extortion, acts of intimidation, fraudulent inducement to obtain Plaintiffs' signatures, coercion, and criminal negligence. And further acts of negligence, fraud, and criminalities conducted by the Defendants, and their enterprises including acts to defame the Plaintiffs, and the Defendants' purposefully fraudulent reporting of losses suffered by the Plaintiffs due to the acts of Defendants' frauds, and purposeful negligence to national risk reporting databases causing significant damage to the Plaintiffs' businesses, and resulted in incorrect, and the Defendants' purposefully fraudulent misrepresentation of the Plaintiffs, as risk parties.  All of which greatly affected the businesses' ability to conduct commerce, and operate viability, to a point in which the businesses became insolvent.

    i.    Plaintiffs businesses injured and damaged are defined as:

        a) OPM Research and Development Inc.
        b) 9-Ten Holdings Inc.
        c) Neoteric Ventures Inc.
        d) Irr. Trust for the Benefit of John S. Vanderbol III and associated developmental projects including: resurrection fitness, post stroke survival tactics book, and product lines.

    ii.    Businesses suffered injuries including:

        a) loss of income
        b) loss of investments in hand
        c) loss of underwriting
        d) loss of professional services of:
            1. Plaintiff Vanderbol
            2. Plaintiff Quinn
            3. company staff hired
            4. company staff contracted
            5. subcontractor design services
            6. subcontractor production services

        e) loss of product in development
        f) loss of invested monies
        g) loss of equity value
        h) loss of market opportunity
        i) loss of viability of projects in development.

**226.**    WHEREFORE, Plaintiffs request that this Court enter judgment against the Count 1 Defendants as follows:

    A. Plaintiffs pray for relief in the form actual damages to property in the amount of: $8,555,000.00

B. Plaintiffs pray for relief in the form of actual damages to businesses in the amount of: $70,800,000.00

C. Plaintiffs pray for treble damages for injuries suffer to Plaintiffs property in the amount of: $. 25,665,000.00

D. Plaintiffs pray for treble damages for injuries suffered to Plaintiffs business in the amount of: $212,400,000.00

E. Plaintiffs pray for reasonable attorney's fees should the Plaintiffs obtain the services of legal counsel in this matter.

F. Plaintiffs pray for all reasonable court costs, and costs of bringing forth this matter including the costs of filing, recording costs, costs of discovery, costs of depositions, costs of travel to obtain depositions, as well as, copying and mailing costs associated in this matter.

G. Plaintiffs pray for any and all other relief in the ends of, and in the pursuit of justice and any equitable relief this Honorable Court decides would be appropriate due to the gravity of the matter and the heinous acts of the Defendants.

## Count 2
## Pursuant to 18 U.S.C. § 1962(c)

**227.** The allegations of paragraphs 13 through 217 are incorporated herein by reference.

**228.** This Count is against Defendants State Farm Mutual Automobile Insurance Company (Defendant Auto), and State Farm Fire and Casualty Company (Defendant Fire) (herein after the "Count 2 Defendants").

**229.** The State Farm Group enterprise is an enterprise engaged in and whose activities affect interstate commerce. The Count 2 Defendants are associated with the enterprise.

**230.** The Count 2 Defendants agreed to and did conduct and participate in the conduct of the enterprises' affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs. Specifically, the Count 2 Defendants agreed to:

A. create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
  1) defraud parties, such as the plaintiffs.
  2) defraud banking institutions
  3) conduct a single entity fraud scheme designed to defraud parties
  4) engage in association in fact enterprises engaged in racketeering activities
  5) manage and operate association in fact relationships in a complex and confusion operational manner which:
    a) was designed to conduct racketeering activities
    b) hired third party attorneys to commit
      i. acts of fraud upon consumers of 'state farm products'

    ii. acts of fraud upon the court system of the states and the federal government

    iii. acts of criminalities under false pretenses

    iv. and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 2 Defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

6) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

  a) members of 'state farm automobile insurance company'

  b) government regulators

  c) banking officers, and banking institutions in general

  d) purchasers of debentures sold by 'state farm' enterprises.

  e) purchasers of 'state farm' products

  f) depositors in 'state farm bank fsb"

B. create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

1) issuance of directives to employees of the enterprises including:

  a) 'national corporate policies'

  b) memorandums

  c) training manuals

  d) claims and policy handling procedures manuals

  e) sales directives and training manuals

  f) marketing directives and training manuals

  g) contracts between joint enterprises

  h) contracts with third party agents, and agencies, including law firms

  i) instruction manual to attorneys.

2) issuances of directives to third party agents of the enterprises including:

  a) 'national corporate policies'

  b) memorandums

  c) training manuals

  d) claims and policy handling procedures manuals

  e) sales directives and training manuals

  f) marketing directives and training manuals

  g) contracts between joint enterprises

  h) contracts with third party agents, and agencies, including law firms

  i) instruction manual to attorneys.

3) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
   a) 'national corporate policies'
   b) memorandums
   c) training manuals
   d) claims and policy handling procedures manuals
   e) sales directives and training manuals
   f) marketing directives and training manuals
   g) contracts between joint enterprises
   h) contracts with third party agents, and agencies, including law firms
   i) instruction manual to attorneys.

C. creation of, usage of, participation in, and furtherance of the 'single entity fraud scheme' with knowledge and intent to:
1) defraud parties, such as the plaintiffs.
2) defraud banking institutions
3) conduct a single entity fraud scheme designed to defraud parties
4) engage in association in fact enterprises engaged in racketeering activities
5) manage and operate association in fact relationships in a complex and confusion operational manner which:
   a) was designed to conduct racketeering activities
   b) hired third party attorneys to commit
      i. acts of fraud upon consumers of 'state farm products'
      ii. acts of fraud upon the court system of the states and the federal government
      iii. acts of criminalities under false pretenses
      iv. and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 2 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.
6) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
   a) members of 'state farm automobile insurance company'
   b) government regulators
   c) banking officers, and banking institutions in general
   d) purchasers of debentures sold by 'state farm' enterprises.
   e) purchasers of 'state farm' products
   f) depositors in 'state farm bank fsb"
7) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:
   a) issuance of directives to employees of the enterprises including:

  i. 'national corporate policies'
  ii. memorandums
  iii. training manuals
  iv. claims and policy handling procedures manuals
  v. sales directives and training manuals
  vi. marketing directives and training manuals
  vii. contracts between joint enterprises
  viii. contracts with third party agents, and agencies, including law firms
  ix. instruction manual to attorneys.

b) issuances of directives to third party agents of the enterprises including:

  i. 'national corporate policies'
  ii. memorandums
  iii. training manuals
  iv. claims and policy handling procedures manuals
  v. sales directives and training manuals
  vi. marketing directives and training manuals
  vii. contracts between joint enterprises
  viii. contracts with third party agents, and agencies, including law firms
  ix. instruction manual to attorneys.

c) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:

  i. 'national corporate policies'
  ii. memorandums
  iii. training manuals
  iv. claims and policy handling procedures manuals
  v. sales directives and training manuals
  vi. marketing directives and training manuals
  vii. contracts between joint enterprises
  viii. contracts with third party agents, and agencies, including law firms
  ix. instruction manual to attorneys.

D. Authorize the usage of, participate in the usage of, approve the usage of, and / or engage in marketing activities, sales activities, or operational activities of an individual enterprise which used the term 'state farm' instead of the full legal, and lawfully registered company enterprise name such as, 'State Farm Mutual Automobile Insurance Company, or State Farm Fire and Casualty Company, or State Farm Lloyds, or State Farm Lloyds Inc in any form of communication to any party, including:

  1) use in marketing materials

2) use in sales activities
3) use in claims activities
4) usage in general conversation
5) use in interviews
6) use in reports to
    a) members of state farm mutual automobile insurance company
    b) government officials
    c) given in testimony to government officials
    d) given in conversation with government regulators

E. Engage in interstate sales and marketing activities using the term 'state farm' to obscure the operational differences between the 'state farm' and the 25 companies owned by Defendant Auto, and the association in fact enterprises, with the knowledge such usage would affect interstate commerce, in order to:

1) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
    a) defraud parties, such as the plaintiffs.
    b) defraud banking institutions
    c) conduct a single entity fraud scheme designed to defraud parties
    d) engage in association in fact enterprises engaged in racketeering activities
    e) manage and operate association in fact relationships in a complex and confusion operational manner which:
        i. was designed to conduct racketeering activities
        ii. hired third party attorneys to commit
            1) acts of fraud upon consumers of 'state farm products'
            2) acts of fraud upon the court system of the states and the federal government
            3) acts of criminalities under false pretenses
            4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 2 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

2) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
    a) members of 'state farm automobile insurance company'
    b) government regulators
    c) banking officers, and banking institutions in general
    d) purchasers of debentures sold by 'state farm' enterprises.

    e) purchasers of 'state farm' products

    f) depositors in 'state farm bank fsb"

3) create, establish, and operate enterprises with purposeful knowledge and intent to:

    a) defraud parties, such as the plaintiffs.

    b) defraud banking institutions

    c) conduct a single entity fraud scheme designed to defraud parties

    d) engage in association in fact enterprises engaged in racketeering activities

    e) manage and operate association in fact relationships in a complex and confusion operational manner which:

        i. was designed to conduct racketeering activities

        ii. hired third party attorneys to commit

            1) acts of fraud upon consumers of 'state farm products'

            2) acts of fraud upon the court system of the states and the federal government

            3) acts of criminalities under false pretenses

            4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 2 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

        iii. operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

            1) members of 'state farm automobile insurance company'

            2) government regulators

            3) banking officers, and banking institutions in general

            4) purchasers of debentures sold by 'state farm' enterprises.

            5) purchasers of 'state farm' products

            6) depositors in 'state farm bank fsb"

        iv. create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

            1) Issuance of directives to employees of the enterprises including:

                a) 'national corporate policies'

                b) memorandums

                c) training manuals

        d) claims and policy handling procedures manuals
        e) sales directives and training manuals
        f) marketing directives and training manuals
        g) contracts between joint enterprises
        h) contracts with third party agents, and agencies, including law firms
        i) instruction manual to attorneys.

v.   issuances of directives to third party agents of the enterprises including:
        1) 'national corporate policies'
        2) memorandums
        3) training manuals
        4) claims and policy handling procedures manuals
        5) sales directives and training manuals
        6) marketing directives and training manuals
        7) contracts between joint enterprises
        8) contracts with third party agents, and agencies, including law firms
        9) instruction manual to attorneys.

vi.  issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
        1) 'national corporate policies'
        2) memorandums
        3) training manuals
        4) claims and policy handling procedures manuals
        5) sales directives and training manuals
        6) marketing directives and training manuals
        7) contracts between joint enterprises
        8) contracts with third party agents, and agencies, including law firms
        9) instruction manual to attorneys.

F.  Used interlocking directorates, interlinked officers positions in various and separate companies, and sperate but jointly interlinked employee positions in independent and allegedly separately operated companies owned by Defendant Auto, and utilized employees of separately operating companies owned by Defendant, to cause, engage in, or manage activities to:

    1) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
        a) defraud parties, such as the plaintiffs.
        b) defraud banking institutions

   c) conduct a single entity fraud scheme designed to defraud parties

   d) engage in association in fact enterprises engaged in racketeering activities

   e) manage and operate association in fact relationships in a complex and confusion operational manner which:

      i. was designed to conduct racketeering activities

      ii. hired third party attorneys to commit

         1) acts of fraud upon consumers of 'state farm products'

         2) acts of fraud upon the court system of the states and the federal government

         3) acts of criminalities under false pretenses

         4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 2 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

   f) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

      i. members of 'state farm automobile insurance company'

      ii. government regulators

      iii. banking officers, and banking institutions in general

      iv. purchasers of debentures sold by 'state farm' enterprises.

      v. purchasers of 'state farm' products

      vi. depositors in 'state farm bank fsb"

2) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

   a) issuance of directives to employees of the enterprises including:

      i. 'national corporate policies'

      ii. memorandums

      iii. training manuals

      iv. claims and policy handling procedures manuals

      v. sales directives and training manuals

      vi. marketing directives and training manuals

      vii. contracts between joint enterprises

      viii. contracts with third party agents, and agencies, including law firms

      ix. instruction manual to attorneys.

   b) issuances of directives to third party agents of the enterprises including:

      i. 'national corporate policies'

     ii.    memorandums

    iii.    training manuals

    iv.    claims and policy handling procedures manuals

    v.    sales directives and training manuals

    vi.    marketing directives and training manuals

    vii.    contracts between joint enterprises

    viii.    contracts with third party agents, and agencies, including law firms

    ix.    instruction manual to attorneys.

c) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:

    i.    'national corporate policies'

    ii.    memorandums

    iii.    training manuals

    iv.    claims and policy handling procedures manuals

    v.    sales directives and training manuals

    vi.    marketing directives and training manuals

    vii.    contracts between joint enterprises

    viii.    contracts with third party agents, and agencies, including law firms

    ix.    instruction manual to attorneys.

3) creation of, usage of, participation in, and furtherance of the 'single entity fraud scheme' with knowledge and intent to:

a) defraud parties, such as the plaintiffs.

b) defraud banking institutions

c) conduct a single entity fraud scheme designed to defraud parties

d) engage in association in fact enterprises engaged in racketeering activities

e) manage and operate association in fact relationships in a complex and confusion operational manner which:

    i.    was designed to conduct racketeering activities

    ii.    hired third party attorneys to commit

        1) acts of fraud upon consumers of 'state farm products'

        2) acts of fraud upon the court system of the states and the federal government

        3) acts of criminalities under false pretenses

        4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 2 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

f) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in

racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

    i.    members of 'state farm automobile insurance company'

    ii.    government regulators

    iii.    banking officers, and banking institutions in general

    iv.    purchasers of debentures sold by 'state farm' enterprises.

    v.    purchasers of 'state farm' products

    vi.    depositors in 'state farm bank fsb"

g) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

    i.    issuance of directives to employees of the enterprises including:

        1) 'national corporate policies'

        2) memorandums

        3) training manuals

        4) claims and policy handling procedures manuals

        5) sales directives and training manuals

        6) marketing directives and training manuals

        7) contracts between joint enterprises

        8) contracts with third party agents, and agencies, including law firms

        9) instruction manual to attorneys.

    ii.    issuances of directives to third party agents of the enterprises including:

        1) 'national corporate policies'

        2) memorandums

        3) training manuals

        4) claims and policy handling procedures manuals

        5) sales directives and training manuals

        6) marketing directives and training manuals

        7) contracts between joint enterprises

        8) contracts with third party agents, and agencies, including law firms

        9) instruction manual to attorneys.

    iii.    issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:

        1) 'national corporate policies'

        2) memorandums

        3) training manuals

        4) claims and policy handling procedures manuals

5) sales directives and training manuals
6) marketing directives and training manuals
7) contracts between joint enterprises
8) contracts with third party agents, and agencies, including law firms
9) instruction manual to attorneys.

4) Authorize the usage of, participate in the usage of, approve the usage of, and / or engage in marketing activities, sales activities, or operational activities of an individual enterprise which used the term 'state farm' instead of the full legal, and lawfully registered company enterprise name such as, 'State Farm Mutual Automobile Insurance Company, or State Farm Fire and Casualty Company, or State Farm Lloyds, or State Farm Lloyds Inc in any form of communication to any party, including:
   a) use in marketing materials
   b) use in sales activities
   c) use in claims activities
   d) usage in general conversation
   e) use in interviews
   f) use in reports to
      i.   members of state farm mutual automobile insurance company
      ii.  government officials
      iii. given in testimony to government officials
      iv.  given in conversation with government regulators

5) Engage in interstate sales and marketing activities using the term 'state farm' to obscure the operational differences between the 'state farm' and the 25 companies owned by Defendant Auto, and the association in fact enterprises, with the knowledge such usage would affect interstate commerce, in order to:

   a) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
      i.   defraud parties, such as the plaintiffs.
      ii.  defraud banking institutions
      iii. conduct a single entity fraud scheme designed to defraud parties
         1) engage in association in fact enterprises engaged in racketeering activities
         2) manage and operate association in fact relationships in a complex and confusion operational manner which:
         3) was designed to conduct racketeering activities
         4) hired third party attorneys to commit
            a) acts of fraud upon consumers of 'state farm products'

       b) acts of fraud upon the court system of the states and the federal government

       c) acts of criminalities under false pretenses

       d) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 2 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

b) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

    i. members of 'state farm automobile insurance company'

    ii. government regulators

    iii. banking officers, and banking institutions in general

    iv. purchasers of debentures sold by 'state farm' enterprises.

    v. purchasers of 'state farm' products

    vi. depositors in 'state farm bank fsb"

c) create, establish, and operate enterprises with purposeful knowledge and intent to:

    i. defraud parties, such as the plaintiffs.

    ii. defraud banking institutions

    iii. conduct a single entity fraud scheme designed to defraud parties

    iv. engage in association in fact enterprises engaged in racketeering activities

    v. manage and operate association in fact relationships in a complex and confusion operational manner which:

       1) was designed to conduct racketeering activities

       2) hired third party attorneys to commit

          a) acts of fraud upon consumers of 'state farm products'

          b) acts of fraud upon the court system of the states and the federal government

          c) acts of criminalities under false pretenses

          d) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 2 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

3) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
   a) members of 'state farm automobile insurance company'
   b) government regulators
   c) banking officers, and banking institutions in general
   d) purchasers of debentures sold by 'state farm' enterprises.
   e) purchasers of 'state farm' products
   f) depositors in 'state farm bank fsb"
4) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:
   a) Issuance of directives to employees of the enterprises including:
      i. 'national corporate policies'
      ii. memorandums
      iii. training manuals
      iv. claims and policy handling procedures manuals
      v. sales directives and training manuals
      vi. marketing directives and training manuals
      vii. contracts between joint enterprises
      viii. contracts with third party agents, and agencies, including law firms
      ix. instruction manual to attorneys.

5) issuances of directives to third party agents of the enterprises including:
   a) 'national corporate policies'
   b) memorandums
   c) training manuals
   d) claims and policy handling procedures manuals
   e) sales directives and training manuals
   f) marketing directives and training manuals
   g) contracts between joint enterprises
   h) contracts with third party agents, and agencies, including law firms

        i) instruction manual to attorneys.

    6) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
        a) 'national corporate policies'
        b) memorandums
        c) training manuals
        d) claims and policy handling procedures manuals
        e) sales directives and training manuals
        f) marketing directives and training manuals
        g) contracts between joint enterprises
        h) contracts with third party agents, and agencies, including law firms
        i) instruction manual to attorneys.

