

FILED

NOV 2 1 2019

Clerk, U.S. District Court
Texas Eastern

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS - SHERMAN DIVISION

| | |
|---|---|
| **JOHN S. VANDERBOL III, AND ERICA QUINN** Plaintiffs, | Lead Case No.: 4:19-cv-119-SDJ-KPJ (Consolidated 4:19-CV-120) |
| vs. | |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM FIRE AND CASUALTY COMPANY, ET AL.** Defendants | Brief in Support of Plaintiff's Third Amended Complaint. JURY TRIAL DEMANDED. |

### Brief in Support of Plaintiff's Third Amended Complaint.

**Redacted as Ordered by The Court.**

**INDEX.**

| <u>Contents.</u> | <u>Page.</u> |
|---|---|
| **Introduction** | **1.** |
| Notice to the Court. | |
| Conflicts of Operation and Participation in association, management and employment. | 2. |
| Fraudulent Conduct of Operation. | 5. |
| Overlapping Phases of Racketeering Activities. | 6 |
| Differential between enterprises, and corporate entities. | 7 |
| Differentiation between enterprises, parent-subsidiaries, affiliates and employees. | 11. |
| ***STANDING TO BRING CLAIMS*** | **13.** |
| Width and Breadth of Injuries to properties and business directly and proximately related to Defendants Frauds, criminalities, patterns of behavior and Racketeering enterprises. | 14. |
| "But for Injuries" to Plaintiffs Businesses. | 18. |
| **<u>Liability of Defendant Auto, and other Defendants under 18 USC 1962(a), (b), and (d)</u>** | **19.** |
| **<u>Plaintiffs Reliance.</u>** | **21.** |
| **<u>In Conclusion,</u>** | |
| **<u>Prayer.</u>** | **23** |
| **Certificate of Service.** | **24.** |
| **Exhibit 1. Aid to the Court.** | **A.** |

# LIST OF AUTHORITIES.

**Authority.**                                                                          **Page.**

18 USC 1962(c) and (d)                                                                     1

15 USC 1125                                                                                3

*DeFalco v. Bernas,*                                                                       4.
244 F.3d 286, 309 (2d Cir. 2001);
*Cowan v. Corley,*
814 F.2d 223, 227 (5th Cir. 1987);
*United States v. Gardiner,*
463 F.3d 445, 458 (6th Cir. 2006);
*United States v. Fernandez,*
388 F.3d 1199, 1218 (9th Cir. 2004).


*Haggiag v. Brown,*                                                                        5.
728 F. Supp. 286, 295 (S.D.N.Y. 1990)
*Hall Am. Ctr. Assocs. Ltd. P'ship v. Dick,*
726 F. Supp. 1083, 1091-92 (E.D. Mich. 1989)
*Godlewska v. Human Dev. Ass'n,*
No. CIV A CV-03-3985DGT,
*City of New York v. Cyco.Net, Inc.,*
383 F. Supp. 2d 526, 554 (S.D.N.Y. 2005)


<u>*Midwest Grinding Co. v. Spitz,*</u>                                                    6.
976 F.2d 1016, 1025-1026 (7th Cir. 1992)
<u>**Calcasieu Marine Nat. Bank v. Grant,**</u>
943 F.2d 1453, 1463 (5th Cir. 1991)
*See H.J. Inc. v. Northwestern Bell Tel. Co.,*
492 U.S. 229, 243-49 (1989);
*Nat'l Org. for Women, Inc. v. Scheidler,*
510 U.S. 249, 260 (1994).
*But see Scheidler v. Nat'l Org. for Women, Inc.,*
537 U.S. 393, 401-08 (2003)
*18 U.S.C.A. § 1962(a)*
*18 U.S.C.A. § 1962(b)*
*18 U.S.C.A. § 1962(c)*
*18 U.S.C.A. § 1962(d) conspiring to violate §§ 1962(a), (b), or (c).*


*18 U.S.C.A. § 1961(1)*                                                                    7.
*18 USCA § 1961(5).*
*18 USCA § 1961(1*
*Bridge v. Phoenix Bond & Indem. Co.,*
553 U.S. 639, 881 (2008)

## LIST OF AUTHORITIES. (cont.)

| Authority. | Page. |
|---|---|
| *Walters v. McMahen,*<br>684 F.3d 435, 440-43 (4th Cir. 2012) | 7 |
| *Richards v. Combined Ins. Co. of Am.,*<br>55 F.3d 247, 251-53 (7th Cir. 1995) | |
| *Emery v. Am. Gen. Fin., Inc.,*<br>71 F.3d 1343, 1346, 1348 (7th Cir. 1995) | |
| *Jepson, Inc. v. Makita Corp.,*<br>34 F.3d 1321, 1328, (7th Cir. 1994) | |
| *Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc.,*<br>271 F.3d 374, 487 (2d Cir. 2001) | |
| *236 Cannon Realty, LLC v. Ziss,*<br>No. 02-CV-6683, 2005 WL 289752, at *5-9 (S.D.N.Y. Feb. 8, 2005) | |
| *Gerstenfeld v. Nitsberg,*<br>190 F.R.D. 127 (S.D.N.Y. 1999) | |
| *Friedlob v. Trustees of Alpine Mut. Fund Trust,*<br>905 F. Supp. 843, 858-59 (D. Colo. 1995) | |
| *18 USCA § 1961(3).* | *8.* |
| *H.J. Inc. v. Northwestern Bell Telephone Co.,*<br>492 U.S. 229 (1989) | |
| *Compare Stephens, Inc v. Geldermann, Inc.,*<br>F 2d 808, 815-16 (8th Cir. 1992).*,* | |
| *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*<br>868 F. 2d 740, 748 (5th Cir. 1989) | |
| *H.J. Inc. v. Northwestern Bell Telephone Co.,*<br>492 U.S. 229, 240 (1989) | |
| *Vicom, Inc.,*<br>20 F.3d at 782 (*quoting H.J. Inc.,* 492 U.S. at 242-43). | 10. |
| *Libertad v. Welch,*<br>53 F.3d 428, 445-446 (1st Cir. 1995) | |
| *CVLR Performance Horses, Inc. v. Wynne,*<br>524 F. App'x 924 (4th Cir. 2013) | |
| *Abraham v. Singh,*<br>480 F.3d 351, 355-56 (5th Cir. 2007) | |
| *Allwaste, Inc. v. Hecht,*<br>65 F.3d 1523, 1528-29 (9th Cir. 1995) | |

## LIST OF AUTHORITIES. (cont.)

**Authority.**                                                                    Page.

*Schofield v. First Commodity Corp. of Boston,*                                   11.
793 F.2d 28, 32 (1st Cir. 1986);
*Petro-Tech, Inc. v. Western Co. of N. Am.,*
824 F.2d 1349, 1360 (3d Cir. 1987);
*Davis v. Mut. Life Ins. Co. of New York,*
6 F.3d 367, 378-80 (6th Cir. 1993);
*D & S Auto Parts, Inc. v. Schwartz,*
838 F.2d 964, 967 (7th Cir. 1988);
*Liquid Air Corp. v. Rogers,*
834 F.2d 1297, 1304 (7th Cir. 1987);
*Luthi v. Tonka Corp.,*
815 F.2d 1229, 1230 (8th Cir. 1987);
*Brady v. Dairy Fresh Products Co.,*
974 F.2d 1149, 1153-54 (9th Cir. 1992);
<u>*Landry v. Air Line Pilots Ass'n Int'l.,*</u>
901 F.2d 404, 425 (5th Cir. 1990);
*Yellow Bus Lines, Inc. v. Drivers Local Union*
 *639,* 883 F.2d 132, 140
(D.C. Cir. 1989), on reh'g in part, 913 F.2d 948 (D.C. Cir. 1990);
*Cf. Harrah v. J.C. Bradford & Co.,*
37 F.3d 1493 (4th Cir. 1994)
*Cox v. Adm'r U.S. Steel & Carnegie,*
17 F.3d 1386, 1406-07 (11th Cir. 1994)
*In re ClassicStar Nare Leasing Litig.,*
727 F.3d 492 (6th Cir. 2013)
*Davis v. Mutual Life Ins. Co. of New York,*
6 F.3d 367, 378-80 (6th Cir. 1993);
*Liquid Air Corp. v. Rogers,*
834 F.2d 1297, 1306 (7th Cir. 1987);
*Brady v. Dairy Fresh Products Co.,*
974 F.2d 1149, 1154-55 (9th Cir. 1992);

*Reves v. Ernst & Young,*                                                         12
507 U.S. 170, 178-79 (1993).
*United Food & Commercial Workers Unions v. Walgreen Co.,*
719 F.3d 849, 853-56 (7th Cir. 2013);
*Cruz v. FXDirectDealer, LLC,*
720 F.3d 115, 121 (2d Cir. 2013)
*Dongelewicz v. PNC Bank Nat'l Ass'n,*
104 F. App'x 811 (3d Cir. 2004);
*Crichton v. Golden Rule Ins. Co.,*
576 F.3d 392 (7th Cir. 2009);

## LIST OF AUTHORITIES. (cont.)

| Authority. | Page. |
|---|---|
| *Goren v. New Vision Int'l, Inc.,* <br> 156 F.3d 721, 727-728 (7th Cir. 1998); <br> *In re Terrorist Attacks on Sept. 11, 2001,* <br> 349 F. Supp. 2d 765, 827-28 (S.D.N.Y. 2005), <br> aff'd, 538 F.3d 71 (2d Cir. 2008); <br> *Jubelirer v. MasterCard Int'l, Inc.,* <br> 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999); <br> *Cf. Beard v. Worldwide Mortg. Corp.,* <br> 354 F. Supp. 2d 789, 806-808 (W.D. Tenn. 2005) <br> *Reves v. Ernst & Young,* <br> 507 U.S. 170, 185 (1993). <br> *and ID.* at 178-179, <br> *and ID.* at 190-19. | 12 |
| *Dayton Monetary Assocs. v. Donaldson, Lufkin, & Jenrette Secs. Corp.,* <br> No. 91-CV-2050, 1993 WL 410503, at *3 (S.D.N.Y. Oct. 14, 1993). <br> *Brown v. LaSalle Northwest Nat'l Bank,* <br> 820 F. Supp. 1078, 1082 (N.D. Ill. 1993) <br> *United Nat'l Ins. Co. v. Equipment Ins. Managers, Inc.,* <br> No. 95-CV-0116, 1995 WL 631709, <br> at *4-5 (E.D. Pa. Oct. 27, 1995) <br> *Mathon v. Marine Midland Bank, N.A.,* <br> 875 F. Supp. 986, 994-95 (E.D.N.Y. 1995) <br> *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.* <br> 868 F. 2d 740, 747048 (5th Cir. 1989). | 13 |
| *Holmes v. Secs. Investor Prot. Corp.,* <br> 503 U.S. at 267-74 <br> *Diaz v. Gates,* <br> 420 F3d 897 (9th Cir. 2005) <br> *18 U.S.C.A. § 1341.* <br> *Florida Software Sys., Inc. v. Columbia/HCA Healthcare Corp,* <br> 46 F. Supp. 2d 1276, 1281 (M.D. Fla. 1999). <br> *Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* <br> No. 92-CV-2808, 1993 WL 8340 (N.D. Ill. Jan. 8, 1993), <br> judgment aff'd, 20 F.3d 771 (7th Cir. 1994). | 14 |
| *In re Sumitomo Copper Litig.,* <br> 995 F. Supp. 451, 455 (S.D.N.Y. 1998 <br> *Accord Sekhar v. United States,* <br> 133 S. Ct. 2720 (2013) <br> *18 USC 1951(b)(2)*" and each act of robbery constitutes a <br> predicate act in violation of *18 USC 1961(1)* | 15 |

