## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS - SHERMAN DIVISION

| | |
|---|---|
| **JOHN S. VANDERBOL III, AND ERICA QUINN** | Lead Case No.: 4:19-cv-119-SDJ-KPJ |
| Plaintiffs, | (Consolidated 4:19-CV-120) |
| vs. | |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM FIRE AND CASUALTY COMPANY, ET AL.** | JURY TRIAL DEMANDED. |
| Defendants | |

### PLAINTIFFS' RESPONSE TO DEFENDANTS'
### NOTICE OF SUPPLEMENTAL AUTHORITIES (DKT. 156)

On July 21, 2020, this Honorable Court held a hearing on Defendants' Motion to Dismiss in which the Court sought information regarding the Plaintiffs' claim this Court held General Jurisdiction over multiple Individual Defendants.  Defendants offered as a defense, an allegation regarding the lack of domicile of a non-party to this suit, State Farm Lloyds as reasoning to how the Court lacked jurisdiction over Individual Defendants Smith, Harbert, and Wey.  Defendants placed forth a new theory not previously addressed in the Defendants pleadings to which the Plaintiff's required time to review and respond.

The Court, in the same line of questioning, also questioned the Plaintiffs as to the Plaintiffs' research regarding the Individual Defendants.  To which, the Plaintiffs responded the Individual Defendants held significant contacts to the state of Texas, including the ownership of real property, the hiring of Texas residents which supported the Plaintiffs' allegations Defendants Smith, Harbert and Wey conducted their affairs within the State of Texas.   The Court asked the Plaintiffs how they determined this, to which the Plaintiffs responded by the hiring of a third-party private investigator.

The Court queried the Plaintiffs if they had obtained an affidavit from said investigator to which the Plaintiffs responded in the affirmative. The Plaintiffs have attached here to an affidavit from the third-party private investigator as **_Exhibit 5_**.  Upon review both the Texas and Illinois properties owned by Defendant Michael Steven Wey, are also owned by his wife showing more

than 'casual' connections to the state of Texas despite the opposite as alleged by Defendants in their oral argument.

On July 22, 2020, the Defendants filed a ***Notice of Supplemental Authorities*** **Dkt. 156** which the Court sought to assist in its ruling.  Within said Notice, the Defendants made a series of errors the Plaintiffs must bring in response to the Court's attention and made several materially misleading statements to which the Plaintiffs must object and also address.

### I.     Plaintiffs' 3rd Amended Complaint Enterprises claims condensed and Defendants' Frivolous Arguments Exposed.

The Plaintiffs filed their 3rd Amended Complaint alleging the Individual Defendants established, operated, managed and conducted racketeering enterprises in a highly complex conglomerate manner named as an enterprise as 'the state farm group'.   The Plaintiffs' Complaint alleged and supported a series of frauds in which the racketeering engaged enterprise abused a trademark owned by Defendant Auto. Defendant Auto has stated that "State Farm Mutual Automobile Insurance Company" it does not underwrite any other form of insurance other than automobile insurance.

The Plaintiffs alleged a series of fraud schemes and racketeering enterprises all utilizing a 'single entity trade name fraud scheme' used by the ALL of the Defendants racketeering engaged enterprises to confuse the Plaintiffs in order to unlawfully obtain monies through the abuse of the 'state farm' tradename to misrepresent the origination and source of underwriting of products represented in a fraudulent manner to consumers, such as the Plaintiffs.   In these frauds, the Individual Defendants control racketeering association-in-fact enterprises which obscured the origination of the products offered, confused the Plaintiffs regarding the true value of the product sold and obscured the reputation of the enterprises selling said products offered.  Defendants have, since then, denied the source of products sold as 'state farm' but rather obscurely state the frivolously state the matter to be an 'insurance dispute' and sew confusion regarding 'underwriting'.

Flatly, "State Farm Mutual Auto" did not take a fee to underwrite (issue a guarantee) against the Plaintiff's risk of loss to their real estate property.  Another company falsely claiming to be

'State Farm" and fraudulent alluding to being "State Farm Auto" did[1].   Plaintiffs argued the Defendants engaged in bait and switch sales frauds.   Plaintiffs stated the Defendants' use of terms and logos were done so in order to continue to confuse the Plaintiffs as to the quality of the products offered and sold.   Plaintiffs also stated since that time during the 'delay phase" of the Defendants' fraud schemes / racketeering enterprises engaged in the abuse of terms and logos in order to obscure their true activities, which included strong arm racketeering acts including robbery, and extortion.