G. either directly or indirectly through employees or agents of the enterprises make statements or cause a third party to make statements which include false and fraudulent statements of fact, using the term 'state farm' including:
    1) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in advertising activities, promotions, and campaigns.
    2) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in sales activities, promotions, and campaigns.
    3) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in claims activities, processes, or payment activities.
    4) engaging in a corporate scheme, or pattern of communication, or pattern of behavior to never to admit 'state farm':
        a) makes mistakes
        b) was found in court to conduct wrongful activity
        c) does not 'act like a good neighbor'
        d) does not 'help life go right'
        e) engages in nefarious acts
        f) engages in a pattern of behavior to include
           i. abusive claims processes
          ii. abuse of litigation as a profit protection mechanism
         iii. conducts patterns of theft, and fraud by deception
        g) conducts a knowingly abusive pattern of company activities
           i. to deny payments on lawful claims
          ii. to delay payments on lawful claims
         iii. to refuse payments on claims based upon knowledge collection of the payment by the claimant would be more

          costly through litigation than viable, or financially able for the claimant to afford.

    h) abuses customers good will

    i) abuses claimants good will and causes financial damage due to 'state farms' operational policies.

5) Defendants knowledge 'state farm' corporate policies unreasonably favor 'state farm' at the expense of the customer, including Plaintiffs

6) Refusing to admit, acknowledge or disclose to prospective consumers 'State Farm' has a significant history which includes:

    a) settlements of RICO claims against 'state farm'

    b) state and federal court findings of fact that 'state farm' engaged in:

        i.   sales frauds

        ii.  claims frauds

        iii.  'mad dog' defense tactics

        iv.  abuse of claimants including

            1) purposefully causing emotional duress

            2) purposeful defamation of claimants character

        v.  abuse of former 'state farm' employees acting as 'whistleblowers'

    c) sizeable state and federal fines levied for:

        i.   fraudulent

            1) sales practices

            2) claims activities

            3) reporting to government agencies

    d) Federal court rulings finding 'state farm' guilty of:

        i.   acts to defraud the federal government

        ii.  engaging in interstate fraud

        iii.  frauds against claimants

        iv.  using 'state farms' wealth and financial resources to cause pain, suffering and delay to claimants.

        v.  engaging in unreasonable litigation practices.

H. Directly and or indirectly causing employees of enterprises to engage in racketeering activities in furtherance of fraud schemes, through directives, or company policies which authorize, or cause the commission of acts of:

    1) mail fraud;

    2) wire fraud;

    3) bank fraud;

    4) extortion;

    5) robbery

    6) violations of 18 USC 1951

    7) violations of 18 USC 1952

    8) violations of 18 USC 1005

    9) violations of 18 USC 1006

    10) violations of 18 USC 656

    11) and other violations of 18 USC 1961(1) not here in listed.

231. Pursuant to and in furtherance of their fraudulent scheme, Defendants Auto, and Fire committed multiple related acts of racketeering activities conducted by enterprises, and directly and indirectly by the Count 2 Defendants including:

    A. From 2012 through 2019 engaging in interstate commerce affecting interstate fraud campaigns using the wires, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The campaign in question is known as the 'like a good neighbor campaign, in violation of 18 USC 1343, and constitutes more than 100 individual predicate acts.

    B. From 2016 through 2019 engaging in interstate commerce affecting interstate fraud campaigns using the wires, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The campaign in question is known as the 'make life right" campaign, in violation of 18 USC 1343, and constitutes more than 50 individual predicate acts.

    C. From 2012 through 2018 engaging in interstate commerce affecting interstate fraudulent marketing and sales supporting activities in the issuance of fraudulent 'annual reports' using the wires, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The reports in question are known as the 'annual reports to the automobile policy owners" in violation of 18 USC 1343, and constitutes more than 6 individual predicate acts.

    D. From 2012 through 2018 engaging in interstate commerce affecting interstate fraudulent marketing and sales supporting activities in the issuance of fraudulent 'annual reports' using the US Postal Service, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The reports in question are known as the 'annual reports to the automobile policy owners" in violation of 18 USC 1341, and constitutes more than 6 individual predicate acts.

    E. From 2012 through 2019 engaging in interstate commerce affecting interstate issuance of fraudulent statements, sales materials, and 'bills' using the US Postal Service, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The items in quested are in violation of 18 USC 1341, and constitutes more than 40 individual predicate acts.

F. From December 2015 through August, 2018 engaging in interstate commerce affecting interstate fraudulent marketing and sales activities of the enterprises conducted by employees managed, and controlled by Count 2 Defendants using the wires, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud.  In violation of 18 USC 1343, and constitutes more than 30 individual predicate acts.

G. From February 27th, 2017 and onward, in a continuing pattern of racketeering behavior conducted by employees, and third-party agents, of the enterprises managed, operated and controlled by the Count 2 Defendants.  Employees of the enterprises managed and controlled the Count 2 Defendants engaged in distinctly separate acts of extortion in violation of 18 USC 1951, 18 USC 1952, and 18 USC 1961(1), and constitutes more than six separate and individual predicate acts.

H. From February 27th, 2017 and onward, in a continuing pattern of racketeering behavior conducted by employees, and third-party agents, of the enterprises managed, operated and controlled by the Count 2 Defendants.  Employees of the enterprises managed and controlled the Count 2 Defendants engaged in distinctly separate acts of robbery in violation of 18 USC 1951, 18 USC 1952, and 18 USC 1961(1), and constitutes more than eight separate and individual predicate acts.

**232.** The acts listed above in Paragraph 231, Sec. A though H individually set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

**233.** The Count 2 Defendants have directly and indirectly conducted and participated in the conduct of the enterprises' affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

**234.** As a direct and proximate result of the Count 2 Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their businesses and property in in that specifically:

A. Plaintiffs suffered injury and damages to property due to the Defendants' fraud schemes, patterns of racketeering behaviors and activities, and Defendants' purposeful acts of negligence by:

   1) The Defendants' failure to properly deliver the products sold to the Plaintiffs in Defendants' "bait and switch" scheme. And;

   2) The Defendants' ongoing and consistent negligence and fraud in failing to deliver the product sold to the Plaintiffs after receiving notice of their failures to deliver the correct product sold to the Plaintiffs. And;

3) The Defendants' acts of fraud, extortion, and robbery in the Defendants' fraudulent and criminal attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product criminally and fraudulently delivered to the Plaintiffs through the illegal use of the mails and the wires. And;

4) The Defendants' theft of Plaintiffs' personal property (Fireplace) through the Defendants' frauds and criminalities in attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product. And;

5) The Defendants' theft of Plaintiffs' personal property (corporeal rights as members of State Farm Mutual Automobile Insurance Company). And;

6) The Defendants' theft and destruction of Plaintiffs' personal property required to recover monies in litigation against the negligent builder. And;

7) The Defendants' fraudulent and purposefully negligent 'failure' to adhere to the terms and conditions of the fraudulently sold 'bait and switch' product, which the Defendants were attempting to enforce upon the Plaintiffs, which resulted in further damage to Plaintiffs' property (automobiles). And;

8) The Defendants' theft of the Plaintiffs' personal property (automobile insurance contract), by acts of fraud, and in participation with the racketeering activities of the jointly operating criminal enterprises. And;

9) The Defendants' fraudulent reporting to national databases, negligently and fraudulently reporting Plaintiffs as 'high risk', when in fact, the actions of the Defendants themselves, and the related negligence was the direct basis of the reporting. Plaintiffs were damaged in 'property' relating to this specific issue due to the destruction of established personal employment contracts.

B. Plaintiffs suffered direct and proximate injuries to Plaintiffs' property due to the fraud schemes, racketeering activities and enterprises established, conducted, participated and operated by the Defendants in the amount of $8,555,000.00. Plaintiffs' injuries were resultant from, and directly related to the Defendants' fraudulent inducement of the Plaintiffs into Defendants' 'bait and switch' fraud scheme, and related acts of conglomerate racketeering enterprises activities. Defendants' fraudulent sales and 'post sale' racketeering activities used to defraud the Plaintiffs, and unlawfully obtain monies and properties from the Plaintiffs, included the Defendants' bait and switch frauds, other sales fraud schemes and marketing fraud schemes, and the fraudulent inducement of the Plaintiffs by the illegal and unlawful use of the mail and the wires, as well as direct acts of racketeering and criminalities against the Plaintiffs, including robbery, extortion, acts of intimidation, fraudulent inducement to obtain Plaintiffs' signatures, coercion, and criminal negligence.

   i. Plaintiffs property injured and damaged are defined as:

      a) building structure located at 605 Kiowa Drive west

      b) Plaintiff Quinn's vehicle

      c) Plaintiff Vanderbol's automobiles including 2008 BMW, 2004 Ford Excursion, 1999 Toyota Land Cruiser.

      d) Plaintiffs personal property located at 605 Kiowa Drive West

   ii. Plaintiffs suffered personal injuries in the form of:

    a) Loss of income,
    b) loss of status and life style
    c) emotional duress
    d) physical harm (exposure to toxic environments)
    e) Loss of business investment, and surety.

C. Plaintiffs suffered injury and damages to their businesses due to the Defendants'
fraud schemes, patterns of racketeering behaviors and activities, and Defendants'
purposeful acts of negligence by:

**1)** The Defendants' failure to properly deliver the products sold to the Plaintiffs
in Defendants' "bait and switch" scheme. And;

**2)** The Defendants' ongoing and consistent negligence and fraud in failing to
deliver the product sold to the Plaintiffs after receiving notice of their failures
to deliver the correct product sold to the Plaintiffs. And;

**3)** The Defendants' acts of fraud, extortion, and robbery in the Defendants'
fraudulent and criminal attempts to enforce the terms and conditions of the
fraudulently sold 'bait and switch' product criminally and fraudulently
delivered to the Plaintiffs through the illegal use of the mails and the wires.
And;

**4)** The Defendants' theft of Plaintiffs' personal property (Fireplace) through the
Defendants' frauds and criminalities in attempts to enforce the terms and
conditions of the fraudulently sold 'bait and switch' product. And;

**5)** The Defendants' theft of Plaintiffs' personal property (corporeal rights as
members of State Farm Mutual Automobile Insurance Company). And;

**6)** The Defendants' theft and destruction of Plaintiffs' personal property
required to recover monies in litigation against the negligent builder. And;

7) The Defendants' fraudulent and purposefully negligent 'failure' to adhere to
the terms and conditions of the fraudulently sold 'bait and switch' product,
which the Defendants were attempting to enforce upon the Plaintiffs, which
resulted in further damage to Plaintiffs' property (automobiles). And;

8) The Defendants' theft of the Plaintiffs' personal property (automobile
insurance contract), by acts of fraud, and in participation with the racketeering
activities of the jointly operating criminal enterprises. And;

9) The Defendants' fraudulent reporting to national databases, negligently and
fraudulently reporting Plaintiffs as 'high risk', when in fact, the actions of the
Defendants themselves, and the related negligence was the direct basis of the
reporting. Plaintiffs were damaged in 'property' relating to this specific issue
due to the destruction of established personal employment contracts. And;

10) The Defendants' failure to make adequate, correct, and full restitution to the
Plaintiffs in a reasonable amount of time, based upon the correct contract sold
to the Plaintiffs. And;

11) The Defendants' failure to make proper restitution resulted in a complete
'shut-down' of business operations for a significant period of time due to the
total losses suffered personally, by the Plaintiffs, and the businesses' loss of
'labor' and 'services' from the Plaintiffs due to the frauds, criminalities and
acts of negligence by the Defendants.

12) The Defendants' purposefully negligent failures, frauds and criminalities, and acts of defamation of the Plaintiffs resulted in a loss of 'equity', and 'value' which graphically financially injured the business, due to the Plaintiffs' loss of reputation, status, credibility, 'creditworthiness' and 'risk assessment'.

13) The Defendants' fraudulent reporting to national databases graphically injured the businesses' ability to obtain underwriting for insurance and credit which:
   a) dramatically and irrationally increased the costs of operations.
   b) dramatically and irrationally increased the costs of monies and lines of credit.
   c) dramatically increased the costs of operations, insurance, financial transactions, import of products, and costs of goods sold to a level the company was no longer profitable, or obtained the margin of profitability required by the business third party investors.
   d) caused the businesses to no longer meet the requirements to obtain monies from signed investment agreements.

14) The Defendants' fraudulent schemes, operations and criminalities operating in a manner to damage the Plaintiffs, in order to obscure the Defendants' fraud schemes and criminality lasted for a period of time beyond a reasonable period of time, and as such, the businesses lost viability, profitability, and the ability to operate beyond their monetary reserves, and capabilities resulting in a complete collapse of the businesses.

15) The Defendants' causation of the collapse of the Plaintiffs' businesses, resulted in a complete loss of equity value and value of intellectual property held and assigned by the businesses.

D. Plaintiffs suffered direct and proximate damages and injuries to Plaintiffs' businesses due to the fraud schemes, racketeering activities and enterprises established, conducted, participated and operated by the Defendants in the amount of $70,800,000.00. Plaintiffs' injuries were resultant from, and directly related to the Defendants' fraudulent inducement of the Plaintiffs into Defendants' 'bait and switch' fraud scheme, and related acts of conglomerate racketeering enterprises' activities. Defendants' fraudulent sales and 'post sale' racketeering activities used to defraud the Plaintiffs, and unlawfully obtain monies and properties from the Plaintiffs included the Defendants' bait and switch frauds, other sales fraud schemes and marketing fraud schemes, and the fraudulent inducement of the Plaintiffs by the illegal and unlawful use of the mail and the wires, as well as direct acts of racketeering and criminalities against the Plaintiffs, including robbery, extortion, acts of intimidation, fraudulent inducement to obtain Plaintiffs' signatures, coercion, and criminal negligence. And further acts of negligence, fraud, and criminalities conducted by the Defendants, and their enterprises including acts to defame the Plaintiffs, and the Defendants' purposefully fraudulent reporting of losses suffered by the Plaintiffs due to the acts of Defendants' frauds, and purposeful negligence to national risk reporting databases causing significant damage to the Plaintiffs' businesses, and resulted in incorrect, and the Defendants' purposefully fraudulent misrepresentation of the Plaintiffs, as risk parties. All of which greatly affected the

businesses' ability to conduct commerce, and operate viability, to a point in which the businesses became insolvent.

    i.    Plaintiffs businesses injured and damaged are defined as:

        a)  OPM Research and Development Inc.
        b)  9-Ten Holdings Inc.
        c)  Neoteric Ventures Inc.
        d)  Irr. Trust for the Benefit of John S. Vanderbol III and associated developmental projects including: resurrection fitness, post stroke survival tactics book, and product lines.

    ii.    Businesses suffered injuries including:
        a)  loss of income
        b)  loss of investments in hand
        c)  loss of underwriting
        d)  loss of professional services of:
            7.  Plaintiff Vanderbol
            8.  Plaintiff Quinn
            9.  company staff hired
            10. company staff contracted
            11. subcontractor design services
            12. subcontractor production services

        e)  loss of product in development
        f)  loss of invested monies
        g)  loss of equity value
        h)  loss of market opportunity
        i)  loss of viability of projects in development.

**235.**    WHEREFORE, Plaintiffs request that this Court enter judgment against the Count 2 Defendants as follows:

    A.  Plaintiffs pray for relief in the form actual damages to property in the amount of: $8,555,000.00
    B.  Plaintiffs pray for relief in the form of actual damages to businesses in the amount of: $70,800,000.00
    C.  Plaintiffs pray for treble damages for injuries suffer to Plaintiffs property in the amount of: $. 25,665,000.00
    D.  Plaintiffs pray for treble damages for injuries suffered to Plaintiffs business in the amount of: $212,400,000.00
    E.  Plaintiffs pray for reasonable attorney's fees should the Plaintiffs obtain the services of legal counsel in this matter.
    F.  Plaintiffs pray for all reasonable court costs, and costs of bringing forth this matter including the costs of filing, recording costs, costs of discovery, costs of depositions,

costs of travel to obtain depositions, as well as, copying and mailing costs associated in this matter.

G. Plaintiffs pray for any and all other relief in the ends of, and in the pursuit of justice and any equitable relief this Honorable Court decides would be appropriate due to the gravity of the matter and the heinous acts of the Defendants.

## **Count 3**

## **Pursuant to 18 U.S.C. § 1962(c)**

**236.** The allegations of paragraphs 13 through 217 are incorporated herein by reference.

**237.** This Count is against Defendants Tipsord, Farney, Smith, Harbert, and Wey (herein after the "Count 3 Defendants").

**238.** The State Farm Group subsidiary "association in fact" enterprises identified as Enterprises A through G are enterprises engaged in and whose activities affect interstate commerce. The Count 3 Defendants are employed by or associated with the subsidiary 'association in fact' enterprises identified as enterprises A through G.

**239.** The Count 3 Defendants agreed to and did conduct and participate in the conduct of the enterprises' affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs. Specifically, the Count 3 Defendants agreed to:

A. create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
   1) defraud parties, such as the plaintiffs.
   2) defraud banking institutions
   3) conduct a single entity fraud scheme designed to defraud parties
   4) engage in association in fact enterprises engaged in racketeering activities
   5) manage and operate association in fact relationships in a complex and confusion operational manner which:
      a) was designed to conduct racketeering activities
      b) hired third party attorneys to commit
         i. acts of fraud upon consumers of 'state farm products'
         ii. acts of fraud upon the court system of the states and the federal government
         iii. acts of criminalities under false pretenses
         iv. and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 3 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

6) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
   a) members of 'state farm automobile insurance company'
   b) government regulators
   c) banking officers, and banking institutions in general
   d) purchasers of debentures sold by 'state farm' enterprises.
   e) purchasers of 'state farm' products
   f) depositors in 'state farm bank fsb"

B. create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:
   1) issuance of directives to employees of the enterprises including:
      a) 'national corporate policies'
      b) memorandums
      c) training manuals
      d) claims and policy handling procedures manuals
      e) sales directives and training manuals
      f) marketing directives and training manuals
      g) contracts between joint enterprises
      h) contracts with third party agents, and agencies, including law firms
      i) instruction manual to attorneys.

   2) issuances of directives to third party agents of the enterprises including:
      a) 'national corporate policies'
      b) memorandums
      c) training manuals
      d) claims and policy handling procedures manuals
      e) sales directives and training manuals
      f) marketing directives and training manuals
      g) contracts between joint enterprises
      h) contracts with third party agents, and agencies, including law firms
      i) instruction manual to attorneys.