## LIST OF AUTHORITIES. (cont.)

| Authority. | Page. |
|---|---|
| *18 USC 1951(b)(1)*, '*The Hobbs Act*' and each act of robbery constitutes a predicate act in violation of *18 USC 1961(1) 18 USC 1961(5)* | 15 |
| *In Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 n.14 (1985). | |
| *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir. 1986). | |
| *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir. 1986). 33Id. at 975. | |
| *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350 (5th Cir. 1985) | |
| *e.g.,Grogan v. Platt,* 835 F.2d 844, 848 (11th Cir. 1988). | |
| *In re Taxable Mun. Bond Secs.Litig.,* 51 F.3d 518, 523 (5th Cir. 1995); | |
| *Fleischhauer v. Feltner,* 879 F.2d 1290, 1299 (6th Cir. 1989); | |
| *Imagineering, Inc. v. Kiewit Pac. Co.,* 976 F.2d 1303, 1310 (9th Cir. 1992); | |
| *Berg v. First State Ins. Co.,* 915 F.2d 460, 464 (9th Cir. 1990); | |
| *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.,* 155 F. Supp. 2d 1069, 1090 (S.D. Ind. 2001) | 16 |
| *Jersevic v. Kuhl, No. 00-CV-10113,* 2002 WL 84624, at *5 (E.D. Mich. Jan. 4, 2002) | |
| *Isaak v. Trumbull Sav. & Loan Co.,* 169 F.3d 390, 396-97 (6th Cir. 1999) | |
| *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 918 (3d Cir. 1991) | |
| *Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 422 (5th Cir. 2001) | |
| *Drake v. B.F. Goodrich Co.,* 782 F.2d 638, 644 (6th Cir. 1986) | |
| *Pilkington v. United Airlines,* 112 F.3d 1532, 1536 (11th Cir. 1997) | |
| *Grogan v. Platt,* 835 F.2d 844, 848 (11th Cir. 1988) | |
| *Burnett v. Al Baraka Inv. and Dev. Corp.,* 274 F. Supp. 2d 86, 100-102 (D.D.C. 2003) | |
| *Dymits v. Am. Brands, Inc.,* No. 96-CV-1897, 1996 WL 751111 (N.D. Cal. Dec. 31, 1996) | |
| *James v. Lan-O-Tone Prods., Inc.,* No. 88-CV-7716, 1989 WL 61852 (S.D.N.Y. June 7, 1989) | |

## LIST OF AUTHORITIES. (cont.)

**Authority.**                                                                    **Page.**

*Raye v. Medtronic Corp.,*                                                          16
696 F. Supp. 1273, 1274 (D. Minn. 1988)
*McMurtry v. Brasfield,*
654 F. Supp. 1222, 1225 (E.D. Va. 1987)
*Pohlot v. Pohlot,*
664 F. Supp. 112, 116 (S.D.N.Y. 1987)
*Campbell v. A.H. Robins Co.,*
 615 F. Supp. 496, 501 (W.D. Wis. 1985)
*Wisdom v. First Midwest Bank, of Poplar Bluff,*
167 F.3d 402 (8th Cir. 1999).
*In re Sumitomo Copper Litig.,*
995 F. Supp. 451, 455 (S.D.N.Y. 1998)


*Holmes v. Secs. Investor Prot. Corp.,*                                            18
503 U.S. at 271
*Northeast Women's' Ctr., Inc. v. McMonagle,*
868 F 2d. 1342 (3rd Cir 1989)
*Nat'l Org. for Women, Inc. v. Scheidler,*
510 U.S. at 258. (1994)
*18 USC 1962(c)*
*18 USC 1962(d)*
*Hemi Group, LLC v. City of New York,*
559 U.S. 1 (2010


18 USC 1961(a)                                                                     19
18 USC 1961(b)
*Anza,*
547 U.S. at 456-60.
*Lightning Lube, Inc. v. Witco Corp.,*
4 F.3d 1153, 1190-91 (3d Cir. 1993)
*Shearin v. E.F. Hutton Group, Inc.,*
885 F.2d 1162, 1165 (3d Cir. 1989),
*abrogated by Beck v. Prupis,*
529 U.S. 494 (2000);
*Petro-Tech, Inc. v. Western Co. of N. Am.,*
824 F.2d 1349, 1361 (3d Cir. 1987);
*Busby v. Crown Supply, Inc.,*
896 F.2d 833, 841-42 (4th Cir. 1990);
*In re Burzynski,*
989 F.2d at 743; Landry, 901 F.2d at 425;
*Masi v. Ford City Bank & Trust Co.,*
779 F.2d 397, 401 (7th Cir. 1985);
*Haroco, Inc. v. Am. Nat'l Bank and Trust Co. of Chicago,*
747 F.2d 384, 402 (7th Cir. 1984), aff'd, 473 U.S. 606 (1985);

## LIST OF AUTHORITIES. (cont.)

| Authority. | Page. |
|---|---|
| *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,<br>806 F.2d 1393, 1398 (9th Cir. 1986).<br>*Davis v. Mutual Life Ins. Co. of New York*,<br>6 F.3d 367, 378-80 (6th Cir. 1993);<br>*Liquid Air Corp. v. Rogers,*<br>834 F.2d 1297, 1306 (7th Cir. 1987);<br>*Brady v. Dairy Fresh Products Co.,*<br>974 F.2d 1149, 1154-55 (9th Cir. 1992);<br>*Cox v. Adm'r U.S. Steel & Carnegie,*<br>17 F.3d 1386, 1406-1407 (11th Cir. 1994) | 19 |
| *Salinas v. United States,*<br>522 U.S. 52, 63 (1997)<br>*Kirwin v. Price Commc'ns Corp.,*<br>391 F.3d 1323, 1327 (11th Cir. 2004)<br>*Webster v. Omnitrition Int'l, Inc.,*<br>79 F.3d 776, 787 (9th Cir. 1996)<br>*Ashland Oil, Inc. v. Arnett,*<br>875 F.2d 1271, 1281 (7th Cir. 1989)<br>*Brouwer v. Raffensperger, Hughes & Co.,*<br>199 F.3d 961 (7th Cir. 2000).<br>*MCM Partners, Inc.,*<br>62 F.3d 967;<br>*United States v. Quintanilla,*<br>2 F.3d 1469, 1485 (7th Cir. 1993);<br>*United States v. Starrett,*<br>55 F.3d 1525, 1547-48 (11th Cir. 1995);<br>*Tonnemacher v. Sasak,*<br>859 F. Supp. 1273, 1277-78 (D. Ariz. 1994);<br>*Fid. Fed. Sav. & Loan Ass'n,*<br>830 F. Supp. at 261;<br>*Jones v. Meridian Towers Apartments, Inc.,*<br>816 F. Supp. 762, 772-73 (D.D.C. 1993).<br>*Brouwer,*<br>199 F.3d at 967. | 20 |
| *Bridge v. Phoenix Bond & Indem. Co.,*<br>553 U.S. 639, 661 (2008)<br>*Bridge v. Phoenix Bond & Indem. Co.,*<br>553 U.S. at 657-658 (2008)<br>*In re Actimmune Mktg. Litig.,*<br>614 F. Supp. 2d 1037, 1052 (N.D. Cal. 2009) | 21 |

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 10 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 39-2   Filed 11/21/19   Page 10 of 35 PageID #:
2623

## LIST OF AUTHORITIES. (cont.)

**Authority.**                                                                                    **Page.**

*Bridge v. Phoenix Bond & Indem. Co.*,                                                            22
553 U.S. 639, 661 (2008)
 *Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. *at 659* (2008)

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 11 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 39-7   Filed 11/21/19   Page 11 of 35 PageID #:
2624

### Plaintiffs' Brief in Support of Plaintiffs' Third Amended Complaint.

Now here comes, Plaintiffs Quinn and Vanderbol, acting Pro Se, and does file their *Brief in Support of Plaintiffs' 3rd Amended Complaint*, which shows the Defendants' continuing pattern of frauds, and bad faith practices. Plaintiffs have discovered sufficient evidence of such activities to bring the following claims. Plaintiffs show this Honorable Court;

## I.    *INTRODUCTION.*

The Plaintiffs allege to be the victims of the Defendants' extremely complex, and long-run racketeering influenced enterprises, which established, operated and participated in fraud schemes, racketeering activities, and criminalities, conducted by enterprises and association in fact enterprises, with the intent to defraud the Plaintiffs in order to illegally obtain and maintain monies and properties from the plaintiffs in furtherance of the Defendants fraud schemes, and racketeering activities.   Plaintiffs allege the Defendants' conduct, operate, manage, control, participate and receive unlawfully derived monies, and incomes from these RICO violating enterprises, which are directly and indirectly, managed and controlled by the Defendants, directly and indirectly in an association manner, and often in a manner of employment, within the various, interconnected, and jointly operating 'subsidiary' enterprises, and 'subsidiary' association in fact enterprises.

### Notice to this Honorable Court,

In compliance with this Honorable Court's orders and directives regarding the usage of third party attorneys names, and the names of the law firms, hired and then utilized by the Defendants in manners which require argument in support of the Plaintiffs 18 U.S.C. § 1962(c) and (d) claims, the Plaintiffs asked for a face to face meeting with Defendant Auto, and Fires' counsels, in order to discuss a mutually agreeable terminology that would not inhibit, injure, or defame any party, agent or attorney.   Said meeting occurred on November 19th, 2019 at 1300 Hours, at the offices of the Defendants counsels in Dallas, Texas.   The opposing counsels, and the Pro Se Plaintiffs reached an impasse, due to the Defendants' reluctance to even allow the inference the activities alleged by the Plaintiffs plausibly occur and / or the Defendants may engage in said activity.   With that stated, Plaintiffs have to the best of their ability, while still sufficiently alleging the conduct and manner in which said conduct is facilitated in furtherance of the

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 13 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 89-8   Filed 11/21/19   Page 12 of 35 PageID #:
2625

Defendants' enterprises, and fraud schemes, in conduct, participation, and operation of the RICO violating enterprises, without disobeying the guidance by, and the orders of this Honorable Court.