In totality, the Defendants have acted to obscure the acts and activities of multiple racketeering engaged enterprises both corporate and association-in-fact in nature.  It is clear in some shape form or manner, each of the Defendants engaged in racketeering activities in order to fraudulently benefit from monies obtained by fraud.   The Plaintiffs' Complaint states the Individual Defendants established the "state farm group" racketeering enterprise abusing their officers positions to do so.  The Plaintiffs' Complaint combines a claim against the Corporate Defendants for engagement in acts of conspiracy with the Individual Defendants which are clearly separate 'persons' away from the corporate 'persons' and act beyond the functions of the bait and switch and strong-arm racketeering fraud schemes and racketeering enterprises.  It is clear, all Defendants act in support of racketeering activities and engage in conduct and participation within fraud schemes and racketeering enterprises in order to illegally obtain monies and profits from said frauds acted across 26 corporate enterprises under an association-in- fact enterprise construct.

The Plaintiffs' legal premise regarding their claims the Defendants engaged in racketeering activities via the abuse of trademarks as directly stated within their Complaint is based upon State Farm Mutual Automobile Insurance Company's application and registration of the 'state farm' trademark and logos, as supported in evidence attached to the Plaintiffs' Third Amended Complaint. *(See Exhibit 1).*   The Plaintiffs clearly stated Defendant Auto, the owner of the trademark, did not receive fees for underwriting services in the origination of the Defendants' racketeering enterprises' home insurance fraud scheme. In short, State Farm Mutual Auto Insurance Company, a person / corporation did not receive a fee for providing a loss risk guarantee (homeowner's insurance policy). State Farm Mutual Auto Insurance Company does not also conduct operations in the fields of home

---

[1]  Plaintiffs provided Texas Code to define the act of fraud by parties not licensed or regulated by the State of Texas for their conduct of interstate commerce affecting fraud schemes and racketeering enterprises.  Defendants attempt to show this as an insurance claim is meritless due to the pre-contract frauds in violation of Texas Law.

owners insurance, fire insurance, mutual fund services or banking services, nor does it directly receive fees from consumers to do so, by its own admission.

Other corporate persons do, or entities defined by law as 'separate' enterprises, and parties to which the Plaintiffs may bring RICO claims against for frauds perpetrated by them in direct and indirect conduct and participation in acts defined as violations of *Section 18 USC 1962*.   The Defendants have stated State Farm Mutual Automobile Insurance Company did not conduct an underwriting service or conduct underwriting services pertaining to the 'homeowners' product fraudulently sold to the Plaintiffs.  State Farm Auto has clearly stated "State Farm Lloyds" did.  The Defendants have failed to address the short fall in value to the guarantee, and failed to address their crimes and frauds in attempt to deny payment of the verbally issued guarantee, and have failed to address how their other acts directly and proximately caused the Plaintiff's injuries.

Plaintiffs' Complaint clearly stated Defendants' racketeering association-in-fact racketeering enterprises stated "state farm will deliver a $5 million homeowners policy" and evidence presented by the Defendants shows a homeowners policy with the "state farm logo" attached to it *(See Exhibit 2)*.   Plaintiffs' Complaint clearly stated the product fraudulently 'switched' was delivered by the mails in extension of the fraud schemes used to illegally obtain monies from the Plaintiffs.

The Plaintiffs' Complaint also stated the amount of the product was not the same as sold to them, nor was the value or quality of the company stipulated to them at the point of sale.   Plaintiffs' Complaint clearly stated these enterprises engaged in acts of racketeering where under the direct control and management of five Individual Defendants. And, also stated each of the five Individual Defendants were employed by and or associated with enterprises engaged in acts of racketeering activity.