   3) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
      a) 'national corporate policies'
      b) memorandums
      c) training manuals
      d) claims and policy handling procedures manuals
      e) sales directives and training manuals
      f) marketing directives and training manuals

g) contracts between joint enterprises
h) contracts with third party agents, and agencies, including law firms
i) instruction manual to attorneys.

C. creation of, usage of, participation in, and furtherance of the 'single entity fraud scheme' with knowledge and intent to:
   1) defraud parties, such as the plaintiffs.
   2) defraud banking institutions
   3) conduct a single entity fraud scheme designed to defraud parties
   4) engage in association in fact enterprises engaged in racketeering activities
   5) manage and operate association in fact relationships in a complex and confusion operational manner which:
      a) was designed to conduct racketeering activities
      b) hired third party attorneys to commit
         i. acts of fraud upon consumers of 'state farm products'
         ii. acts of fraud upon the court system of the states and the federal government
         iii. acts of criminalities under false pretenses
         iv. and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 3 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.
   6) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
      a) members of 'state farm automobile insurance company'
      b) government regulators
      c) banking officers, and banking institutions in general
      d) purchasers of debentures sold by 'state farm' enterprises.
      e) purchasers of 'state farm' products
      f) depositors in 'state farm bank fsb"
   7) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:
      a) issuance of directives to employees of the enterprises including:
         i. 'national corporate policies'
         ii. memorandums
         iii. training manuals
         iv. claims and policy handling procedures manuals
         v. sales directives and training manuals
         vi. marketing directives and training manuals
         vii. contracts between joint enterprises
         viii. contracts with third party agents, and agencies, including law firms

        ix.    instruction manual to attorneys.

  b)  issuances of directives to third party agents of the enterprises including:
- i. 'national corporate policies'
- ii. memorandums
- iii. training manuals
- iv. claims and policy handling procedures manuals
- v. sales directives and training manuals
- vi. marketing directives and training manuals
- vii. contracts between joint enterprises
- viii. contracts with third party agents, and agencies, including law firms
- ix. instruction manual to attorneys.

  c)  issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
- i. 'national corporate policies'
- ii. memorandums
- iii. training manuals
- iv. claims and policy handling procedures manuals
- v. sales directives and training manuals
- vi. marketing directives and training manuals
- vii. contracts between joint enterprises
- viii. contracts with third party agents, and agencies, including law firms
- ix. instruction manual to attorneys.

D. Authorize the usage of, participate in the usage of, approve the usage of, and / or engage in marketing activities, sales activities, or operational activities of an individual enterprise which used the term 'state farm' instead of the full legal, and lawfully registered company enterprise name such as, 'State Farm Mutual Automobile Insurance Company, or State Farm Fire and Casualty Company, or State Farm Lloyds, or State Farm Lloyds Inc in any form of communication to any party, including:
1) use in marketing materials
2) use in sales activities
3) use in claims activities
4) usage in general conversation
5) use in interviews
6) use in reports to
    a) members of state farm mutual automobile insurance company
    b) government officials
    c) given in testimony to government officials
    d) given in conversation with government regulators

E. Engage in interstate sales and marketing activities using the term 'state farm' to obscure the operational differences between the 'state farm' and the 25 companies owned by Defendant Auto, and the association in fact enterprises, with the knowledge such usage would affect interstate commerce, in order to:

    1) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
        a) defraud parties, such as the plaintiffs.
        b) defraud banking institutions
        c) conduct a single entity fraud scheme designed to defraud parties
        d) engage in association in fact enterprises engaged in racketeering activities
        e) manage and operate association in fact relationships in a complex and confusion operational manner which:
            i. was designed to conduct racketeering activities
            ii. hired third party attorneys to commit
                1) acts of fraud upon consumers of 'state farm products'
                2) acts of fraud upon the court system of the states and the federal government
                3) acts of criminalities under false pretenses
                4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 3 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

    2) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
        a) members of 'state farm automobile insurance company'
        b) government regulators
        c) banking officers, and banking institutions in general
        d) purchasers of debentures sold by 'state farm' enterprises.
        e) purchasers of 'state farm' products
        f) depositors in 'state farm bank fsb"

    3) create, establish, and operate enterprises with purposeful knowledge and intent to:
        a) defraud parties, such as the plaintiffs.
        b) defraud banking institutions
        c) conduct a single entity fraud scheme designed to defraud parties

d) engage in association in fact enterprises engaged in racketeering activities

e) manage and operate association in fact relationships in a complex and confusion operational manner which:

    i.   was designed to conduct racketeering activities

    ii.   hired third party attorneys to commit

        1) acts of fraud upon consumers of 'state farm products'

        2) acts of fraud upon the court system of the states and the federal government

        3) acts of criminalities under false pretenses

        4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 3 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

    iii.   operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

        1) members of 'state farm automobile insurance company'

        2) government regulators

        3) banking officers, and banking institutions in general

        4) purchasers of debentures sold by 'state farm' enterprises.

        5) purchasers of 'state farm' products

        6) depositors in 'state farm bank fsb"

    iv.   create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

        1) Issuance of directives to employees of the enterprises including:

            a) 'national corporate policies'

            b) memorandums

            c) training manuals

            d) claims and policy handling procedures manuals

            e) sales directives and training manuals

            f) marketing directives and training manuals

            g) contracts between joint enterprises

            h) contracts with third party agents, and agencies, including law firms

            i) instruction manual to attorneys.

v.   issuances of directives to third party agents of the enterprises including:
1) 'national corporate policies'
2) memorandums
3) training manuals
4) claims and policy handling procedures manuals
5) sales directives and training manuals
6) marketing directives and training manuals
7) contracts between joint enterprises
8) contracts with third party agents, and agencies, including law firms
9) instruction manual to attorneys.

vi.   issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
1) 'national corporate policies'
2) memorandums
3) training manuals
4) claims and policy handling procedures manuals
5) sales directives and training manuals
6) marketing directives and training manuals
7) contracts between joint enterprises
8) contracts with third party agents, and agencies, including law firms
9) instruction manual to attorneys.

F.   Used interlocking directorates, interlinked officers positions in various and separate companies, and sperate but jointly interlinked employee positions in independent and allegedly separately operated companies owned by Defendant Auto, and utilized employees of separately operating companies owned by Defendant, to cause, engage in, or manage activities to:

1) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
   a) defraud parties, such as the plaintiffs.
   b) defraud banking institutions
   c) conduct a single entity fraud scheme designed to defraud parties
   d) engage in association in fact enterprises engaged in racketeering activities
   e) manage and operate association in fact relationships in a complex and confusion operational manner which:
      i.   was designed to conduct racketeering activities
      ii.  hired third party attorneys to commit
         1) acts of fraud upon consumers of 'state farm products'

    2) acts of fraud upon the court system of the states and the federal government

    3) acts of criminalities under false pretenses

    4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 3 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

f) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

    i. members of 'state farm automobile insurance company'

    ii. government regulators

    iii. banking officers, and banking institutions in general

    iv. purchasers of debentures sold by 'state farm' enterprises.

    v. purchasers of 'state farm' products

    vi. depositors in 'state farm bank fsb"

2) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

a) issuance of directives to employees of the enterprises including:

    i. 'national corporate policies'

    ii. memorandums

    iii. training manuals

    iv. claims and policy handling procedures manuals

    v. sales directives and training manuals

    vi. marketing directives and training manuals

    vii. contracts between joint enterprises

    viii. contracts with third party agents, and agencies, including law firms

    ix. instruction manual to attorneys.

b) issuances of directives to third party agents of the enterprises including:

    i. 'national corporate policies'

    ii. memorandums

    iii. training manuals

    iv. claims and policy handling procedures manuals

    v. sales directives and training manuals

    vi. marketing directives and training manuals

    vii. contracts between joint enterprises

    viii. contracts with third party agents, and agencies, including law firms

        ix.    instruction manual to attorneys.

  c) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
   - i. 'national corporate policies'
   - ii. memorandums
   - iii. training manuals
   - iv. claims and policy handling procedures manuals
   - v. sales directives and training manuals
   - vi. marketing directives and training manuals
   - vii. contracts between joint enterprises
   - viii. contracts with third party agents, and agencies, including law firms
   - ix. instruction manual to attorneys.

3) creation of, usage of, participation in, and furtherance of the 'single entity fraud scheme' with knowledge and intent to:
   - a) defraud parties, such as the plaintiffs.
   - b) defraud banking institutions
   - c) conduct a single entity fraud scheme designed to defraud parties
   - d) engage in association in fact enterprises engaged in racketeering activities
   - e) manage and operate association in fact relationships in a complex and confusion operational manner which:
     - i. was designed to conduct racketeering activities
     - ii. hired third party attorneys to commit
       - 1) acts of fraud upon consumers of 'state farm products'
       - 2) acts of fraud upon the court system of the states and the federal government
       - 3) acts of criminalities under false pretenses
       - 4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 3 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.
   - f) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
     - i. members of 'state farm automobile insurance company'
     - ii. government regulators
     - iii. banking officers, and banking institutions in general
     - iv. purchasers of debentures sold by 'state farm' enterprises.

      v.    purchasers of 'state farm' products

      vi.   depositors in 'state farm bank fsb"

g) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

   i.   issuance of directives to employees of the enterprises including:

1) 'national corporate policies'
2) memorandums
3) training manuals
4) claims and policy handling procedures manuals
5) sales directives and training manuals
6) marketing directives and training manuals
7) contracts between joint enterprises
8) contracts with third party agents, and agencies, including law firms
9) instruction manual to attorneys.

   ii.   issuances of directives to third party agents of the enterprises including:

1) 'national corporate policies'
2) memorandums
3) training manuals
4) claims and policy handling procedures manuals
5) sales directives and training manuals
6) marketing directives and training manuals
7) contracts between joint enterprises
8) contracts with third party agents, and agencies, including law firms
9) instruction manual to attorneys.

   iii.   issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:

1) 'national corporate policies'
2) memorandums
3) training manuals
4) claims and policy handling procedures manuals
5) sales directives and training manuals
6) marketing directives and training manuals
7) contracts between joint enterprises
8) contracts with third party agents, and agencies, including law firms
9) instruction manual to attorneys.

4) Authorize the usage of, participate in the usage of, approve the usage of, and / or engage in marketing activities, sales activities, or operational activities of an individual enterprise which used the term 'state farm' instead of the full legal, and lawfully registered company enterprise name such as, 'State Farm Mutual Automobile Insurance Company, or State Farm Fire and Casualty Company, or State Farm Lloyds, or State Farm Lloyds Inc in any form of communication to any party, including:
   a) use in marketing materials
   b) use in sales activities
   c) use in claims activities
   d) usage in general conversation
   e) use in interviews
   f) use in reports to
      i.    members of state farm mutual automobile insurance company
      ii.   government officials
      iii.  given in testimony to government officials
      iv.   given in conversation with government regulators

5) Engage in interstate sales and marketing activities using the term 'state farm' to obscure the operational differences between the 'state farm' and the 25 companies owned by Defendant Auto, and the association in fact enterprises, with the knowledge such usage would affect interstate commerce, in order to:

   a) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
      i.    defraud parties, such as the plaintiffs.
      ii.   defraud banking institutions
      iii.  conduct a single entity fraud scheme designed to defraud parties
            1) engage in association in fact enterprises engaged in racketeering activities
            2) manage and operate association in fact relationships in a complex and confusion operational manner which:
            3) was designed to conduct racketeering activities
            4) hired third party attorneys to commit
               a) acts of fraud upon consumers of 'state farm products'
               b) acts of fraud upon the court system of the states and the federal government
               c) acts of criminalities under false pretenses
               d) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 3 defendants or their enterprises concealed the crime from said

attorney by acts of fraud, and failure to disclose material fact.

b) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

    i.    members of 'state farm automobile insurance company'
    ii.    government regulators
    iii.    banking officers, and banking institutions in general
    iv.    purchasers of debentures sold by 'state farm' enterprises.
    v.    purchasers of 'state farm' products
    vi.    depositors in 'state farm bank fsb"

c) create, establish, and operate enterprises with purposeful knowledge and intent to:

    i.    defraud parties, such as the plaintiffs.
    ii.    defraud banking institutions
    iii.    conduct a single entity fraud scheme designed to defraud parties
    iv.    engage in association in fact enterprises engaged in racketeering activities
    v.    manage and operate association in fact relationships in a complex and confusion operational manner which:

        1)  was designed to conduct racketeering activities
        2)  hired third party attorneys to commit

            a)  acts of fraud upon consumers of 'state farm products'
            b)  acts of fraud upon the court system of the states and the federal government
            c)  acts of criminalities under false pretenses
            d)  and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 3 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

        3)  operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association

in fact enterprises harbored in companies owned by Defendant Auto to:

    a) members of 'state farm automobile insurance company'
    b) government regulators
    c) banking officers, and banking institutions in general
    d) purchasers of debentures sold by 'state farm' enterprises.
    e) purchasers of 'state farm' products
    f) depositors in 'state farm bank fsb"

4) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

    a) Issuance of directives to employees of the enterprises including:

        i. 'national corporate policies'
        ii. memorandums
        iii. training manuals
        iv. claims and policy handling procedures manuals
        v. sales directives and training manuals
        vi. marketing directives and training manuals
        vii. contracts between joint enterprises
        viii. contracts with third party agents, and agencies, including law firms
        ix. instruction manual to attorneys.

5) issuances of directives to third party agents of the enterprises including:

    a) 'national corporate policies'
    b) memorandums
    c) training manuals
    d) claims and policy handling procedures manuals
    e) sales directives and training manuals
    f) marketing directives and training manuals
    g) contracts between joint enterprises
    h) contracts with third party agents, and agencies, including law firms
    i) instruction manual to attorneys.

6) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:

      a) 'national corporate policies'
      b) memorandums
      c) training manuals
      d) claims and policy handling procedures manuals
      e) sales directives and training manuals
      f) marketing directives and training manuals
      g) contracts between joint enterprises
      h) contracts with third party agents, and agencies, including law firms
      i) instruction manual to attorneys.

G. either directly or indirectly through employees or agents of the enterprises make statements or cause a third party to make statements which include false and fraudulent statements of fact, using the term 'state farm' including:

    1) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in advertising activities, promotions, and campaigns.

    2) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in sales activities, promotions, and campaigns.

    3) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in claims activities, processes, or payment activities.

    4) engaging in a corporate scheme, or pattern of communication, or pattern of behavior to never to admit 'state farm':
      a) makes mistakes
      b) was found in court to conduct wrongful activity
      c) does not 'act like a good neighbor'
      d) does not 'help life go right'
      e) engages in nefarious acts
      f) engages in a pattern of behavior to include
        i. abusive claims processes
        ii. abuse of litigation as a profit protection mechanism
        iii. conducts patterns of theft, and fraud by deception
      g) conducts a knowingly abusive pattern of company activities
        i. to deny payments on lawful claims
        ii. to delay payments on lawful claims
        iii. to refuse payments on claims based upon knowledge collection of the payment by the claimant would be more costly through litigation than viable, or financially able for the claimant to afford.
      h) abuses customers good will
      i) abuses claimants good will and causes financial damage due to 'state farms' operational policies.

    5) Defendants knowledge 'state farm' corporate policies unreasonably favor 'state farm' at the expense of the customer, including Plaintiffs

    6) Refusing to admit, acknowledge or disclose to prospective consumers 'State Farm' has a significant history which includes:
- a) settlements of RICO claims against 'state farm'
- b) state and federal court findings of fact that 'state farm' engaged in:
  - i. sales frauds
  - ii. claims frauds
  - iii. 'mad dog' defense tactics
  - iv. abuse of claimants including
    - 1) purposefully causing emotional duress
    - 2) purposeful defamation of claimants character
  - v. abuse of former 'state farm' employees acting as 'whistleblowers'
- c) sizeable state and federal fines levied for:
  - i. fraudulent
    - 1) sales practices
    - 2) claims activities
    - 3) reporting to government agencies
- d) Federal court rulings finding 'state farm' guilty of:
  - i. acts to defraud the federal government
  - ii. engaging in interstate fraud
  - iii. frauds against claimants
  - iv. using 'state farms' wealth and financial resources to cause pain, suffering and delay to claimants.
  - v. engaging in unreasonable litigation practices.

H. Directly and or indirectly causing employees of enterprises to engage in racketeering activities in furtherance of fraud schemes, through directives, or company policies which authorize, or cause the commission of acts of:
1) mail fraud;
2) wire fraud;
3) bank fraud;
4) extortion;
5) robbery
6) violations of 18 USC 1951
7) violations of 18 USC 1952
8) violations of 18 USC 1005
9) violations of 18 USC 1006
10) violations of 18 USC 656
11) and other violations of 18 USC 1961(1) not here in listed.

**240.** Pursuant to and in furtherance of their fraudulent scheme, Defendants Tipsord, Farney, Smith, Harbert and Wey committed multiple related acts of racketeering activities conducted by enterprises, and directly and indirectly by the Count 3 Defendants including:

A. From 2012 through 2019 engaging in interstate commerce affecting interstate fraud campaigns using the wires, in interstate communications designed to further the

Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The campaign in question is known as the 'like a good neighbor campaign, in violation of 18 USC 1343, and constitutes more than 100 individual predicate acts.

B. From 2016 through 2019 engaging in interstate commerce affecting interstate fraud campaigns using the wires, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The campaign in question is known as the 'make life right" campaign, in violation of 18 USC 1343, and constitutes more than 50 individual predicate acts.

C. From 2012 through 2018 engaging in interstate commerce affecting interstate fraudulent marketing and sales supporting activities in the issuance of fraudulent 'annual reports' using the wires, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The reports in question are known as the 'annual reports to the automobile policy owners" in violation of 18 USC 1343, and constitutes more than 6 individual predicate acts.

D. From 2012 through 2018 engaging in interstate commerce affecting interstate fraudulent marketing and sales supporting activities in the issuance of fraudulent 'annual reports' using the US Postal Service, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The reports in question are known as the 'annual reports to the automobile policy owners" in violation of 18 USC 1341, and constitutes more than 6 individual predicate acts.

E. From 2012 through 2019 engaging in interstate commerce affecting interstate issuance of fraudulent statements, sales materials, and 'bills' using the US Postal Service, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. The items in quested are in violation of 18 USC 1341, and constitutes more than 40 individual predicate acts.