### Conflicts of Operation and Participation in association, management and employment.

Adding to the complexity of this case is the organizational, and formational structure of Defendant Auto, and the fraudulent representations Defendants make in advertising frauds and sales schemes pertaining to the structure of Defendant Auto, the managerial control of Defendant Auto, the rights of 'members'(shareholders in a cooperative), who purchase automobile insurance and obtain said rights in Defendant Auto, and the confusing, misleading, and misrepresentative claims of the Defendants as to the 'authorities' to operate, control and manage Defendant Auto. As stated, and supported within the Plaintiffs complaint, Defendant Auto was formed as a co-operative company in 1922. Defendant Auto's RICO conspiring Directors and Conspiring individual Defendants Tipsord, Farney, Smith, Harbert, and Wey, have fraudulently conducted enterprises operations of Defendant Auto as a unlawfully operating 'holding company' without adequate, direct, and full disclosure, to all parties, including Plaintiffs and, members who have purchased automobile policies from Defendant Auto, and parties, including the Plaintiffs that the Defendants' RICO violating enterprises have fraudulently induced into purchasing products, goods, and services from the subsidiary enterprises owned by Defendant Auto, which the Defendants utilize to conduct, manage, and jointly participate within the subsidiary RICO violating association in fact racketeering enterprises patterns of racketeering activities.

As shown in the Plaintiffs complaint prior to this matter, Defendant Auto consistently conducted a pattern of business operations and behaviors within its enterprises from 1922 through 2012. Defendant Auto utilized a third-party agent network it directly and indirectly managed in order to sell products from three separate companies symbolized within a trademark owned by Defendant Auto signifying three separate companies "life", "fire" and "Auto". The trademark clearly showed the separation between State Farm Life Insurance Company "life", State Farm Fire and Casualty Company "Fire", and State Farm Mutual Automobile Insurance Company "Auto" and the third-party agents who managed relationships with individual consumers, in compliance with state laws, were told and did clearly identify the difference between the separate companies

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 14 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 39-2   Filed 11/21/19   Page 13 of 35 PageID #:
2626

to the consumers[1], and worked on behalf of their customer's best interest, as a common operational policy of the enterprise, meaning the third party agents' enterprise, and those three independent 'state farm' companies.

As shown and alleged in the Plaintiff's complaint in late 2011 and January of 2012, the Defendants led by Defendants Tipsord, Farney, Smith, Harbert, and Wey conducted a major and significant shift in the traditional operational models of all of the enterprises owned by State Farm Mutual Automobile Insurance Company. The Defendants established enterprise and enterprise operations including: National call centers which began sales and marketing operations using the Defendants' new national marketing, sales and advertising fraud schemes, as directed and managed by Defendants Tipsord, and Harbert, acting as Directors and employees of Defendant Auto. Simultaneously, the Defendants instigated 'web-based' sales and marketing activities using 'statefarm.com' to conduct and participate within the same new national marketing, sales and advertising fraud schemes. This simultaneous act of 'branding' purposefully, and fraudulently with the intent to defraud parties (including the plaintiffs) of monies and properties in furtherance of the Defendants' frauds and blurred the separation of companies[2], severed the direct connection of third party network agents to customers (including the Plaintiffs), and consolidated the sales, marketing, management, and conduct of the enterprises directly under the control of the Defendants, who then   graphically expanded the conduct of direct and indirect criminalities

---

[1]  Showing the legal requirements of 15 USC 1125 'in connection with goods and services' to make clear designations of origin, and direct and clear descriptions of fact, including the 'persons' goods, and the differentiation of a 'persons' goods, services, commercial activities, characteristics of products, and commercial activities from another 'persons' goods, services, commercial activities, characteristics of products, and commercial activities. Directly, independent companies sold under the same trademark but operating separately and offering different products, goods and services of different qualities, characteristics and different commercial operations are clearly separate persons, especially if the Defendants' claim the companies are separate, and registered as separate companies, and regulated separately by different states and separate regulatory authorities. Further, under Texas Statute, as alleged in the complaint, Deceptive practices are unlawful, and the omission of fact, is a violation of Texas statue.

[2]  Defendants, after January 1st 2012, directly and indirectly omitted the separation of operations, the separation of companies, and began enacting fraud schemes to obscure the commercial activities of the 'separate persons' as shown in Footnote 1, the Defendants had a duty under Federal Law, state law, and a fiduciary duty to disclose the information to the Plaintiffs and parties they sought to induce into purchasing 'state farm' products.  Further the Defendants' 'interstate communications' failed to state the regulatory requirements of the 'state farm' companies in the state of Texas in a clear and concise manner, and they Defendants failed to clearly state the Defendants' 'call centers' and 'websites' are not licensed, nor regulated by the State of Texas to conduct sales activities in the State of Texas, as required by law.

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 15 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 39-2   Filed 11/21/19   Page 14 of 35 PageID #:
2627

associated with post sales 'claims' activities of the enterprises managed and directed by the Defendants.

After January 1st 2012 and in all instances of the operation, management and participation of the subsidiary enterprises, and association in fact enterprises which jointly and directly engaged in patterns of racketeering behaviors and criminal activities, the common thread was and is the interlocked directorate and employee positions of Defendants Tipsord, Farney, Smith, Harbert, and Wey in the various, yet jointly racketeering participating enterprises within the more than 25 subsidiary companies owned by Defendant Auto. As shown and alleged in the Plaintiffs complaint the individual Defendants Tipsord, Farney, Smith, Harbert, and Wey each hold directors positions in various and overlapping companies engaged in patterns of racketeering behavior, and each of the individual Defendants participate and are associated in enterprises beyond the rational and prudent extend a reasonable management team would extend in operation of enterprises due to the inherent conflicts of interests between the allegedly separate organizations, the legal requirements of separation of interests required by laws of organization, and management of corporations, the requirement to maintain separation of companies to avoid undue participation and necessity to maintain the sovereignty of the individual corporations, in order to protect the 'corporate veil' of each operating company affecting interstate commerce[3].

Defendants fraudulently allege each company is separate, and fraudulently misrepresent the separation between companies in 'matters of convenience' which are not factual nor practical as the enterprises overlap in conduct and participation to a manner there is no separation between the enterprises and this creates a secondary element of fraud in construction of each 'contract' issued and 'sold' by the 'independent' companies illegally operating in each of the states nationally. As the enterprises are not independent in management, or operations, and the Defendants comingle monies and assets of these interstate commerce affecting "independent enterprises", as shown by the distribution of monies by usage of the US Postal Service, to the Plaintiffs, in Texas, from

---

[3]  Courts have held that the required interstate commerce nexus is "minimal." *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001); *Cowan v. Corley*, 814 F.2d 223, 227 (5th Cir. 1987); *United States v. Gardiner*, 463 F.3d 445, 458 (6th Cir. 2006); *United States v. Fernandez*, 388 F.3d 1199, 1218 (9th Cir. 2004).

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 16 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 85-2   Filed 11/21/19   Page 15 of 35 PageID #:
2628

**Enterprise** Lloyds, and Defendant Auto, in the form of bank drafts (checks)[4], using the same bank located in Columbus Ohio consisting of the same routing number, from the same account number, signed by the same two parties operating, participating, and conducting enterprise activities from Bloomington Illinois, Defendant Farney, and Defendant Tipsord (while Tipsord is not an officer, or director of Defendant Lloyds, and has no employment, or authority attachment to said company) but shown on the checks printed by Defendant Auto's enterprises as issued from "State Farm Lloyds"(Texas) and "State Farm Automobile Insurance Company"(Illinois).

## **Fraudulent Conduct of Operation.**

Plaintiffs state and allege Defendant Auto failed to conduct the proper, lawful, and required regulatory filings necessary, including the necessary obtaining of authorities, the disclosures to all interested parties, and failed to obtain the approval of its co-operative members to move from the sole authorized conduct of business which was 'the sale of automobile insurance policies" and the operation of the business which was 'to benefit the purchasers (members) of automobile policies, in a combined manner to offset the risk of loss due to automobile insurance claims, across the entire pool of automobile insurance policy owners". Defendant Auto illegally operates and manages companies that do not financially benefit the 'members' of Defendant Auto, and Defendant Auto' managers, directors, and senior employees unlawfully profit from these operations which provide no real benefit to the members beyond those commonly available within the open marketplace. In short, the "we operate for the benefit of our members' statements made by the Defendants are directly fraudulent, and misleading statements, as the secondary operations only benefit the senior employees, and directors who participate in 'quid pro quo' frauds, and criminalities for financial gain.

Upon review, Defendant Auto from 2012 through 2018 did not circulate any proxies to the 'members' of Defendant Auto which sought to obtain approval for the change in operations of the

---

[4] *See, e.g.,Haggiag v. Brown*, 728 F. Supp. 286, 295 (S.D.N.Y. 1990) (transfer of funds to foreign corporation and unauthorized sale and purchase of securities); *Hall Am. Ctr. Assocs. Ltd. P'ship v. Dick*, 726 F. Supp. 1083, 1091-92 (E.D. Mich. 1989) (use of mail and interstate wires); *Godlewska v. Human Dev. Ass'n*, No. CIV A CV-03-3985DGT, 2005 WL 1667852, at *9 (E.D.N.Y. July 18, 2005) (use of household cleaning products in domestic employment satisfies interstate commerce requirement, because products were "moved in or produced for interstate commerce");*City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 554 (S.D.N.Y. 2005) (use of mails and wires to advertise, sell, and deliver cigarettes without paying state taxes).

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 17 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 98-2   Filed 11/21/19   Page 16 of 35 PageID #:
2629

company, nor did the Directors of Defendant Auto conduct the proper and legitimate processes as required to notify all affected parties of the companies change in operations, including those engaged by the Defendants and induced into fraudulent sales and marketing schemes. Flatly, the sole notice filed by the Defendants' Directors or officers were regulatory filings declaring Defendant Auto as a 'holding company', which is beyond the lawful conduct of the operations of Defendant Auto, and most certainly never disclosed in any of the advertising, promotion, or sales notifications of the Defendants' enterprises. These omissions are inherently fraudulent as the Defendants fraudulently release annual reports to the auto policy owners of Defendant Auto's insurance contracts, which do not reflect this holding company function, nor does the report adequately report the entire financial status, nor holding value, nor liability risk, of the entire holding company, nor does the report give any lawful disclose of risk associated with the operations of 'state farm' as a holding company, or provide a consumer adequate disclosure of information required by laws requiring disclosure of information of operations of companies for investors, nor consumers. To be direct, Plaintiffs civil RICO claims are not attempting to 'shoehorn' an ordinary business or contractual dispute into a civil RICO claim[5], Plaintiffs claims are directed at the Defendants' long-standing patterns of racketeering activities predicated on mail and wire fraud, <u>and the Defendants' multiple and repeated violations of the Hobbs Act</u> [6].

### <u>Overlapping Phases of Racketeering Activities.</u>

Plaintiffs allege to be the victims of Defendants' complex criminal racketeering enterprise known as 'the state farm group" this RICO violating enterprises[7]' subsidiary RICO violating

---

[5] *See, e.g., <u>Midwest Grinding Co. v. Spitz</u>,* 976 F.2d 1016, 1025-1026 (7th Cir. 1992) ("RICO has not federalized every state common-law cause of action available to remedy business deals gone sour."); <u>Calcasieu Marine Nat. Bank v. Grant,</u> 943 F.2d 1453, 1463 (5th Cir. 1991) ("although Congress wrote RICO in broad, sweeping terms, it did not intend to extend RICO to every fraudulent commercial transaction").

[6] *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 243-49 (1989); *Nat'l Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 260 (1994). *But see Scheidler v. Nat'l Org. for Women, Inc.,* 537 U.S. 393, 401-08 (2003) (holding that disruptive activities of anti-abortion protesters did not rise to predicate act of extortion under the Hobbs Act).