### *Plaintiffs' 3rd Amended Complaint named as Individual Defendants:*

1. Michael Tipsord[2]. And;
2. Jon Charles Farney[3]. And;
3. Randall Houston Harbert [4]. And;
4. Paul Joseph Smith [5]. And;

---

[2] (*See Dkt 99* and *Dkt 134 Redacted Complaint* – Page 15, Section 15)
[3] (*See Dkt 99* and *Dkt 134 Redacted Complaint* – Page 16, Section 16)
[4] (*See Dkt 99* and *Dkt 134 Redacted Complaint* – Page 17, Section 17)
[5] (*See Dkt 99* and *Dkt 134 Redacted Complaint* – Page 18, Section 18)

5. Michael Steven Wey[6].

The combined Defendants, in response, filed a Motion to Dismiss alleging they did not understand the Plaintiffs' Complaint while attempting to allege defects in the Plaintiffs' filing by asserting the Plaintiffs lacked a claim for relief.

## II.    Notice, Response and Argument.

### 1.    Notice of Deficiency in Defendants' Notice and Pleadings.

The Plaintiffs must bring to the Court's attention a deficiency in **Defendants' Motion to Dismiss** (**Dkt 106**) and **Defendants' Notice of Supplemental Authorities** (**Dkt 156**), as well as every other motion, response, or reply filed by Defendants' Counsels including the Counsel's Motions to Enter.  Within all of the Defendants' Motions, responses and other filings before this Honorable Court, the Defendants' Counsels name *Defendant Wey* as "Stephen Michael Wey", a party not of this suit.

### 2.    Defendants' Notice fails to address jurisdiction regarding Defendant Michael Steven Wey as argued within the Plaintiffs' Complaint.

*Plaintiffs' 3rd Amended Complaint* (**Dkt 99 and Dkt 134**) clearly names "Defendant Wey" as Michael Steven Wey with a primary address located at 8707 Acurela Ct, Austin, Texas 78735 also stating "*Defendant Wey formed, and manages* "Wey Management Trust", which owns the Austin Property with the property listed as "*owner occupied*".   Plaintiffs' Complaint also states "*Wey Management Trust has also recently purchased property located at 19352 Briar Dr. Bloomington Il, 61705*".  Plaintiffs' Complaint states "*Defendant Wey employs residents of the State of Texas and travels extensively in the conduct and participation of RICO violating enterprises' activities traveling between Texas and Illinois*".

### 3.    Defendants' Motion to Dismiss affirms acceptance of Service by?

---

[6] (*See Dkt 99* and *Dkt 134 Redacted Complaint* – Page 20, Section 19)

*Defendants' Motion to Dismiss* alleges Plaintiffs' Complaint does not contain the aforementioned information, but confirms that *Defendant Wey* was served with the other Defendants in Illinois.   What **Defendants' Motion to Dismiss** fails to state is which party or enterprise accepted service for the Individual Defendants in Illinois.    It is clear, Defendants' enterprises accepted service on behalf of Defendant Wey, and the other Individual Defendants.   It is also clear that Defendants' Motions are flawed in their arguments, as their 'factual allegations' do not appear to apply to the same "Wey" named as a Defendant in the Plaintiffs' 3rd Amended Complaint.

### 4.   Defendants' Oral confusion regarding their own client.

On July 21, 2020, the Defendants affirmed Defendant Wey's property was indeed owned by a 'trust'.  However, the Defendants' Counsel seemed to be perplexed as to which "WEY" he was speaking on behalf of as a Defendant as Defendants' Counsel addressed his client as "Stephen Michael Wey", not Michael Steven Wey the Individual Defendant named by the Plaintiffs.

### 5.   Defendants' Notice answers Court's previous question pertaining to "Lloyds" as a Defendant.

On July 21, 2020 and in their Notice of Supplemental Authorities, the Defendants attempt to dissuade the Court pertaining to the domicile of "State Farm Lloyds".   This attempt is immaterial, as Lloyds is not named as a Defendant in the Complaint.   The Court previously asked the Plaintiffs '*why is Lloyds not a defendant in this matter*'.  The Defendants' Supplemental Authorities clearly answers the Court's previous question. The Plaintiffs' previous complaints did not add State Farm Lloyds on jurisdictional issues.   In the original Third Amended Complaint, the Plaintiffs found additional evidence of the 'unassociated underwriters' engagement in racketeering activities, which through the acts of parties already named as a Defendant provided a claim against State Farm Lloyds.  But, as the Court ruled the time allowed for the addition of new defendants had expired, the Plaintiffs complied with the Court's order to remove State Farm Lloyds as a new Defendant.