F. From December 2015 through August, 2018 engaging in interstate commerce affecting interstate fraudulent marketing and sales activities of the enterprises conducted by employees managed, and controlled by Count 3 Defendants using the wires, in interstate communications designed to further the Defendants enterprises fraud schemes and racketeering activities, used to unlawfully defraud Plaintiffs and to illegally obtain monies and properties from the Plaintiff by fraud. In violation of 18 USC 1343, and constitutes more than 30 individual predicate acts.

G. From February 27th, 2017 and onward, in a continuing pattern of racketeering behavior conducted by employees, and third-party agents, of the enterprises managed, operated and controlled by the Count 3 Defendants.  Employees of the enterprises managed and controlled the Count 3 Defendants engaged in distinctly separate acts of extortion in violation of 18 USC 1951, 18 USC 1952, and 18 USC 1961(1), and constitutes more than six separate and individual predicate acts.

H. From February 27th, 2017 and onward, in a continuing pattern of racketeering behavior conducted by employees, and third-party agents, of the enterprises managed, operated and controlled by the Count 3 Defendants.  Employees of the enterprises managed and controlled the Count 3 Defendants engaged in distinctly separate acts of robbery in violation of 18 USC 1951, 18 USC 1952, and 18 USC 1961(1), and constitutes more than eight separate and individual predicate acts.

**241.** The acts set forth above in Paragraph 240 Sec. A through H, set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

**242.** The Count 3 Defendants have directly and indirectly conducted and participated in the conduct of the enterprises' affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

**243.** As a direct and proximate result of the Count 3 Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their businesses and property in that specifically:

A. Plaintiffs suffered injury and damages to property due to the Defendants' fraud schemes, patterns of racketeering behaviors and activities, and Defendants' purposeful acts of negligence by:

1) The Defendants' failure to properly deliver the products sold to the Plaintiffs in Defendants' "bait and switch" scheme. And;
2) The Defendants' ongoing and consistent negligence and fraud in failing to deliver the product sold to the Plaintiffs after receiving notice of their failures to deliver the correct product sold to the Plaintiffs. And;
3) The Defendants' acts of fraud, extortion, and robbery in the Defendants' fraudulent and criminal attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product criminally and fraudulently delivered to the Plaintiffs through the illegal use of the mails and the wires. And;

4) The Defendants' theft of Plaintiffs' personal property (Fireplace) through the Defendants' frauds and criminalities in attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product. And;

5) The Defendants' theft of Plaintiffs' personal property (corporeal rights as members of State Farm Mutual Automobile Insurance Company). And;

6) The Defendants' theft and destruction of Plaintiffs' personal property required to recover monies in litigation against the negligent builder. And;

7) The Defendants' fraudulent and purposefully negligent 'failure' to adhere to the terms and conditions of the fraudulently sold 'bait and switch' product, which the Defendants were attempting to enforce upon the Plaintiffs, which resulted in further damage to Plaintiffs' property (automobiles). And;

8) The Defendants' theft of the Plaintiffs' personal property (automobile insurance contract), by acts of fraud, and in participation with the racketeering activities of the jointly operating criminal enterprises. And;

9) The Defendants' fraudulent reporting to national databases, negligently and fraudulently reporting Plaintiffs as 'high risk', when in fact, the actions of the Defendants themselves, and the related negligence was the direct basis of the reporting. Plaintiffs were damaged in 'property' relating to this specific issue due to the destruction of established personal employment contracts.

B. Plaintiffs suffered direct and proximate injuries to Plaintiffs' property due to the fraud schemes, racketeering activities and enterprises established, conducted, participated and operated by the Defendants in the amount of $8,555,000.00. Plaintiffs' injuries were resultant from, and directly related to the Defendants' fraudulent inducement of the Plaintiffs into Defendants' 'bait and switch' fraud scheme, and related acts of conglomerate racketeering enterprises activities.  Defendants' fraudulent sales and 'post sale' racketeering activities used to defraud the Plaintiffs, and unlawfully obtain monies and properties from the Plaintiffs, included the Defendants' bait and switch frauds, other sales fraud schemes and marketing fraud schemes, and the fraudulent inducement of the Plaintiffs by the illegal and unlawful use of the mail and the wires, as well as direct acts of racketeering and criminalities against the Plaintiffs, including robbery, extortion, acts of intimidation, fraudulent inducement to obtain Plaintiffs' signatures, coercion, and criminal negligence.

    i.   Plaintiffs property injured and damaged are defined as:

        a) building structure located at 605 Kiowa Drive west

        b) Plaintiff Quinn's vehicle

        c) Plaintiff Vanderbol's automobiles including 2008 BMW, 2004 Ford Excursion, 1999 Toyota Land Cruiser.

        d) Plaintiffs personal property located at 605 Kiowa Drive West

    ii.   Plaintiffs suffered personal injuries in the form of:

        a) Loss of income,

        b) loss of status and life style

        c) emotional duress

        d) physical harm (exposure to toxic environments)

        e) Loss of business investment, and surety.

C. Plaintiffs suffered injury and damages to their businesses due to the Defendants' fraud schemes, patterns of racketeering behaviors and activities, and Defendants' purposeful acts of negligence by:

1) The Defendants' failure to properly deliver the products sold to the Plaintiffs in Defendants' "bait and switch" scheme. And;

2) The Defendants' ongoing and consistent negligence and fraud in failing to deliver the product sold to the Plaintiffs after receiving notice of their failures to deliver the correct product sold to the Plaintiffs. And;

3) The Defendants' acts of fraud, extortion, and robbery in the Defendants' fraudulent and criminal attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product criminally and fraudulently delivered to the Plaintiffs through the illegal use of the mails and the wires. And;

4) The Defendants' theft of Plaintiffs' personal property (Fireplace) through the Defendants' frauds and criminalities in attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product. And;

5) The Defendants' theft of Plaintiffs' personal property (corporeal rights as members of State Farm Mutual Automobile Insurance Company). And;

6) The Defendants' theft and destruction of Plaintiffs' personal property required to recover monies in litigation against the negligent builder. And;

7) The Defendants' fraudulent and purposefully negligent 'failure' to adhere to the terms and conditions of the fraudulently sold 'bait and switch' product, which the Defendants were attempting to enforce upon the Plaintiffs, which resulted in further damage to Plaintiffs' property (automobiles). And;

8) The Defendants' theft of the Plaintiffs' personal property (automobile insurance contract), by acts of fraud, and in participation with the racketeering activities of the jointly operating criminal enterprises. And;

9) The Defendants' fraudulent reporting to national databases, negligently and fraudulently reporting Plaintiffs as 'high risk', when in fact, the actions of the Defendants themselves, and the related negligence was the direct basis of the reporting. Plaintiffs were damaged in 'property' relating to this specific issue due to the destruction of established personal employment contracts. And;

10) The Defendants' failure to make adequate, correct, and full restitution to the Plaintiffs in a reasonable amount of time, based upon the correct contract sold to the Plaintiffs. And;

11) The Defendants' failure to make proper restitution resulted in a complete 'shut-down' of business operations for a significant period of time due to the total losses suffered personally, by the Plaintiffs, and the businesses' loss of 'labor' and 'services' from the Plaintiffs due to the frauds, criminalities and acts of negligence by the Defendants.

12) The Defendants' purposefully negligent failures, frauds and criminalities, and acts of defamation of the Plaintiffs resulted in a loss of 'equity', and 'value' which graphically financially injured the business, due to the Plaintiffs' loss of reputation, status, credibility, 'creditworthiness' and 'risk assessment'.

13) The Defendants' fraudulent reporting to national databases graphically injured the businesses' ability to obtain underwriting for insurance and credit which:
   a) dramatically and irrationally increased the costs of operations.
   b) dramatically and irrationally increased the costs of monies and lines of credit.
   c) dramatically increased the costs of operations, insurance, financial transactions, import of products, and costs of goods sold to a level the company was no longer profitable, or obtained the margin of profitability required by the business third party investors.
   d) caused the businesses to no longer meet the requirements to obtain monies from signed investment agreements.

14) The Defendants' fraudulent schemes, operations and criminalities operating in a manner to damage the Plaintiffs, in order to obscure the Defendants' fraud schemes and criminality lasted for a period of time beyond a reasonable period of time, and as such, the businesses lost viability, profitability, and the ability to operate beyond their monetary reserves, and capabilities resulting in a complete collapse of the businesses.

15) The Defendants' causation of the collapse of the Plaintiffs' businesses, resulted in a complete loss of equity value and value of intellectual property held and assigned by the businesses.

D. Plaintiffs suffered direct and proximate damages and injuries to Plaintiffs' businesses due to the fraud schemes, racketeering activities and enterprises established, conducted, participated and operated by the Defendants in the amount of $70,800,000.00. Plaintiffs' injuries were resultant from, and directly related to the Defendants' fraudulent inducement of the Plaintiffs into Defendants' 'bait and switch' fraud scheme, and related acts of conglomerate racketeering enterprises' activities. Defendants' fraudulent sales and 'post sale' racketeering activities used to defraud the Plaintiffs, and unlawfully obtain monies and properties from the Plaintiffs included the Defendants' bait and switch frauds, other sales fraud schemes and marketing fraud schemes, and the fraudulent inducement of the Plaintiffs by the illegal and unlawful use of the mail and the wires, as well as direct acts of racketeering and criminalities against the Plaintiffs, including robbery, extortion, acts of intimidation, fraudulent inducement to obtain Plaintiffs' signatures, coercion, and criminal negligence. And further acts of negligence, fraud, and criminalities conducted by the Defendants, and their enterprises including acts to defame the Plaintiffs, and the Defendants' purposefully fraudulent reporting of losses suffered by the Plaintiffs due to the acts of Defendants' frauds, and purposeful negligence to national risk reporting databases causing significant damage to the Plaintiffs' businesses, and resulted in incorrect, and the Defendants' purposefully fraudulent misrepresentation of the Plaintiffs, as risk parties. All of which greatly affected the businesses' ability to conduct commerce, and operate viability, to a point in which the businesses became insolvent.

   i. Plaintiffs businesses injured and damaged are defined as:

a) OPM Research and Development Inc.
b) 9-Ten Holdings Inc.
c) Neoteric Ventures Inc.
d) Irr. Trust for the Benefit of John S. Vanderbol III and associated developmental projects including: resurrection fitness, post stroke survival tactics book, and product lines.

   ii.   Businesses suffered injuries including:
a) loss of income
b) loss of investments in hand
c) loss of underwriting
d) loss of professional services of:
      13. Plaintiff Vanderbol
      14. Plaintiff Quinn
      15. company staff hired
      16. company staff contracted
      17. subcontractor design services
      18. subcontractor production services

e) loss of product in development
f) loss of invested monies
g) loss of equity value
h) loss of market opportunity
i) loss of viability of projects in development.

**244.** WHEREFORE, Plaintiffs request that this Court enter judgment against the Count 3 Defendants as follows:

A. Plaintiffs pray for relief in the form actual damages to property in the amount of: $8,555,000.00

B. Plaintiffs pray for relief in the form of actual damages to businesses in the amount of: $70,800,000.00

C. Plaintiffs pray for treble damages for injuries suffer to Plaintiffs property in the amount of: $. 25,665,000.00

D. Plaintiffs pray for treble damages for injuries suffered to Plaintiffs business in the amount of: $212,400,000.00

E. Plaintiffs pray for reasonable attorney's fees should the Plaintiffs obtain the services of legal counsel in this matter.

F. Plaintiffs pray for all reasonable court costs, and costs of bringing forth this matter including the costs of filing, recording costs, costs of discovery, costs of depositions, costs of travel to obtain depositions, as well as, copying and mailing costs associated in this matter.

G. Plaintiffs pray for any and all other relief in the ends of, and in the pursuit of justice and any equitable relief this Honorable Court decides would be appropriate due to the gravity of the matter and the heinous acts of the Defendants.

## Count 4
## Pursuant to 18 U.S.C. § 1962(b)

**245.**   The allegations of paragraphs 13 through 217 are incorporated herein by reference.

**246.**   This Count is against Defendants Tipsord, Farney, Smith, Harbert, and Wey (herein after the "Count 4 Defendants").

**247.**   The State Farm Group conglomerate enterprise engaged in and whose activities affect interstate commerce.

**248.**   The Count 4 Defendants acquired and maintained interests in and control of the enterprises through a pattern of racketeering Specifically, the Count 4 Defendants agreed to:

    A. create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
        1) defraud parties, such as the plaintiffs.
        2) defraud banking institutions
        3) conduct a single entity fraud scheme designed to defraud parties
        4) engage in association in fact enterprises engaged in racketeering activities
        5) manage and operate association in fact relationships in a complex and confusion operational manner which:
            a) was designed to conduct racketeering activities
            b) hired third party attorneys to commit
                i. acts of fraud upon consumers of 'state farm products'
                ii. acts of fraud upon the court system of the states and the federal government
                iii. acts of criminalities under false pretenses
                iv. and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 4 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.
        6) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
            a) members of 'state farm automobile insurance company'
            b) government regulators
            c) banking officers, and banking institutions in general
            d) purchasers of debentures sold by 'state farm' enterprises.
            e) purchasers of 'state farm' products
            f) depositors in 'state farm bank fsb"

B. create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:
   1) issuance of directives to employees of the enterprises including:
      a) 'national corporate policies'
      b) memorandums
      c) training manuals
      d) claims and policy handling procedures manuals
      e) sales directives and training manuals
      f) marketing directives and training manuals
      g) contracts between joint enterprises
      h) contracts with third party agents, and agencies, including law firms
      i) instruction manual to attorneys.

   2) issuances of directives to third party agents of the enterprises including:
      a) 'national corporate policies'
      b) memorandums
      c) training manuals
      d) claims and policy handling procedures manuals
      e) sales directives and training manuals
      f) marketing directives and training manuals
      g) contracts between joint enterprises
      h) contracts with third party agents, and agencies, including law firms
      i) instruction manual to attorneys.

   3) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
      a) 'national corporate policies'
      b) memorandums
      c) training manuals
      d) claims and policy handling procedures manuals
      e) sales directives and training manuals
      f) marketing directives and training manuals
      g) contracts between joint enterprises
      h) contracts with third party agents, and agencies, including law firms
      i) instruction manual to attorneys.

C. creation of, usage of, participation in, and furtherance of the 'single entity fraud scheme' with knowledge and intent to:
   1) defraud parties, such as the plaintiffs.
   2) defraud banking institutions
   3) conduct a single entity fraud scheme designed to defraud parties
   4) engage in association in fact enterprises engaged in racketeering activities
   5) manage and operate association in fact relationships in a complex and confusion operational manner which:
      a) was designed to conduct racketeering activities

  b) hired third party attorneys to commit
    i. acts of fraud upon consumers of 'state farm products'
    ii. acts of fraud upon the court system of the states and the federal
     government
    iii. acts of criminalities under false pretenses
    iv. and engage in third party criminal acts for hire, whether the
     attorney had direct knowledge of the crime, or the Count 4
     defendants or their enterprises concealed the crime from said
     attorney by acts of fraud, and failure to disclose material fact.

6) operate an enterprise without full disclosure of their intent, their acts of
fraudulent activity, their affiliation with enterprises engaged in racketeering
activities, their corporate management policies, their operational structure of
subsidiary companies owned by state farm, the intent and operation of
association in fact enterprises harbored in companies owned by Defendant
Auto to:
  a) members of 'state farm automobile insurance company'
  b) government regulators
  c) banking officers, and banking institutions in general
  d) purchasers of debentures sold by 'state farm' enterprises.
  e) purchasers of 'state farm' products
  f) depositors in 'state farm bank fsb"

7) create, establish, direct, manage, authorize and participate in the furtherance
of patterns of fraud and racketeering activities by:
  a) issuance of directives to employees of the enterprises including:
    i. 'national corporate policies'
    ii. memorandums
    iii. training manuals
    iv. claims and policy handling procedures manuals
    v. sales directives and training manuals
    vi. marketing directives and training manuals
    vii. contracts between joint enterprises
    viii. contracts with third party agents, and agencies, including law
     firms
    ix. instruction manual to attorneys.

  b) issuances of directives to third party agents of the enterprises
   including:
    i. 'national corporate policies'
    ii. memorandums
    iii. training manuals
    iv. claims and policy handling procedures manuals
    v. sales directives and training manuals
    vi. marketing directives and training manuals
    vii. contracts between joint enterprises
    viii. contracts with third party agents, and agencies, including law
     firms

        ix.    instruction manual to attorneys.

  c) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
   - i. 'national corporate policies'
   - ii. memorandums
   - iii. training manuals
   - iv. claims and policy handling procedures manuals
   - v. sales directives and training manuals
   - vi. marketing directives and training manuals
   - vii. contracts between joint enterprises
   - viii. contracts with third party agents, and agencies, including law firms
   - ix. instruction manual to attorneys.