[7] *18 U.S.C.A. § 1962(a)* prohibits a person from investing in an enterprise any income derived from a pattern of racketeering activity; *18 U.S.C.A. § 1962(b)* prohibits a person from using a pattern of racketeering activity to acquire or maintain control over an enterprise; *18 U.S.C.A. § 1962(c)* prohibits a person from conducting the affairs of an enterprise through a pattern of racketeering and *18 U.S.C.A. § 1962(d)* prohibits a person from conspiring to violate *§§ 1962(a), (b), or (c).*

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 18 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 88-2   Filed 11/21/19   Page 17 of 35 PageID #:
2630

enterprises graphically affected interstate commerce by conducted racketeering[8] activities over a very long period of time, in which the pattern of racketeering activities[9] and behaviors became established.   All of the Defendants the 'state farm groups' various, and jointly operating racketeering enterprises operated in FOUR distinct phases, each phases' racketeering activities have distinct predicate criminal[10] acts, proximate causation[11] and caused 'but for' injuries to the Plaintiffs' and their businesses.

<u>**Differential between enterprises, and corporate entities.**</u>

As argued and alleged within the Plaintiffs' Complaint, the Defendants with actual knowledge of the illegal activities[12], engaged within the "State Farm Group" RICO violating enterprise, whether individual or 'corporate', expressly conducts or participates, either by association, or employment, in the 'groups' pattern of racketeering activities via 'association in fact' enterprises intermingled within the 25 subsidiary companies owned by State Farm Mutual

---

[8]  Congress defined "racketeering" activity to include a variety of state and federal predicate crimes. *18 U.S.C.A. § 1961(1)*

[9]  *18 U.S.C. §A § 1961(5)*. provides the statutory definition of a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity . . . the last of which occurred within ten years after the commission of a prior act of racketeering activity."

[10]  In violation of *18 U.S.C. §A § 1961(1)*.

[11]  *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 881 (2008) "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing a proximate causation, that it relied on the defendant's alleged misrepresentations."

[12]  *See Walters v. McMahen*, 684 F.3d 435, 440-43 (4th Cir. 2012) (affirming dismissal of complaint for failure to allege knowledge that aliens were "brought into United States" for predicate act of illegal hiring); *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251-53 (7th Cir. 1995) (affirming summary judgment where defendants' failure to provide refund certificates might have been negligence, but not intentional fraud); *Emery v. Am. Gen. Fin., Inc.*, 71 F.3d 1343, 1346, 1348 (7th Cir. 1995) (describing intent requirement where plaintiff pleads mail and wire fraud as predicate acts); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328, (7th Cir. 1994) (affirming dismissal of complaint for failure to plead sufficient facts to give rise to an inference that the defendants engaged in a mail and wire fraud scheme with fraudulent intent); *Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 487 (2d Cir. 2001) (plaintiffs must allege that the defendant hired illegal aliens with actual knowledge that the aliens hired were brought into the country in violation of the predicate immigration statute); *236 Cannon Realty, LLC v. Ziss*, No. 02-CV-6683, 2005 WL 289752, at *5-9 (S.D.N.Y. Feb. 8, 2005) (dismissing claim where plaintiff failed to allege that each defendant made misrepresentations upon which he relied); *Gerstenfeld v. Nitsberg*, 190 F.R.D. 127 (S.D.N.Y. 1999) (dismissing RICO claims because the complaint failed to allege facts giving rise to a strong inference of fraudulent intent); *Friedlob v. Trustees of Alpine Mut. Fund Trust*, 905 F. Supp. 843, 858-59 (D. Colo. 1995) (plaintiffs must allege that defendants committed predicate acts willfully or with actual knowledge of the illegal activities).

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 19 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 38-2   Filed 11/21/19   Page 18 of 35 PageID #:
2631

Automobile Insurance Company, as such all Defendants and subsidiary companies owned by Defendant Auto are all culpable persons[13].   In fact, State Farm Mutual Automobile Insurance Company solely sells 'automobile insurance coverage' to parties, whom after a purchase of Automobile Insurance, become part of the co-operative ownership of State Farm Mutual Automobile Insurance Company, and in fact become ensnared in the 'groups' operations whether they purchase other products of the subsidiaries or not.

State Farm Mutual Automobile Insurance Company does not sell home owners insurance, life insurance, or any other form of financial or insurance products.   Separate companies (enterprises) owned by State Farm Mutual Automobile Insurance Company sell those products using a third-party agent network which was originally formed by State Farm Mutual Automobile Insurance Company in 1922. Defendants' conduct, management and acts of participation of the "state farm group" RICO violating schemes are entirely separate from the sales of automobile insurance.   And the association in fact 'subsidiary' enterprises which conduct and participate within the varying fraud schemes and acts of racketeering, are completely separate from the sales of automobile insurance, except for the entanglement of the 'bait and switch' and 'bundling' fraud schemes which are jointly participated via acts of conspiracy and sales fraud.

The State Farm Group Enterprise controls, conducts, manages, and participates within the fraud and racketeering activities of the more than 8 distinctly separate RICO violating enterprises which comprise the 'long arms' of the total "state farm group" RICO violating conglomerate, as RICO violating subsidiary enterprises.   These enterprises operating within 'the state farm group' association in fact enterprise RICO violating schemes relating to patterns, relatedness, and continuity[14] and exhibit three characteristics[15].   These are:

> 1) a common or share purpose among its members, and relatedness between the predicate acts, and similarities of the enterprises participating within the racketeering activities, and methods of commission[16] by frauds, and criminalities;

---

[13] *18 U.S.C. §A § 1961(3).*

[14] *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229 (1989)

[15] *Compare Stephens, Inc v. Geldermann, Inc.,* F 2d 808, 815-16 (8th Cir. 1992). *See also, Ocean Energy II, Inc. v. Alexander & Alexander, Inc.* 868 F. 2d 740, 748 (5th Cir. 1989)

[16] *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 240 (1989) (quoting former 18 U.S.C. § 3575(e)).

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 20 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 83-2   Filed 11/21/19   Page 19 of 35 PageID #:
2632

a. all members of the enterprise, including individual defendants, common purpose was to defraud the Plaintiffs, and to illegally obtain monies through continuing acts of fraud, all members of the enterprise, including the individual defendants, shared purpose was to defraud the Plaintiffs through continuing acts of material misrepresentation of facts, A) all members of the enterprise, including the individual defendants, common and shared purpose was to defraud the Plaintiffs through the continuing illegal abuse of trademarks in order to sew confusion, and to materially misrepresent facts, quality of products, origination of products, value of products, and other facts during and after the sale of insurance products, B) all members of the enterprise, including the individual defendants, common and shared purpose was to defraud the Plaintiffs by obscuring the exact corporate party Plaintiffs were in fact engaged in conversation with, in order to sew confusion and to obscure the fraud schemes, and racketeering activities. C) all members of the enterprise, including the individual defendants, common and shared purpose was to engage in a single entity tradename fraud scheme in order to knowingly, and purposefully commit acts of fraud in order to illegally obtain monies from the Plaintiffs. and D) all members of the enterprise, including the individual defendants, and individual employees of the enterprises, as well as third party agents' common and shared purpose was to engage in a single entity tradename fraud scheme in order to intentionally, knowingly, and purposefully commit acts of fraud in order to illegally obtain monies from the Plaintiffs, and to by further cats of fraud, obscure the racketeering enterprises in a manner to attempt to convey the acts of the enterprises as 'being normal and appropriate' acts of business.

2) continuity of structure and personnel; A) all members of the enterprise, including the individual defendants, and all of the employees of the enterprises, including third party agents voice a continuity of structure as 'being with "state farm"' and B) all members of the enterprise, including the individual defendants, and all of the employees of the enterprises, including third party agents voice a continuity of personnel as being employed by "state farm".

3) an ascertainable structure distinct from that inherent in the pattern of racketeering, all members of the enterprise, are distinctly separate corporate entities from the 'state farm group' racketeering enterprise. A) State Farm Mutual Automobile Insurance Company is a distinctly different corporation (enterprise) from 'the state farm group'. Its sole registered purpose is to operate as a 'cooperative to the benefit its members', who are purchasers of automobile insurance policies sold by State Farm Mutual Automobile Insurance Company. B) State Farm Fire and Casualty Company is a distinctly different corporation (enterprise) from 'the state farm group'. Its sole registered purpose is to sell homeowners issuance policies. State Farm Lloyds is a distinctly different corporation (enterprise) from 'the state farm group'. Its sole stated purpose is to be a 'Lloyds' plan provider as regulated by the State of Texas. State Farm Lloyds Inc, is a wholly owned subsidiary of State Farm

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 21 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 93-2   Filed 11/21/19   Page 20 of 35 PageID #:
2633

Lloyds and is a distinctly different corporation (enterprise) from 'the state farm group'. Its sole stated purpose is to act as the 'attorney of fact' for State Farm Lloyds. and The various as of yet unidentified corporate enterprises owned by State Farm Mutual Automobile Insurance Company are distinctly separate corporate enterprises from 'the state farm group' and operate under individual corporate charters, and ownership that is distinctly different from that of 'the state farm group".

4) the victims, meaning two, the Plaintiffs, who are the target of the enterprises activities to Defraud in order to unlawfully obtain monies and properties in a manner that affects interstate commerce.

The State Farm Group Enterprise controls, conducts, manages, and participates within the fraud and racketeering activities of the more than 8 distinctly separate RICO violating enterprises which comprise the 'long arms' of the total "state farm group" RICO violating conglomerate, as RICO violating subsidiary enterprises. These association in fact enterprises operating within 'the state farm group's RICO violating schemes exhibit three structural features. As argued within the plaintiffs complaint, these are 'a purpose", relationships among those associated with the enterprise and longevity sufficient to permit those associates to pursue the enterprise's purpose. Further Plaintiffs complaint clearly shows the Defendants continue to utilize the fraudulent inducement methodology in the abuse of words, terms, symbols, devices and combinations thereof in a continuing pattern of behavior sufficient to be considered as Defendants' enterprises regular way of conducting their affairs involved RICO predicate acts, as an element of the conduct, conspiracy, and furtherance of the fraud schemes, and predicate acts of robbery, extortion, mail and wire fraud[17], as well as the method of usage in fraudulent inducement methodology. Clearly defining the 'open-ended' nature of the racketeering activities and the Defendants' activities would indefinitely continue if the Plaintiffs did not file this law suit, and most certainly will continue indefinitely should the Plaintiffs not prevail in this matter.

---

[17] *Vicom, Inc.*, 20 F.3d at 782 (*quoting H.J. Inc.*, 492 U.S. at 242-43). *See also Libertad v. Welch*, 53 F.3d 428, 445-446 (1st Cir. 1995) (sufficient evidence to defeat summary judgment where the defendants' regular way of conducting their affairs involved RICO predicate acts); *CVLR Performance Horses, Inc. v. Wynne*, 524 F. App'x 924 (4th Cir. 2013) (reversing dismissal where the alleged conduct projected into the future with threat of repetition); *Abraham v. Singh*, 480 F.3d 351, 355-56 (5th Cir. 2007) (reversing dismissal because complaint sufficiently alleged open-ended scheme with multiple victims and where "there is no reason to suppose that [the alleged misconduct] would not have continued indefinitely had the Plaintiffs not filed this lawsuit."); *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528-29 (9th Cir. 1995) (finding open-ended continuity where the RICO predicates had become defendants' regular way of conducting business).