### 6.   Defendants' Notice fails to provide a basis for Defendants' request for relief based upon Defendants' frivolous lack of jurisdiction argument.

The **Defendants' Notice of Supplemental Authorities** does not provide a Defense for the Defendants against the Plaintiffs' General Jurisdiction Claim, as the **Plaintiffs' 3rd Amended**

**Complaint (Dkt 99)** clearly argues Defendant Michael Steven Wey owns a residence in the State of Texas[7] which the Defendants' Counsel conceded on July 21, 2020.   Further, the Plaintiffs' Complaint clearly states Defendant Michael Steven Wey extensively travels between Texas and Illinois in the conduct of "RICO violating enterprises"[8], a claim not disputed by the Defendants in any manner in any of their Motions, responses or oral arguments.   Further, the Defendants' Motion and oral argument and Notice fail to show how Defendant Wey's ownership of property in the State of Texas does not involve the conduct of his affairs, nor did the Defendants address the Plaintiffs' motion and brief regarding Defendant Wey's hiring of Texas residents personally or via his wholly owned, beneficially formed, and managed real estate investment trust.   Further, the Defendants failed to orally respond to the Plaintiffs' 'owner occupied' stipulation within the Third Amended Complaint.

### 7.   Defendants failed to overcome Defendant Wey's conduct of affairs in Texas as argued in the Plaintiffs' 3rd Amended Complaint.

The Defendants orally affirmed Defendant Wey's ownership of property in Texas on July 21, 2020 and failed to deny Defendant Wey's travel to Texas.   Defendants, including Defendant Wey as represented by Counsels, have not denied Defendant Wey is in residence in Texas[9] during any of these travels in the conduct of his activities or in conduct of his affairs, or in the conduct of the racketeering engaged enterprises operated within the corporate assets of Defendant Auto, or within the enterprises of State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company or State Farm Lloyds.   All of which, Plaintiffs allege are used by the Individual Defendants to conceal, and then operate racketeering engaged association- in-fact enterprises.

### 8.   Defendants' Notice does NOT provide a defense to Plaintiffs' Claims regarding Defendants' conduct of an enterprise(s) engaged in acts of racketeering as alleged within the Plaintiffs' 3rd Amended Complaint.

The Defendants have not denied or disputed that the Individual Defendants, including Defendant Michael Steven Wey, have multiple officer and director positions within these distinctly

---

[7] Dkt .134 Pp. 20 - 21
[8] Dkt 134 P. 21
[9]  Nor denied Wey's residency during the period alleged, or stipulated a period of time Defendant Wey was not in residency in the State of Texas DURING the activities which the Plaintiffs allege within their Complaint.  It is clear once the Plaintiffs' filed their Complaint, Defendant Wey purchased property outside of the State of Texas and fled the state to avoid prosecution in this matter.

separate corporate enterprises used within the conspirators and operating the 'meeting of the minds' conspiracy instigated by Defendants Tipsord and Harbert as alleged in the Plaintiffs' Complaint.  In total, the 'association of underwriters' defense is at best a ruse to attempt to obscure the true nature of jurisdiction which the Defendants have not adequately contested, nor denied in context to the Plaintiffs' allegations or under the facts as argued within the Third Amended Complaint.  Factually, Defendants failed to show Defendant Wey's lack of conduct of his affairs or the conduct of the racketeering enterprises within the State of Texas.  Nor, did they address Plaintiffs' claims the Defendants crossed state lines in the furtherance of acts of racketeering as alleged in the Plaintiffs' Complaint.