D. Authorize the usage of, participate in the usage of, approve the usage of, and / or engage in marketing activities, sales activities, or operational activities of an individual enterprise which used the term 'state farm' instead of the full legal, and lawfully registered company enterprise name such as, 'State Farm Mutual Automobile Insurance Company, or State Farm Fire and Casualty Company, or State Farm Lloyds, or State Farm Lloyds Inc in any form of communication to any party, including:
   1) use in marketing materials
   2) use in sales activities
   3) use in claims activities
   4) usage in general conversation
   5) use in interviews
   6) use in reports to
      - a) members of state farm mutual automobile insurance company
      - b) government officials
      - c) given in testimony to government officials
      - d) given in conversation with government regulators

E. Engage in interstate sales and marketing activities using the term 'state farm' to obscure the operational differences between the 'state farm' and the 25 companies owned by Defendant Auto, and the association in fact enterprises, with the knowledge such usage would affect interstate commerce, in order to:

   1) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
      - a) defraud parties, such as the plaintiffs.
      - b) defraud banking institutions
      - c) conduct a single entity fraud scheme designed to defraud parties
      - d) engage in association in fact enterprises engaged in racketeering activities

    e) manage and operate association in fact relationships in a complex and confusion operational manner which:
- i. was designed to conduct racketeering activities
- ii. hired third party attorneys to commit
  1) acts of fraud upon consumers of 'state farm products'
  2) acts of fraud upon the court system of the states and the federal government
  3) acts of criminalities under false pretenses
  4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 4 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

2) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
- a) members of 'state farm automobile insurance company'
- b) government regulators
- c) banking officers, and banking institutions in general
- d) purchasers of debentures sold by 'state farm' enterprises.
- e) purchasers of 'state farm' products
- f) depositors in 'state farm bank fsb"

3) create, establish, and operate enterprises with purposeful knowledge and intent to:
- a) defraud parties, such as the plaintiffs.
- b) defraud banking institutions
- c) conduct a single entity fraud scheme designed to defraud parties
- d) engage in association in fact enterprises engaged in racketeering activities
- e) manage and operate association in fact relationships in a complex and confusion operational manner which:
  - i. was designed to conduct racketeering activities
  - ii. hired third party attorneys to commit
    1) acts of fraud upon consumers of 'state farm products'
    2) acts of fraud upon the court system of the states and the federal government
    3) acts of criminalities under false pretenses
    4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 4 defendants or their enterprises

concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

iii.   operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

1) members of 'state farm automobile insurance company'
2) government regulators
3) banking officers, and banking institutions in general
4) purchasers of debentures sold by 'state farm' enterprises.
5) purchasers of 'state farm' products
6) depositors in 'state farm bank fsb"

iv.   create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

1) Issuance of directives to employees of the enterprises including:
   a) 'national corporate policies'
   b) memorandums
   c) training manuals
   d) claims and policy handling procedures manuals
   e) sales directives and training manuals
   f) marketing directives and training manuals
   g) contracts between joint enterprises
   h) contracts with third party agents, and agencies, including law firms
   i) instruction manual to attorneys.

v.   issuances of directives to third party agents of the enterprises including:

1) 'national corporate policies'
2) memorandums
3) training manuals
4) claims and policy handling procedures manuals
5) sales directives and training manuals
6) marketing directives and training manuals
7) contracts between joint enterprises
8) contracts with third party agents, and agencies, including law firms
9) instruction manual to attorneys.

      vi.    issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:

        1) 'national corporate policies'
        2) memorandums
        3) training manuals
        4) claims and policy handling procedures manuals
        5) sales directives and training manuals
        6) marketing directives and training manuals
        7) contracts between joint enterprises
        8) contracts with third party agents, and agencies, including law firms
        9) instruction manual to attorneys.

F. Used interlocking directorates, interlinked officers positions in various and separate companies, and sperate but jointly interlinked employee positions in independent and allegedly separately operated companies owned by Defendant Auto, and utilized employees of separately operating companies owned by Defendant, to cause, engage in, or manage activities to:

    1) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
      a) defraud parties, such as the plaintiffs.
      b) defraud banking institutions
      c) conduct a single entity fraud scheme designed to defraud parties
      d) engage in association in fact enterprises engaged in racketeering activities
      e) manage and operate association in fact relationships in a complex and confusion operational manner which:
        i.   was designed to conduct racketeering activities
        ii.  hired third party attorneys to commit
          1) acts of fraud upon consumers of 'state farm products'
          2) acts of fraud upon the court system of the states and the federal government
          3) acts of criminalities under false pretenses
          4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 4 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.
      f) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm,

the intent and operation of association in fact enterprises harbored in
companies owned by Defendant Auto to:
  i.    members of 'state farm automobile insurance company'
  ii.   government regulators
  iii.  banking officers, and banking institutions in general
  iv.   purchasers of debentures sold by 'state farm' enterprises.
  v.    purchasers of 'state farm' products
  vi.   depositors in 'state farm bank fsb"

2) create, establish, direct, manage, authorize and participate in the furtherance
   of patterns of fraud and racketeering activities by:
   a) issuance of directives to employees of the enterprises including:
      i.    'national corporate policies'
      ii.   memorandums
      iii.  training manuals
      iv.   claims and policy handling procedures manuals
      v.    sales directives and training manuals
      vi.   marketing directives and training manuals
      vii.  contracts between joint enterprises
      viii. contracts with third party agents, and agencies, including law
            firms
      ix.   instruction manual to attorneys.

   b) issuances of directives to third party agents of the enterprises
      including:
      i.    'national corporate policies'
      ii.   memorandums
      iii.  training manuals
      iv.   claims and policy handling procedures manuals
      v.    sales directives and training manuals
      vi.   marketing directives and training manuals
      vii.  contracts between joint enterprises
      viii. contracts with third party agents, and agencies, including law
            firms
      ix.   instruction manual to attorneys.

   c) issuances of 'proposals', resolutions, and analysis of operations, in
      order to conduct fraudulent activities, criminalities, frauds, and
      patterns of racketeering activities including:
      i.    'national corporate policies'
      ii.   memorandums
      iii.  training manuals
      iv.   claims and policy handling procedures manuals
      v.    sales directives and training manuals
      vi.   marketing directives and training manuals
      vii.  contracts between joint enterprises

   viii. contracts with third party agents, and agencies, including law firms

   ix. instruction manual to attorneys.

3) creation of, usage of, participation in, and furtherance of the 'single entity fraud scheme' with knowledge and intent to:

 a) defraud parties, such as the plaintiffs.

 b) defraud banking institutions

 c) conduct a single entity fraud scheme designed to defraud parties

 d) engage in association in fact enterprises engaged in racketeering activities

 e) manage and operate association in fact relationships in a complex and confusion operational manner which:

  i. was designed to conduct racketeering activities

  ii. hired third party attorneys to commit

   1) acts of fraud upon consumers of 'state farm products'

   2) acts of fraud upon the court system of the states and the federal government

   3) acts of criminalities under false pretenses

   4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 4 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

 f) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

  i. members of 'state farm automobile insurance company'

  ii. government regulators

  iii. banking officers, and banking institutions in general

  iv. purchasers of debentures sold by 'state farm' enterprises.

  v. purchasers of 'state farm' products

  vi. depositors in 'state farm bank fsb"

 g) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

  i. issuance of directives to employees of the enterprises including:

   1) 'national corporate policies'

   2) memorandums

   3) training manuals

   4) claims and policy handling procedures manuals

   5) sales directives and training manuals

   6) marketing directives and training manuals

       7) contracts between joint enterprises
       8) contracts with third party agents, and agencies, including law firms
       9) instruction manual to attorneys.

ii.   issuances of directives to third party agents of the enterprises including:

       1) 'national corporate policies'
       2) memorandums
       3) training manuals
       4) claims and policy handling procedures manuals
       5) sales directives and training manuals
       6) marketing directives and training manuals
       7) contracts between joint enterprises
       8) contracts with third party agents, and agencies, including law firms
       9) instruction manual to attorneys.

iii.   issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:

       1) 'national corporate policies'
       2) memorandums
       3) training manuals
       4) claims and policy handling procedures manuals
       5) sales directives and training manuals
       6) marketing directives and training manuals
       7) contracts between joint enterprises
       8) contracts with third party agents, and agencies, including law firms
       9) instruction manual to attorneys.

4) Authorize the usage of, participate in the usage of, approve the usage of, and / or engage in marketing activities, sales activities, or operational activities of an individual enterprise which used the term 'state farm' instead of the full legal, and lawfully registered company enterprise name such as, 'State Farm Mutual Automobile Insurance Company, or State Farm Fire and Casualty Company, or State Farm Lloyds, or State Farm Lloyds Inc in any form of communication to any party, including:

   a) use in marketing materials
   b) use in sales activities
   c) use in claims activities
   d) usage in general conversation
   e) use in interviews
   f) use in reports to

        i.     members of state farm mutual automobile insurance company
       ii.    government officials
     iii.    given in testimony to government officials
     iv.    given in conversation with government regulators

5) Engage in interstate sales and marketing activities using the term 'state farm' to obscure the operational differences between the 'state farm' and the 25 companies owned by Defendant Auto, and the association in fact enterprises, with the knowledge such usage would affect interstate commerce, in order to:

   a) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
       i.     defraud parties, such as the plaintiffs.
      ii.    defraud banking institutions
     iii.    conduct a single entity fraud scheme designed to defraud parties
          1) engage in association in fact enterprises engaged in racketeering activities
          2) manage and operate association in fact relationships in a complex and confusion operational manner which:
          3) was designed to conduct racketeering activities
          4) hired third party attorneys to commit
             a) acts of fraud upon consumers of 'state farm products'
             b) acts of fraud upon the court system of the states and the federal government
             c) acts of criminalities under false pretenses
             d) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 4 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

   b) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
       i.     members of 'state farm automobile insurance company'
      ii.    government regulators
     iii.    banking officers, and banking institutions in general
     iv.    purchasers of debentures sold by 'state farm' enterprises.
      v.    purchasers of 'state farm' products

      vi.     depositors in 'state farm bank fsb"

c) create, establish, and operate enterprises with purposeful knowledge and intent to:
    i.     defraud parties, such as the plaintiffs.
    ii.    defraud banking institutions
    iii.   conduct a single entity fraud scheme designed to defraud parties
    iv.   engage in association in fact enterprises engaged in racketeering activities
    v.    manage and operate association in fact relationships in a complex and confusion operational manner which:
        1) was designed to conduct racketeering activities
        2) hired third party attorneys to commit
            a) acts of fraud upon consumers of 'state farm products'
            b) acts of fraud upon the court system of the states and the federal government
            c) acts of criminalities under false pretenses
            d) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 4 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.
        3) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
            a) members of 'state farm automobile insurance company'
            b) government regulators
            c) banking officers, and banking institutions in general
            d) purchasers of debentures sold by 'state farm' enterprises.
            e) purchasers of 'state farm' products
            f) depositors in 'state farm bank fsb"
        4) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

a) Issuance of directives to employees of the enterprises including:
    i.    'national corporate policies'
    ii.    memorandums
    iii.    training manuals
    iv.    claims and policy handling procedures manuals
    v.    sales directives and training manuals
    vi.    marketing directives and training manuals
    vii.    contracts between joint enterprises
    viii.    contracts with third party agents, and agencies, including law firms
    ix.    instruction manual to attorneys.

5) issuances of directives to third party agents of the enterprises including:
    a) 'national corporate policies'
    b) memorandums
    c) training manuals
    d) claims and policy handling procedures manuals
    e) sales directives and training manuals
    f) marketing directives and training manuals
    g) contracts between joint enterprises
    h) contracts with third party agents, and agencies, including law firms
    i) instruction manual to attorneys.

6) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
    a) 'national corporate policies'
    b) memorandums
    c) training manuals
    d) claims and policy handling procedures manuals
    e) sales directives and training manuals
    f) marketing directives and training manuals
    g) contracts between joint enterprises
    h) contracts with third party agents, and agencies, including law firms
    i) instruction manual to attorneys.

G. either directly or indirectly through employees or agents of the enterprises make statements or cause a third party to make statements which include false and fraudulent statements of fact, using the term 'state farm' including:

1) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in advertising activities, promotions, and campaigns.

2) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in sales activities, promotions, and campaigns.

3) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in claims activities, processes, or payment activities.

4) engaging in a corporate scheme, or pattern of communication, or pattern of behavior to never to admit 'state farm':
   a) makes mistakes
   b) was found in court to conduct wrongful activity
   c) does not 'act like a good neighbor'
   d) does not 'help life go right'
   e) engages in nefarious acts
   f) engages in a pattern of behavior to include
      i. abusive claims processes
      ii. abuse of litigation as a profit protection mechanism
      iii. conducts patterns of theft, and fraud by deception
   g) conducts a knowingly abusive pattern of company activities
      i. to deny payments on lawful claims
      ii. to delay payments on lawful claims
      iii. to refuse payments on claims based upon knowledge collection of the payment by the claimant would be more costly through litigation than viable, or financially able for the claimant to afford.
   h) abuses customers good will
   i) abuses claimants good will and causes financial damage due to 'state farms' operational policies.

5) Defendants knowledge 'state farm' corporate policies unreasonably favor 'state farm' at the expense of the customer, including Plaintiffs

6) Refusing to admit, acknowledge or disclose to prospective consumers 'State Farm' has a significant history which includes:
   a) settlements of RICO claims against 'state farm'
   b) state and federal court findings of fact that 'state farm' engaged in:
      i. sales frauds
      ii. claims frauds
      iii. 'mad dog' defense tactics
      iv. abuse of claimants including
         1) purposefully causing emotional duress
         2) purposeful defamation of claimants character
      v. abuse of former 'state farm' employees acting as 'whistleblowers'
   c) sizeable state and federal fines levied for:
      i. fraudulent

                1) sales practices
                2) claims activities
                3) reporting to government agencies

    d) Federal court rulings finding 'state farm' guilty of:
       i. acts to defraud the federal government
       ii. engaging in interstate fraud
       iii. frauds against claimants
       iv. using 'state farms' wealth and financial resources to cause pain, suffering and delay to claimants.
       v. engaging in unreasonable litigation practices.

H. Directly and or indirectly causing employees of enterprises to engage in racketeering activities in furtherance of fraud schemes, through directives, or company policies which authorize, or cause the commission of acts of:

    1) mail fraud;
    2) wire fraud;
    3) bank fraud;
    4) extortion;
    5) robbery
    6) violations of 18 USC 1951
    7) violations of 18 USC 1952
    8) violations of 18 USC 1005
    9) violations of 18 USC 1006
   10) violations of 18 USC 656
   11) and other violations of 18 USC 1961(1) not here in listed.

**249.** The racketeering activities listed above set forth above in Paragraph 248, Sec. A-H individually set forth constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

**250.** The Count 4 Defendants have directly and indirectly acquired and maintained interests in and control of the enterprises through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

**251.** As a direct and proximate result of the Count 4 Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiffs have been injured in their businesses and property in that specifically:

A. Plaintiffs suffered injury and damages to property due to the Defendants' fraud schemes, patterns of racketeering behaviors and activities, and Defendants' purposeful acts of negligence by:

1) The Defendants' failure to properly deliver the products sold to the Plaintiffs in Defendants' "bait and switch" scheme. And;

2) The Defendants' ongoing and consistent negligence and fraud in failing to deliver the product sold to the Plaintiffs after receiving notice of their failures to deliver the correct product sold to the Plaintiffs. And;

3) The Defendants' acts of fraud, extortion, and robbery in the Defendants' fraudulent and criminal attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product criminally and fraudulently delivered to the Plaintiffs through the illegal use of the mails and the wires. And;

4) The Defendants' theft of Plaintiffs' personal property (Fireplace) through the Defendants' frauds and criminalities in attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product. And;

5) The Defendants' theft of Plaintiffs' personal property (corporeal rights as members of State Farm Mutual Automobile Insurance Company). And;

6) The Defendants' theft and destruction of Plaintiffs' personal property required to recover monies in litigation against the negligent builder. And;

7) The Defendants' fraudulent and purposefully negligent 'failure' to adhere to the terms and conditions of the fraudulently sold 'bait and switch' product, which the Defendants were attempting to enforce upon the Plaintiffs, which resulted in further damage to Plaintiffs' property (automobiles). And;

8) The Defendants' theft of the Plaintiffs' personal property (automobile insurance contract), by acts of fraud, and in participation with the racketeering activities of the jointly operating criminal enterprises. And;

9) The Defendants' fraudulent reporting to national databases, negligently and fraudulently reporting Plaintiffs as 'high risk', when in fact, the actions of the Defendants themselves, and the related negligence was the direct basis of the reporting. Plaintiffs were damaged in 'property' relating to this specific issue due to the destruction of established personal employment contracts.

B. Plaintiffs suffered direct and proximate injuries to Plaintiffs' property due to the fraud schemes, racketeering activities and enterprises established, conducted, participated and operated by the Defendants in the amount of $8,555,000.00. Plaintiffs' injuries were resultant from, and directly related to the Defendants' fraudulent inducement of the Plaintiffs into Defendants' 'bait and switch' fraud scheme, and related acts of conglomerate racketeering enterprises activities. Defendants' fraudulent sales and 'post sale' racketeering activities used to defraud the Plaintiffs, and unlawfully obtain monies and properties from the Plaintiffs, included the Defendants' bait and switch frauds, other sales fraud schemes and marketing fraud scheme, and the fraudulent inducement of the Plaintiffs by the illegal and unlawful use of the mail and the wires, as well as direct acts of racketeering and criminalities against the Plaintiffs, including

robbery, extortion, acts of intimidation, fraudulent inducement to obtain Plaintiffs'
signatures, coercion, and criminal negligence.

    i.   Plaintiffs property injured and damaged are defined as:

        a)  building structure located at 605 Kiowa Drive west
        b)  Plaintiff Quinn's vehicle
        c)  Plaintiff Vanderbol's automobiles including 2008 BMW, 2004 Ford
            Excursion, 1999 Toyota Land Cruiser.
        d)  Plaintiffs personal property located at 605 Kiowa Drive West

    ii.   Plaintiffs suffered personal injuries in the form of:
        a)  Loss of income,
        b)  loss of status and life style
        c)  emotional duress
        d)  physical harm (exposure to toxic environments)
        e)  Loss of business investment, and surety.

C.  Plaintiffs suffered injury and damages to their businesses due to the Defendants'
fraud schemes, patterns of racketeering behaviors and activities, and Defendants'
purposeful acts of negligence by:

1) The Defendants' failure to properly deliver the products sold to the Plaintiffs in Defendants' "bait and switch" scheme. And;

2) The Defendants' ongoing and consistent negligence and fraud in failing to deliver the product sold to the Plaintiffs after receiving notice of their failures to deliver the correct product sold to the Plaintiffs. And;

3) The Defendants' acts of fraud, extortion, and robbery in the Defendants' fraudulent and criminal attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product criminally and fraudulently delivered to the Plaintiffs through the illegal use of the mails and the wires. And;

4) The Defendants' theft of Plaintiffs' personal property (Fireplace) through the Defendants' frauds and criminalities in attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product. And;

5) The Defendants' theft of Plaintiffs' personal property (corporeal rights as members of State Farm Mutual Automobile Insurance Company). And;

6) The Defendants' theft and destruction of Plaintiffs' personal property required to recover monies in litigation against the negligent builder. And;

7) The Defendants' fraudulent and purposefully negligent 'failure' to adhere to the terms and conditions of the fraudulently sold 'bait and switch' product, which the Defendants were attempting to enforce upon the Plaintiffs, which resulted in further damage to Plaintiffs' property (automobiles). And;

8) The Defendants' theft of the Plaintiffs' personal property (automobile insurance contract), by acts of fraud, and in participation with the racketeering activities of the jointly operating criminal enterprises. And;

9) The Defendants' fraudulent reporting to national databases, negligently and fraudulently reporting Plaintiffs as 'high risk', when in fact, the actions of the Defendants themselves, and the related negligence was the direct basis of the

reporting. Plaintiffs were damaged in 'property' relating to this specific issue due to the destruction of established personal employment contracts. And;

10) The Defendants' failure to make adequate, correct, and full restitution to the Plaintiffs in a reasonable amount of time, based upon the correct contract sold to the Plaintiffs. And;

11) The Defendants' failure to make proper restitution resulted in a complete 'shut-down' of business operations for a significant period of time due to the total losses suffered personally, by the Plaintiffs, and the businesses' loss of 'labor' and 'services' from the Plaintiffs due to the frauds, criminalities and acts of negligence by the Defendants.