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 22 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 88-2   Filed 11/21/19   Page 21 of 35 PageID #:
2634

### **Differentiation between enterprises, parent-subsidiaries, affiliates and employees.**

State Farm Mutual Automobile Insurance Company (Defendant Auto) is a distinctly different 'person' / 'enterprise' than the 'state farm group' RICO violating enterprise. However, Defendant Auto jointly conspired with the RICO Defendants and is vicariously liable for acts of its employees[18] under the respondent superior doctrine. Defendant Auto is NOT a passive enterprise, but a bad actor in the advertising and marketing frauds, and a joint beneficial party in the groups' 'bundling' fraud sales scheme, and beneficiary of the RICO violating enterprises. Further, Defendant Auto by its own admission[19], is NOT 'the enterprise'[20] which stole the Plaintiffs' fireplace, or extorted Plaintiffs on multiple separate occasions. Defendant Auto is distinct from subsidiaries[21] it owns due to the fact:

    a) Defendant Auto, and each of the subsidiaries owned by Defendant Auto that are engaged in 'the state farm group" RICO violating enterprises, each perform different roles within the enterprise.; and

    b) Defendant Auto, acting in a conspiracy with the RICO Defendants, uses the subsidiaries' separate legal incorporation to facilitate racketeering activities.

---

[18]  Employees of RICO violating enterprises, and unsuspecting employees caught un-aware and engaged within the RICO violating fraud schemes due to the instructions and directives issued by the RICO Defendants.

[19]  See Defendant Auto 1st Motion to Dismiss Plaintiffs' First Amended Complaint, also referencing Defendant Auto's oral pleading 'stating they were not the same company as State Farm Lloyds, and not responsible for the actions of said company."

[20]  See, e.g.,*Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 32 (1st Cir. 1986); *Petro-Tech, Inc. v. Western Co. of N. Am.*, 824 F.2d 1349, 1360 (3d Cir. 1987); *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 378-80 (6th Cir. 1993); *D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964, 967 (7th Cir. 1988); *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1304 (7th Cir. 1987); *Luthi v. Tonka Corp.*, 815 F.2d 1229, 1230 (8th Cir. 1987); *Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1153-54 (9th Cir. 1992); *Landry v. Air Line Pilots Ass'n Int'l.*, 901 F.2d 404, 425 (5th Cir. 1990); *Yellow Bus Lines, Inc. v. Drivers Local Union 639*, 883 F.2d 132, 140 (D.C. Cir. 1989), on reh'g in part, 913 F.2d 948 (D.C. Cir. 1990); *Cf. Harrah v. J.C. Bradford & Co.*, 37 F.3d 1493 (4th Cir. 1994) (unpublished table decision) (noting that application of respondeat superior under Section 1962(c) is a novel issue in circuit, but declining to address issue where case could be disposed of on other grounds). *But see Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1406-07 (11th Cir. 1994) (rejecting the requirement that the culpable person be distinct from the enterprise and holding that respondeat superior may be applied under Section 1962(c) where the corporate employer benefits from the acts of its employee and the acts were: (1) related to and committed within the course of employment; (2) committed in furtherance of the corporation's business; and (3) authorized or acquiesced in by the corporation), modified on other grounds, 30 F.3d 1347 (11th Cir. 1994).

[21]  *In re ClassicStar Nare Leasing Litig.*, 727 F.3d 492 (6th Cir. 2013)

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 23 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 134-2   Filed 11/21/19   Page 22 of 35 PageID #:
2635

Defendant Auto is both the central figure and the aggressor in the schemes to defraud the Plaintiffs[22] and as such is vicariously liable for the enterprises acts pursuant to 18USC1962(c). The Individual Defendants are entirely separate 'persons' from the 'enterprises, and separate from the separate, but jointly participating companies, which they manage and control[23] from directors and officers positions within the allegedly separate corporate enterprises, engaged in 'association in fact' RICO violating predicate acts of patterns of racketing activities[24]. Defendants Tipsord, Farney, Smith, Harbert and Wey's interests are uniquely separate from the 'members' who allegedly control and own State Farm Mutual Automobile Insurance Company, and as, such should

---

[22] See, e.g., *Davis v. Mutual Life Ins. Co. of New York*, 6 F.3d 367, 378-80 (6th Cir. 1993); *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1306 (7th Cir. 1987); *Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1154-55 (9th Cir. 1992); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1406-1407 (11th Cir. 1994) (holding that respondeat superior liability may be assessed under Section 1962(c) where the corporate employer benefits from the acts of its employee and the acts were (1) related to and committed within the course of employment; (2) committed in furtherance of the corporation's business; and (3) authorized or acquiesced in by the corporation), opinion modified on other grounds on reh'g, 30 F.3d 1347 (11th Cir. 1994).

[23] *Reves v. Ernst & Young*, 507 U.S. 170, 178-79 (1993). limiting the reach of 18 U.S.C. § 1962(c) by holding liability for 'conducting or 'participating in the conduct of' affairs of an enterprise to persons who exercise a managerial role on the enterprises' affairs

[24] Plaintiffs complaint specifically states Defendants Tipsord, Farney, Smith, Harbert, and Wey 'banded together' in a conspiracy to conduct, establish, manage, and operate the state farm group's affairs, and not merely JUST Defendant Auto's affairs, *See United Food & Commercial Workers Unions v. Walgreen Co.*, 719 F.3d 849, 853-56 (7th Cir. 2013)*; Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (noting that the required person/enterprise distinction "cannot be evaded by alleging that a corporation has violated the statute by conducting the enterprise that consists of itself plus all or some of its officers or employees"). As 'the state farm group' is more than JUST Defendant Auto, Plaintiffs complaint alleges and shows how Defendants Tipsord, Farney, Smith, Harbert, and Wey 'conspired' to commit a pattern of racketeering that they could not individually accomplish on their own. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120-21 (2d Cir. 2013). AND Defendants Tipsord, Farney, Harbert, Smith, and Wey's level of cooperation used between the independent companies, including Defendant Auto rose to the level WAY above the level of cooperation in 'normal commercial transactions' as it is inherently NOT normal of a handful of parties to hold the same position in as many companies, and conduct activities from officers and directors positions in subsidiary companies, owned by one parent company working solely under trademark fraud scheme used by the Defendants. Inherently this is so abnormal, it's shocking, and also unlawful. And as each of the Defendants (Tipsord, Farney, Smith, Harbert, and Wey) participated and managed the 'state farm group' fraud scheme, and directly and indirectly wrote, authorized and participated in directives in separate enterprises conducting the predicate acts of extortion, robbery, mail and wire fraud, it is clear these 'insiders' not only knowingly helped implement RICO schemes, they did not provide services, they actively managed and operated the affairs of the 'state farm group'. And participated in the conduct of the racketeering activities within the Defendants fraud schemes and criminal enterprises. *Dongelewicz v. PNC Bank Nat'l Ass'n*, 104 F. App'x 811 (3d Cir. 2004); Crichton v. Golden Rule Ins. Co., 576 F.3d 392 (7th Cir. 2009); Goren v. New Vision Int'l, Inc., 156 F.3d 721, 727-728 (7th Cir. 1998); In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 827-28 (S.D.N.Y. 2005), aff'd, 538 F.3d 71 (2d Cir. 2008); *Jubelirer v. MasterCard Int'l, Inc.*, 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999); *Cf. Beard v. Worldwide Mortg. Corp.*, 354 F. Supp. 2d 789, 806-808 (W.D. Tenn. 2005)

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 24 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 383   Filed 11/21/19   Page 23 of 35 PageID #:
2636

be individually held liable[25], and held independent from the financial resources of the corporate Defendants, especially those of Defendant Auto.

## II.   *STANDING TO BRING CLAIMS*

Pursuant to 18 U.S.C. § 1964(c), Plaintiffs have standing as 'persons' who have sustained injury (and injuries) to businesses and property, by reasons of the Defendants' violation of 18 U.S.C. § 1962.

a) Plaintiff's relied upon the Defendants' gratuitous promises to 'pay for losses' incurred to Plaintiffs' property in the amount of $5 million, in the event of a loss.

b) Plaintiffs' relied on Defendants' continuous promises prior to the fire event in which Defendants clearly stated 'state farm has you covered for $ 5 Million in losses to your property'.

c) Defendants' fraudulent statements and fraudulent inducement of the Plaintiffs constitutes conducts of frauds by wires and mails, and directly caused the injury to the Plaintiffs after the fire event, as Plaintiffs relied on the assurances of the Defendants.

d) The post fire event activities of the Defendants, and the Defendants' acts of extortion and robbery, further injured the Plaintiffs in prohibiting the Plaintiffs ability to recover monetary losses to their property resultant from the fire and the Defendants fraudulent denial of liability / responsibility to make payments pursuant to the Defendants' prior and congruent assurances that 'state farm has you covered and you won't suffer any further loss".

e) Further, Plaintiffs have standing as parties personally defrauded into buying insurance from a potentially insolvent insurer pursuant to 18 U.S.C. § 1962(c)[26]

---

[25] Defendants Tipsord, Farney, Smith, Harbert, and Wey, are not complete outsiders, nor are they completely and strictly, nor solely operating within roles of employment within the companies, owned by Defendant Auto, but manage and participate in a larger than authorized enterprise, and managed as 'the state farm group', as they manage their own affairs within 'the state farm group' fraud enterprise *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). *and ID.* at 178-179, *and ID.* at 190-19. Plaintiffs allegations are sufficient to demonstrate Defendants Tipsord, Farney, Smith, Harbert, and Wey played significant roles in directing the affairs of the association in fact enterprise known as the 'state farm group' *See, e.g.,Dayton Monetary Assocs. v. Donaldson, Lufkin, & Jenrette Secs. Corp.*, No. 91-CV-2050, 1993 WL 410503, at *3 (S.D.N.Y. Oct. 14, 1993). ;*see also Brown v. LaSalle Northwest Nat'l Bank*, 820 F. Supp. 1078, 1082 (N.D. Ill. 1993) (borrower sufficiently alleged that defendant bank, which purportedly devised and implemented scheme to deprive borrowers of right to notice of defenses to loan repayment, controlled association-in-fact enterprise consisting of a group of corporations); *United Nat'l Ins. Co. v. Equipment Ins. Managers, Inc.*, No. 95-CV-0116, 1995 WL 631709, at *4-5 (E.D. Pa. Oct. 27, 1995) (plaintiff insurance companies properly alleged that defendants operated or managed association-in-fact enterprise consisting of defendants and plaintiffs through alleged scheme in which defendants collected audit premiums from insureds, and through fraudulent means, failed to account for premiums and remit moneys to plaintiffs); *Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 994-95 (E.D.N.Y. 1995) (declining to grant law firms' motions to dismiss because attorneys or law firms could have maintained an operational or managerial position in association-in-fact enterprise between creditors, law firms retained by creditors, and employees of law firms).