9.   **Defendants' "Notice" details the efficiency of Defendants' Association-in-Fact Racketeering Enterprise "Enterprise "D" as alleged in the Plaintiffs' Complaint, and also shows evidence of the Defendants' Racketeering Enterprises' acts of fraud before the courts, and the Defendants' fraudulent reporting in financial statements to the Securities and Exchange Commission.**

On July 21, 2020, the Defendants verbally argued that "Lloyds" was merely an "unincorporated association of underwriters" and supported said frivolous allegation before this Court within their Notice of Supplemental Authorities.  Defendants, within said hearing, attempted to misrepresent the operation of State Farm Lloyds in a graphically mispresented manner, as a body without corporation filings in the state of Texas, and without ties to the State of Texas. Plaintiffs, within their initial disclosure to the Defendants and in filings as evidence before this Court, submitted a *United States Securities and Exchange Commission Form "D"* filed by Defendant Auto in 2016 *(See Exhibit 3)* obtained by the Plaintiffs from the Security and Exchange Commissions' "Edgar" archives.

On *page 3 of the Edgar Form D*, *(Exhibit 3, page 3)* State Farm Lloyds is listed under filer number "0001692117" as an "issuer" of securities, with the Jurisdiction of Incorporation / Organization in Texas, with the principle business address of 1251 State Street, Suite 1000, Richardson Texas, 75082.    The issuance of securities is tightly regulated by the Securities and Exchange Commission, a section of the United States Federal Government.  **SEC Rule 10b-5**, codified at 17 C.F.R. 240.10b-5, prohibits any act or omission resulting in fraud or deceit in connection with the purchase or sale of any security.

Plaintiffs bring this to the Court's attention as the Defendants, having filed said SEC filing while attempting to convey that State Farm Lloyds is not domiciled or incorporated in the State of Texas within this Court is a potential matter of perjury and fraud upon the Court.  A fraudulent representation pertaining to the structure of a security or the structure of the company issuing a security is an act of fraud associated with the sale or offering of securities, a criminal offense under federal law. A potential federal crime, to which the Defendants seemingly admit.   The Court should not be swayed by the residency of parties who conduct a function of a business, over the factual domicile of the company in residence and issuing regulated securities.

Factually, State Farm Lloyds as a corporation is domiciled in the State of Texas, and Defendants Harbert, Smith, Farney and Wey conducted affairs of the enterprises in the state of Texas, spent money in the state of Texas in the conduct of their personal affairs and enterprises' affairs and all of these activities have a significant impact of interstate commerce.  To which, the Defendants have not denied. Defendants' claims as to 'underwriting' are a ruse designed to confuse the court improperly.

**10. Defendant Auto's 2014 Annual Financial Statement supports the Plaintiffs' claims pursuant to the use of illegally obtained monies to obtain and maintain control of an enterprise to engage in acts of racketeering and use of monies to operate racketeering enterprises.**

Defendant Auto's 2014 annual report shows Defendant Harbert as EVP Chief Agency Sales Marketing Officer, Defendant Smith as EVP and Treasurer, Defendant Tipsord as Vice Chairman and COO, and Defendant Michael Steven Wey as EVP property and casualty; all of the Defendants positioned to conduct the sales frauds schemes and racketeering enterprises as alleged by the Plaintiffs within their Complaint.  ***See Exhibit 4, Page 1 (2014 annual Report).***    On the same report on Page 14.11(***See Exhibit 4, Page 14.11 (2014 annual Report)*** states, "The company (Defendant Auto) has 100% control of State Farm Lloyds, Inc. Attorney in Fact for State Farm Lloyds".  The Defendants' affidavit before the Texas Court states State Farm Lloyds is 'managed and controlled' by State Farm Lloyds, Inc., a Texas company.  ***Page 14.25 section c. of exhibit 4*** shows 'direct financial control of State Farm Lloyds' by the Individual Defendants via a revocable line of credit and debentures.  The manner in which all of the Defendants control the racketeering engaged enterprise (Lloyds) in the State of Texas, acting from Illinois.

Plaintiffs, within their *Complaints,* have repeatedly stated the Defendants obtained control of enterprises through the use of illegally obtained monies, to establish, promote and engage in racketeering enterprises.  Plaintiffs submitted Defendant Auto's *2014 financial report* in Exhibits in support of their *First Complaint.*  Plaintiffs carried said document forward within their *Third Amended Complaint* in support of the Plaintiffs' claims that the Defendants' enterprises used monies from the single entity fraud scheme to illegally obtain, control, establish and operate racketeering enterprises, an issue not addressed by the Defendants.  Defendants faint a lack of understanding while frivolously alleging the Plaintiffs' claims lack evidentiary support when in fact the Complaint holds significant support when a person considers the 'four corners of the complaint' doctrine.