12) The Defendants' purposefully negligent failures, frauds and criminalities, and acts of defamation of the Plaintiffs resulted in a loss of 'equity', and 'value' which graphically financially injured the business, due to the Plaintiffs' loss of reputation, status, credibility, 'creditworthiness' and 'risk assessment'.

13) The Defendants' fraudulent reporting to national databases graphically injured the businesses' ability to obtain underwriting for insurance and credit which:

    a) dramatically and irrationally increased the costs of operations.

    b) dramatically and irrationally increased the costs of monies and lines of credit.

    c) dramatically increased the costs of operations, insurance, financial transactions, import of products, and costs of goods sold to a level the company was no longer profitable, or obtained the margin of profitability required by the business third party investors.

    d) caused the businesses to no longer meet the requirements to obtain monies from signed investment agreements.

14) The Defendants' fraudulent schemes, operations and criminalities operating in a manner to damage the Plaintiffs, in order to obscure the Defendants' fraud schemes and criminality lasted for a period of time beyond a reasonable period of time, and as such, the businesses lost viability, profitability, and the ability to operate beyond their monetary reserves, and capabilities resulting in a complete collapse of the businesses.

15) The Defendants' causation of the collapse of the Plaintiffs' businesses, resulted in a complete loss of equity value and value of intellectual property held and assigned by the businesses.

D. Plaintiffs suffered direct and proximate damages and injuries to Plaintiffs' businesses due to the fraud schemes, racketeering activities and enterprises established, conducted, participated and operated by the Defendants in the amount of $70,800,000.00. Plaintiffs' injuries were resultant from, and directly related to the Defendants' fraudulent inducement of the Plaintiffs into Defendants' 'bait and switch' fraud scheme, and related acts of conglomerate racketeering enterprises' activities. Defendants' fraudulent sales and 'post sale' racketeering activities used to defraud the Plaintiffs, and unlawfully obtain monies and properties from the Plaintiffs included the Defendants' bait and switch frauds, other sales fraud schemes and marketing fraud schemes, and the fraudulent inducement of the Plaintiffs by the

illegal and unlawful use of the mail and the wires, as well as direct acts of racketeering and criminalities against the Plaintiffs, including robbery, extortion, acts of intimidation, fraudulent inducement to obtain Plaintiffs' signatures, coercion, and criminal negligence. And further acts of negligence, fraud, and criminalities conducted by the Defendants, and their enterprises including acts to defame the Plaintiffs, and the Defendants' purposefully fraudulent reporting of losses suffered by the Plaintiffs due to the acts of Defendants' frauds, and purposeful negligence to national risk reporting databases causing significant damage to the Plaintiffs' businesses, and resulted in incorrect, and the Defendants' purposefully fraudulent misrepresentation of the Plaintiffs, as risk parties. All of which greatly affected the businesses' ability to conduct commerce, and operate viability, to a point in which the businesses became insolvent.

i.   Plaintiffs businesses injured and damaged are defined as:

    a) OPM Research and Development Inc.
    b) 9-Ten Holdings Inc.
    c) Neoteric Ventures Inc.
    d) Irr. Trust for the Benefit of John S. Vanderbol III and associated developmental projects including: resurrection fitness, post stroke survival tactics book, and product lines.

ii.   Businesses suffered injuries including:
    a) loss of income
    b) loss of investments in hand
    c) loss of underwriting
    d) loss of professional services of:
       19. Plaintiff Vanderbol
       20. Plaintiff Quinn
       21. company staff hired
       22. company staff contracted
       23. subcontractor design services
       24. subcontractor production services

    e) loss of product in development
    f) loss of invested monies
    g) loss of equity value
    h) loss of market opportunity
    i) loss of viability of projects in development.

**252.**   WHEREFORE, Plaintiffs request that this Court enter judgment against the Count 4 Defendants as follows:

A. Plaintiffs pray for relief in the form actual damages to property in the amount of: $8,555,000.00

B. Plaintiffs pray for relief in the form of actual damages to businesses in the amount of: $70,800,000.00

C. Plaintiffs pray for treble damages for injuries suffer to Plaintiffs property in the amount of: $. 25,665,000.00

D. Plaintiffs pray for treble damages for injuries suffered to Plaintiffs business in the amount of: $212,400,000.00

E. Plaintiffs pray for reasonable attorney's fees should the Plaintiffs obtain the services of legal counsel in this matter.

F. Plaintiffs pray for all reasonable court costs, and costs of bringing forth this matter including the costs of filing, recording costs, costs of discovery, costs of depositions, costs of travel to obtain depositions, as well as, copying and mailing costs associated in this matter.

G. Plaintiffs pray for any and all other relief in the ends of, and in the pursuit of justice and any equitable relief this Honorable Court decides would be appropriate due to the gravity of the matter and the heinous acts of the Defendants.

## Count 5
## Pursuant to 18 U.S.C. § 1962(b)

**253.** The allegations of paragraphs 13 through 217 are incorporated herein by reference.

**254.** This Count is against Defendants State Farm Mutual Automobile Insurance Company (Defendant Auto), and State Farm Fire and Casualty Company (Defendant Fire) (herein after the "Count 5 Defendants").

**255.** The State Farm Group conglomerate enterprise, and the subsidiary association in fact enterprises identified as enterprises "A" through "G" engaged in and whose activities affect interstate commerce.

**256.** The Count 5 Defendants acquired and maintained interests in and control of the enterprises through a pattern of racketeering Specifically, the Count 5 Defendants agreed to:

A. create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
1) defraud parties, such as the plaintiffs.
2) defraud banking institutions
3) conduct a single entity fraud scheme designed to defraud parties
4) engage in association in fact enterprises engaged in racketeering activities
5) manage and operate association in fact relationships in a complex and confusion operational manner which:
   a) was designed to conduct racketeering activities
   b) hired third party attorneys to commit
      i. acts of fraud upon consumers of 'state farm products'

        ii.  acts of fraud upon the court system of the states and the federal government

       iii.  acts of criminalities under false pretenses

       iv.  and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 5 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

6) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

    a) members of 'state farm automobile insurance company'

    b) government regulators

    c) banking officers, and banking institutions in general

    d) purchasers of debentures sold by 'state farm' enterprises.

    e) purchasers of 'state farm' products

    f) depositors in 'state farm bank fsb"

B. create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

1) issuance of directives to employees of the enterprises including:

    a) 'national corporate policies'

    b) memorandums

    c) training manuals

    d) claims and policy handling procedures manuals

    e) sales directives and training manuals

    f) marketing directives and training manuals

    g) contracts between joint enterprises

    h) contracts with third party agents, and agencies, including law firms

    i) instruction manual to attorneys.

2) issuances of directives to third party agents of the enterprises including:

    a) 'national corporate policies'

    b) memorandums

    c) training manuals

    d) claims and policy handling procedures manuals

    e) sales directives and training manuals

    f) marketing directives and training manuals

    g) contracts between joint enterprises

    h) contracts with third party agents, and agencies, including law firms

    i) instruction manual to attorneys.

3) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
   a) 'national corporate policies'
   b) memorandums
   c) training manuals
   d) claims and policy handling procedures manuals
   e) sales directives and training manuals
   f) marketing directives and training manuals
   g) contracts between joint enterprises
   h) contracts with third party agents, and agencies, including law firms
   i) instruction manual to attorneys.

C. creation of, usage of, participation in, and furtherance of the 'single entity fraud scheme' with knowledge and intent to:
   1) defraud parties, such as the plaintiffs.
   2) defraud banking institutions
   3) conduct a single entity fraud scheme designed to defraud parties
   4) engage in association in fact enterprises engaged in racketeering activities
   5) manage and operate association in fact relationships in a complex and confusion operational manner which:
      a) was designed to conduct racketeering activities
      b) hired third party attorneys to commit
         i. acts of fraud upon consumers of 'state farm products'
         ii. acts of fraud upon the court system of the states and the federal government
         iii. acts of criminalities under false pretenses
         iv. and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 5 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.
   6) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
      a) members of 'state farm automobile insurance company'
      b) government regulators
      c) banking officers, and banking institutions in general
      d) purchasers of debentures sold by 'state farm' enterprises.
      e) purchasers of 'state farm' products
      f) depositors in 'state farm bank fsb"
   7) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:
      a) issuance of directives to employees of the enterprises including:

       i.     'national corporate policies'
      ii.    memorandums
    iii.   training manuals
    iv.   claims and policy handling procedures manuals
     v.    sales directives and training manuals
    vi.   marketing directives and training manuals
   vii.   contracts between joint enterprises
  viii.   contracts with third party agents, and agencies, including law firms
    ix.   instruction manual to attorneys.

b) issuances of directives to third party agents of the enterprises including:

       i.     'national corporate policies'
      ii.    memorandums
    iii.   training manuals
    iv.   claims and policy handling procedures manuals
     v.    sales directives and training manuals
    vi.   marketing directives and training manuals
   vii.   contracts between joint enterprises
  viii.   contracts with third party agents, and agencies, including law firms
    ix.   instruction manual to attorneys.

c) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:

       i.     'national corporate policies'
      ii.    memorandums
    iii.   training manuals
    iv.   claims and policy handling procedures manuals
     v.    sales directives and training manuals
    vi.   marketing directives and training manuals
   vii.   contracts between joint enterprises
  viii.   contracts with third party agents, and agencies, including law firms
    ix.   instruction manual to attorneys.

D. Authorize the usage of, participate in the usage of, approve the usage of, and / or engage in marketing activities, sales activities, or operational activities of an individual enterprise which used the term 'state farm' instead of the full legal, and lawfully registered company enterprise name such as,   'State Farm Mutual Automobile Insurance Company, or State Farm Fire and Casualty Company, or State Farm Lloyds, or State Farm Lloyds Inc in any form of communication to any party, including:

   1) use in marketing materials

2)  use in sales activities
3)  use in claims activities
4)  usage in general conversation
5)  use in interviews
6)  use in reports to
    a)  members of state farm mutual automobile insurance company
    b)  government officials
    c)  given in testimony to government officials
    d)  given in conversation with government regulators

E.  Engage in interstate sales and marketing activities using the term 'state farm' to obscure the operational differences between the 'state farm' and the 25 companies owned by Defendant Auto, and the association in fact enterprises, with the knowledge such usage would affect interstate commerce, in order to:

1)  create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
    a)  defraud parties, such as the plaintiffs.
    b)  defraud banking institutions
    c)  conduct a single entity fraud scheme designed to defraud parties
    d)  engage in association in fact enterprises engaged in racketeering activities
    e)  manage and operate association in fact relationships in a complex and confusion operational manner which:
        i.  was designed to conduct racketeering activities
        ii.  hired third party attorneys to commit
            1)  acts of fraud upon consumers of 'state farm products'
            2)  acts of fraud upon the court system of the states and the federal government
            3)  acts of criminalities under false pretenses
            4)  and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 5 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

2)  operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
    a)  members of 'state farm automobile insurance company'
    b)  government regulators
    c)  banking officers, and banking institutions in general
    d)  purchasers of debentures sold by 'state farm' enterprises.

    e) purchasers of 'state farm' products

    f) depositors in 'state farm bank fsb"

3) create, establish, and operate enterprises with purposeful knowledge and intent to:

    a) defraud parties, such as the plaintiffs.

    b) defraud banking institutions

    c) conduct a single entity fraud scheme designed to defraud parties

    d) engage in association in fact enterprises engaged in racketeering activities

    e) manage and operate association in fact relationships in a complex and confusion operational manner which:

        i. was designed to conduct racketeering activities

        ii. hired third party attorneys to commit

            1) acts of fraud upon consumers of 'state farm products'

            2) acts of fraud upon the court system of the states and the federal government

            3) acts of criminalities under false pretenses

            4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 5 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

        iii. operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

            1) members of 'state farm automobile insurance company'

            2) government regulators

            3) banking officers, and banking institutions in general

            4) purchasers of debentures sold by 'state farm' enterprises.

            5) purchasers of 'state farm' products

            6) depositors in 'state farm bank fsb"

        iv. create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

            1) Issuance of directives to employees of the enterprises including:

                a) 'national corporate policies'

                b) memorandums

                c) training manuals

        d) claims and policy handling procedures manuals
        e) sales directives and training manuals
        f) marketing directives and training manuals
        g) contracts between joint enterprises
        h) contracts with third party agents, and agencies, including law firms
        i) instruction manual to attorneys.

v.    issuances of directives to third party agents of the enterprises including:
        1) 'national corporate policies'
        2) memorandums
        3) training manuals
        4) claims and policy handling procedures manuals
        5) sales directives and training manuals
        6) marketing directives and training manuals
        7) contracts between joint enterprises
        8) contracts with third party agents, and agencies, including law firms
        9) instruction manual to attorneys.

vi.   issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
        1) 'national corporate policies'
        2) memorandums
        3) training manuals
        4) claims and policy handling procedures manuals
        5) sales directives and training manuals
        6) marketing directives and training manuals
        7) contracts between joint enterprises
        8) contracts with third party agents, and agencies, including law firms
        9) instruction manual to attorneys.

F.  Used interlocking directorates, interlinked officers positions in various and separate companies, and sperate but jointly interlinked employee positions in independent and allegedly separately operated companies owned by Defendant Auto, and utilized employees of separately operating companies owned by Defendant, to cause, engage in, or manage activities to:

    1) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
        a) defraud parties, such as the plaintiffs.
        b) defraud banking institutions

c) conduct a single entity fraud scheme designed to defraud parties
d) engage in association in fact enterprises engaged in racketeering activities
e) manage and operate association in fact relationships in a complex and confusion operational manner which:
  i. was designed to conduct racketeering activities
  ii. hired third party attorneys to commit
     1) acts of fraud upon consumers of 'state farm products'
     2) acts of fraud upon the court system of the states and the federal government
     3) acts of criminalities under false pretenses
     4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 5 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.
f) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
  i. members of 'state farm automobile insurance company'
  ii. government regulators
  iii. banking officers, and banking institutions in general
  iv. purchasers of debentures sold by 'state farm' enterprises.
  v. purchasers of 'state farm' products
  vi. depositors in 'state farm bank fsb"

2) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:
  a) issuance of directives to employees of the enterprises including:
     i. 'national corporate policies'
     ii. memorandums
     iii. training manuals
     iv. claims and policy handling procedures manuals
     v. sales directives and training manuals
     vi. marketing directives and training manuals
     vii. contracts between joint enterprises
     viii. contracts with third party agents, and agencies, including law firms
     ix. instruction manual to attorneys.

  b) issuances of directives to third party agents of the enterprises including:
     i. 'national corporate policies'

      ii.    memorandums

      iii.   training manuals

      iv.   claims and policy handling procedures manuals

      v.    sales directives and training manuals

      vi.   marketing directives and training manuals

      vii.   contracts between joint enterprises

      viii.  contracts with third party agents, and agencies, including law firms

      ix.   instruction manual to attorneys.

   c)  issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:

      i.    'national corporate policies'

      ii.   memorandums

      iii.   training manuals

      iv.   claims and policy handling procedures manuals

      v.    sales directives and training manuals

      vi.   marketing directives and training manuals

      vii.   contracts between joint enterprises

      viii.  contracts with third party agents, and agencies, including law firms

      ix.   instruction manual to attorneys.

3) creation of, usage of, participation in, and furtherance of the 'single entity fraud scheme' with knowledge and intent to:

   a)  defraud parties, such as the plaintiffs.

   b)  defraud banking institutions

   c)  conduct a single entity fraud scheme designed to defraud parties

   d)  engage in association in fact enterprises engaged in racketeering activities

   e)  manage and operate association in fact relationships in a complex and confusion operational manner which:

      i.    was designed to conduct racketeering activities

      ii.   hired third party attorneys to commit

            1)  acts of fraud upon consumers of 'state farm products'

            2)  acts of fraud upon the court system of the states and the federal government

            3)  acts of criminalities under false pretenses

            4)  and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 4 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

   f)  operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in

racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

    i.    members of 'state farm automobile insurance company'
    ii.    government regulators
    iii.    banking officers, and banking institutions in general
    iv.    purchasers of debentures sold by 'state farm' enterprises.
    v.    purchasers of 'state farm' products
    vi.    depositors in 'state farm bank fsb"

g) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

    i.    issuance of directives to employees of the enterprises including:

        1) 'national corporate policies'
        2) memorandums
        3) training manuals
        4) claims and policy handling procedures manuals
        5) sales directives and training manuals
        6) marketing directives and training manuals
        7) contracts between joint enterprises
        8) contracts with third party agents, and agencies, including law firms
        9) instruction manual to attorneys.

    ii.    issuances of directives to third party agents of the enterprises including:

        1) 'national corporate policies'
        2) memorandums
        3) training manuals
        4) claims and policy handling procedures manuals
        5) sales directives and training manuals
        6) marketing directives and training manuals
        7) contracts between joint enterprises
        8) contracts with third party agents, and agencies, including law firms
        9) instruction manual to attorneys.

    iii.    issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:

        1) 'national corporate policies'
        2) memorandums
        3) training manuals
        4) claims and policy handling procedures manuals

5) sales directives and training manuals
6) marketing directives and training manuals
7) contracts between joint enterprises
8) contracts with third party agents, and agencies, including law firms
9) instruction manual to attorneys.