[26] *See Ocean Energy II, Inc. v. Alexander & Alexander, Inc.* 868 F. 2d 740, 747048 (5th Cir. 1989). (reversing district court's grant of summary judgment and holding that genuine issues of material fact existed as to whether the insured established factual causation and legal causation sufficient to have standing to bring RICO claim; insured alleged injury as a result of fraud by insurance agent in selling insurance products, and failure to cover insured's claims.)

Case 4:19-cv-00119-SDJ-KPJ  Document 134-5  Filed 04/06/20  Page 25 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ  Document 93-90  Filed 11/21/19  Page 24 of 35 PageID #:
2637

Defendants conduct of the enterprises further fraudulent theft of Plaintiffs auto insurance policy benefits and the materially fraudulent assignment of 'liability' of the Defendants' failures to protect the Plaintiff's interest (failure to provide garage space for Plaintiffs vehicles which resulted in damage to Plaintiffs' vehicles) to the Plaintiffs further resulted in injury to Plaintiffs' businesses.  Defendant Auto's participation in the RICO enterprise, and materially misrepresentation and fraudulent reporting to a national database caused further injury to Plaintiffs' property and business.  These post fire event activities caused both direct injuries, and 'but for' injuries[27] to the Plaintiffs for had the Defendants NOT engaged Plaintiffs in the Defendants' bait and switch'[28] and single entity fraud schemes, Plaintiffs would not have been injured by the resultant fraudulent acts, and racketeering activities of the Defendants' enterprises, with the intent to defraud the Plaintiffs in order to unlawfully obtain monies and property 'in the hands of the Plaintiffs'[29] through the Defendants enterprises complex schemes, frauds, and racketeering activities.

## **Width and Breadth of Injuries to properties and business directly and proximately related to Defendants Frauds, criminalities, patterns of behavior and Racketeering enterprises.**

Plaintiffs have been injured in their businesses and properties by conduct of the Defendants schemes[30], and long running and separate over time predicate criminal acts constituting the

---

[27] *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. at 267-74

[28] *Diaz v. Gates*, 420 F3d 897 (9th Cir. 2005)

[29] *18 U.S.C.A, § 1341, See also Florida Software Sys., Inc. v. Columbia/HCA Healthcare Corp*, 46 F. Supp. 2d 1276, 1281 (M.D. Fla, 1999). "in the hands of" also includes monies and properties in the hands of the plaintiffs in the Defendants fraudulent inducement phases of racketeering activities and frauds during the 2016 fraudulent inducement sales frauds by the mails and wires, the 2012 and ongoing use of national advertising fraud schemes, the July 2017 fraudulent and extortive sales activities to obtain monies for a product the Defendants had already 'canceled', and the February 27 / April 7th, fraudulent inducement, extortions, and use of wires to convey extortive statements in order to rob the Plaintiffs fire place property.

[30] A scheme to defraud encompasses "*acts of artifice or deceit which are intended to deprive an owner of his property or money.*" *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, No. 92-CV-2808, 1993 WL 8340 (N.D. Ill. Jan. 8, 1993), judgment aff'd, 20 F.3d 771 (7th Cir. 1994).

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 26 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 89-2   Filed 11/21/19   Page 25 of 35 PageID #:
2638

violations of 18 U.S.C. § 1961 including mail and wire fraud[31], extortion[32], and robbery[33]. Plaintiff's suffered injuries due to the Defendant's conduct of racketeering activities', predicate acts[34], and proximate causes, and further suffered 'but for' injuries[35] in fact. Plaintiff's injuries to

---

[31]   Criminal mail fraud involves (1) a scheme based on an intent to defraud; and (2) the use of the mails to further that scheme. *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 455 (S.D.N.Y. 1998).

[32]   To prove extortion under the Hobbs Act, the Court held that a plaintiff must show that the defendant actually obtained or sought to obtain property through wrongful means. Id., 537 U.S. at 407. *Accord Sekhar v. United States*, 133 S. Ct. 2720 (2013). It is not enough if the defendant merely deprived the plaintiff of its property. Id., 537 U.S. at 401-07. Accordingly, Plaintiffs in alleging multiple acts of extortion showed the Defendants extortive and forcible statements placed Plaintiffs in fear of their physical safety, and fear of the safety of their properties and businesses, factually Plaintiff Vanderbol was at the period of extortion in very frail health, and required constant and consistent care, a measured 'low stress' living environment, and a carefully managed diet, the Defendants threats placed Plaintiff Quinn in fear of their joint safety, and the surety of the Plaintiffs income from the Plaintiffs business properties and business operations.   Defendants threats, and robbery denied Plaintiffs of these requirements and injured the Plaintiffs personally, and in property and business. As defined in *18 U.S.C. § 1951(b)(2)*" and each act of robbery constitutes a predicate act in violation of *18 U.S.C. § 1961(1)*

[33]   Plaintiffs' claims of 'robbery' stem from the Defendants unlawful taking and obtaining of the Plaintiffs personal property from the Plaintiffs, and in the presence of another, against the Plaintiffs will by threats, and Plaintiffs fear of injury to the Plaintiffs person and property, and relatives of the Plaintiffs family as defined in *18 U.S.C. § 1951(b)(1)*, also known as '*The Hobbs Act*' and each act of robbery constitutes a predicate act in violation of *18 U.S.C. § 1961(1)*

[34]   *18 U.S.C. § 1961(5)* defines 'a pattern of racketeering activity' requiring at least two acts of racketeering behavior the last occurred within ten years of the commission of the prior racketeering activity". *In Sedima, S.P.R.L. v. Imrex Co.*, Inc., 473 U.S. 479, 496 n. 14 (1985). The Supreme Court defined a 'pattern' as "encompassing criminal acts that have the 'same or similar purposes, results, participants, victims, or methods of commission (all of these as argued and alleged in the Plaintiffs Complaint exist in this matter in pattern, consistency, and relatedness) or otherwise interrelated by distinguishing characteristics and are not isolated events", in arguing and alleging Defendants 'pattern' and predicate acts Plaintiffs considered and applied the directives of the 7th Circuit in *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986). in reviewing the Plaintiffs complaint for adequacy in alleging a pattern of unlawful conduct: (1) the number of predicate acts; and (2) the variety of predicate acts; (which in this matter extend into hundreds of predicate acts of wire fraud, more than 10 acts of mail fraud, four distinctly separate acts of extortion, at least five distinctly separate and different acts of robbery.) and (3) the length of time over which the predicate acts were committed;(which in this matter as alleged by the Plaintiffs has existed over a period of more than seven years overall and directed at the Plaintiffs solely for a duration of more than three years)(for a clear visual understanding of points 1, 2, and 3 please see Plaintiffs aid to the court, attached as *Exhibit 1* hereto) (4) the number of victims; (in this matter the Plaintiffs (2 parties) (5) the existence of separate schemes; (in this matter, the establishment of the 'single entity fraud scheme, and derivative bait and switch frauds, delay and denial frauds, and the post fire injury criminal acts of extortion and robbery of the jointly connected and operating enterprises, all using the same single entity fraud scheme to obscure the enterprises, and confuse, deceive, and defraud the Plaintiffs as a common thread) and (6) the occurrence of distinct injuries. (which in this matter are directly and proximately caused and distinctly attached to the frauds, schemes, acts, and patterns of the Defendants) *See Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986). 33Id. at 975. The standard used in review by the Plaintiffs is more stringent than the standard typically applied by the 5th Circuit's '*Multiple acts test*' See: *See R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350 (5th Cir. 1985)

[35]   Plaintiffs injuries were pecuniary in nature, and directly to proprietary interests, *See, e.g.,Grogan v. Platt*, 835 F.2d 844, 848 (11th Cir. 1988). Further the losses suffered by the Plaintiffs were concrete in nature, *See In re Taxable Mun. Bond Secs.Litig.*, 51 F.3d 518, 523 (5th Cir. 1995); *Fleischhauer v. Feltner*, 879 F.2d 1290, 1299 (6th Cir. 1989); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1310 (9th Cir. 1992); *Berg v. First State*

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 27 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 89-2   Filed 11/21/19   Page 26 of 35 PageID #:
2639

property exceeding $8 Million, and Plaintiffs' injuries to business's exceeding $70 Million are factually and proximately caused by Defendants violations of 18 U.S.C. § 1961(1).

Defendants' many RICO violating enterprises operated four distinctly individual RICO violating patterns of behavior and racketeering activities. Due to Defendants knowingly, fraudulent representations made in the Defendants actual use of the mails and wires to further the Defendants fraud schemes[36], and further acts of racketeering including extortion, and robbery conducted by

---

*Ins. Co.,* 915 F.2d 460, 464 (9th Cir. 1990); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.,*155 F. Supp. 2d 1069, 1090 (S.D. Ind. 2001) (dismissing RICO claim against car and tire manufacturers in defective tire class action because threat of future harm and diminished value of cars and tires was insufficient to establish concrete monetary loss), rev'd on other grounds, 288 F.3d 1012 (7th Cir. 2002); *Jersevic v. Kuhl, No. 00-CV-10113,* 2002 WL 84624, at *5 (E.D. Mich. Jan. 4, 2002) (dismissing RICO claim based on alleged extortion where plaintiff refused to pay any extortion money). and are 'ascertainable and definable', and as Plaintiffs stated included the Plaintiffs inability to use or conduct their businesses, due to the loss of operational ability caused by the fraudulent acts, schemes, frauds, and criminalities of the Defendants, including the Plaintiffs inability to transfer property from the businesses, conduct business operations, and obtain income from business operations, due to the loss of 'in-hand' credit facilities, underwriting, and operating capital directly due to the predicate acts, and frauds of the Defendants, *See: Isaak v. Trumbull Sav. & Loan Co.,* 169 F.3d 390, 396-97 (6th Cir. 1999) (concluding that plaintiffs had standing to bring RICO action when camping resorts filed for bankruptcy, because "bust-out" scheme to defraud buyers was complete by the final fraudulent act of placing the property into bankruptcy). Further courts have permitted business plaintiffs to recover for pecuniary injuries to intangible business assets such as Plaintiffs intellectual property and held equity, and established value of business concepts, and incomes which could have been obtained by the Plaintiffs, had they not been injured in a 'but for' manner by the Defendants frauds, and racketeering activities. *See, e.g., Genty v. Resolution Trust Corp.,* 937 F.2d 899, 918 (3d Cir. 1991) (no recovery under RICO for physical and emotional injuries due to harmful exposure to toxic waste); *Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 422 (5th Cir. 2001) (damages from smoking-related illnesses were personal injuries, not injuries to business or property sufficient to provide basis for RICO claim); *Drake v. B.F. Goodrich Co.,* 782 F.2d 638, 644 (6th Cir. 1986) (same for damages from illness and poisoning); *Pilkington v. United Airlines,* 112 F.3d 1532, 1536 (11th Cir. 1997) (RICO plaintiffs may recover damages for harm to business and property only, not for emotional and mental distress suffered by alleged harassment following an airline pilots' strike); *Grogan v. Platt,* 835 F.2d 844, 848 (11th Cir. 1988) (monetary damages arising from personal injuries not recoverable under RICO); *Burnett v. Al Baraka Inv. and Dev. Corp.,* 274 F. Supp. 2d 86, 100-102 (D.D.C. 2003) (victims of September 11 terrorist attack suffered personal injuries, not injuries to business or property sufficient to confer RICO standing); *Dymits v. Am. Brands, Inc.,* No. 96-CV-1897, 1996 WL 751111 (N.D. Cal. Dec. 31, 1996) (damages arising from alleged physical and verbal abuse due to reminding smokers not to smoke in certain areas and injuries from second-hand smoke not recoverable under RICO); *James v. Lau-O-Tone Prods., Inc.,* No. 88-CV-7716, 1989 WL 61852 (S.D.N.Y. June 7, 1989) (same for personal injuries caused by use of defendant's product); *Raye v. Medtronic Corp.,* 696 F. Supp. 1273, 1274 (D. Minn. 1988) (same for damages from injuries caused by malfunctioning pacemaker); *McMurtry v. Brasfield,* 654 F. Supp. 1222, 1225 (E.D. Va. 1987) (same for personal injuries arising from domestic relations dispute); *Pohlot v. Pohlot,* 664 F. Supp. 112, 116 (S.D.N.Y. 1987) (same for victim of failed murder-for-hire scheme); *Campbell v. A.H. Robins Co.,* 615 F. Supp. 496, 501 (W.D. Wis. 1985) (same for injuries caused by birth control device).