The *Plaintiffs' Complaint* stipulates the Individual Defendants are engaged within, employed by and associated with enterprises engaged in racketeering activities conducted in an association-in-fact manner through multiple shells and corporate enterprises, fraudulently alleged to be 'one company' when in fact, this is not true.  *Defendants' Notice of Supplemental Authorities* supports the Plaintiffs' claims due to the Defendants' claims 'underwriting' and conduct is not incorporated as an entity within 'State Farm'.   The *Defendants' Notice* failed to address the Plaintiffs' sales fraud claims, which specifically states and factually claims / argues / and supports "state farm promised a $5 million guarantee".

The *Plaintiffs' Complaint* clearly states the Defendants' enterprises failed to deliver said promised $5 million guarantee prior to the engagement of the contractual relationship they allege provides them a contractual defense, which the Defendants' enterprises accepted monies for.  The Defendants have not denied these claims, allegations or supported exhibits, nor have they denied the Defendants' enterprises accepted monies from these frauds, or acted in support of them.  Directly, the Defendants failed to address any of the elements of the verbal cancelation of the Lloyds' contract, nor the 9-month period of false promises "don't worry, 'State Farm' has you covered, and you won't suffer a loss."  A series of false promises which directly and proximately caused the Plaintiffs' injuries.  None of the Authorities has any factual point, which denies the Plaintiffs the ability to obtain relief in this matter before this Honorable Court.

**11.** **Plaintiffs' Complaint sufficiently alleges all of the elements required for a RICO claim and Defendants' Notice of Supplemental Authorities does not countermand the Plaintiffs' claims pursuant to RICO or Jurisdiction.**

Plaintiffs' Complaint clearly states the Plaintiffs' Complaint arises from federal questions relating to Defendants' abuse of trademarks and trade names directly citing federal law as the basis of fraud conducted by the Defendants, and the basis of legal claims regarding trademark abuse / fraud as the Defendants' acts of fraud, obscurity and deceptive acts injured the Plaintiffs.  Plaintiffs brought claims pursuant to *18 U.S.C. § 1962 (b)* and *18 U.S.C. § 1962 (d),* both of which afford nationwide service of all Defendants, including the Individual Defendants[10].    Defendants' Authorities argument does not countermand or deny service pursuant to *18 U.S.C. § 1962(d)* or *18 U.S.C. § 1962(b)* claims and if service is sufficient pursuant to Plaintiffs' *18 U.S.C. § 1962(d)* or *18 U.S.C. § 1962(b)* claims, then the Court has jurisdiction to and cannot grant the Defendants' Motion to Dismiss as the Defendants failed to show the insufficiency of the Plaintiffs' claims pursuant to those sections.

Further, many courts have held that "nationwide service of process" provisions confer personal jurisdiction over a defendant in ANY judicial district, including Illinois as long as the Defendant has MINIMUM contact with the United States[11] to which all of the Defendants have and NONE of the Defendants have alleged otherwise.    Defendants' Authorities Defense does not prohibit nor deny nationwide service for the Defendants' minimum contact with the United States; in fact, they empower the Plaintiffs' claims for personal and general jurisdiction.

---

10 Compare ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 626-27 (4th Cir. 1997) (holding that court had jurisdiction because defendant was served under nationwide service of process provision in Section 1965(d)) and Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942 (11th Cir. 1997) (Section 1965(d) "provides for . . . nationwide service of process") with PT United Can Co. Ltd. v. Crown Cork & Seal Co., 138 F.3d 65, 70-72 (2d Cir. 1998) (finding that Section 1965(b) provides for nationwide service of process), and Stauffacher v. Bennett, 969 F.2d 455, 460 (7th Cir. 1992) (finding nationwide service of process in Section 1965(b)), superseded Central States, Se. & Sw. Areas Pension Fund v. Reiner Express World Corp., 230 F.3d 934 (7th Cir. 2000).