4) Authorize the usage of, participate in the usage of, approve the usage of, and / or engage in marketing activities, sales activities, or operational activities of an individual enterprise which used the term 'state farm' instead of the full legal, and lawfully registered company enterprise name such as, 'State Farm Mutual Automobile Insurance Company, or State Farm Fire and Casualty Company, or State Farm Lloyds, or State Farm Lloyds Inc in any form of communication to any party, including:

   a) use in marketing materials
   b) use in sales activities
   c) use in claims activities
   d) usage in general conversation
   e) use in interviews
   f) use in reports to
      i. members of state farm mutual automobile insurance company
      ii. government officials
      iii. given in testimony to government officials
      iv. given in conversation with government regulators

5) Engage in interstate sales and marketing activities using the term 'state farm' to obscure the operational differences between the 'state farm' and the 25 companies owned by Defendant Auto, and the association in fact enterprises, with the knowledge such usage would affect interstate commerce, in order to:

   a) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
      i. defraud parties, such as the plaintiffs.
      ii. defraud banking institutions
      iii. conduct a single entity fraud scheme designed to defraud parties
         1) engage in association in fact enterprises engaged in racketeering activities
         2) manage and operate association in fact relationships in a complex and confusion operational manner which:
         3) was designed to conduct racketeering activities
         4) hired third party attorneys to commit
            a) acts of fraud upon consumers of 'state farm products'

      b)   acts of fraud upon the court system of the states and the federal government

      c)   acts of criminalities under false pretenses

      d)   and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 5 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

b) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

    i.     members of 'state farm automobile insurance company'

    ii.    government regulators

    iii.   banking officers, and banking institutions in general

    iv.   purchasers of debentures sold by 'state farm' enterprises.

    v.    purchasers of 'state farm' products

    vi.   depositors in 'state farm bank fsb"

c) create, establish, and operate enterprises with purposeful knowledge and intent to:

    i.     defraud parties, such as the plaintiffs.

    ii.    defraud banking institutions

    iii.   conduct a single entity fraud scheme designed to defraud parties

    iv.   engage in association in fact enterprises engaged in racketeering activities

    v.    manage and operate association in fact relationships in a complex and confusion operational manner which:

        1)  was designed to conduct racketeering activities

        2)  hired third party attorneys to commit

            a)  acts of fraud upon consumers of 'state farm products'

            b)  acts of fraud upon the court system of the states and the federal government

            c)  acts of criminalities under false pretenses

            d)  and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 4 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

3) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
   a) members of 'state farm automobile insurance company'
   b) government regulators
   c) banking officers, and banking institutions in general
   d) purchasers of debentures sold by 'state farm' enterprises.
   e) purchasers of 'state farm' products
   f) depositors in 'state farm bank fsb"

4) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:
   a) Issuance of directives to employees of the enterprises including:
      i. 'national corporate policies'
      ii. memorandums
      iii. training manuals
      iv. claims and policy handling procedures manuals
      v. sales directives and training manuals
      vi. marketing directives and training manuals
      vii. contracts between joint enterprises
      viii. contracts with third party agents, and agencies, including law firms
      ix. instruction manual to attorneys.

5) issuances of directives to third party agents of the enterprises including:
   a) 'national corporate policies'
   b) memorandums
   c) training manuals
   d) claims and policy handling procedures manuals
   e) sales directives and training manuals
   f) marketing directives and training manuals
   g) contracts between joint enterprises
   h) contracts with third party agents, and agencies, including law firms

          i)   instruction manual to attorneys.

    6)  issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
        a)  'national corporate policies'
        b)  memorandums
        c)  training manuals
        d)  claims and policy handling procedures manuals
        e)  sales directives and training manuals
        f)  marketing directives and training manuals
        g)  contracts between joint enterprises
        h)  contracts with third party agents, and agencies, including law firms
        i)  instruction manual to attorneys.

G.  either directly or indirectly through employees or agents of the enterprises make statements or cause a third party to make statements which include false and fraudulent statements of fact, using the term 'state farm' including:

    1)  Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in advertising activities, promotions, and campaigns.

    2)  Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in sales activities, promotions, and campaigns.

    3)  Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in claims activities, processes, or payment activities.

    4)  engaging in a corporate scheme, or pattern of communication, or pattern of behavior to never to admit 'state farm':
        a)  makes mistakes
        b)  was found in court to conduct wrongful activity
        c)  does not 'act like a good neighbor'
        d)  does not 'help life go right'
        e)  engages in nefarious acts
        f)  engages in a pattern of behavior to include
            i.   abusive claims processes
           ii.   abuse of litigation as a profit protection mechanism
          iii.   conducts patterns of theft, and fraud by deception
        g)  conducts a knowingly abusive pattern of company activities
            i.   to deny payments on lawful claims
           ii.   to delay payments on lawful claims
          iii.   to refuse payments on claims based upon knowledge collection of the payment by the claimant would be costlier.

through litigation than viable, or financially able for the claimant to afford.

    h) abuses customers good will

    i) abuses claimants good will and causes financial damage due to 'state farms' operational policies.

5) Defendants knowledge 'state farm' corporate policies unreasonably favor 'state farm' at the expense of the customer, including Plaintiffs

6) Refusing to admit, acknowledge or disclose to prospective consumers 'State Farm' has a significant history which includes:

    a) settlements of RICO claims against 'state farm'

    b) state and federal court findings of fact that 'state farm' engaged in:

        i. sales frauds

        ii. claims frauds

        iii. 'mad dog' defense tactics

        iv. abuse of claimants including

            1) purposefully causing emotional duress

            2) purposeful defamation of claimants character

        v. abuse of former 'state farm' employees acting as 'whistleblowers'

    c) sizeable state and federal fines levied for:

        i. fraudulent

            1) sales practices

            2) claims activities

            3) reporting to government agencies

    d) Federal court rulings finding 'state farm' guilty of:

        i. acts to defraud the federal government

        ii. engaging in interstate fraud

        iii. frauds against claimants

        iv. using 'state farms' wealth and financial resources to cause pain, suffering and delay to claimants.

        v. engaging in unreasonable litigation practices.

H. Directly and or indirectly causing employees of enterprises to engage in racketeering activities in furtherance of fraud schemes, through directives, or company policies which authorize, or cause the commission of acts of:

    1) mail fraud;

    2) wire fraud;

    3) bank fraud;

    4) extortion;

    5) robbery

    6) violations of 18 USC 1951

    7) violations of 18 USC 1952

    8) violations of 18 USC 1005

    9) violations of 18 USC 1006

    10) violations of 18 USC 656

    11) and other violations of 18 USC 1961(1) not here in listed.

**257.**   The racketeering activities listed above set forth above in Paragraph 256, Sec. A through H individually set forth constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

**258.**   The Count 5 Defendants have directly and indirectly acquired and maintained interests in and control of the enterprises through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

**259.**   As a direct and proximate result of the Count 5 Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiffs have been injured in their businesses and property in that specifically:

   A. Plaintiffs suffered injury and damages to property due to the Defendants' fraud schemes, patterns of racketeering behaviors and activities, and Defendants' purposeful acts of negligence by:

    **1)** The Defendants' failure to properly deliver the products sold to the Plaintiffs in Defendants' "bait and switch" scheme. And;

    **2)** The Defendants' ongoing and consistent negligence and fraud in failing to deliver the product sold to the Plaintiffs after receiving notice of their failures to deliver the correct product sold to the Plaintiffs. And;

    **3)** The Defendants' acts of fraud, extortion, and robbery in the Defendants' fraudulent and criminal attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product criminally and fraudulently delivered to the Plaintiffs through the illegal use of the mails and the wires. And;

    **4)** The Defendants' theft of Plaintiffs' personal property (Fireplace) through the Defendants' frauds and criminalities in attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product. And;

    **5)** The Defendants' theft of Plaintiffs' personal property (corporeal rights as members of State Farm Mutual Automobile Insurance Company). And;

    **6)** The Defendants' theft and destruction of Plaintiffs' personal property required to recover monies in litigation against the negligent builder. And;

    **7)** The Defendants' fraudulent and purposefully negligent 'failure' to adhere to the terms and conditions of the fraudulently sold 'bait and switch' product, which the Defendants were attempting to enforce upon the Plaintiffs, which resulted in further damage to Plaintiffs' property (automobiles). And;

    **8)** The Defendants' theft of the Plaintiffs' personal property (automobile insurance contract), by acts of fraud, and in participation with the racketeering activities of the jointly operating criminal enterprises. And;

9) The Defendants' fraudulent reporting to national databases, negligently and fraudulently reporting Plaintiffs as 'high risk', when in fact, the actions of the Defendants themselves, and the related negligence was the direct basis of the reporting. Plaintiffs were damaged in 'property' relating to this specific issue due to the destruction of established personal employment contracts.

B. Plaintiffs suffered direct and proximate injuries to Plaintiffs' property due to the fraud schemes, racketeering activities and enterprises established, conducted, participated and operated by the Defendants in the amount of $8,555,000.00. Plaintiffs' injuries were resultant from, and directly related to the Defendants' fraudulent inducement of the Plaintiffs into Defendants' 'bait and switch' fraud scheme, and related acts of conglomerate racketeering enterprises activities. Defendants' fraudulent sales and 'post sale' racketeering activities used to defraud the Plaintiffs, and unlawfully obtain monies and properties from the Plaintiffs, included the Defendants' bait and switch frauds, other sales fraud schemes and marketing fraud schemes, and the fraudulent inducement of the Plaintiffs by the illegal and unlawful use of the mail and the wires, as well as direct acts of racketeering and criminalities against the Plaintiffs, including robbery, extortion, acts of intimidation, fraudulent inducement to obtain Plaintiffs' signatures, coercion, and criminal negligence.

    i.    Plaintiffs property injured and damaged are defined as:

        a) building structure located at 605 Kiowa Drive west
        b) Plaintiff Quinn's vehicle
        c) Plaintiff Vanderbol's automobiles including 2008 BMW, 2004 Ford Excursion, 1999 Toyota Land Cruiser.
        d) Plaintiffs personal property located at 605 Kiowa Drive West

    ii.    Plaintiffs suffered personal injuries in the form of:
        a) Loss of income,
        b) loss of status and life style
        c) emotional duress
        d) physical harm (exposure to toxic environments)
        e) Loss of business investment, and surety.

C. Plaintiffs suffered injury and damages to their businesses due to the Defendants' fraud schemes, patterns of racketeering behaviors and activities, and Defendants' purposeful acts of negligence by:

1) The Defendants' failure to properly deliver the products sold to the Plaintiffs in Defendants' "bait and switch" scheme. And;
2) The Defendants' ongoing and consistent negligence and fraud in failing to deliver the product sold to the Plaintiffs after receiving notice of their failures to deliver the correct product sold to the Plaintiffs. And;
3) The Defendants' acts of fraud, extortion, and robbery in the Defendants' fraudulent and criminal attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product criminally and fraudulently delivered to the Plaintiffs through the illegal use of the mails and the wires. And;

4)  The Defendants' theft of Plaintiffs' personal property (Fireplace) through the Defendants' frauds and criminalities in attempts to enforce the terms and conditions of the fraudulently sold 'bait and switch' product. And;

5)  The Defendants' theft of Plaintiffs' personal property (corporeal rights as members of State Farm Mutual Automobile Insurance Company). And;

6)  The Defendants' theft and destruction of Plaintiffs' personal property required to recover monies in litigation against the negligent builder. And;

7) The Defendants' fraudulent and purposefully negligent 'failure' to adhere to the terms and conditions of the fraudulently sold 'bait and switch' product, which the Defendants were attempting to enforce upon the Plaintiffs, which resulted in further damage to Plaintiffs' property (automobiles). And;

8) The Defendants' theft of the Plaintiffs' personal property (automobile insurance contract), by acts of fraud, and in participation with the racketeering activities of the jointly operating criminal enterprises. And;

9) The Defendants' fraudulent reporting to national databases, negligently and fraudulently reporting Plaintiffs as 'high risk', when in fact, the actions of the Defendants themselves, and the related negligence was the direct basis of the reporting. Plaintiffs were damaged in 'property' relating to this specific issue due to the destruction of established personal employment contracts. And;

10) The Defendants' failure to make adequate, correct, and full restitution to the Plaintiffs in a reasonable amount of time, based upon the correct contract sold to the Plaintiffs. And;

11) The Defendants' failure to make proper restitution resulted in a complete 'shut-down' of business operations for a significant period of time due to the total losses suffered personally, by the Plaintiffs, and the businesses' loss of 'labor' and 'services' from the Plaintiffs due to the frauds, criminalities and acts of negligence by the Defendants.

12) The Defendants' purposefully negligent failures, frauds and criminalities, and acts of defamation of the Plaintiffs resulted in a loss of 'equity', and 'value' which graphically financially injured the business, due to the Plaintiffs' loss of reputation, status, credibility, 'creditworthiness' and 'risk assessment'.

13) The Defendants' fraudulent reporting to national databases graphically injured the businesses' ability to obtain underwriting for insurance and credit which:

    a)  dramatically and irrationally increased the costs of operations.

    b)  dramatically and irrationally increased the costs of monies and lines of credit.

    c)  dramatically increased the costs of operations, insurance, financial transactions, import of products, and costs of goods sold to a level the company was no longer profitable, or obtained the margin of profitability required by the business third party investors.

    d)  caused the businesses to no longer meet the requirements to obtain monies from signed investment agreements.

14) The Defendants' fraudulent schemes, operations and criminalities operating in a manner to damage the Plaintiffs, in order to obscure the Defendants' fraud schemes and criminality lasted for a period of time beyond a reasonable

period of time, and as such, the businesses lost viability, profitability, and the ability to operate beyond their monetary reserves, and capabilities resulting in a complete collapse of the businesses.

15) The Defendants' causation of the collapse of the Plaintiffs' businesses, resulted in a complete loss of equity value and value of intellectual property held and assigned by the businesses.

D. Plaintiffs suffered direct and proximate damages and injuries to Plaintiffs' businesses due to the fraud schemes, racketeering activities and enterprises established, conducted, participated and operated by the Defendants in the amount of $70,800,000.00. Plaintiffs' injuries were resultant from, and directly related to the Defendants' fraudulent inducement of the Plaintiffs into Defendants' 'bait and switch' fraud scheme, and related acts of conglomerate racketeering enterprises' activities. Defendants' fraudulent sales and 'post sale' racketeering activities used to defraud the Plaintiffs, and unlawfully obtain monies and properties from the Plaintiffs included the Defendants' bait and switch frauds, other sales fraud schemes and marketing fraud schemes, and the fraudulent inducement of the Plaintiffs by the illegal and unlawful use of the mail and the wires, as well as direct acts of racketeering and criminalities against the Plaintiffs, including robbery, extortion, acts of intimidation, fraudulent inducement to obtain Plaintiffs' signatures, coercion, and criminal negligence. And further acts of negligence, fraud, and criminalities conducted by the Defendants, and their enterprises including acts to defame the Plaintiffs, and the Defendants' purposefully fraudulent reporting of losses suffered by the Plaintiffs due to the acts of Defendants' frauds, and purposeful negligence to national risk reporting databases causing significant damage to the Plaintiffs' businesses, and resulted in incorrect, and the Defendants' purposefully fraudulent misrepresentation of the Plaintiffs, as risk parties. All of which greatly affected the businesses' ability to conduct commerce, and operate viability, to a point in which the businesses became insolvent.

    i. Plaintiffs businesses injured and damaged are defined as:

        a) OPM Research and Development Inc.

        b) 9-Ten Holdings Inc.

        c) Neoteric Ventures Inc.

        d) Irr. Trust for the Benefit of John S. Vanderbol III and associated developmental projects including: resurrection fitness, post stroke survival tactics book, and product lines.

    ii. Businesses suffered injuries including:

        a) loss of income

        b) loss of investments in hand

        c) loss of underwriting

        d) loss of professional services of:

            25. Plaintiff Vanderbol

            26. Plaintiff Quinn

27. company staff hired
28. company staff contracted
29. subcontractor design services
30. subcontractor production services

e) loss of product in development
f) loss of invested monies
g) loss of equity value
h) loss of market opportunity
i) loss of viability of projects in development.

**260.** WHEREFORE, Plaintiffs request that this Court enter judgment against the Count 5 Defendants as follows:

A. Plaintiffs pray for relief in the form actual damages to property in the amount of: $8,555,000.00
B. Plaintiffs pray for relief in the form of actual damages to businesses in the amount of: $70,800,000.00
C. Plaintiffs pray for treble damages for injuries suffer to Plaintiffs property in the amount of: $. 25,665,000.00
D. Plaintiffs pray for treble damages for injuries suffered to Plaintiffs business in the amount of: $212,400,000.00
E. Plaintiffs pray for reasonable attorney's fees should the Plaintiffs obtain the services of legal counsel in this matter.
F. Plaintiffs pray for all reasonable court costs, and costs of bringing forth this matter including the costs of filing, recording costs, costs of discovery, costs of depositions, costs of travel to obtain depositions, as well as, copying and mailing costs associated in this matter.
G. Plaintiffs pray for any and all other relief in the ends of, and in the pursuit of justice and any equitable relief this Honorable Court decides would be appropriate due to the gravity of the matter and the heinous acts of the Defendants.

## Count 6

## Pursuant to 18 U.S.C. § 1962(a)

**261.** The allegations of paragraphs 13 through 217 are incorporated herein by reference.

**262.** This Count is against Defendants Tipsord, Farney, Smith, Harbert, and Wey (herein after the "Count 6 Defendants").

**263.** The State Farm Group conglomerate enterprise, and the subsidiary association in fact enterprises identified as enterprises "A" through "G" engaged in and whose activities affect interstate commerce.

**264.**   The Count 6 Defendants received, used, and invested income that was derived from a pattern of racketeering activity in an interstate enterprise. Specifically, the Count 6 Defendants agreed to:

   A. create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
1) defraud parties, such as the plaintiffs.
2) defraud banking institutions
3) conduct a single entity fraud scheme designed to defraud parties
4) engage in association in fact enterprises engaged in racketeering activities
5) manage and operate association in fact relationships in a complex and confusion operational manner which:
   a) was designed to conduct racketeering activities
   b) hired third party attorneys to commit
     i. acts of fraud upon consumers of 'state farm products'
     ii. acts of fraud upon the court system of the states and the federal government
     iii. acts of criminalities under false pretenses
     iv. and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 6 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.
6) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
   a) members of 'state farm automobile insurance company'
   b) government regulators
   c) banking officers, and banking institutions in general
   d) purchasers of debentures sold by 'state farm' enterprises.
   e) purchasers of 'state farm' products
   f) depositors in 'state farm bank fsb"

   B. create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:
1) issuance of directives to employees of the enterprises including:
   a) 'national corporate policies'
   b) memorandums
   c) training manuals
   d) claims and policy handling procedures manuals
   e) sales directives and training manuals
   f) marketing directives and training manuals
   g) contracts between joint enterprises

      h)  contracts with third party agents, and agencies, including law firms
      i)  instruction manual to attorneys.

2)  issuances of directives to third party agents of the enterprises including:
      a)  'national corporate policies'
      b)  memorandums
      c)  training manuals
      d)  claims and policy handling procedures manuals
      e)  sales directives and training manuals
      f)  marketing directives and training manuals
      g)  contracts between joint enterprises
      h)  contracts with third party agents, and agencies, including law firms
      i)  instruction manual to attorneys.