[36] *See Wisdom v. First Midwest Bank, of Poplar Bluff,* 167 F.3d 402 (8th Cir. 1999). *See also In re Sumitomo Copper Litig.,* 995 F. Supp. 451, 455 (S.D.N.Y. 1998) (*noting that elements of mail fraud are more broadly defined than elements of common law fraud*).

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 28 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 88-3   Filed 11/21/19   Page 27 of 35 PageID #:
2640

the defendants' enterprises, as alleged within the complaint the 'but for' causes are not unforeseeable:

1. as had the Plaintiffs never been fraudulently induced they would not have been injured. And;

2. as had the Defendants not engaged in delay frauds purposefully and willfully engaging in frauds to avoid delivering the 'correct product sold' to the Plaintiffs and then had the Defendants in a rapid and timely manner paid the Plaintiffs $5 Million for losses due to the fire event. And

3. had the Defendants not acted in a purposefully negligent manner not to protect the Plaintiffs automobile assets (by providing garage space, or accepting liability for damages for failure to maintain the criteria of the auto-policy during the 'period of recover' directly preventing the Plaintiffs from being damaged or labeled as 'high-risk'') the Plaintiffs would not have been injured.

4. Further, had the Defendants NOT acted in a fraudulent and criminal manner to deny the Plaintiffs claims under the 'correct contract' sold the Plaintiff. And;

5. had the Defendants not actively extorted the Plaintiffs in order to rob the Plaintiffs personal property (fireplace). And

6. Had the Defendants actually kept the Defendants promises to obtain a lawyer hired to recover the losses not paid by 'state farm' as part of litigation against the negligent builder, then the Plaintiffs losses would have been limited only to the risk of recovery in litigation.

7. However, as the Defendants not only extorted the Plaintiffs on multiple occasions, and
   a. robbed the Plaintiffs of assets, property, and monies,
   b. and then attempted to transfer all blame of all the events to the Plaintiffs, including the damage to the Plaintiffs vehicles, in breach of the contract the Defendants were stating was the basis of the amounts they 'lawfully' had to pay to the Plaintiffs,
   c. and then the fraudulent reporting of the Plaintiffs as high risk, while actively delaying and denying the Plaintiffs the monies and resources required to operate, and expand their growing businesses. the resultant damage to the Plaintiffs businesses is not only foreseeable, its undeniable.

Plaintiffs clearly relied on Defendants to provide the $5 Million insurance coverage purchased[37] and then fraudulently promised prior to the fire event[38]. And Plaintiffs' clearly relied on Defendants, to make restitution in a timely manner in the amount of $5 Million for fire losses post fire event.[39]   Further Plaintiffs' clearly relied on the Defendants to adequately protect

---

[37] During the Defendants' RICO violating "inducement by fraud" phase.

[38] During the Defendants' RICO violating "Delay by Fraudulent promise and representation" phase.

[39] During the Defendants' RICO violating "Denial by Fraud and criminality" phase

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 29 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 9894   Filed 11/21/19   Page 28 of 35 PageID #:
2641

Plaintiffs from further injury[40]. In failing to prohibit damage to Plaintiffs vehicles[41] (as prescribed in the fraudulent Lloyds contract) Defendants caused the events[42] the Defendants later used to further injure the Plaintiffs.

### "But for Injuries" to Plaintiffs Businesses.

When the Defendants interstate commerce affecting enterprises[43] fraudulently placed blame upon the Plaintiffs for such damage to vehicles which directly prohibited the Plaintiffs from obtaining underwriting required for business investments, and business growth. The actions of the Defendants directly deprived the Plaintiff of business income, value and growth derived from the investors monies, and the ability to operate said businesses. Had Defendants not engaged in the 'bundling' scheme, as part of the 'bait and switch' scheme, Defendants would have been unable to fraudulently transfer liability to the Plaintiffs for the Defendants failures and frauds.

Pointedly, the fraudulent statements led directly to the Plaintiffs injuries, and the fraudulent acts of robbery of Plaintiffs auto policy benefits, by the RICO violating enterprises, and then Defendant Autos' collusive fraudulent reporting to national databases caused the injuries to Plaintiffs businesses. These direct to injuries causation by violations establishes a clear proximate[44]

---

[40] *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. at 271

[41] by failing to provide garage space to prohibit damage by hail to Plaintiff's vehicle during the Defendants' RICO violating "Delay by Fraudulent promise and representation" phase

[42] *Northeast Women's' Ctr., Inc. v. McMonagle*, 868 F 2d. 1342 (3rd Cir 1989)

[43] Congress's inclusion in § 1962(c) of enterprises whose activities "affect" interstate or foreign commerce further demonstrates that a profit-seeking motive is unnecessary: "An enterprise surely can have a detrimental influence on interstate or foreign commerce without having its own profit-seeking motives." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. at 258. (1994). In all of the jointly operating and participating interstate commerce affecting enterprises operated and managed by the Defendants activities after the fire event, in furtherance of the original fraudulent schemes and racketeering activities, and due to the fraudulent joint participation in the 'single entity tradename fraud schemes' and related confusing, deceptive, and unlawful usage of tradenames, words, terms, and representations of commercial activities, and commercial persons 'characteristic' differences between corporate 'persons' owned by Defendant Auto, conducting and participating in the fraud schemes and criminal activities as directed and managed, in an employment or association manner, the further acts of fraud, extortion and robbery predicate acts, and usage of mail and wires to delay, deny, defraud, and inhibit the Plaintiff do not require a 'income' motive, or 'economic' motive, factually as the enterprises are so intertwined, operate across state lines, and 'paid' the Plaintiffs across state lines, and in using a multi-interstate commerce nexus to conduct said payment through multiple interstate commerce companies is sufficient to support the Plaintiffs *18 U.S.C. § 1962(c)* claims, and associated *18 U.S.C. § 1962(d)* claims.

[44] *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010). emphasizing the 'direct' relationship theory and the Plaintiffs harms are directed tied to the conduct of the Defendants enterprises in every aspect to the Defendants enterprises frauds, and related acts of extortion, and robbery tied to the Defendants activities attempting to continue

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 30 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 89-2   Filed 11/21/19   Page 29 of 35 PageID #:
2642

cause[45]. In short, had Defendants not fraudulently engaged Plaintiffs, and then fraudulently abused Plaintiffs other assets in the control of the Defendants, then Plaintiffs would NOT have been injured to their business due to the Defendants fraudulent reporting to the national database, which denied Plaintiffs' ability to obtain underwriting and business investment which was already approved for funding.

### III.   Liability of Defendant Auto, and other Defendants under 18 U.S.C. § 1962(a), (b), and (d)

18 U.S.C. § 1961(a) and 18 U.S.C. § 1961(b) do not deal with the notion of conducting a separate enterprise and as such the person/enterprise distinction does not apply to violations of sections 1961 (a) or (b)[46]. As such, Defendants **Auto, Fire and Indivudual** are liable under RICO as each benefit from 'an infusion of racketeering income', and they are not mere targets, nor are they passive instruments of racketeering schemes.[47] Accordingly, and in reference to the

---

to defraud the Plaintiffs by unlawfully extorting the Plaintiffs into complying with terms and conditions of a 'canceled' contract, which the Defendants enterprises were attempting to enforce provisions upon the Plaintiffs while ignoring the contracts provisions which bound the Defendants enterprises, and then the further frauds of the Defendants enterprises to injure the Plaintiffs due the Defendants conspiracy and frauds to 'cover-up' the Defendants frauds, schemes, and criminalities conducted by the various enterprises owned, managed, and/or operated by the Defendants.

[45] *Anza*, 547 U.S. at 456-60.

[46] *See, e.g.,Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190-91 (3d Cir. 1993) (collecting cases but ruling on other grounds); *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1165 (3d Cir. 1989), *abrogated by Beck v. Prupis*, 529 U.S. 494 (2000); *Petro-Tech, Inc. v. Western Co. of N. Am.*, 824 F.2d 1349, 1361 (3d Cir. 1987); *Busby v. Crown Supply, Inc.*, 896 F.2d 833, 841-42 (4th Cir. 1990); *In re Burzynski*, 989 F.2d at 743; Landry, 901 F.2d at 425; *Masi v. Ford City Bank & Trust Co.*, 779 F.2d 397, 401 (7th Cir. 1985); *Haroco, Inc. v. Am. Nat'l Bank and Trust Co. of Chicago*, 747 F.2d 384, 402 (7th Cir. 1984), aff'd, 473 U.S. 606 (1985); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1398 (9th Cir. 1986).

[47] As Defendant Auto is 'a central figure and aggressor' in the 'state farm group' fraud schemes, and Defendants Fire, Lloyds, and INC are central aggressors in the schemes, frauds and criminalities, and patterns of racketeering activities predicate acts. *See, e.g., Davis v. Mutual Life Ins. Co. of New York*, 6 F.3d 367, 378-80 (6th Cir. 1993); Liquid Air Corp. v. Rogers, 834 F.2d 1297, 1306 (7th Cir. 1987); *Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1154-55 (9th Cir. 1992); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1406-1407 (11th Cir. 1994) (holding that respondeat superior liability may be assessed under *Section 1962(c)* where the corporate employer benefits from the acts of its employee and the acts were (1) related to and committed within the course of employment; (2) committed in furtherance of the corporation's business; and (3) authorized or acquiesced in by the corporation), opinion modified on other grounds on reh'g, 30 F.3d 1347 (11th Cir. 1994). As such, respondent superior is appropriate as each of the Defendant companies employees have related to, or committed unlawful and criminal acts which violate RICO, and the Defendant companies have benefited, the acts of the Defendant companies employees were committed in furtherance of the corporations' affairs and business either fraudulently, or by contract, and the Defendant companies either acquiesced to the state farm groups schemes, or authorized them, for conduct and participation of the Defendant Companies employees, who then received payment for the 'services' rendered to the 'state farm group', and the enterprises.

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 31 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 89-2   Filed 11/21/19   Page 30 of 35 PageID #:
2643

Plaintiffs claims pursuant to 18 U.S.C. § 1962(d) conspiracy claims where the Plaintiff alleged the Defendants conspired to violate 18 U.S.C. § 1962(c), the Defendants (meaning all Defendants) need not agree to operate or manage the 'enterprise', whether the enterprise be 'the state farm group' conglomerate RICO violating enterprise, or any of the RICO violating 'subsidiary' association in fact enterprises, or the corporate enterprises, which harbored the association in fact RICO violating enterprises.[48] Further, this Court should recognize the intracorporate conspiracies of the Corporate Defendants because corporations and their subsidiaries are distinct legal entities, and therefore, agents are liable for their own conspiratorial actions.[49] And the acts of the Defendants directly rose to a level of 'racketeering activity' including the corporate Defendants engagement and participation in wire and mail frauds, and direct acts of extortion and robbery in participation and conduct, as well as, defense of the 'state farm group' fraudulent inducement sales, bait and switch sales frauds, and fraudulent marketing practices committed by interstate use in commerce of the mails and wires, in order to further the Defendants fraud schemes to illegally obtain monies and properties from the Plaintiffs.

The Defendants are liable pursuant to Plaintiffs' 18 U.S.C. § 1962(d) claims as the Defendants knowingly agreed to facilitate the others who operated and managed 'the state farm group' conglomerate RICO violating enterprise, or any of the RICO violating 'subsidiary' association in fact enterprises, or the corporate enterprises, which harbored the association in fact RICO violating enterprises[50]

---

[48] *See Salinas v. United States,* 522 U.S. 52, 63 (1997) (holding that "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense.").

[49] *See Kirwin v. Price Commc'ns Corp.,* 391 F.3d 1323, 1327 (11th Cir. 2004) (rejecting contention that "intracorporate conspiracy doctrine" bars 1962(d) claim against a corporation and its agents); *Webster v. Omnitrition Int'l, Inc.,* 79 F.3d 776, 787 (9th Cir. 1996) (holding that, for purposes of the RICO statute, corporation may conspire with its officers); *Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271, 1281 (7th Cir. 1989)

[50] *Brouwer v. Raffensperger, Hughes & Co.,* 199 F.3d 961 (7th Cir. 2000). *See also MCM Partners, Inc.,* 62 F.3d 967; *United States v. Quintanilla,* 2 F.3d 1469, 1485 (7th Cir. 1993); *United States v. Starrett,* 55 F.3d 1525, 1547-48 (11th Cir. 1995); *Tonnemacher v. Sasak,* 859 F. Supp. 1273, 1277-78 (D. Ariz. 1994); *Fid. Fed. Sav. & Loan Ass'n,* 830 F. Supp. at 261; *Jones v. Meridian Towers Apartments, Inc.,* 816 F. Supp. 762, 772-73 (D.D.C. 1993). and *Brouwer,* 199 F.3d at 967.

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 32 of 36 PageID #:

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 32 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 99-2   Filed 11/21/19   Page 31 of 35 PageID #:
2644

## IV.   Plaintiffs Reliance.

Plaintiffs Complaint adequately pled 'plaintiffs reliance' at each step of the Defendants long running fraudulently operating enterprise schemes.  Plaintiffs showed they relied upon the truthful representation and good faith of the Defendants enterprises through the A through E stages of the state farm group conglomerate enterprises' business model.  In *Bridge*, the Supreme Court stating holding '*a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations*'[51] According to the Court, a showing of 'first-party reliance' is not necessary to ensure that there is a "sufficiently direct relationship between the defendants' wrongful conduct and the plaintiff's injury to satisfy the proximate-cause principles articulated in *Holmes* and *Anza*."[52]  However, Plaintiffs showed reliance in order to establish the 'but-for' causation, as the Plaintiffs significantly relied upon the misrepresentations made by the Defendants, at each stage of the Defendants complicated, complex, and intricate conglomerate enterprise fraud and racketeering model, as conducted, managed, and directed by the Defendants, and Plaintiffs clearly stated they had no reasonable way of knowing the misrepresentations of the Defendants were false, due to the continued and pervasive volume of false promises, fraudulent representations and mischaracterizations as to the Defendants commercial activities, and 'persons', to the Plaintiffs detriment, "by reason of" 'each' act of the Defendants' 'staged and progressive' fraudulent operations conducted and managed by the Defendants, directly and indirectly.

## V.   In Conclusion,

The Plaintiffs complaint may on the surface seem long, and repetitive, however but due to the complexity of the racketeering conglomerate, and the requirements to show direct injury by acts of fraud, and racketeering combined with the requirement to establish a 'but for' causation of injury and the requirement to demonstrate the Plaintiffs injuries were 'by reason of' 'that' fraudulent act[53], and such injury occurred due to the Plaintiffs detrimental reliance.  The Plaintiffs

---

[51] *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008)

[52] *Id.* at 657-658

[53] *See, e.g., In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1052 (N.D. Cal. 2009) (granting motion to dismiss class action RICO claim, citing Bridge, and stating that "[p]laintiffs have not put forth any specific allegations that anyone . . . relied on defendants' purportedly fraudulent misrepresentations to cause the injury"), aff'd, 464 F. App'x 651 (9th Cir. 2011).

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 33 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 99-2   Filed 11/21/19   Page 32 of 35 PageID #:
2645

were required to fully allege, argue, and demonstrate that no event occurred to constitute an intervening cause breaking the chain of causation[54]. Plaintiffs complaint frames the conduct and complexity of the enterprises and establishes a common nexus of misusage of words, terms, symbols, and phrases used to sew confuse and deception which the Defendants then benefit from either through the illegal obtaining of monies and properties, or by the usage of words in order to deceive parties as to the conduct and the commercial characteristics, and activities of the RICO violating enterprises.

Plaintiffs complaint thoroughly, specifically, and particularly in as simple, and brief a manner as possible, when outlining a complex fraud scheme and racketeering enterprises conducting interstate fraud schemes, and interstate commerce affecting patterns of racketeering behavior, with their associated criminalities, including robbery, and extortion.   Which are conducted, organized, operated and managed by five individual defendants who conspired to conduct association in fact enterprises, each conducting a unique enterprise operation which consisted of seven distinct, unique and unlawful enterprise operation which each engaged in predicate acts which violate the RICO statute.  The entire conglomerate operational matrix exists in as many as 25 individual corporate entities, however, the four corporate enterprises which harbored the association in fact enterprises, and distinct operations which conduct and participate in RICO violating activities, in a pattern of racketeering activity conducting more than two predicate acts each, are defined and illustrated within the named corporate defendants, all managed, and operated by the five individual Defendants Tipsord, Farney, Smith, Harbert, and Wey who conspired to establish and operate the 'state farm group' enterprise, and controlled the central methodology used to defraud, and the operational enterprises conducting racketeering activities.

---

[54] *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008) *AND Id. at 659* ("By the same token, the absence of first-party reliance may in some cases tend to show that an injury was not sufficiently direct to satisfy § 1964(c)'s proximate-cause requirement, but it is not in and of itself dispositive"). *AND Id.* (emphasis in original) ("Accordingly, it may well be that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation").

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 34 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 389-9   Filed 11/21/19   Page 33 of 35 PageID #:
2646

The Plaintiffs complaint is plead as simply as possible, with as short of statements as possible, and directly and particularly as possible due to the complexity of the racketeering enterprises, and in consideration the Defendants "E" enterprises ongoing pattern of dispositive motions practice and the Defendants long running history of NEVER admitting any guilt, or responsibility, even after a final judgment and monetary award is made in favor of an opposing party, after trial and findings are made.  In short the Defendants have a pattern of established behavior that includes a recalcitrant corporate culture due to the nearly unlimited resources derived from the enterprises fraud schemes, and racketeering activities, as of yet, Defendants have never been financially reprimanded to a level that offsets the 'income' at all cost mindset of the individual Defendants, nor have the individual defendants ever been made to 'fund' their own defense costs, which would likely cause a change in criminal corporate culture within this nation.

Until such an act occurs, there is no monetary reason for a conspiring 'managing' officer defendant which would deter their engagement in mass and broad fraud schemes, and racketeering activities, as the 'persons' are more often than not, sheltered within the racketeering enterprise itself, even during litigation which does not stop the corporate fraud schemes and racketeering activities as the wealth of the enterprise itself is used to delay justice, while illegally incomes and unlawful profits are reaped with ever increasing efficiency.

### Prayer.

Plaintiffs pray this Honorable Court this Honorable to lift its stay on discovery immediately, and to grant the Plaintiffs any and all relief this Honorable Court deems appropriate, and which meets 'the ends of justice".

Dated November 20th, 2019.

Respectfully Submitted.

Erica Quinn,
Petitioner, Pro Se.
ERICA@3pmg.net
3245 Main Street, Suite 235-329
Frisco, Texas. 75034.
Telephone:  940 301 9410

John S. Vanderbol III,
Petitioner, Pro Se.
FederalCase@3pmg.net
3245 Main Street, Suite 235-329
Frisco, Texas. 75034.
Telephone:  940 315 1156

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 35 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 30-2   Filed 11/21/19   Page 34 of 35 PageID #:
2647

## Certificate of Service.

I hereby certify that on November 21st, 2019, I served a true and correct copy of the foregoing U.S. Mail, postage prepaid and to Defendants' legal counsel via the Court's electronic filing system, upon the following:

**Defendant Auto.**
State Farm Mutual Auto Ins. Co.
1 State Farm Plaza
Bloomington, Il. 61710
County:        McLean
Telephone:        800-782-8332

**Defendant Tipsord**
C/o State Farm Mutual Auto Ins. Co.
1 State Farm Plaza
Bloomington, Il. 61710
County:        McLean
Telephone:        800-782-8332

**Defendant Harbert**
C/o State Farm Mutual Auto Ins. Co.
1 State Farm Plaza
Bloomington, Il. 61710
County:        McLean
Telephone:        800-782-8332

**Defendant Wey**
C/o State Farm Fire and Casualty Co.
3 State Farm Plaza
Bloomington, Il. 61710
County:        McLean
Telephone:        309 722 2311

**Defendant Fire.**
State Farm Fire and Casualty Co.
3 State Farm Plaza
Bloomington, Il. 61710
County:        McLean
Telephone:        309 722 2311

**Defendant Smith**
C/o State Farm Fire and Casualty Co.
1 State Farm Plaza
Bloomington, Il. 61710
County:        McLean
Telephone:        800-782-8332

**Defendant Farney**
C/o State Farm Fire and Casualty Co.
1 State Farm Plaza
Bloomington, Il. 61710
County:        McLean
Telephone:        800-782-8332

Erica Quinn,
Petitioner, Pro Se.
ERICA@3pmg.net
3245 Main Street, Suite 235-329
Frisco, Texas. 75034.
Telephone: 940 301 9410

John S. Vanderbol III,
Petitioner, Pro Se.
FederalCase@3pmg.net
3245 Main Street, Suite 235-329
Frisco, Texas. 75034.
Telephone: 940 315 1156

Case 4:19-cv-00119-SDJ-KPJ   Document 134-5   Filed 04/06/20   Page 36 of 36 PageID #:
Case 4:19-cv-00119-SDJ-KPJ   Document 90-1   Filed 11/21/19   Page 35 of 35 PageID #:
2648

# EXHIBIT 1

## Plaintiffs Aid to the Court.