11  See, e.g., City of New York v. Cyco.Net, Inc., 383 F. Supp. 2d 526, 541-43 (S.D.N.Y. 2005); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1182 (C.D. Cal. 1998) ("Where a defendant is properly served in the United States under RICO's nationwide service provision, that defendant's national contacts, rather than its minimum contacts with the forum state, determine whether the district court has personal jurisdiction over the defendant"), aff'd, 248 F.3d 915 (9th Cir. 2001); Bank Atlantic v. Coast to Coast Contractors, Inc., 947 F. Supp. 480, 489-90 (S.D. Fla. 1996); Monarch Normandy Square Partners v. Normandy Square Associates Ltd. P'ship, 817 F. Supp. 896, 898 (D. Kan. 1993); Dooley v. United Techs. Corp., 786 F. Supp. 65, 70-71 (D.D.C. 1992), abrogated by FC Inv. Grp. LC v. IFX Markets, Ltd., 529 F.3d 1087 (D.C. Cir. 2008).

**12. Plaintiffs obtained and present an affidavit supporting Plaintiffs' jurisdiction claim pertaining to Defendant Michael Steven Wey, as argued within their 3rd Amended Complaint.**

The Court asked the Plaintiffs if they obtained an affidavit from the third-party investigator hired by the Plaintiffs.   The Plaintiffs attach said affidavit to the Plaintiffs' response in assistance to the Court.   The Court's stay has prejudiced the Plaintiffs' ability to obtain documentation on Defendant Wey's real estate investment vehicle which he manages and utilizes to obtain real estate property and which owns real property in Texas from which Defendant Michael Steven Wey conducts his activities, affairs and employs Texas residents in the conduct of his personal affairs, trust vehicle affairs, and racketeering activities in support, management, conduct and participation of racketeering engaged enterprises as alleged in the Plaintiffs' third amended Complaint.

**Plaintiffs' Request.**

Defendants, through counsel, frivolously allege the Plaintiffs' Complaint is too hard to understand, and too long to read.  The Plaintiffs' Complaint, in a very clear manner, named the Defendants properly, and succinctly. It is clear, that **Individual Defendant Michael Steven Wey** is not engaged in any manner in his own defense before this Honorable Court. Plaintiffs ask the Court to seek to affirm Defendant Michael Steven Wey's retention of counsel in this manner and ask the Court to order the release of the engagement contract between Counsel and Defendant Michael Steven Wey to assure that no party is prejudiced, and that justice prevails.

Defendants, through counsel, have repeatedly used a contrived "*we don't understand the complaint*" ruse and have attacked the Plaintiffs carefully written statements in nefarious attempts to de-fang the Plaintiffs' Complaints. The Defendants' repeated ***Motions to Dismiss*** are meritless at best and continue to fail to address all of the elements of the Plaintiffs' claims.   The exhibits attached by both parties pertaining to the Notice and in response to said Notice points to the Defendants' deceptive and nefarious nature, conveniently fabricating arguments solely to confuse parties, including the Courts themselves.

Factually, State Farm Lloyds, a corporation[12], is domiciled and registered in Texas with significant offices and considerable employee base consisting of Texas residents. Defendants Farney, Smith, Harbert and Wey in management and conduct of enterprises and affairs through Texas residents both via corporate enterprise affiliations and personal engagement affiliations have significant contacts in Texas as claimed by the Plaintiffs. This Honorable Court should consider the exhibits submitted by the Plaintiffs in order to provide clarity to the Court and disburse the smoke screen produced by the Defendants.

Respectfully Submitted.

Erica Quinn,
Petitioner, Pro Se.
ERICA@3pmg.net
3245 Main Street, Suite 235-329
Frisco, Texas.  75034.
Telephone:  940 301 9410

John S. Vanderbol III,
Petitioner, Pro Se.
FederalCase@3pmg.net
3245 Main Street, Suite 235-329
Frisco, Texas.  75034.
Telephone:  940 315 1156

---

[12] a corporate person defined as an 'enterprise' by code. Is domiciled in Texas as admitted by the Defendants in various federal securities filings and annual financial reports both issued via the wires and distributed by Defendant Auto acting under the control of the Individual Defendants through the mails and the wires in support of their fraud schemes. Defendant's oral argument otherwise, and nefarious attempts before this court to allege otherwise should be considered as material misrepresentations of fact.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
NOTICE OF SUPPLEMENTAL AUTHORITIES (DKT 156)