3)  issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
      a)  'national corporate policies'
      b)  memorandums
      c)  training manuals
      d)  claims and policy handling procedures manuals
      e)  sales directives and training manuals
      f)  marketing directives and training manuals
      g)  contracts between joint enterprises
      h)  contracts with third party agents, and agencies, including law firms
      i)  instruction manual to attorneys.

C.  creation of, usage of, participation in, and furtherance of the 'single entity fraud scheme' with knowledge and intent to:
  1)  defraud parties, such as the plaintiffs.
  2)  defraud banking institutions
  3)  conduct a single entity fraud scheme designed to defraud parties
  4)  engage in association in fact enterprises engaged in racketeering activities
  5)  manage and operate association in fact relationships in a complex and confusion operational manner which:
      a)  was designed to conduct racketeering activities
      b)  hired third party attorneys to commit
         i.  acts of fraud upon consumers of 'state farm products'
        ii.  acts of fraud upon the court system of the states and the federal government
       iii.  acts of criminalities under false pretenses
       iv.  and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 6 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

6) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

    a) members of 'state farm automobile insurance company'
    b) government regulators
    c) banking officers, and banking institutions in general
    d) purchasers of debentures sold by 'state farm' enterprises.
    e) purchasers of 'state farm' products
    f) depositors in 'state farm bank fsb'

7) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

    a) issuance of directives to employees of the enterprises including:
        i.   'national corporate policies'
        ii.   memorandums
        iii.   training manuals
        iv.   claims and policy handling procedures manuals
        v.   sales directives and training manuals
        vi.   marketing directives and training manuals
        vii.   contracts between joint enterprises
        viii.   contracts with third party agents, and agencies, including law firms
        ix.   instruction manual to attorneys.

    b) issuances of directives to third party agents of the enterprises including:
        i.   'national corporate policies'
        ii.   memorandums
        iii.   training manuals
        iv.   claims and policy handling procedures manuals
        v.   sales directives and training manuals
        vi.   marketing directives and training manuals
        vii.   contracts between joint enterprises
        viii.   contracts with third party agents, and agencies, including law firms
        ix.   instruction manual to attorneys.

    c) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
        i.   'national corporate policies'
        ii.   memorandums
        iii.   training manuals
        iv.   claims and policy handling procedures manuals

      v.    sales directives and training manuals
      vi.   marketing directives and training manuals
     vii.   contracts between joint enterprises
    viii.   contracts with third party agents, and agencies, including law firms
      ix.   instruction manual to attorneys.

D. Authorize the usage of, participate in the usage of, approve the usage of, and / or engage in marketing activities, sales activities, or operational activities of an individual enterprise which used the term 'state farm' instead of the full legal, and lawfully registered company enterprise name such as, 'State Farm Mutual Automobile Insurance Company, or State Farm Fire and Casualty Company, or State Farm Lloyds, or State Farm Lloyds Inc in any form of communication to any party, including:

   1) use in marketing materials
   2) use in sales activities
   3) use in claims activities
   4) usage in general conversation
   5) use in interviews
   6) use in reports to
      a) members of state farm mutual automobile insurance company
      b) government officials
      c) given in testimony to government officials
      d) given in conversation with government regulators

E. Engage in interstate sales and marketing activities using the term 'state farm' to obscure the operational differences between the 'state farm' and the 25 companies owned by Defendant Auto, and the association in fact enterprises, with the knowledge such usage would affect interstate commerce, in order to:

   1) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
      a) defraud parties, such as the plaintiffs.
      b) defraud banking institutions
      c) conduct a single entity fraud scheme designed to defraud parties
      d) engage in association in fact enterprises engaged in racketeering activities
      e) manage and operate association in fact relationships in a complex and confusion operational manner which:
         i.   was designed to conduct racketeering activities
        ii.   hired third party attorneys to commit
            1) acts of fraud upon consumers of 'state farm products'
            2) acts of fraud upon the court system of the states and the federal government
            3) acts of criminalities under false pretenses

4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 6 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

2) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

   a) members of 'state farm automobile insurance company'
   b) government regulators
   c) banking officers, and banking institutions in general
   d) purchasers of debentures sold by 'state farm' enterprises.
   e) purchasers of 'state farm' products
   f) depositors in 'state farm bank fsb"

3) create, establish, and operate enterprises with purposeful knowledge and intent to:

   a) defraud parties, such as the plaintiffs.
   b) defraud banking institutions
   c) conduct a single entity fraud scheme designed to defraud parties
   d) engage in association in fact enterprises engaged in racketeering activities
   e) manage and operate association in fact relationships in a complex and confusion operational manner which:
      i. was designed to conduct racketeering activities
      ii. hired third party attorneys to commit
         1) acts of fraud upon consumers of 'state farm products'
         2) acts of fraud upon the court system of the states and the federal government
         3) acts of criminalities under false pretenses
         4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 6 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.
      iii. operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

                1) members of 'state farm automobile insurance company'
2) government regulators
3) banking officers, and banking institutions in general
4) purchasers of debentures sold by 'state farm' enterprises.
5) purchasers of 'state farm' products
6) depositors in 'state farm bank fsb"

iv.   create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

       1) Issuance of directives to employees of the enterprises including:
         a) 'national corporate policies'
         b) memorandums
         c) training manuals
         d) claims and policy handling procedures manuals
         e) sales directives and training manuals
         f) marketing directives and training manuals
         g) contracts between joint enterprises
         h) contracts with third party agents, and agencies, including law firms
         i) instruction manual to attorneys.

v.   issuances of directives to third party agents of the enterprises including:

       1) 'national corporate policies'
       2) memorandums
       3) training manuals
       4) claims and policy handling procedures manuals
       5) sales directives and training manuals
       6) marketing directives and training manuals
       7) contracts between joint enterprises
       8) contracts with third party agents, and agencies, including law firms
       9) instruction manual to attorneys.

vi.   issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:

       1) 'national corporate policies'
       2) memorandums
       3) training manuals
       4) claims and policy handling procedures manuals
       5) sales directives and training manuals

6) marketing directives and training manuals
7) contracts between joint enterprises
8) contracts with third party agents, and agencies, including law firms
9) instruction manual to attorneys.

F. Used interlocking directorates, interlinked officers positions in various and separate companies, and sperate but jointly interlinked employee positions in independent and allegedly separately operated companies owned by Defendant Auto, and utilized employees of separately operating companies owned by Defendant, to cause, engage in, or manage activities to:

1) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
   a) defraud parties, such as the plaintiffs.
   b) defraud banking institutions
   c) conduct a single entity fraud scheme designed to defraud parties
   d) engage in association in fact enterprises engaged in racketeering activities
   e) manage and operate association in fact relationships in a complex and confusion operational manner which:
      i. was designed to conduct racketeering activities
      ii. hired third party attorneys to commit
         1) acts of fraud upon consumers of 'state farm products'
         2) acts of fraud upon the court system of the states and the federal government
         3) acts of criminalities under false pretenses
         4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 6 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.
   f) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
      i. members of 'state farm automobile insurance company'
      ii. government regulators
      iii. banking officers, and banking institutions in general
      iv. purchasers of debentures sold by 'state farm' enterprises.
      v. purchasers of 'state farm' products
      vi. depositors in 'state farm bank fsb"

2) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:
   a) issuance of directives to employees of the enterprises including:
      i. 'national corporate policies'
      ii. memorandums
      iii. training manuals
      iv. claims and policy handling procedures manuals
      v. sales directives and training manuals
      vi. marketing directives and training manuals
      vii. contracts between joint enterprises
      viii. contracts with third party agents, and agencies, including law firms
      ix. instruction manual to attorneys.

   b) issuances of directives to third party agents of the enterprises including:
      i. 'national corporate policies'
      ii. memorandums
      iii. training manuals
      iv. claims and policy handling procedures manuals
      v. sales directives and training manuals
      vi. marketing directives and training manuals
      vii. contracts between joint enterprises
      viii. contracts with third party agents, and agencies, including law firms
      ix. instruction manual to attorneys.

   c) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
      i. 'national corporate policies'
      ii. memorandums
      iii. training manuals
      iv. claims and policy handling procedures manuals
      v. sales directives and training manuals
      vi. marketing directives and training manuals
      vii. contracts between joint enterprises
      viii. contracts with third party agents, and agencies, including law firms
      ix. instruction manual to attorneys.

3) creation of, usage of, participation in, and furtherance of the 'single entity fraud scheme' with knowledge and intent to:
   a) defraud parties, such as the plaintiffs.
   b) defraud banking institutions
   c) conduct a single entity fraud scheme designed to defraud parties

d) engage in association in fact enterprises engaged in racketeering activities

e) manage and operate association in fact relationships in a complex and confusion operational manner which:

    i. was designed to conduct racketeering activities

    ii. hired third party attorneys to commit

        1) acts of fraud upon consumers of 'state farm products'

        2) acts of fraud upon the court system of the states and the federal government

        3) acts of criminalities under false pretenses

        4) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 6 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

f) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

    i. members of 'state farm automobile insurance company'

    ii. government regulators

    iii. banking officers, and banking institutions in general

    iv. purchasers of debentures sold by 'state farm' enterprises.

    v. purchasers of 'state farm' products

    vi. depositors in 'state farm bank fsb"

g) create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

    i. issuance of directives to employees of the enterprises including:

        1) 'national corporate policies'

        2) memorandums

        3) training manuals

        4) claims and policy handling procedures manuals

        5) sales directives and training manuals

        6) marketing directives and training manuals

        7) contracts between joint enterprises

        8) contracts with third party agents, and agencies, including law firms

        9) instruction manual to attorneys.

    ii. issuances of directives to third party agents of the enterprises including:

        1) 'national corporate policies'

        2) memorandums

        3) training manuals
        4) claims and policy handling procedures manuals
        5) sales directives and training manuals
        6) marketing directives and training manuals
        7) contracts between joint enterprises
        8) contracts with third party agents, and agencies, including law firms
        9) instruction manual to attorneys.

iii.   issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
        1) 'national corporate policies'
        2) memorandums
        3) training manuals
        4) claims and policy handling procedures manuals
        5) sales directives and training manuals
        6) marketing directives and training manuals
        7) contracts between joint enterprises
        8) contracts with third party agents, and agencies, including law firms
        9) instruction manual to attorneys.

4) Authorize the usage of, participate in the usage of, approve the usage of, and / or engage in marketing activities, sales activities, or operational activities of an individual enterprise which used the term 'state farm' instead of the full legal, and lawfully registered company enterprise name such as, 'State Farm Mutual Automobile Insurance Company, or State Farm Fire and Casualty Company, or State Farm Lloyds, or State Farm Lloyds Inc in any form of communication to any party, including:
   a) use in marketing materials
   b) use in sales activities
   c) use in claims activities
   d) usage in general conversation
   e) use in interviews
   f) use in reports to
      i.   members of state farm mutual automobile insurance company
      ii.   government officials
      iii.   given in testimony to government officials
      iv.   given in conversation with government regulators

5) Engage in interstate sales and marketing activities using the term 'state farm' to obscure the operational differences between the 'state farm' and the 25 companies owned by Defendant Auto, and the association in fact enterprises, with the knowledge such usage would affect interstate commerce, in order to:

a) create, establish, and operate an enterprise known as 'the state farm group' with purposeful knowledge and intent to:
   i. defraud parties, such as the plaintiffs.
   ii. defraud banking institutions
   iii. conduct a single entity fraud scheme designed to defraud parties
      1) engage in association in fact enterprises engaged in racketeering activities
      2) manage and operate association in fact relationships in a complex and confusion operational manner which:
      3) was designed to conduct racketeering activities
      4) hired third party attorneys to commit
         a) acts of fraud upon consumers of 'state farm products'
         b) acts of fraud upon the court system of the states and the federal government
         c) acts of criminalities under false pretenses
         d) and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 6 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

b) operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:
   i. members of 'state farm automobile insurance company'
   ii. government regulators
   iii. banking officers, and banking institutions in general
   iv. purchasers of debentures sold by 'state farm' enterprises.
   v. purchasers of 'state farm' products
   vi. depositors in 'state farm bank fsb"

c) create, establish, and operate enterprises with purposeful knowledge and intent to:
   i. defraud parties, such as the plaintiffs.
   ii. defraud banking institutions
   iii. conduct a single entity fraud scheme designed to defraud parties

iv.   engage in association in fact enterprises engaged in racketeering activities

v.   manage and operate association in fact relationships in a complex and confusion operational manner which:

   1)  was designed to conduct racketeering activities

   2)  hired third party attorneys to commit

      a)  acts of fraud upon consumers of 'state farm products'

      b)  acts of fraud upon the court system of the states and the federal government

      c)  acts of criminalities under false pretenses

      d)  and engage in third party criminal acts for hire, whether the attorney had direct knowledge of the crime, or the Count 4 defendants or their enterprises concealed the crime from said attorney by acts of fraud, and failure to disclose material fact.

   3)  operate an enterprise without full disclosure of their intent, their acts of fraudulent activity, their affiliation with enterprises engaged in racketeering activities, their corporate management policies, their operational structure of subsidiary companies owned by state farm, the intent and operation of association in fact enterprises harbored in companies owned by Defendant Auto to:

      a)  members of 'state farm automobile insurance company'

      b)  government regulators

      c)  banking officers, and banking institutions in general

      d)  purchasers of debentures sold by 'state farm' enterprises.

      e)  purchasers of 'state farm' products

      f)  depositors in 'state farm bank fsb"

   4)  create, establish, direct, manage, authorize and participate in the furtherance of patterns of fraud and racketeering activities by:

      a)  Issuance of directives to employees of the enterprises including:

         i.   'national corporate policies'

         ii.   memorandums

         iii.   training manuals

         iv.   claims and policy handling procedures manuals

         v.   sales directives and training manuals

      vi.    marketing directives and training manuals
      vii.   contracts between joint enterprises
      viii.  contracts with third party agents, and agencies, including law firms
      ix.    instruction manual to attorneys.

5) issuances of directives to third party agents of the enterprises including:
   a) 'national corporate policies'
   b) memorandums
   c) training manuals
   d) claims and policy handling procedures manuals
   e) sales directives and training manuals
   f) marketing directives and training manuals
   g) contracts between joint enterprises
   h) contracts with third party agents, and agencies, including law firms
   i) instruction manual to attorneys.

6) issuances of 'proposals', resolutions, and analysis of operations, in order to conduct fraudulent activities, criminalities, frauds, and patterns of racketeering activities including:
   a) 'national corporate policies'
   b) memorandums
   c) training manuals
   d) claims and policy handling procedures manuals
   e) sales directives and training manuals
   f) marketing directives and training manuals
   g) contracts between joint enterprises
   h) contracts with third party agents, and agencies, including law firms
   i) instruction manual to attorneys.

G. either directly or indirectly through employees or agents of the enterprises make statements or cause a third party to make statements which include false and fraudulent statements of fact, using the term 'state farm' including:
   1) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in advertising activities, promotions, and campaigns.
   2) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in sales activities, promotions, and campaigns.

3) Representing 25 companies owned by Defendant Auto, or more than one company owned by Defendant Auto, as one company in claims activities, processes, or payment activities.
4) engaging in a corporate scheme, or pattern of communication, or pattern of behavior to never to admit 'state farm':
   a) makes mistakes
   b) was found in court to conduct wrongful activity
   c) does not 'act like a good neighbor'
   d) does not 'help life go right'
   e) engages in nefarious acts
   f) engages in a pattern of behavior to include
      i.   abusive claims processes
      ii.  abuse of litigation as a profit protection mechanism
      iii. conducts patterns of theft, and fraud by deception
   g) conducts a knowingly abusive pattern of company activities
      i.   to deny payments on lawful claims
      ii.  to delay payments on lawful claims
      iii. to refuse payments on claims based upon knowledge collection of the payment by the claimant would be more costly through litigation than viable, or financially able for the claimant to afford.
   h) abuses customers good will
   i) abuses claimants good will and causes financial damage due to 'state farms' operational policies.
5) Defendants knowledge 'state farm' corporate policies unreasonably favor 'state farm' at the expense of the customer, including Plaintiffs
6) Refusing to admit, acknowledge or disclose to prospective consumers 'State Farm' has a significant history which includes:
   a) settlements of RICO claims against 'state farm'
   b) state and federal court findings of fact that 'state farm' engaged in:
      i.   sales frauds
      ii.  claims frauds
      iii. 'mad dog' defense tactics
      iv.  abuse of claimants including
           1) purposefully causing emotional duress
           2) purposeful defamation of claimants character
      v.   abuse of former 'state farm' employees acting as 'whistleblowers'
   c) sizeable state and federal fines levied for:
      i.   fraudulent
           1) sales practices
           2) claims activities
           3) reporting to government agencies
   d) Federal court rulings finding 'state farm' guilty of:
      i.   acts to defraud the federal government
      ii.  engaging in interstate fraud

      iii.    frauds against claimants

      iv.    using 'state farms' wealth and financial resources to cause pain, suffering and delay to claimants.

      v.    engaging in unreasonable litigation practices.

H. Directly and or indirectly causing employees of enterprises to engage in racketeering activities in furtherance of fraud schemes, through directives, or company policies which authorize, or cause the commission of acts of:

1) mail fraud;
2) wire fraud;
3) bank fraud;
4) extortion;
5) robbery
6) violations of 18 USC 1951
7) violations of 18 USC 1952
8) violations of 18 USC 1005
9) violations of 18 USC 1006
10) violations of 18 USC 656
11) and other violations of 18 USC 1961(1) not here in listed.

**265.** The racketeering activities listed above set forth above in Paragraph 264, Sec. A-H individually sets forth constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

**266.** As direct and proximate result of the Count 6 Defendants racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiffs have been injured in their businesses and property in that: Defendants including Count 6 Defendants utilized incomes derived from the patterns of racketeering activities, to operate separate other enterprises, association in fact enterprises and third party agents who conducted the enterprises criminal activities and other fraud schemes which injured the Plaintiffs directly. Additionally, the Defendants enterprises invested incomes from racketeering activities in order to pay the Defendants and enterprises in order to bribe them in to conducting and participating in racketeering activities which constructed a 'circling and cyclic effect' in where racketeering incomes become invested to fund racketeering activities and enterprises.

**267.** WHEREFORE, Plaintiffs requests that this Court enter judgment against the Count 6 Defendants as follows: